**Exhibit A**
**to**
**Agreement for Licensing and Acquisition**
**of Proprietary Rights, Interests and Property**

Pursuant to the Agreement for Licensing and Acquisition of Proprietary Rights, Interests and Property entered into as of August 20, 2001 by and between Raybern Foods, Inc. and Rose & Shore, Inc., the following costing formulas shall be used to determine Product Costs for the Products as such costing formulas shall be adjusted from time-to-time pursuant to the terms of the Agreement:

| | |
|---|---|
| **Product:** | Togo's Whole Pastrami |
| **Raw Material Cost Index:** | USDA Carlot Beef - FOB Omaha Basis<br>Boneless Processing Beef/Beef Trimmings<br>Average of Daily Weighted Average of 65% lean fresh trimmings<br>plus $.80 per pound |
| **Average Product Yield:**<br>(Blood and Cook Loss) | 97.0% |

**Seasoning Costs:**   $.068 per pound consisting of:

| | |
|---|---|
| Brine into product: | $.0263 |
| Brine to cover and Waste: | $.0100 |
| Rub ($1.20/lb. x 2.4% usage and 10% waste): | $.0317 |

**Packaging Costs:**   $.059 per pound consisting of:

| | | |
|---|---|---|
| Bag: | ($.2439 each-average product<br>weight is 6.5 lbs,<br>plus 10% waste) | $.0413 |
| Box: | ($.4714 each + $.02-label<br>+ $.03-weight sticker, avg 30lb box) | $.0174 |

**Other Manufacturing Costs:**   $.035 per pound

| | |
|---|---|
| Utilities: | $.0300 |
| Cleaning Supplies | $.0050 |

**Direct Labor:**   $.123 per pound

**Freight and Allowances:**   $.035 per pound

Product Cost Per Lb. = Raw Materials Cost + Seasoning + Packaging + Other + Freight and Returns + Labor
                                                        Avg Product Yield

Initial Product Cost = $1.58/.97 + .068 + .059 + .035 + .123 + .035 = $1.949 per pound

**Product:**                           Togo's Roast Beef

**Raw Material Cost Index:**      USDA Central US Cow Cuts and Boneless Processing Items FOB
Omaha or equivalent basis for the Midwest & FOB Plant for TX & OK
Utility Items - Inside Round Cap Off
Average of the daily low price listed for the Latest Established Market

**Average Product Yield:**          97.0%

**Seasoning Costs:**              $.037 per pound

| | | |
|---|---|---|
| | Injection: | $.0120 |
| | Rub: | $.0250 |
| | ($1.00/lb x 2.5% usage) | |

**Packaging Costs:**            $.061 per pound

Netting:
     ($.19 each x 13 lb avg. pc.)             $.0146
Packaging:
     ($.3584 each—
     avg weight is 13 lb plus 10% waste)     $.0303
Box
     [$.40 each + $.02 (label) + $.03 (weight sticker)
     avg. 28lb box]                       $.0161

**Other Manufacturing Costs:**    $.035 per pound

| | | |
|---|---|---|
| | Utilities: | $.03 |
| | Cleaning Supply: | $.005 |

**Direct Labor:**                   $.131 per pound

**Freight and Allowances:**       $.035 per pound

Product Cost Per Lb. = $\frac{\text{Raw Materials Cost} + \text{Seasoning} + \text{Packaging} + \text{Other} + \text{Freight and Returns} + \text{Labor}}{\text{Avg Product Yield}}$

**Initial Product Cost** = $1.74/.97 + .037 + .061 + .035 + .131 + .035 = $2.093 per pound

52

**Product:**                           Togo's Humus

**Raw Materials:**

        Garbanzo Beans
          ($12.75/cs—26lb net weight)
           $.49/lb x 77.58%     =       $.3804

        Paste (several raw materials)
          $.995/lb 13.50%      =      $.1347

        Spices (blended)
          $.81/lb x 8.92%      =      $.0725

**Average Product Yield:**          96.5%

**Packaging Costs:**               $.05 per pound

**Other Manufacturing Costs:**     $.035 per pound

**Direct Labor:**                   $.135 per pound

**Freight and Allowances:**        $.035 per pound

Product Cost Per Lb. = Raw Materials Cost + Seasoning + Packaging + Other + Freight and Returns + Labor
                                Avg Product Yield

**Initial Product Cost = $0.588/.965 + .05 + .035 + .135 + .035 = $0.86 per pound**

## EXHIBIT "B"


## GRANT OF LICENSE


RAYBERN FOODS, INC., a California corporation, ("Licensor") hereby grants to ROSE & SHORE, INC., a California corporation, ("Licensee") an exclusive non-transferable license to process and sell pastrami, roast beef and humus to the chain of fast food restaurant franchises, commonly known or referred to as "Togo's Eateries" or "Togo's Famous Sandwiches as of the date of execution of this Grant, on all terms and conditions as are specified in that certain document styled "Agreement for Licensing and Acquisition of Proprietary Rights, Interests and Property" ("Contract") executed by and between Licensor and Licensee as of August 20, 2001. The Contract is incorporated herein by this reference.

RAYBERN FOODS, INC.


By:_____

    Bernard J. Viggiano, President

Dated:_____


54

1  LAW OFFICES OF KYRA A. SUBBOTIN
   KYRA A. SUBBOTIN State Bar No. 104944
2  2625 Alcatraz Avenue, No. 152
   Berkeley, CA 94705
3  Telephone: (510) 923-0451
   Facsimile (510) 923-0565
4
   Attorney for Defendants Raybern Foods, Inc.
5  and Bernard J. Viggiano

6

FILED BY FAX
ALAMEDA COUNTY
March 23, 2005
CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy
CASE NUMBER:
RG04141329

7

8                SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF ALAMEDA

10

11  TRI COMMERCIAL REAL ESTATE          )  Case No.  RG 04141329
12  SERVICES, INC.,                     )
                                        )
13          Plaintiff,                  )  CROSS-COMPLAINT AGAINST TRI
                                        )  COMMERCIAL REAL ESTATE
14      vs.                             )  SERVICES, INC., JOHN FULTS,
                                        )  AND ROBERT L. YOUNG,
15  RAYBERN FOODS, INC., BERNARD        )  INDIVIDUALLY AND DBA LAW
    J. VIGGIANO, and DOES 1-20          )  OFFICES OF ROBERT L. YOUNG
16                                      )
17          Defendants.                 )
   _____     )
                                        )  Trial Date: July 22, 2005
18  RAYBERN FOODS, INC.,                )
                                        )
19          Cross-complainant,          )
                                        )
20      vs.                             )
                                        )
21  TRI COMMERCIAL REAL ESTATE          )
    SERVICES, INC., JOHN FULTS,         )
22  ROBERT L. YOUNG, individually and   )
    dba LAW OFFICES OF ROBERT           )
23  YOUNG                               )
                                        )
24          Cross-defendants.           )
   _____     )

25

26  Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

27                    **GENERAL ALLEGATIONS**

28      1.  TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

4146L1


EXHIBIT 2

55

1  times was a California corporation that had its principal place of business in San

2  Francisco and is the plaintiff in this action.

3    2. John Fults is and at all relevant times was a licensed real estate agent

4  and independent contractor affiliated with TRI. At all relevant times, Fults held

5  himself out as president of Keystone Financial , a different corporation than TRI

6  and one for which Fults served as president. Fults held himself out to Raybern as

7  someone with superior financial knowledge and abilities and significant experience

8  in handling the type of transactions that form the basis of this lawsuit.

9    3. Cross-complainant is informed and believes and thereon alleges that

10  Robert L. Young was at all relevant times an officer and director of TRI and, with

11  respect to certain actions alleged herein, acted as its agent and within the course

12  and scope of his obligations as an officer and director of TRI. Raybern is further

13  informed and believes that Robert L. Young was at all times a member of the

14  California bar and a practicing attorney holding himself out as having expertise in

15  the type of transactions that form the basis of this lawsuit.

16    4. Cross-complainant is informed and believes and thereon alleges that

17  Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

18  Offices of Robert L. Young, a professional corporation at various times relevant

19  herein. Young and the Law Offices of Robert L. Young provided advice and

20  services to Raybern in connection with the transactions between Raybern and Rose

21  & Shore.

22    5. The acts set forth herein occurred within the jurisdiction of this Court and

23  are related to and part of the series of transactions forming the basis of the TRI's

24  complaint.

25

26  **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

27    (Against Robert Young, Fults, and TRI)

28    6. In early 2001, Raybern retained TRI, through its purported agent, John

- 2 -

41461.1

56

1    Fults, to represent Raybern in connection with negotiations toward the formation of

2    a strategic business alliance with another entity, Rose & Shore.   In that capacity

3    Fults and TRI were acting as fiduciaries to Raybern and owed Raybern the highest

4    duty of honesty and loyalty.  At the time Raybern retained TRI, it did not know of

5    or understand the true relationship between Young and TRI or between Fults and

6    TRI, and the cross-defendants did not disclose said relationships to Raybern.

7        7.  TRI, through its purported agent Fults, then undertook to have Raybern

8    hire Young to perform services of a legal and/or business nature for Raybern.

9        8.  Raybern hired Young and the Law Offices of Robert L. Young on or about

10   May 10, 2001, at TRI and Fults's recommendation.  At the time Raybern hired

11   Young and commenced payment for his services, Raybern did not know that Young

12   was, in fact, an officer and/or director of TRI.  Neither TRI, nor Fults, nor Young

13   disclosed that fact, and none of them disclosed that Fults had a prior and ongoing

14   personal and/or professional relationship with Young.

15       9.  The services performed by TRI by and through Young, its officer and

16   director, resulted in the consummation of a transaction upon which TRI now is

17   seeking damages.  The services that Young provided included legal services as well

18   as services which TRI/Fults had already agreed to provide Raybern in exchange for

19   a commission from the Raybern/Rose & Shore transactions.  Raybern was billed for

20   and paid Young substantial fees for his services.

21       10.  During the course of his representation of Raybern, Young failed to

22   adequately protect Raybern's financial interests in the transactions with Rose &

23   Shore and likewise failed to adequately protect Raybern when TRI's purported

24   agent, John Fults, announced that he intended to withdraw from further

25   representation of Raybern.

26       11.  Young, Fults, and TRI's actions breached their respective fiduciary

27   duties to Raybern, resulting in damages to Raybern in an amount to be proven at

28   trial.

- 3 -

41461.1

S7

## SECOND CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE

### (Robert Young/Law Offices of Robert L. Young)

12. Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

13. Young's services on behalf of Raybern fell below the standard of care for legal professionals in that he failed to adequately disclose his relationship with TRI and likewise failed to protect his client's interests vis a vis TRI when TRI's agent withdrew from representing Raybern. Young's negotiations for and drafting of Raybern's contracts with Rose & Shore failed to adequately protect Raybern's long-term financial interests in its relationship with Rose & Shore.

14. Young's disclosures and services fell below the standard of care for legal professionals and proximately cause damage to Raybern, for which Raybern seeks recovery herein.

## THIRD CAUSE OF ACTION - NEGLIGENCE

### (All Defendants)

15. Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

16. Cross-defendants and each of them owed Raybern a duty of care to protect the financial interests of Raybern in the series of transactions in which defendants were involved. Cross-defendants breached their duty of care to Raybern, resulting in past and future financial losses.

## FOURTH CAUSE OF ACTION - PROMISSORY FRAUD

### (Fults; TRI)

17. Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

18. TRI, through its purported agent Fults, knowingly misrepresented its

- 4 -

41461.1

1   background and skill in brokering deals of the sort that Raybern and Rose & Shore

2   were contemplating.  Furthermore, they misrepresented the nature of the services

3   they would be providing; neither TRI nor Fults intended to provide due diligence

4   through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

5   needed those services and had expressly obtained TRI/Fults's agreement to provide

6   such services in exchange for its commission.

7        19.  In entering into an agreement with TRI/Fults, Raybern relied on TRI

8   and Fults's representations as to the degree of skill and type of services it would be

9   providing in connection with the negotiation of the Raybern/Rose & Shore

10  transaction.   Raybern's reliance on cross-defendants' representations was

11  reasonable.

12       20.  As a result of Raybern's reliance on TRI and Fults's representations,

13  Raybern suffered consequential damages in an amount to be proven at trial.

14       21.  TRI/Fults intentional conduct was undertaken with aim of causing

15  Raybern injury and was sufficient to support an award of punitive damages

16  pursuant to Civil Code §3294.

17

18                          **PRAYER FOR RELIEF**

19  Wherefore cross-defendant prays for relief as follows:

20  1.  For compensatory damages according to proof;

21  2.  For a disgorgement of all professional fees paid to Robert Young and the

22  Law Offices of Robert L. Young in connection with professional services rendered in

23  connection with the transactions underlying this lawsuit;

24  3.  For punitive damages according to proof;

25  4.  For costs of suit herein; and

26  5.  For such other and further relief as the Court deems just and proper.

27

28

41461.1

Dated: March 18, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
     Kyra A. Subbotin

### DEMAND FOR JURY TRIAL

Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all claims asserted herein.

Dated: March 18, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
     Kyra A. Subbotin

41461.1

## PROOF OF SERVICE
[C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

I, Kyra A. Subbotin, state:

I am a citizen of the United States. My business address is 2625 Alcatraz Avenue, No. 152, Berkeley, California 94705. I am employed in the city of Berkeley, County of Alameda, where this mailing occurs. I am over the age of eighteen years and not a party to this action. On the date set forth below, I served **Cross-complaint of Raybern Foods, Inc.** on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Albert E. Cordova, Esq.
1299 Fourth Street, Suite 202
San Rafael, CA 94901
Facsimile: 415 453-6260

_:     <u>BY FIRST CLASS MAIL</u> - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business. I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

X:     <u>BY FACSIMILE</u> - I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above pursuant to a written agreement between counsel for the parties in this action.

_:     <u>BY HAND DELIVERY</u> - I caused said document to be hand delivered to the person(s) noted above.

_:     <u>BY OVERNIGHT MAIL</u> - I caused said document to be placed with an overnight mailing service for delivery the following business day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date at Point Richmond, California.

Dated: March 22, 2005

Kyra A. Subbotin

S2533.1

61

**FILED BY FAX**
ALAMEDA COUNTY

July 26, 2005

CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy

CASE NUMBER:
**RG04141329**

1  LAW OFFICES OF KYRA A. SUBBOTIN
   KYRA A. SUBBOTIN State Bar No. 104944
2  2625 Alcatraz Avenue, No. 152
   Berkeley, CA 94705
3  Telephone: (510) 923-0451
   Facsimile (510) 923-0565
4
   Attorney for Defendants Raybern Foods, Inc.
5  and Bernard J. Viggiano

6

7

8              SUPERIOR COURT OF CALIFORNIA

9                  COUNTY OF ALAMEDA

10

11

12  TRI COMMERCIAL REAL ESTATE      )  Case No.  RG 04141329
    SERVICES, INC.,                 )
13                                  )
              Plaintiff,            )  **FIRST AMENDED CROSS-**
14                                  )  **COMPLAINT AGAINST TRI**
        vs.                         )  **COMMERCIAL REAL ESTATE**
15                                  )  **SERVICES, INC., JOHN FULTS,**
    RAYBERN FOODS, INC., BERNARD    )  **AND ROBERT L. YOUNG,**
16  J. VIGGIANO, and DOES 1-20      )  **INDIVIDUALLY AND DBA LAW**
                                    )  **OFFICES OF ROBERT L. YOUNG**
17            Defendants.           )
    _____)
18  RAYBERN FOODS, INC.,            )
                                    )
19            Cross-complainant,    )
                                    )
20        vs.                       )
                                    )
21  TRI COMMERCIAL REAL ESTATE      )
    SERVICES, INC., JOHN FULTS,     )
22  ROBERT L. YOUNG, individually and )
    dba LAW OFFICES OF ROBERT       )
23  YOUNG                           )
                                    )
24            Cross-defendants.     )
    _____)
25

26     Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

27                    **GENERAL ALLEGATIONS**

28     1.  TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

41461.1

EXHIBIT 3

1    times was a California corporation that had its principal place of business in San

2    Francisco and is the plaintiff in this action. TRI provides professional brokerage

3    services to client throughout the state of California and within the jurisdiction of

4    this Court.

5        2.  Cross-complainant is informed and believes and thereon alleges that John

6    Fults (Fults) is and at all relevant times was a licensed real estate agent and

7    independent contractor affiliated with TRI.  At all relevant times, Fults held

8    himself out as president of Keystone Financial , a different corporation than TRI

9    and one for which Fults served as president.  The exact nature of the relationship

10   between Keystone Financial and TRI is as yet unknown.  Fults held himself out to

11   Raybern as someone with superior financial knowledge and abilities and significant

12   experience in handling the type of transactions that form the basis of this lawsuit.

13       3.  Cross-complainant is informed and believes and thereon alleges that

14   Robert L. Young (Young) was an officer and director of TRI and, as such, had a

15   degree of control over or influence on TRI's actions herein.  With respect to certain

16   actions alleged herein, Young acted as TRI's  agent and within the course and scope

17   of his position as an officer and/or director of TRI.  Raybern contends that in failing

18   to disclose his role as an officer and director of TRI, Young placed his interests as an

19   officer and/or director of TRI above his professional obligations to Raybern.

20   Raybern is further informed and believes that Robert L. Young was at all times a

21   member of the California bar and a practicing attorney claiming expertise in the

22   type of transactions that form the basis of this lawsuit.  Raybern is informed and

23   believes and thereon alleges that Young was an undisclosed business associate of

24   Fults and served as an advisor to various business entities owned and/or controlled

25   by Fults.

26       4.  Cross-complainant is informed and believes and thereon alleges that

27   Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

28   Offices of Robert L. Young, a professional corporation at various times relevant

- 2 -

41461.1

63

1  herein.  Young and the Law Offices of Robert L. Young  provided advice and

2  services to Raybern in connection with the transactions between Raybern and Rose

3  & Shore as well as other business matters during the same time period that the

4  Rose & Shore transactions were being negotiated.  In such a capacity, Young and

5  the Law Offices of Robert L. Young owed a fiduciary duty to Raybern.

6       5.  The acts set forth herein occurred within the jurisdiction of this Court and

7  are related to and part of the series of transactions forming the basis of the TRI's

8  complaint.

9

10       **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

11                    (Against Fults, and TRI)

12       6.  In early 2001, Raybern retained TRI, through its purported agent, John

13  Fults, to represent Raybern in connection with negotiations toward the formation of

14  a strategic business alliance with another entity, Rose & Shore.  The purpose of

15  that alliance, among other things, was to allow Rose & Shore to take over the

16  manufacturing of certain products, including products that were provided to

17  Raybern's major client, Togo's Eateries, Inc. (Togo's) and to ultimately allow

18  Raybern to close its Hayward manufacturing plant.   In agreeing to represent

19  Raybern in the transactions with Rose & Shore, Fults and TRI were acting as

20  fiduciaries to Raybern and owed Raybern the highest duty of honesty and loyalty in

21  negotiating the business alliance with Rose & Shore.  At the time Raybern retained

22  TRI, it did not know of or understand the true relationship between  TRI and Fults,

23  nor did it understand the full relationship between TRI and its then-officer/director

24  Young, who was also involved in the negotiation of the Rose & Shore contracts and

25  who subsequently represented Raybern in other unrelated business transactions..

26       7.  TRI, through its purported agent Fults, then urged Raybern to hire Young

27  to perform services of a legal and business nature for Raybern.  On Fults'

28  recommendation, Raybern did hire Young in May 2001 and continued to pay Young

                          - 3 -                        41461.1

                                                        64

1    for his services through at least November 2002. Raybern paid Young professional

2    fees in excess of $51,000 in connection with the Rose & Shore transactions, and also

3    paid Young for services in connection with at least two other business matters in

4    which Young provided advice to Raybern.

5        8. TRI, and its purported agent Fults, breached their fiduciary duty to

6    Raybern by failing to disclose Fults's background and experience and for failing to

7    disclose the relationships between TRI, Young, and Fults. Specifically, Raybern

8    would not have engaged Fults had it known of Fults's true business background

9    and Fults's own legal troubles, including a personal bankruptcy and threatened or

10   ongoing litigation involving allegations of breach of fiduciary. TRI and Fults

11   likewise breached their fiduciary duty to Raybern by failing and refusing to fulfill

12   their promise to monitor Rose & Shore's performance and payments under its

13   contract with Raybern and by withdrawing from the transaction before it was

14   finalized. TRI and Fults breached their fiduciary obligations to Raybern by failing

15   to insure that Raybern's goal – tying the August 20, 2001 licensing agreement

16   between Rose & Shore and Raybern to continued performance by Rose & Shore

17   under a separate Manufacturing Agreement executed that same date – was

18   achieved. Instead, the Manufacturing Agreement, which involved the manufacture

19   of sandwich products for customers other than Togo's, contained a provision

20   allowing Rose & Shore to terminate the agreement upon eight months' notice and in

21   the absence of default by Raybern. Rose & Shore has, in fact, exercised its right to

22   terminate the Manufacturing Agreement and has continued to operate under the

23   Licensing Agreement. Finally, TRI and Fults breached their fiduciary duty by

24   failing to disclose that the attorney they were recommending to represent Raybern

25   was, in fact, a business associate of Fults and an officer and director of TRI, and

26   therefore had a vested interest in ensuring that the Rose & Shore transaction was

27   consummated so that TRI would receive a commission.

28        9. As a proximate result of TRI and Fult's breach of its fiduciary duty to

- 4 -

41461.1

65

1    Raybern, Raybern has incurred damages, including but not limited to (1) fees paid

2    to Young for certain negotiating services that should have been performed by TRI

3    and Fults under their agreement with Raybern; (2) fees paid to Young for services

4    which benefitted TRI and not Raybern; (3) attorneys fees incurred in an attempt to

5    prevent Rose & Shore's unilateral withdrawal from the Manufacturing Agreement;

6    and (4) costs incurred in connection with monitoring the Rose & Shore relationship,

7    as Fults had promised he would do but failed to do; and (5) costs relating to re-

8    opening of Raybern's Hayward facility as a result of Rose & Shore's termination of

9    the Manufacturing Agreement without cause.

10

11                **SECOND CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

12                (Against Robert L. Young, Law Offices of Robert L. Young)

13        10.  Raybern realleges paragraphs 1-5 and paragraph 7 as though fully set

14    forth herein.

15        11.   Raybern hired Young and the Law Offices of Robert L. Young

16    (collectively "Young") on or about May 10, 2001, at TRI and Fults's

17    recommendation.  At the time Raybern hired Young and commenced payment for

18    his services, Raybern did not know that Young was, in fact, an officer and/or

19    director of TRI.  Neither TRI, nor Fults, nor Young disclosed that fact, and none of

20    them disclosed that Fults had a prior and ongoing personal and/or professional

21    relationship with Young and that Young had also served as an agent of other

22    business entities owned or controlled by Fults.

23        12.  As Raybern's attorney, Young owed his client a fiduciary duty to disclose

24    all relevant facts regarding his relationship with TRI and Fults.  Specifically, he

25    had an obligation to inform Raybern that he was then serving as an officer and/or

26    director of TRI and therefore had conflicting fiduciary duties.  He likewise had an

27    obligation to inform Raybern of his relationship to Fults and his knowledge of Fults'

28    business background and experience.  Further, he had a duty to protect Raybern's

- 5 -

41461.1

66

1    interest when Fults withdrew from the Rose & Shore transactions and to take all

2    steps available to protect Raybern in connection with that withdrawal.

3    　　　13.  During the course of his representation of Raybern, and in the interest of

4    effecting a transaction that would result in a commission to TRI, the company upon

5    whose board he served, Young failed to disclose his relationships with TRI and

6    Fults, and he failed adequately to protect Raybern's financial interests in the

7    transactions with Rose & Shore.  Specifically, Young failed to insure that the

8    Manufacturing Agreement was tied to the Licensing Agreement; Instead the

9    Manufacturing Agreement had a provision allowing Rose & Shore to terminate the

10   Manufacturing Agreement even absent default by Raybern and yet continue to

11   operate under the more lucrative Licensing Agreement.  Young likewise breached

12   his fiduciary duty to Raybern by failing to include language in the Licensing

13   Agreement making it clear that Fults had the obligation to and would be

14   monitoring the Rose & Shore financials through the life of the Raybern/Rose &

15   Shore contract, an issue now in dispute in this lawsuit. Young likewise failed to

16   take steps to protect Raybern's interest upon learning that Fults refused to continue

17   performing under his contract with Raybern.  Finally, when Raybern asked Young

18   to review a listing agreement between TRI and Raybern – an agreement that would

19   result in a commission to TRI upon sale of Raybern's Hayward property -- Young

20   again failed to disclose his true relationship with TRI.

21   　　　14.  Young's breach of his fiduciary duty to his client, Raybern, proximately

22   resulted in damage to Raybern.  Specifically, Raybern paid Young over $51,000 in

23   attorneys fees which, under the law involving undisclosed conflicts of interest, he

24   had no obligation to pay.  Raybern has also been forced to incur attorneys fees to

25   defend this action which would not have been brought had Young properly advised

26   Raybern upon Fults's withdrawal from the underlying transaction.  Raybern has

27   also had to retain an attorney in connection with Rose & Shore's withdrawal from

28   the Manufacturing Agreement – a withdrawal that should have been prohibited

- 6 -

41461.1

67

1    absent a default by Raybern.  Finally, as a result of Young's failure to draft a

2    Manufacturing Contract that ensured Rose & Shore's continued performance,

3    Raybern has incurred substantial costs to reopen its Hayward processing plant to

4    accommodate the business heretofore handled by Rose & Shore under the

5    Manufacturing Contract, yet is unable to withdraw from the Licensing Agreement.

6

7              **THIRD CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE**

8                  (Robert Young/Law Offices of Robert L. Young)

9           15.  Cross-complainant realleges paragraphs 1 through 5, 7, and 10-14 as

10   though fully set forth herein.

11          16.  Young's services on behalf of Raybern fell below the standard of care for

12   legal professionals in that he failed to adequately fully disclose his relationship with

13   TRI, in direct contravention of the Professional Rules of Conduct.  Young likewise

14   failed to protect his client's interests vis a vis TRI when TRI's agent withdrew from

15   representing Raybern by either negotiating a novation of the Fults/Raybern

16   contract or disclosing his ongoing conflict and referring Raybern to other counsel.

17   As a result, Raybern is now forced to defend this action.  Young's negotiations and

18   drafting of Raybern's contracts with Rose & Shore likewise fell below the standard

19   of care in that they did not adequately protect Raybern or accomplish Raybern's

20   stated goal of ensuring that Rose & Shore would be handling all of its

21   manufacturing, not just that implicated in the Licensing Agreement.  Raybern

22   made clear that it was closing its Hayward facility and, as a consequence, Rose &

23   Shore should not be given an opportunity to  unilaterally repudiate its obligations

24   under the Manufacturing Agreement while maintaining the more lucrative business

25   that was the subject of the Licensing Agreement.  In drafting the Manufacturing

26   Agreement and providing Rose & Shore with the ability to withdraw from the

27   contract even absent default by Raybern, Young failed to protect his client's goals.

28          17. Young's breach of his professional duty to his client, Raybern,

                                    - 7 -                        41461.1

1    proximately resulted in damage to Raybern. Specifically, Raybern has been forced

2    to incur attorneys fees to defend this action. Raybern has also had to retain an

3    attorney in connection with Rose & Shore's withdrawal from the Manufacturing

4    Agreement – a withdrawal that should have been prohibited absent a default by

5    Raybern.        Finally, as a proximate result of Young's failure to draft a

6    Manufacturing Contract that ensured Rose & Shore's continued performance,

7    Raybern has incurred substantial costs to reopen its Hayward processing plant to

8    accommodate the business heretofore handled by Rose & Shore under the

9    Manufacturing Contract. Finally, as a proximate result of Young's breach of his

10   obligation to fully disclose his relationship with TRI and Fults, Raybern has

11   incurred fees paid to Young, and hereby seeks disgorgement of those fees.

12

13            **FOURTH CAUSE OF ACTION - NEGLIGENCE**

14                          (All Defendants)

15        18. Cross-complainant realleges paragraphs 1 through 9, 11 through 14, and

16   16 through 17, as though fully set forth herein.

17        19. Cross-defendants and each of them owed Raybern a duty of ordinary care

18   to protect the financial interests of Raybern in the series of transactions in which

19   defendants were involved. Raybern reasonably relied on the professional expertise

20   of TRI, Fults, and Young in protecting his interests in the transactions with Rose

21   & Shore and ensuring that Raybern's goal of shifting its manufacturing business

22   to Rose & Shore was accomplished. As outlined above, cross-defendants and

23   each of them, breached their duty of care to Raybern. As a proximate result of

24   Young's failure to draft a Manufacturing Contract that ensured Rose & Shore's

25   continued performance, Raybern has incurred substantial costs to reopen its

26   Hayward processing plant to accommodate the business heretofore handled by Rose

27   & Shore under the Manufacturing Contract. Finally, as a proximate result of

28   Young's breach of his obligation to fully disclose his relationship with TRI and

- 8 -

41461.1

69

1  Fults, Raybern has incurred fees paid to Young, and hereby seeks disgorgement of

2  those fees.

3

4  **FIFTH  CAUSE OF ACTION - PROMISSORY FRAUD**

5  (Fults; TRI)

6  20.  Cross-complainant realleges paragraphs 1 through 5 as though fully set

7  forth herein.

8  21.  TRI, through its purported agent Fults, knowingly misrepresented its

9  background and skill in brokering deals of the sort that Raybern and Rose & Shore

10  were contemplating.  Furthermore, they misrepresented the nature of the services

11  they would be providing; neither TRI nor Fults intended to provide due diligence

12  through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

13  needed those services and had expressly obtained TRI/Fults's agreement to provide

14  such services in exchange for its commission.

15  22.  In entering into an agreement with TRI/Fults, Raybern reasonably relied

16  on TRI and Fults's representations as to the degree of skill and type of services it

17  would be providing in connection with the negotiation of the Raybern/Rose & Shore

18  transaction.

19  23.  As a result of Raybern's reliance on TRI and Fults's representations,

20  Raybern suffered consequential damages in that TRI and Fults did not adequately

21  protect Raybern's interests in the Rose & Shore transactions and Raybern has had

22  to provide its own due diligence and has had to continue to negotiate the terms of

23  its deal with Rose & Shore, at substantial cost to Raybern.

24  24.  TRI/Fults intentional conduct was undertaken with fraud and with the

25  aim of causing Raybern injury and was sufficient to support an award of punitive

26  damages pursuant to Civil Code §3294.

27

28

- 9 -

41461.1

**PRAYER FOR RELIEF**

Wherefore cross-defendant prays for relief as follows:

1. For compensatory damages according to proof;

2. For a disgorgement of all professional fees paid to Robert Young and the Law Offices of Robert L. Young in connection with professional services rendered to Raybern;

3. For punitive damages according to proof;

4. For costs of suit herein; and

5. For such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
Kyra A. Subbotin

**DEMAND FOR JURY TRIAL**

Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all claims asserted herein.

Dated: July 25, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
Kyra A. Subbotin

- 10 -

41461.1

## PROOF OF SERVICE
[C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

I, Kyra A. Subbotin, state:

I am a citizen of the United States.  My business address is 2625 Alcatraz Avenue, No. 152, Berkeley, California 94705.  I am employed in the city of Berkeley, County of Alameda, where this mailing occurs.  I am over the age of eighteen years and not a party to this action.  On the date set forth below, I served **FIRST AMENDED CROSS-COMPLAINT** on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Albert E. Cordova, Esq.                    Frederick Hagen, Esq.
1299 Fourth Street, Suite 202              Berding & Weil
San Rafael, CA 94901                       3240 Stone Valley Road West
Facsimile: 415 453-6260                    Alamo, CA 94507

☒    <u>BY FIRST CLASS MAIL</u> - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

_:    <u>BY FACSIMILE</u> - I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above pursuant to a written agreement between counsel for the parties in this action.

_:    <u>BY HAND DELIVERY</u> - I caused said document to be hand delivered to the person(s) noted above.

_:    <u>BY OVERNIGHT MAIL</u> - I caused said document to be placed with an overnight mailing service for delivery the following business day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date at Berkeley, California.

Dated: July 26, 2005

_____
Kyra A. Subbotin

52533.1

72

1  Clifford R. Horner, Esq., State Bar No. 154353
   Fredrick A. Hagen, Esq., State Bar No. 196220
2  **BERDING & WEIL LLP**
   3240 Stone Valley Road West
3  Alamo, California 94507
   Telephone:    925/838-2090
4  Facsimile:    925/820-5592

5  Attorneys for Cross-Defendant and Cross-Complainant
   ROBERT YOUNG

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF ALAMEDA

10

11  TRI COMMERCIAL REAL ESTATE SERVICES, INC.,      No. RG 04141329

12          Plaintiff,                              **CROSS-COMPLAINT OF ROBERT**
                                                    **YOUNG FOR EQUITABLE**
13      vs.                                         **INDEMNITY, APPORTIONMENT**
                                                    **OF FAULT, EXPRESS INDEMNITY**
14  RAYBERN FOODS, INC., BERNARD J. BIGGIANO,       **AND DECLARATORY RELIEF**
    and DOES 1-20
15
            Defendants.
16
    RAYBERN FOODS, INC.,
17
            Cross-Complainant,
18
        vs.
19
    TRI COMMERCIAL REAL ESTATE SERVICES, INC.,
20  JOHN FULTS, ROBERT L. YOUNG, individually and
    dba LAW OFFICES OF ROBERT YOUNG,
21
            Cross-Defendants.
22
    ROBERT YOUNG,
23
            Cross-Complainant,
24
        vs.
25
    TRI COMMERCIAL REAL ESTATE SERVICES, INC.;
26  JOHN FULTS, an individual, and ROES 1-50, inclusive,

27          Cross-Defendants.

28

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-1-

EXHIBIT 4

73

FILED
ALAMEDA COUNTY

AUG 24 2005

CLERK OF THE SUPERIOR COURT
By _____
                    DEPUTY

1    Comes now Cross-Complainant Robert Young ("Young" or "Cross-Complainant") in the

2    above-entitled matter and alleges as follows:

3    ### FIRST CAUSE OF ACTION
     #### (Equitable Indemnity)

4    #### Against All Cross-Defendants

5    1.    Cross-Defendant TRI COMMERCIAL REAL ESTATE SERVICES, INC.

6    ("TRI") is, and at all times herein mentioned was, a corporation organized and existing under the

7    laws of the State of California, doing business in the State of California, County of Alameda.

8    2.    Cross-Defendant John Fults ("Fults") is an individual residing or doing business in

9    the County of Alameda, State of California.

10    3.    Roe Cross-Defendants 1-50 are alleged herein to be in some manner the servants,

11    employees, co-venturers, partners, agents or principals, of some or all of each other Cross-

12    Defendants and, for each other were acting within the course and scope of their venture,

13    partnership, agency or employment at all times relevant hereto.

14    4.    The true names and capacities of the Cross-Defendants sued as Roes 1-50 herein

15    are unknown to Cross-Complainant at this time.  Cross-Complainant will seek leave of court to

16    amend this cross-complaint to assert the true names and/or capacities of the Roe Cross-

17    Defendants, if and when that information becomes available.

18    5.    In the principal action, Cross-Complainant Raybern Foods, Inc. ("Raybern")

19    alleges, among other things, conduct entitling it to compensatory damages against TRI, John

20    Fults, and Young.  Those allegations are specifically and unequivocally denied by Young, but are

21    set forth and incorporated herein in their entirety for reference purposes only.  Young contends

22    that it is not liable to anyone in any manner for the events and/or occurrences described in

23    Raybern's Cross-Complaint.

24    6.    If Young is found to be liable to Cross-Complainant Raybern in some manner, or

25    to anyone else, as a result of the incidents and occurrences described in the Raybern Cross-

26    Complaint, the liability of Young would be based solely upon some derivative form of liability,

27    not resulting from his own conduct, but only based upon an obligation imposed upon him by law.

28    Therefore, Young would be entitled to complete equitable indemnity from Cross-Defendants

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-2-

74

1    herein, and each of them.

2        WHEREFORE, Cross-Complainant prays for damages as set forth below.

3                     **SECOND CAUSE OF ACTION**
                         **(Apportionment of Fault)**
4                    **Against All Cross-Defendants**

5        7.     Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

6    through 6, as if fully set forth herein.

7        8.     On information and belief, if any liability is found pursuant to Raybern's Cross-

8    Complaint, each Cross-Defendant named herein was responsible, in whole or in part, for the

9    injuries and damages, if any, sustained by Raybern.  If Young is adjudged liable to Raybern, each

10    Cross-Defendant herein should be required to pay that share of any such judgment which is

11    proportionate to the comparative negligence of that Cross-Defendant, and to reimburse Cross-

12    Complainant for any payments it might make to Raybern in excess of its proportionate share of

13    all Cross-Defendants' negligence.

14        WHEREFORE, Cross-Complainant prays for damages as set forth below.

15                     **THIRD CAUSE OF ACTION**
                         **(Express Indemnity)**
16                       **Against TRI Only**

17        9.     Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

18    through 8, as if fully set forth herein.

19        10.    The allegations against Young in Raybern's Cross-Complaint are based on

20    Young's alleged activities as an officer and director of TRI.  For example, Paragraph 3 of

21    Raybern's First Amended Cross-Complaint states:

22            "Cross-Complainant is informed and believes and thereon alleges
            that Robert L. Young (Young) was an officer and director of TRI
23            and, as such, had a degree of control over or influence on TRI's
            actions herein.   With respect to certain actions alleged herein,
24            Young acted as TRI's agent and within the course and scope of his
            position as an officer and/or director of TRI.  Raybern contends
25            that in failing to disclose his role as an officer and director of TRI,
            Young placed his interests as an officer and/or director of TRI
26            above his professional obligations to Raybern."  (Emphasis in bold
            added.)

27

28

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-3-

1      11.    As shown, Raybern's Cross-Complaint is brought against Young in his capacity as

2   and based upon his actions and interests as an officer and/or director of TRI.

3      12.    TRI is obligated to defend and indemnify Young under Section 29 of the

4   Amended and Restated Bylaws of TRI (the "TRI Bylaws"), dated January 29, 1996, and under

5   Section 317 of the California Corporations Code.    Section 29 of the TRI Bylaws states, in

6   pertinent part:

7        (a)    Indemnification.  To the fullest extent permissible under
         California law, and, to the extent authorized by the Articles of
8        Incorporation, in excess of that which is expressly permitted by
         Section 317 of the California Corporations Code, the corporation
9        shall indemnify its directors and officers against all expenses,
         judgments, fines, settlements and other amounts actually and
10       reasonably incurred by them in connection with any proceeding,
         including an action by or in the right of the corporation, by reason
11       of the fact that such director or officer is or was serving as a
         director, officer, trustee, employee or agent of the corporation, or is
12       or was serving at the request of the corporation as a director,
         officer, trustee, employee or agent of another corporation, or of a
13       partnership, joint venture, trust or other enterprise (including
         service with respect to employee benefit plans).   To the fullest
14       extent permissible under California law, expenses incurred by a
         director or officer seeking indemnification under this Bylaw in
15       defending any proceeding shall be advanced by the corporation as
         they are incurred upon receipt by corporation of an undertaking by
16       or on behalf of the director or officer to repay such amount if it
         shall ultimately be determined that the director or officer is not
17       entitled to be indemnified by the corporation for those expenses.
         The rights granted by this Bylaw are contractual in nature and, as
18       such, may not be altered (other than prospectively in connection
         with acts and liabilities not occurring or arising prior to the date of
19       alteration) with respect to any present or former director or officer
         without the written consent of that person.

20
         (b)    Procedure.  Upon written request to the Board of Directors
21       by a person seeking indemnification under this Bylaw, the Board
         shall promptly determine in accordance with Section 317(e) of the
22       California Corporations Code whether the applicable standard of
         conduct has been met and, if so the Board shall authorize
23       indemnification.   If the Board cannot authorize indemnification
         because the number of directors who are parties to the proceeding
24       with respect to which indemnification is sought prevents the
         formation of a quorum of directors who are not parties to the
25       proceeding, then, upon written request by the person seeking
         indemnification, independent legal counsel (by means of a written
26       opinion obtained at the corporation's expense) or the corporation's
         shareholders shall determine whether the applicable standard of
27       conduct has been met and, if so, shall authorize indemnification.

28       (c)    Definitions.  The term "proceeding" means any threatened,
         pending   or   completed   action   or   proceeding,   whether   civil,   criminal,

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-4-

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

76

1    administrative or investigative. The term "expenses" includes,
     without limitation, attorneys' fees and any expenses of establishing
2    a right to indemnification.

3        13.    The allegations against Young in the Cross-Complaint are specifically based on

4    the fact that Mr. Young was an officer and director of TRI. Thus, under California Corporations

5    Code Section 317(d), TRI must pay Mr. Young's expenses actually and reasonably incurred in

6    successful defense of the Raybern cross-complaint, including without limitation attorneys' fees,

7    court costs, and expert witness fees.  Young's mandatory right to indemnity under Section 317

8    also extends to the successful defense of any claims which may be brought against him by TRI

9    based on his actions while an officer or director.

10       14.    Under Section 29 of the TRI Bylaws, Mr. Young is entitled to "indemnification to

11   the fullest extent permissible under California law...against all expenses, judgments, fines,

12   settlements and other amounts actually and reasonably incurred...by reason of the fact

13   that...[he]...was serving as a director, officer, . . ., employee or agent" of TRI.  TRI is also

14   required to advance Young the expenses incurred by Young in defending against the Raybern

15   Cross-Complaint.

16       15.    Young tendered the defense of Young and demanded TRI indemnify him for any

17   and all liability, claims, obligations, causes of action, judgments and all other costs and expenses,

18   including attorney's fees and costs incurred by Young in connection with the Raybern Cross-

19   Complaint at any time.  Young also demanded that TRI agree to advance to Young the expenses

20   he has incurred in defending against the Raybern Cross-Complaint.  TRI refused to comply with

21   its legal and contractual obligations to defend and indemnify Young.  Young therefore herein

22   seeks reimbursement for all attorney fees, costs, and expenses related to the action and tendering

23   indemnity to TRI, including pre- and post-judgment interest.

24       16.    Young has performed all the conditions and obligations to be performed on its

25   behalf under his agreements with TRI.  Pursuant to the above, TRI is obligated to defend and

26   indemnify Cross-Complainant Young herein.

27       17.    Cross-Complainant Young has demanded, and continues to demand that Cross-

28   Defendant TRI defend and indemnify Cross-Complainant Young with respect to the claims of

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

77

1  Raybern in this matter. To date, TRI has failed, refused and/or neglected, and still fails, refuses

2  and/or neglects to do so.

3        18.    Cross-Complainant Young has incurred, and continues to incur, necessary and

4  reasonable attorneys' fees and other legal costs in defending this action brought by Raybern. By

5  the terms of the agreements, if it is determined that TRI breached the agreements by failing to

6  defend and indemnify Cross-Complainant, then Cross-Complainant will be entitled to recover its

7  reasonable attorneys fees and court costs in connection with the defense of the action and the

8  prosecution of this cross-complaint.

9        19.    By reason of the foregoing, Cross-Complainant Young is entitled to be

10  indemnified by Cross-Defendant TRI for all losses and damages Cross-Complainant may incur

11  by way of defense of the underlying action, and by way of payments, if any, to Raybern in

12  connection with the settlement of this case or satisfaction of any judgment Raybern might obtain.

13        WHEREFORE, Cross-Complainant prays for damages as set forth below.

14                        **FOURTH CAUSE OF ACTION**
                              **(Declaratory Relief)**
15

16        20.    Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

17  through 19, as if fully set forth herein.

18        21.    An actual controversy has arisen between the parties concerning their respective

19  rights and obligations. Based upon the allegations of Raybern's Cross-Complaint, Cross-

20  Complainant Young alleges that Cross-Defendants herein are responsible to compensate Raybern

21  for its injuries and damages, if any such occurred, and that Cross-Defendants are liable and must

22  indemnify cross-complainant for all damages and any judgment rendered against Cross-

23  Complainant in this Action, and defend Young herein, and Cross-Defendants dispute same. The

24  parties have no plain, speedy and adequate remedy at law, and therefore seek a declration of the

25  rights and obligations of the parties herein.

26  ///

27  ///

28  ///

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-6-

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

78

1    WHEREFORE, Young prays judgment on this cross-complaint as follows:

2    **FIRST, SECOND AND FOURTH CAUSES OF ACTION:**

3    1.    That Cross-Complainant be indemnified, in whole or in part, by Cross-

4    Defendants, and each of them, with respect to any and all payments made or judgments rendered

5    against it;

6    2.    For a judgment for all or part of any sums for which Cross-Complainant may be

7    adjudged to be liable to Raybern from Cross-Defendants, and each of them;

8    3.    For a declaration of rights and obligations as to all parties herein with respect to

9    their proportionate share of fault, in any, in causing or contributing to the injuries and damages, if

10    any, sustained by Rabyern;

11    4.    For a declaration that Cross-Defendants, and each of them, must indemnify Cross-

12    Complainant;

13    5.    For costs of suit incurred herein; and

14    6.    For such other and further relief as the court may deem just and proper.

15    **THIRD CAUSE OF ACTION:**

16    7.    For judgment against TRI declaring that it is under a contractual duty to reimburse

17    Cross-Complainant for such amounts as it may be held liable for to any party, together with costs

18    and expenses incurred in defense of the Cross-Complaint commenced by the Raybern, including

19    attorneys fees and indemnification with respect to any and all payments made or judgments

20    rendered against it;

21    8.    For attorney's fees incurred in connection with the prosecution for this cross-

22    complaint;

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-7-

1    9.    For costs of suit incurred herein; and

2    10.    For such other and further relief as the court may deem just and proper.

3

Date: August 23, 2005                    BERDING & WEIL LLP

4

5                                         By: _____

6                                         Clifford R. Horner
                                          Attorneys for Cross-Complainant
7                                         ROBERT YOUNG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**Case Name:**   TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**   RG04141329

   I am employed in the County of Contra Costa, State of California. My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

   On August 23, 2005, I caused to be served the within:

**CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS INDEMNITY AND DECLARATORY RELIEF**

on the party(ies) listed below, addressed as follows:

**(SEE ATTACHED SERVICE LIST)**

☐   **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].**   By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list. The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☒   **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].**   By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service. Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐   **By Overnight Delivery [C.C.P. § 1013, 1013a].**   By causing a true copy thereof to be enclosed in a sealed envelope or package designated by the express service carrier, with all delivery fees paid or provided for, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of overnight deliveries for deposit in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. Under the firm's practice, overnight deliveries are deposited   in the ordinary course of business with the express service carrier at Alamo, California, that same day.

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

PROOF OF SERVICE

1

81

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

☐   **By Personal Service [C.C.P. § 1011].**  By causing a true copy thereof to be placed in a sealed envelope or package addressed to the party[ies] as stated on the attached mailing list.

Executed August 23, 2005, at Alamo, California.

By:       *Ane Rosario*
                  Ane Rosario

## SERVICE LIST

**Case Name:**   TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**     RG04141329

Mr. Albert E. Cordova
Law Offices of Albert E. Cordova
Diversified Financial Center
1299 Fourth Street, Suite 202
San Rafael, CA 94901
**Facsimile:  415/453-6260**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

83

**PROOF OF SERVICE**

**Case Name:**   TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**      RG04141329

I am employed in the County of Contra Costa, State of California.  My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

On August 23, 2005, I caused to be served the within:

**CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS INDEMNITY AND DECLARATORY RELIEF**

on the party(ies) listed below, addressed as follows:

**(SEE ATTACHED SERVICE LIST)**

☐  **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].**  By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list.  The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☐  **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service.  Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid.  I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☒  **By Overnight Delivery [C.C.P. § 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package designated by the express service carrier, with all delivery fees paid or provided for, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of overnight deliveries for deposit in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents.  Under the firm's practice, overnight deliveries are deposited  in the ordinary course of business with the express service carrier at Alamo, California, that same day.

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

PROOF OF SERVICE

1

84

☐   **By Personal Service [C.C.P. § 1011].** By causing a true copy thereof to be placed in a sealed envelope or package addressed to the party[ies] as stated on the attached mailing list.

Executed August 23, 2005, at Alamo, California.

By: _Ane Rosario_____

Ane Rosario

1

## SERVICE LIST

2    **Case Name:**    TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
     **Case No:**      RG04141329

3

4    Kyra A. Subbotin
     Law Offices of Kyra Subbotin
5    2625 Alcatraz Avenue, No. 152
     Berkeley, CA  94705
6    Telephone:  510/923-0451
     **Facsimile:  510/923-0565**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*4111607*

1  ALBERT E. CORDOVA (State Bar No. 74283)
2  A Professional Law Corporation
   1299 Fourth St., Suite 202
3  San Rafael, California 94901
   Telephone: (415) 457-9656
4  Telefacsimile: (415) 453-6260

**FILED**
ALAMEDA COUNTY

SEP 1 9 2005

CLERK OF THE SUPERIOR COURT
BY _E.A. Almeda_
Deputy

5  Attorneys for Plaintiff TRI COMMERCIAL REAL ESTATE
6  SERVICES, INC., a California corporation and JOHN FULTS

7              THE SUPERIOR COURT OF CALIFORNIA

8                    COUNTY OF ALAMEDA

9

10  TRI COMMERCIAL REAL ESTATE          ) No. RGO4141329
    SERVICES, INC., et al.,              )
11                                       ) **CROSS-COMPLAINT ON**
                  Plaintiff(s),          ) **BEHALF OF TRI**
12                                       ) **COMMERCIAL REAL ESTATE**
                                         ) **SERVICES, INC. AND JOHN**
13        vs.                            ) **FULTS AND AGAINST ROBERT**
                                         ) **YOUNG FOR BREACH OF**
14  RAYBERN FOODS, INC., BERNARD J.      ) **FIDUCIARY DUTY, LEGAL**
    VIGGIANO and DOES 1-20,              ) **MALPRACTICE, INDEMNITY,**
15                                       ) **CONTRIBUTION AND**
                  Defendant(s).          ) **DECLARATORY RELIEF**
16  _____ )
17                                       )
    RAYBERN FOODS, INC.,                 )
18                                       )
                  Cross-Complainants,    )
19                                       )
          vs.                            )
20                                       )
                                         )
21  TRI COMMERCIAL REAL ESTATE           )
    SERVICES, INC., JOHN FULTS, ROBERT   )
22  L. YOUNG, individually and dba LAW   )
    OFFICES OF ROBERT YOUNG,.            )
23                                       )
                                         )
24                Cross-Defendants.      )
25  _____ )
26
27                         1
28
    _____
    **CROSS-COMPLAINT BY TRI COMMERCIAL and**
    **JOHN FULTS**

EXHIBIT 5

| | |
|---|---|
| 1   ROBERT YOUNG, |    NO. RGO4141329 |
| 2             Cross-complainant, | |
| 3       vs. | |
| 4   TRI COMMERCIAL REAL ESTATE | |
| 5   SERVICES, INC., JOHN FULTS, an | |
|    individual, and ROES 1-50, inclusive, | |
| 6 | |
| 7         Cross-defendants. | |
| 8 | |
| 9   TRI COMMERCIAL REAL ESTATE | |
| 10   SERVICES, INC. and JOHN FULTS, | |
| 11         Cross-complainants, | |
| 12       vs. | |
| 13 | |
| 14   ROBERT YOUNG and ZOES 1-20, | |
| 15         Cross-defendants. | |
| 16 | |

Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. and

JOHN FULTS allege the following causes of action against ROBERT YOUNG.

**FIRST CAUSE OF ACTION**

**(Breach of Fiduciary Duty-Constructive Fraud)**
**(On behalf of TRI Only)**

     1.  Cross-complainants are ignorant of the true names and capacities of Cross-

defendants sued herein as ZOES I-20, inclusive, and therefore sue these Cross-

2

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS



1   defendants by such fictitious names. Cross-complainants will amend this Cross-

2   complaint to allege their true names and capacities when ascertained. Cross-

3   complainants are informed and believe and thereon allege that, if these Cross-

4   complainants are liable to Cross-complainant RAYBERN FOODS, INC. as alleged in

5   the Cross-complaint in this action, each of the fictitiously named Cross-defendants is

6   jointly or jointly and severally liable with Cross-complainants to Cross-complainant

7   RAYBERN FOODS INC. for its damages as set forth therein. Each reference in this

8   Cross- complaint to "Cross-defendant," "Cross-defendants," or a specifically named

9   Cross-defendant refers also to all Cross-defendants sued under fictitious names.

10      2.   Cross-complainants are informed and believe and on that basis allege that

11  each cross-defendant individually or fictitiously named herein, acted in his, her, or its

12  own right and also was or is the agent, employee, or servant of each of the other

13  cross-defendants as to each of the matters set forth herein, and each such cross-

14  defendant, whether individually or fictitiously named, was at all times acting within

15  the scope and purpose of such agency, employment or service, or alternatively, if the

16  acts of each such cross-defendant were not authorized at the time, such acts were

17  subsequently ratified by the appropriate principal.

18      3.   TRI COMMERCIAL REAL ESTATE SERVICES, INC. (hereinafter

19  "TRI") is and at all times mentioned herein was, a real estate broker duly licensed by

3

the State of California engaged in the brokerage of both real estate transactions and business opportunities.

4. Cross-defendant ROBERT YOUNG is and at all times mentioned herein was, an attorney at law duly licensed by the State of California.

5. At all times relevant to the facts herein pleaded, Cross-defendant ROBERT YOUNG served as a corporate officer and was a shareholder of Cross-complainant TRI. On October 18, 2001, Cross-defendant ROBERT YOUNG became a director of TRI. In addition to the foregoing, at all times relevant to the facts herein pleaded, Cross-defendant served as legal counsel for TRI.

6. By virtue of the aforementioned relationship between Cross-defendant ROBERT YOUNG and TRI, Cross-defendant enjoyed a position of great trust and confidence with TRI and thereby owed to TRI a fiduciary duty of utmost care, integrity, honesty and undivided loyalty in his dealings with TRI.

7. Separate and apart from his relationship to TRI, Cross-defendant ROBERT YOUNG also maintained a private law practice whereby he undertook to represent clients for his own account as an independent attorney at law.

8. On or about May 7, 2001, RAYBERN FOODS, INC. retained TRI, through its agent JOHN FULTS, to represent it as a business broker in connection with certain business and contractual negotiations it was engaged in with ROSE AND SHORE, INC.

4

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

9.  On or about May 10, 2001, acting within the course and scope of his duties as an independent attorney at law and working for his own account, Cross-defendant ROBERT YOUNG accepted employment by RAYBERN FOODS, INC. to represent it as its legal counsel in the negotiations between RAYBERN FOODS, INC. and ROSE AND SHORE, INC.

10. At the time Cross-defendant ROBERT YOUNG accepted employment as attorney for RAYBERN FOODS, INC., he was fully aware that TRI was acting as a business broker for RAYBERN FOODS, INC. in the aforementioned negotiations.

11. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not seek nor was he granted permission to act in said capacity by TRI.  At no time did YOUNG disclose to TRI that his representation of RAYBERN might result in a conflict of interest; nor did YOUNG ever obtain a waiver from TRI of any such potential conflict.

12. Cross-defendant ROBERT YOUNG did not seek nor was he granted authority to act on behalf of TRI in connection with the services he undertook to provide for RAYBERN FOODS, INC. as its counsel.

13. The activities of Cross-defendant ROBERT YOUNG as counsel for RAYBERN FOODS, INC. were not within the course or scope of his duties as officer, director, or legal counsel for TRI.

5

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

14.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG was acting for own account and for his sole benefit and not for any benefit to TRI.

15. Defendant RAYBERN FOODS, INC. has filed a Cross-complaint against ROBERT YOUNG, TRI COMMERCIAL REAL ESTATE SERVICES, INC. and JOHN FULTS, alleging, inter alia, that Cross-defendant ROBERT YOUNG breached his fiduciary duty to RAYBERN FOODS, INC. by undertaking to act as its legal counsel without fully disclosing his relationship with TRI.

16.  If it is established that there was a breach of duty on the part of Cross-defendant ROBERT YOUNG to make a full disclosure to RAYBERN FOODS, INC. of his relationship with TRI or to obtain a fully informed waiver of potential conflict of interest and consent from RAYBERN FOODS, INC., said breach arose out of and was occasioned by the fact that Cross-defendant ROBERT YOUNG undertook to represent RAYBERN FOODS, INC. as its legal counsel without fulfilling obligations that arose directly out of that attorney/client relationship.

17.  If there was a failure by Cross-defendant ROBERT YOUNG to make necessary disclosures or to obtain a fully informed waiver and consent from RAYBERN FOODS, INC., that failure was attributable solely to the acts undertaken by or omissions made by Cross-defendant ROBERT YOUNG in his capacity as an attorney at law acting as such for his own account.

6

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

18.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not disclose to TRI the extent of his disclosures to RAYBERN FOODS, INC. such that TRI had no notice of any error or omission in connection therewith and no opportunity to address any such error or omission.

19.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG is solely responsible for the events which have resulted in the present claim against TRI.

20.  The aforementioned conduct by ROBERT YOUNG, if true, was adverse to TRI and proximately caused TRI to incur attorneys fees and costs in the defense of the Cross-complaint by RAYBERN FOODS, INC.

21.  If damages were sustained by RAYBERN FOODS, INC. as alleged in the Cross-complaint, these damages were caused, entirely or in part, by Cross-defendant ROBERT YOUNG, in that he was actively and primarily at fault, and not by any wrongdoing or by any actual fault on the part of Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. or JOHN FULTS.

22.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG placed his self-interest ahead of the interests of TRI.

7

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

23. The aforementioned conduct by Cross-defendant ROBERT YOUNG, if true, was in breach of his fiduciary duties to TRI and constitutes constructive fraud by said Cross-defendant.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Legal Malpractice)
### (On behalf of TRI Only)

24. Cross-complainant TRI realleges and incorporates by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

25. Cross-complainant RAYBERN FOODS, INC. has alleged in its Cross-complaint, inter alia, that TRI was under a duty to make certain disclosures and/or to obtain a waiver of conflict of interest and consent from RAYBERN FOODS, INC., all as more fully set forth therein. TRI has denied said allegations in the Answer to Cross-complaint filed on its behalf. However, if it should be established that such a duty did exist, then Cross-defendant ROBERT YOUNG, as legal counsel for TRI, was under a duty to properly advise TRI in connection with any potential conflict of interest and any duties or obligations arising therefrom.

26. Cross-defendant ROBERT YOUNG's failure to advise TRI of any duty or obligation arising from the retention of ROBERT YOUNG by RAYBERN FOODS,

8

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

1    INC., if any such duty or obligation is established, constituted an error and omission

2    committed within the course and scope of his duty to TRI as an attorney at law acting

3

4    as legal counsel to TRI.

5        27.  Cross-complainant has been damaged by virtue of having to defend

6    against the instant Cross-complaint and will suffer additional damage in the event it is

7

8    determined that there was a breach of duty by TRI arising out of the retention of

9    Cross-defendant ROBERT YOUNG by RAYBERN FOODS, INC.  Cross-

10   complainant will amend this Cross-complaint to allege said damages with certainty

11   upon proof at trial.

12       WHEREFORE, Cross-complainants pray judgment against Cross-defendant

13

14   ROBERT YOUNG as hereinafter set forth.

15                        **THIRD CAUSE OF ACTION**
                              **(Indemnity)**
16                   **(On behalf of TRI and JOHN FULTS)**

17

18       28.  Cross-complainants reallege and incorporate by reference each and every

19   allegation contained in the First Cause of Action as though fully set forth herein.

20       29.  Cross-complainants are entitled to indemnification from cross-defendant

21

22   ROBERT YOUNG for all legal costs and fees, including attorneys' fees, incurred in

23   the defense of the Cross-complaint by RABYERN FOODS, INC. against TRI.

24

25

26

27                                    9

28

---
CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

9S

30. Cross-complainant has made written demand for indemnification by Cross-defendant ROBERT YOUNG. Notwithstanding said demand, Cross-defendant ROBERT YOUNG has failed and refused to indemnify TRI.

WHEREFORE, these cross-complainants pray for judgment against Cross-defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (Contribution)
### (On behalf of TRI and JOHN FULTS)

31. Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

32. If Cross-complainants are found liable under the allegations contained in the Cross-complaint of RAYBERN FOODS, INC., which liability Cross-complainants specifically deny, Cross-complainants and Cross-defendant ROBERT YOUNG, and each of them, will be joint tortfeasors and there will exist a right of comparative equitable indemnity between and amongst them as joint tortfeasors, based on the principles enunciated in <u>American Motorcycle Association v. Superior Court</u> (1978) 20 Cal.d 570.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

10

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

# FIFTH CAUSE OF ACTION
## (Declaratory Relief)
### (On behalf of TRI and JOHN FULTS)

33. Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

34. An actual controversy has arisen and now exists between Cross-complainants TRI and JOHN FULTS and Cross-defendant ROBERT YOUNG in that said Cross-complainants contend, and Cross-defendant denies:

    a.    that as between said Cross-complainants and Cross-defendant, responsibility, if any, for damages claimed by RAYBERN FOODS, INC., if any, rests entirely or partially on Cross-defendant ROBERT YOUNG.

    b.    that, as a result, Cross-defendant ROBERT YOUNG is obligated to partially or fully indemnify Cross-complainants for any sums that Cross-complainants may be compelled to pay as the result of this action, together with Cross-complainants' costs, expenses and attorney's fees.

35. Cross-complainants desire a judicial determination of the respective rights and duties of Cross-complainants and Cross-defendant with respect to the damages claimed by RAYBERN FOODS, INC. In particular, Cross-complainants desire a declaration of the comparative liability of Cross-complainants and Cross-defendant

11

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

for these damages, if any, and a declaration of Cross-defendant's responsibility for comparative indemnity to Cross-complainants for any sums that Cross-complainants may be compelled to pay and for which Cross-defendant ROBERT YOUNG is determined responsible, entirely or in part.

36.  Such a declaration is necessary and appropriate at this time in order that Cross-complainants may ascertain their rights and duties with respect to RAYBERN FOODS, INC.'s claim for damages.  Furthermore, the claim of RAYBERN FOODS, INC. and the claim of Cross-complainants arise out of the same transaction, and determination of both in one proceeding is necessary and appropriate in order to avoid the multiplicity of actions that would result if Cross-complainants were required now to defend against the claim of RAYBERN FOODS, INC. and then bring a separate action against Cross-defendant ROBERT YOUNG for indemnification of sums that Cross-complainants may be compelled to pay as the result of any damages, judgment, or other awards recovered by RAYBERN FOODS, INC. against these Cross-complainants.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as follows:

**AS TO THE FIRST THROUGH FOURTH CAUSES OF ACTION**

1.  For damages according to proof;

2.  For costs of suit herein incurred;

12

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

3. For reasonable attorneys fees incurred in the defense of the Cross-complaint by RAYBERN FOODS, INC. against TRI; and

4. For such other and further relief as the court may deem proper.

### AS TO THE FIFTH CAUSE OF ACTION

1. For a judicial determination of the comparative fault of Cross-complainants and Cross-defendant ROBERT YOUNG for the damages claimed by RAYBERN FOODS, INC. if any are found to exist;

2. For a declaration of the amount that Cross-defendant ROBERT YOUNG is obligated to indemnify Cross-complainants if Cross-complainants are compelled to pay any sum as the result of any damages, judgment, or other awards recovered by RAYBERN FOODS, INC. against these Cross-complainants;

3. For costs of suit herein incurred;

4. For reasonable attorneys fees; and

5. For such other and further relief as the court may deem proper.

Dated: September 13, 2005

ALBERT E. CORDOVA
A Professional Law Corporation

By _____
ALBERT E. CORDOVA
Attorney for Cross-complainant
TRI COMMERCIAL REAL ESTATE
SERVICES, INC. and JOHN FULTS

13

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

1

## PROOF OF SERVICE

2

   I am a citizen of the United States and employed in Marin County, State of

3

California; I am over the age of eighteen (18) years of age and not a party to the

4

within above-entitled action; my business address is: 1299 Fourth St., Suite 202, San

5

Rafael, CA 94901. On September 13, 2005, I caused to be served the documents

6

identified herein as follows:

7

**Documents Served:CROSS-COMPLAINT ON BEHALF OF TRI**

8

**COMMERCIAL REAL ESTATE SERVICES, INC. AND JOHN FULTS AND**
**AGAINST ROBERT YOUNG FOR BREACH OF FIDUCIARY DUTY, LEGAL**

9

**MALPRACTICE, INDEMNITY, CONTRIBUTION AND DECLARATORY**
**RELIEF**

10

11

Kyra A. Subbotin                                    Clifford Horner
Law Offices of Kyra A. Subbotin          Berding & Weill LLP

12

2625 Alcatraz Avenue, No. 152              3240 Stone Valley Road West

13

Berkeley, CA 94705                              Alamo, CA 94507-1558
Telephone: (510) 923-0451                   Telephone: (925) 838-2090

14

Facsimile: (510) 923-0565                     Facsimile: (925) 820-5592

15

16

<u>XXX</u>  (BY MAIL) I placed such envelope with postage thereon fully prepaid in the
United States mail at San Rafael, California.

17

18

____  (BY PERSONAL SERVICE) I caused said documents to be delivered to the
above address.

19

20

____  (VIA TELEFACSIMILE) I caused said document to be transmitted to the
above addressee via telefacsimile.

21

22

<u>XXX</u>  (STATE) I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.

23

24

____  (FEDERAL) I declare that I am employed at the office of a member of the bar
of this court at whose direction the service was made.

25

   Executed at San Rafael, California on September 13, 2005

26

27

_____
ANN MEGAN

28



**LAW OFFICES OF ROBERT L. YOUNG**
**A Professional Corporation**
**1777 Oakland Blvd., Suite 300**
**Walnut Creek, California 94596**

THIS WRITTEN FEE CONTRACT ("Contract") is entered into as of May 10, 2001, by and between RAYBERN FOODS, INC., a California Corporation, hereinafter referred to as "Client" and THE LAW OFFICES OF ROBERT L. YOUNG, a Professional Corporation, hereinafter referred to as "Attorneys." Client and Attorneys hereby agree to the following terms and conditions:

1.     Scope of Agreement

Client hires Attorneys to provide legal services to Client in connection with a licensing transaction involving Rite-Way Meat Packers, Inc., Rose & Shore, Inc., RBR Meat Company, Inc. and eventually a separate agreement between Client and Togo's ("the Matter"). The representation of Client by Attorneys is anticipated to continue through the execution of a Definitive Agreement (the "Closing") and through execution of an agreement between Client and Togo's.

2.     Duties of Attorneys and Client

Attorneys shall provide those non-litigation legal services reasonably required to represent Client in the Matter. Attorneys shall also take reasonable steps to keep Client informed of significant developments and to respond to Client's inquiries.

Client shall be truthful with Attorneys, cooperate with Attorneys, keep them informed of developments regarding the Matter and associated developments, perform the obligations Client has agreed to perform under this agreement, pay Attorneys' bills in a timely manner, and keep Attorneys apprised of Client's address, telephone number and whereabouts.

3.     Fees/Retainer

Attorneys will charge by the hour at specified rates for time that legal personnel spend on Client's case. Attorneys' specified hourly rates for legal personnel are set forth on Schedule 1 attached hereto. Client agrees to pay for Attorneys' legal services at the specified rates.

Prior to the commencement of any services to be rendered by Attorneys in the above Matter, Client shall pay Attorneys the sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000) as a deposit against Client's payment of Attorneys' fees and costs incurred on behalf of Client ("Retainer"). At any time the balance of the Retainer falls below ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500), Attorneys shall have the right, as a pre-condition to the rendering of further services, to require Client to advance as an additional retainer such sums as Attorneys believe to be appropriate, but not more than the amount of the original Retainer. This right shall be an on-going right of Attorneys throughout Attorneys' representation of Client.

RY0117

-1-

137



DEFENDANT'S EXHIBIT

EXHIBIT A

10 1

EXHIBIT 9

000392 YOUNG

4.    **Billing Practices**

Attorneys bill in minimum units of .25 hours (15 minutes) for any task.

Attorneys will charge for all telephone calls relating to the Matter, including, but not limited to, calls with Client, counsel, consultants, experts and others. The legal personnel assigned to Client's case will confer among themselves about the case as required whether part of Attorneys' staff or counsel from another law firm. When they do confer, each such person will charge for the time expended. Likewise, if more than one Attorney's legal personnel attend a meeting, each will charge for his or her time. Attorneys will charge for any waiting time and travel time, both locally and out of town.

5.    **Costs and Other Charges**

(a)    In General.    Attorneys may incur various costs and expenses in performing legal services under this contract. Client agrees to pay for those costs and expenses in addition to the hourly charges for services rendered by legal personnel, and to provide payment for such costs in advance, as may be requested by Attorneys from time to time. Costs and expenses commonly incurred by Attorneys include filing fees and other charges assessed by public agencies, long distance telephone calls, electronic mail, messenger and other delivery fees, postage, photocopying and other reproduction charges, parking and mileage, charges for computer research and other outside assisted legal research, charges for computer time, word processing charges, investigation expenses, consultants' fees, facsimile transmissions, clerical staff overtime occasioned by Client emergencies, and other similar items. Except for the items listed on Schedule 2, all of the foregoing will be charged to Client at Attorneys' cost. Schedule 2 lists those items that will be billed other than at cost and the current rates. The rates on Schedule 2 are subject to change as provided in paragraph 6 of this contract.

(b)    Travel.    If out of town travel is required of Attorneys' legal personnel, Client agrees to pay all costs of such travel, in addition to the hourly rates for travel time.

(c)    Attorneys shall itemize all costs incurred on each periodic statement.

(d)    To aid Attorneys in representing Client in the Matter, it may be necessary to hire one or more experts or consultants. Client authorizes Attorneys to incur all reasonable costs and to hire any such expert or consultant reasonably necessary in Attorneys' judgment, as long as the estimate of such expense does not exceed TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500). Attorneys shall obtain Client's consent before retaining outside experts or consultants where the cost thereof is estimated to exceed TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500).

6.    **Billing Statements**

Attorneys shall send Client a statement for fees and costs incurred on a monthly basis. Client shall pay Attorneys' statements immediately upon presentation. Any statements not paid within said thirty (30) day period shall thereafter bear interest at the rate of ten percent (10%) per annum. Attorneys' statement shall indicate any initial Retainer balance due from Client, any credit balance of the Retainer, the amount charged against the Retainer, and all amounts then due and owing from Client to Attorney.

000202 VOLPIS

RY0118

Attorneys' statements of attorneys' fees shall clearly state the basis thereof, including the amount, rate and basis for calculation (or other method of determination).

Attorneys shall provide Client with a statement within ten (10) days of request. Client is entitled to make subsequent requests for bills at intervals of no less than thirty (30) days following the initial request.

### 7.  Lien

Client hereby grants Attorneys a lien on the Matter for any sums due and owing by Client to Attorneys, specifically including any amount still owed by Client to Attorneys, at the conclusion or termination of Attorneys' services. The lien will attach to all purchase price monies or any other consideration or sums paid to Client or its successor as a result of the Closing or to assets of Client or its successor if the Matter does not close.

### 8.  Disclaimer of Guarantee; Conflict Disclosure

Attorneys have made no promises or guarantees to Client about the outcome of the Matter, and nothing in this contract shall be construed as such a promise or guarantee. Further, Client acknowledges that it has, with the help of JOHN FULTS of TRI COMMERCIAL REAL ESTATE SERVICES, INC. ("TRI"), its agent in the Matter, negotiated the basic economic terms and conditions of the Matter. Client further acknowledges that Attorneys have disclosed to it that Attorneys have represented TRI in the past and likely will again in the future, and that as such, a conflict of interest either does exist presently or may exist in the future; knowing this, Client has elected to waive any such conflict of interest.

### 9.  Discharge and Withdrawal

Client may discharge Attorneys at any time. Attorneys may withdraw only for good cause. Among the facts constituting good cause are Client's breach of this contract, including the failure to pay Attorneys' statements when due, and Client's refusal to cooperate with Attorneys or to follow their advice. Upon such a withdrawal, Attorneys agree to cooperate with any substitute counsel in assisting them to become familiar with the case. Attorneys and Client each agree to sign any documents reasonably necessary to complete Attorneys' discharge or withdrawal.

### 10.  Termination or Conclusion

Upon the termination or conclusion of Attorneys' services, all unpaid charges for services rendered and costs incurred or advanced through the termination or conclusion date shall become immediately due and payable. Attorneys acknowledge their obligation, upon Client's demand, to deliver Client's file to Client at or after the termination or conclusion of Attorney's services.

### 11.  Written Contract Required by Law

This document constitutes the written fee agreement between Attorneys and Client required by California Business and Professions Code Section 6148. Client shall be presumed to have agreed to all of the provisions set forth in this contract unless Client notifies Attorneys in writing of Client's objections within fifteen (15) days of the date of this contract.

000204 YOUNG

RY0119

12.    **Commencement of Services**

Attorneys shall have no obligations whatsoever to provide legal services to Client unless the initial Retainer is paid in good funds in accordance with the terms of this Contract, and this contract is signed by Client and delivered to Attorneys.

13.    **Personal Guarantee**

The financial obligations of Client hereunder are hereby personally guaranteed by BERNARD J. VIGGIANO AND JAMIE VIGGIANO, husband and wife and the principal shareholders of Client ("Guarantors").

LAW OFFICES OF ROBERT L. YOUNG
A Professional Corporation

By:_____
   Robert L. Young

RAYBERN FOODS, INC.

By:_____
   Bernard J. Viggiano

By:_____
   Jamie Viggiano

"Guarantors"

By:_____          Dated:_____
   Bernard J. Viggiano

By:_____          Dated:_____
   Jamie Viggiano

RY0120

## SCHEDULE 1

Specified hourly rates for legal personnel of Law Offices of Robert L. Young, a Professional Corporation, initially assigned to this matter are as follows:

| | |
|---|---|
| Robert L. Young<br>Attorney at Law | $250.00/per hour |
| Other Lawyers Working<br>on Attorneys Staff | $250.00/per hour |
| Legal Assistants and<br>Paralegals | $100/per hour |

RY0121

## Schedule 2

The expense or cost items below will be charged to Client initially at the indicated rates.

Photocopying                    Waived

Mileage                         Waived if not outside Alameda and Contra Costa
                                County.   This does not waive the right to
                                reimbursement of travel costs as is otherwise
                                provided for in the foregoing Agreement.

Facsimile                       Waived

-6-

142

000307 YOLDIC

RY0122

1   Daniel L. Rottinghaus, Esq., State Bar No. 131949
    Paul W. Windust, Esq., State Bar No. 167338
2   **BERDING & WEIL LLP**
    3240 Stone Valley Road West
3   Alamo, California 94507
    Telephone:    925/838-2090
4   Facsimile:    925/820-5592

5   Attorneys for Plaintiff
    Robert L. Young

6

7               UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

9

10  ROBERT L. YOUNG,                    No.  C07-05711 SBA

11          Plaintiff,                  **PLAINTIFF ROBERT L. YOUNG'S
                                        RESPONSES TO ILLINOIS UNION
12      vs.                             INSURANCE COMPANY'S SPECIAL
                                        INTERROGATORIES**
13  ILLINOIS UNION INSURANCE
    COMPANY, ACE WESTCHESTER
14  SPECIALTY GROUP, and DOES 1
    through 50, inclusive,
15
            Defendants.
16
    _____/
17

18

19  PROPOUNDING PARTY:   Defendant ILLINOIS UNION INSURANCE COMPANY

20  RESPONDING PARTIES:   Plaintiff ROBERT L. YOUNG

21  SET NUMBER:          ONE

22           **PREAMBLE AND GENERAL OBJECTIONS**

23      It should be noted that this responding party has not fully completed its investigation of

24  the facts relating to this case, has not completed discovery in this action and has not completed

25  preparation for trial.  All of the responses contained herein are based only upon such information

26  and documents which are presently available to, and specifically known to this responding party,

27  and disclose only those contentions which presently occur to it.

28  ///

EXHIBIT 10

107

1    It is anticipated that further discovery and further independent investigation will supply

2    additional facts, as well as to establish entirely new factual matters, all of which may lead to

3    substantial additions to, changes in, and variations from the contentions herein set forth.

4    The following responses are given without prejudice to responding party's right to

5    produce evidence of any subsequently discovered fact or facts which this responding party may

6    later recall or discover.  Responding party accordingly reserves its right to change any and all of

7    its responses herein as additional facts are ascertained, analysis made, legal research completed,

8    and contentions formulated.  However, for the purpose of making a good-faith effort to comply

9    with the spirit of discovery law, responding party serves herewith the following responses.  Also,

10   objections herein are made on the advice of counsel in order to protect responding party from

11   unwarranted invasion of privacy, records and files.  Responding party further generally objects to

12   the extent said requests seek information protected by the attorney-client privilege, attorney

13   work-product doctrine and rights of privacy and confidentiality and/or have no basis in law or

14   fact.

15   **SPECIAL INTERROGATORY NO. 1:**

16   Identify with particularity each Wrongful Act alleged against Plaintiff in the CLAIM

17   which did not arise out of, or result from or in any way involve Plaintiff's service as legal counsel

18   to Raybern Foods, Inc.

19   **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

20   Responding Party objects to this interrogatory in that it calls for a legal conclusion and

21   expert legal interpretation of the insurance policy.  Responding Party further objects that this

22   interrogatory is vague and ambiguous as to the term "Plaintiff in the CLAIM."  Further objection

23   is made pursuant to *Dusek v. United Airlines Inc.,* 9 FRD 326 (1949) in that the interrogatory

24   requires analysis of facts and goes beyond supplying facts within Responding Party's knowledge

25   or possession.  Further objection is made pursuant to *IBP, Inc. v. Mercantile Bank of Topeka,* 179

26   FRD 316 (1998) in that the interrogatory is overly broad and burdensome.  Subject to and

27   without waiving the above objection, Responding Party responds as follows:

28   / / /

1    Responding Party refers Propounding Party to Raybern Foods, Inc.'s original Cross-

2    Complaint and First Amended Cross-Complaint as well as the Cross-Complaint from TRI and

3    Fults. Propounding Party owed Plaintiff a "right and duty to defend any Claim and such right

4    and duty shall exist even if any of the allegations are groundless, false or fraudulent" pursuant to

5    BMI20016061 ("Policy"), Section L. (2.), pg. GT&C-3. The Wrongful Acts include

6    Employment Practices Coverage Section, (B.)(11.), "e) breach of an actual or implied

7    employment contract," and/or "i) wrongful failure or refusal to adopt or enforce workplace or

8    employment practices, policies or procedures," and/or "m) negligent hiring or negligent

9    supervision of others in connection with a) through l) above..."    (Policy, pg. EPL-2)

10    Additionally, Directors and Officer and Company Coverage Section, (B.)(9.) "... any actual or

11    alleged error, omission, misleading statement, neglect, breach of duty or act by: a) any of the

12    Directors and Officers, while acting in their capacity as: (i) a director, officer or employee of the

13    Company or the functional equivalent to a director or officer of the Company..." (Policy, D&O-

14    2).

15    Discovery is continuing and Responding Party reserves the right to supplement or amend

16    these Responses as necessary.

17    **SPECIAL INTERROGATORY NO. 2:**

18    IDENTIFY any changes between the original cross-complaint of Raybern Foods, Inc.

19    asserted in the Claim and the First Amended Cross-Complaint therein which you contend impact

20    coverage under the POLICY.

21    **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

22    Responding Party objects to this interrogatory in that it calls for a legal conclusion and

23    expert legal interpretation of the insurance policy. Further objection is made pursuant to *Dusek v.*

24    *United Airlines Inc.*, 9 FRD 326 (1949) in that the interrogatory requires analysis of facts and

25    goes beyond supplying facts within Responding Party's knowledge or possession. Further

26    objection is made pursuant to *Leonia Amusement Corp v. Loew's, Inc.*, 18 FRD 503 (1955) in

27    that the interrogatory requires Responding Party to make a compilation of information where

28    both the original Cross-Complaint and First Amended Cross-Complaint are in the possession of

1   the Propounding Party.  Subject to and without waiving the above objection, Responding Party

2   responds as follows:

3       Responding Party has provided both Raybern Foods, Inc.'s original Cross-Complaint and

4   First Amended Cross-Complaint to Propounding Party for their own investigation, analysis and

5   determination regarding the impacts on coverage.  It is Propounding Party's duty to find

6   coverage.

7       Discovery is continuing and Responding Party reserves the right to supplement or amend

8   these Responses as necessary.

9   **SPECIAL INTERROGATORY NO. 3:**

10      State all facts upon which YOU base YOUR contention that the CLAIM is covered under

11  the POLICY.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

13      Responding Party objects to this interrogatory in that it is vague and ambiguous as to the

14  term "covered" and calls for a legal conclusion and expert legal interpretation of the insurance

15  policy.  Further objection is made pursuant to *Dusek v. United Airlines Inc.,* 9 FRD 326 (1949) in

16  that the interrogatory requires analysis of facts and goes beyond supplying facts within

17  Responding Party's knowledge or possession.  Further objection is made pursuant to *Stovall v.*

18  *Gulf & South American S.S. Co.,* 30 FRD 152 (1961) in that the interrogatory is too general and

19  all-inclusive by its employment of the term "State all facts upon...".  Further objection is made

20  pursuant to *IBP, Inc. v. Mercantile Bank of Topeka,* 179 FRD 316 (1998) in that the interrogatory

21  is overly broad and burdensome.  Subject to and without waiving the above objection,

22  Responding Party responds as follows:

23      Responding Party was sued by Raybern Foods, Inc. in Responding Party's capacity as a

24  corporate officer and director of TRI Commercial Real Estate Services, Inc. ("TRI").

25  Additionally, Responding Party was sued by TRI and John Fults ("Fults") in its Cross-Complaint

26  in Responding Party's capacity as a corporate officer and director of TRI.  The Cross-Complaints

27  from Raybern Foods, Inc., TRI and Fults contain allegations against Responding Party of breach

28  / / /

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

1  inquiry into the public documents filed with the court against Responding Party in the underlying

2  matter.

3  Date:  May 27, 2008                    **BERDING & WEIL LLP**

4

5                                    By: _____

6                                         Daniel L. Rottinghaus
                                          Paul W. Windust
7                                         Attorneys for Plaintiff
                                          Robert L. Young
8

9

10  O:\WDOCS\0001\392\DSC\00473031.DOC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES                    -15-

1
2
3                         VERIFICATION TO FOLLOW
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507

112

# PROOF OF SERVICE

**Case Name:** *Young v. Illinois Union Insurance Co.*
**Case No:** USDC, Northern District of California, Case No. C07-05711 SBA

I am employed in the County of Contra Costa, State of California. My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

On May 27, 2008, I served the within:

PLAINTIFF ROBERT l. YOUNG'S RESPONSES TO ILLINOIS UNION INSURANCE COMPANY'S SPECIAL INTERROGATORIES

on the party(ies) listed below, addressed as follows:

### (SEE ATTACHED SERVICE LIST)

☐    **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].**  By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list.  The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☒    **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service.  Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid.  I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐    **By First Class Registered or Certified Mail/Return Receipt Requested/Ordinary Business Practices [C.C.P. §§ 1013, 1013a, 1020].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, registration or certification and return receipt requested, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service.  Under the firm's practice, registered and certified first class mail with return receipt requested is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with all postage and fees thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐    **By Express Mail [C.C.P. §§ 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, with Express Mail postage paid, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of Express Mail to be deposited in a post office, mailbox, sub-post office, substation, or mail chute, or other like facility maintained by the United States Postal Service for receipt of Express Mail. Under the

113

firm's practice, Express Mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐ **By Overnight Delivery [C.C.P. § 1013, 1013a].** By causing a true copy thereof to be enclosed in a sealed envelope or package designated by the express service carrier, with all delivery fees paid or provided for, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of overnight deliveries for deposit in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. Under the firm's practice, overnight deliveries are deposited in the ordinary course of business with the express service carrier at Alamo, California, that same day.

☐ **By Personal Service [C.C.P. § 1011].** By causing a true copy thereof to be placed in a sealed envelope or package addressed to the party[ies] as stated on the attached mailing list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed February 26, 2008, at Alamo, California.

By: _____
            Michele Poloka

## SERVICE LIST

**Case Name:**  *Young v. Illinois Union Insurance Co.*
**Case No:**    USDC, Northern District of California, Case No. C07-05711 MEJ

Herbert P. Kunowski, Esq.
Darren Le Montree, Esq.
WILSON, ELSER, MOSKOWITZ, et al.
555 South Flower Street, Suite 2900
Los Angeles, CA  90071
Tel:  (213) 443-5100
Fax:  (213) 443-5101

Attorneys for Defendant,
ILLINOIS UNION INSURANCE
COMPANY dba ACE WESTCHESTER
SPECIALTY CLAIMS

O:\WDOCS\0001\392\PLDPOS\00468230.DOC

1

## PROOF OF SERVICE

2

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California, by WILSON,

4 ELSER, MOSKOWITZ, EDELMAN & DICKER and am over the age of 18 and not a party to
the within action.  My business address is 555 South Flower Street, Suite 2900, Los Angeles,

5 California 90071.

6

On **July 22, 2008**, I served the foregoing document described as **DECLARATION OF**

7 **CUSTODIAN OF RECORDS OF ILLINOIS UNION INSURANCE COMPANY** on all
interested parties, through their respective attorneys of record in this action, by placing a true

8 copy thereof enclosed in a sealed envelope addressed as follows:

9

| Daniel L. Rottinghaus, Esq.<br>Paul W. Windust, Esq.<br>Berding & Weil LLP<br>3240 Stone Valley Road West<br>Alamo, CA  94507 | Attorneys for Plaintiff:  ROBERT L.  YOUNG<br>Phone:  (925) 838-2090<br>Fax:     (925) 820-5592 |
| --- | --- |

10

11

12

**XX** **(BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United

13 States Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of
collection and processing correspondence or mailing.  Under that practice it would be

14 deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los

15 Angeles, California in the ordinary course of business.  I am aware that on motion of the party
served, service is presumed invalid if postal cancellation date or postage meter date is more

16 than one day after date of deposit for mailing in affidavit.

17

___ **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand to

18 the offices of the addressee(s).

19

**XX**   (BY E-MAIL) I caused such document to be served via E-mail at Paul W.
Windust [pwindust@berding-weil.com]

20

21

JURISDICTION

22

**XX** (State)  I declare under penalty of perjury that the above is true and correct.

23

Executed on **July 22, 2008**, at Los Angeles, California.

24

25

Irene Guzman-Buelna

26

27

28

4

116