Herbert P. Kunowski (State Bar No. 150141)
Darren Le Montree, Esq. (State Bar No. 198715)
**WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:  (213) 443-5100
Facsimile:   (213) 443-5101

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. YOUNG, | Case No.: C07-05711 SBA |
| Plaintiff, | **[CORRECTED] DECLARATION OF DARREN LE MONTREE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ILLINOIS UNION INSURANCE COMPANY; ACE WESTCHESTER SPECIALTY CLAIMS; and DOES 1 through 50, inclusive, | |
| Defendants. | |

I, Darren Le Montree, certify and declare as follows:

1.    I am a member of the law firm WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, counsel of record for Illinois Union Insurance Company ("Illinois Union") in the above-captioned matter.  I make the following declaration based upon my personal knowledge.  If called to testify, I could and would attest to the following.

1

1    2.    Attached hereto as Exhibit "1" is a true and correct copy of TRI

2  Commercial Real Estate Service, Inc.'s Complaint filed in Alameda Superior

3  Court on February 14, 2004 under Case No. RG 04141329.

4    3.    Attached hereto as Exhibit "2" is a true and correct copy of Raybern

5  Food, Inc.'s Cross-Complaint filed in Alameda Superior Court on March 23, 2005

6  under Case No. RG 04141329.

7    4.    Attached hereto as Exhibit "3" is a true and correct copy of Raybern

8  Food, Inc.'s First Amended Cross-Complaint filed in Alameda Superior Court on

9  July 26, 2005 under Case No. RG 04141329.

10    5.    Attached hereto as Exhibit "4" is a true and correct copy of Robert L.

11  Young's Cross-Complaint filed in Alameda Superior Court on August 24, 2005

12  under Case No. RG 04141329.

13    6.    Attached hereto as Exhibit "5" is a true and correct copy of TRI

14  Commercial Real Estate, Inc. and John Fultz's Cross-Complaint filed in Alameda

15  Superior Court on September 19, 2005 under Case No. RG 04141329.

16    7.    Attached hereto as Exhibit "9" is a true and correct copy of the

17  Written Fee Contract produced by Robert L. Young in this action and marked as

18  Bates Nos. RY0117 to RY0122.

19    . 8.    Attached hereto as Exhibit "10" is a true and correct copy of relevant

20  portions of Robert L. Young's responses to Illinois Union's Special

21  Interrogatories, served on or about May 27, 2008 in this action.

22    I declare under the penalty of perjury under the laws of the State of

23  California that the foregoing is true and correct and that this declaration was

24  executed on July 2d, 2008 at Los Angeles, California.

25

26

27                                Darren Le Montree

28
                                        2

*2975189*

1  ALBERT E. CORDOVA (State Bar No. 74283)
2  A Professional Law Corporation
   ALBERT E. CORDOVA - SBN074283
3  A Professional Law Corporation
   1299 Fourth St., Suite 202
4  San Rafael, California 94901
5  Telephone: (415) 457-9656
   Telefacsimile: (415) 453-6260
6

**FILED**
ALAMEDA COUNTY

FEB 1 7 2004

CLERK OF THE SUPERIOR COURT
By _____ Deputy

7  Attorneys for Plaintiff TRI COMMERCIAL REAL ESTATE
   SERVICES, INC., a California corporation
8

9              THE SUPERIOR COURT OF CALIFORNIA

10                  COUNTY OF ALAMEDA    RG04141329

11

12

13  TRI COMMERCIAL REAL ESTATE          ) No.
    SERVICES, INC., a California corporation  )
14  d/b/a Keystone Financial Group, Inc.     ) **COMPLAINT FOR RECOVERY**
                                         ) **OF BROKER'S COMMISSION**
15             Plaintiff(s),             )
                                         ) **[BREACH OF CONTRACT,**
16        vs.                            ) **CONSTRUCTIVE TRUST and**
                                         ) **DECLARATORY RELIEF]**
17  RAYBERN FOODS, INC., a California    )
18  corporation; BERNARD J. VIGGIANO; and )
    DOES 1-20 inclusive                  )
19                                       )
20             Defendant(s).             )
    _____  )
21

22        COMES NOW PLAINTIFF, TRI COMMERCIAL REAL ESTATE
23
24  SERVICES, INC. (hereinafter referred to as "TRI"), who complains and alleges as
25  follows:
26

27                          1
28
    _____
    COMPLAINT FOR DAMAGES AND DECLARATORY
    RELIEF

EXHIBIT **1**

3

## GENERAL ALLEGATIONS

1.  At all relevant times mentioned herein, Plaintiff TRI COMMERCIAL REAL ESTATE SERVICES, Inc., a California corporation d/b/a Keystone Financial Group, Inc. (hereinafter referred to as "TRI") was a corporation duly organized and existing under the laws of the State of California with its principal place of business located in the City and County of San Francisco, State of California.

2.  At all relevant times mentioned herein, Plaintiff TRI has been doing business, in part, under the fictitious business name of Keystone Financial Group, Inc.  Plaintiff has filed the statement and published the notice as required by California Business and Professions Code §§17910 through 17917.

3.  Plaintiff is, and at all times mentioned herein was, a real estate broker duly licensed by the State of California.

4.  Plaintiff is informed and believes and upon such information and belief alleges that at all relevant times mentioned herein Defendant RAYBERN FOODS, INC., a California corporation (hereinafter referred to as "RAYBERN") was a corporation duly organized and existing under the laws of the State of California with its principal place of business in the City of Hayward, County of Alameda, State of California.

2

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

4

5.  Plaintiff is informed and believes and upon such information and belief alleges that at all relevant times mentioned herein Defendant BERNARD J. VIGGIANO (hereinafter referred to as "VIGGIANO") was a corporate officer and duly authorized representative acting on behalf of Defendant RAYBERN.

6.  Plaintiff is informed and believes and upon such information and belief alleges that at all relevant times mentioned herein VIGGIANO was the owner of a majority of the shares of stock of defendant corporation and was the controlling shareholder therein.

7.  There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendant VIGGIANO and defendant RAYBERN such that any individuality and separateness between said defendants have ceased, and defendant corporation is the alter ego of defendant VIGGIANO.

8.  Defendant RAYBERN is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which defendant VIGGIANO carried on his business in the corporate name, exercising complete control and dominance of such business to such an extent that any individuality or separateness of defendant RAYBERN and defendant VIGGIANO does not, and at all times herein mentioned did not, exist.

9.  Plaintiff is informed and believes and thereon alleges that adherence to the fiction of the separate existence of the defendant corporation as an entity distinct from

3

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

5

defendant VIGGIANO would permit an abuse of the corporate privilege and would

sanction fraud or promote injustice in that VIGGIANO may divert funds due to

RAYBERN to his own use and/or may cause RAYBERN to circumvent its

obligations under the contract.

10. Plaintiff is informed and believes that each defendant individually or

fictitiously sued herein acted in his, her, or its own right and also was or is the agent,

employee, representative or servant of each of the other defendants sued herein as to

each of the matters set forth herein, and that each such defendant, whether

individually or fictitiously named, was at all times acting within the scope and

purpose of such agency, employment, representation or service.  Alternatively, if the

acts of each such defendant were not authorized at the time, such acts were

subsequently ratified by the appropriate principal.  Any reference hereinafter to

"Defendants" shall mean "Defendants, and each of them".

11. Plaintiff is ignorant of the true names and/or capacities, whether

individual, corporate, associate or otherwise, of defendants sued herein as Does 1

through 20, inclusive, and plaintiff is further ignorant of the appropriate charging

allegations and theories of liability with respect to said fictitiously named defendants,

and therefore plaintiff sues such defendants by such fictitious names.  Plaintiff is

further informed and believes, and on such information and belief alleges, that each

of the defendants designated herein as a Doe is legally responsible in some manner

4

COMPLAINT FOR DAMAGES AND DECLARATORY
RELIEF

for the events and happenings herein referred to, and proximately caused injury and damages thereby to the plaintiff as herein alleged.

12.  At all times herein mentioned the individual known as John J. Fults was authorized and empowered by Plaintiff TRI as required under California Business and Professions Code §§10159 and 10211 to act, and acted, as the agent of Plaintiff TRI, and each and all of the things herein alleged to have been done by him were done in the capacity of and acting as agent for Plaintiff TRI.

### FIRST CAUSE OF ACTION
**[Breach of Contract as Against Defendants**
**RAYBERN FOODS, INC. and BERNARD J. VIGGIANO]**

13.  Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 12, inclusive, of this Complaint, as though fully set forth herein.

14.  On or about May 7, 2001, RAYBERN employed TRI by an agreement in writing to act on RAYBERN's behalf as its sole and exclusive representative with respect to the contemplated solicitation, negotiation and arrangement of a business opportunity in the form of a business sale, merger, royalty agreement or strategic alliance with a third-party business entity.  A copy of that written agreement (hereinafter referred to as the "Engagement Agreement") is attached to this Complaint as Exhibit "A", and is hereby incorporated herein by reference.

5

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

15. Pursuant to the terms and conditions of the aforementioned Engagement Agreement, Defendant RAYBERN promised and agreed, among other things, to pay a broker's commission, a.k.a. a "Success Fee", to Plaintiff TRI corresponding to a specified percentage of future royalty payments or the value thereof received by Defendant RAYBERN as a result of RAYBERN's consummation of a transaction as contemplated under the Engagement Agreement.

16. Upon information and belief, Plaintiff alleges that Defendant RAYBERN successfully consummated a third-party transaction as originally contemplated under the Engagement Agreement on or about August 20, 2001. A copy of the written agreement memorializing the contemplated third-party transaction (hereinafter referred to as the "License Agreement") is attached to this Complaint as Exhibit "B", and incorporated herein by reference.

17. Plaintiff TRI has performed all of the duties and conditions required of it pursuant to the terms of the Engagement Agreement with the exception of those duties and conditions which were prevented or excused by Defendant RAYBERN.

18. Upon information and belief, upon consummation of the third-party licensing transaction contemplated under the Engagement Agreement Plaintiff became entitled to receive monthly payments of commission amounts equal to the percentage share of the "Transaction Value" received by Defendant RAYBERN as specified on Page Two of the Engagement Agreement.

6

19.  Defendants have failed and refused to make any payment whatsoever to TRI of any monthly commission amounts as specified under the Engagement Agreement.

20.  Plaintiff is presently ignorant of the total amount of royalty payments received by Raybern pursuant to the third-party License Agreement as of the date of filing of this Complaint.  However, Plaintiff is informed and believes, and on that basis alleges, that Defendant RAYBERN did receive a royalty advance in the form of a credit in the amount of $350,000.00 immediately upon its execution of the License Agreement.

21.  As a result, Defendant RAYBERN is now indebted to Plaintiff TRI in an amount according to proof which as yet remains uncertain as of the date of filing of this Complaint.  Said amount is owed for and on account of broker's commissions earned by Plaintiff TRI pursuant to the Engagement Agreement.

22.  Defendants have failed and refused to pay any commissions to Plaintiff TRI although TRI has repeatedly made demand for such payment.  As a proximate result of defendant's breach of the Engagement Agreement, Plaintiff TRI has suffered, and continues to suffer, losses in an amount according to proof equal to the commissions owed under the Engagement Agreement.

WHEREFORE, Plaintiff prays judgment as set forth below.

7

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

9

## SECOND CAUSE OF ACTION

### [Constructive Trust as Against Defendants
### RAYBERN, VIGGIANO and DOES 1 TO 10]

23.  Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18, inclusive, of this Complaint.

24.  Upon information and belief, Defendants have received monetary consideration in the form of at least one significant royalty advance as well as additional royalty payments subsequently generated pursuant to the License Agreement.  Upon information and belief, Plaintiff alleges that it is entitled to receive payment of no less than 2% of the value of all royalty amounts generated under the License Agreement pursuant to the terms and conditions of the Engagement Agreement, in consideration of the professional services rendered by TRI in the negotiation and procurement of the License Agreement.

25.  By virtue of the Defendants' failure and refusal to tender payment to Plaintiff of commissions rightfully earned under the Engagement Agreement, Defendants now hold funds belonging to Plaintiff TRI as constructive trustees in an amount to be proven at trial.

WHEREFORE, Plaintiff prays judgment as set forth below.

8

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

10

**THIRD CAUSE OF ACTION**

**[Declaratory Relief As Against All Defendants]**

26.  Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 12, inclusive, of this Complaint, as though fully set forth herein.

27.  An actual controversy has arisen and now exists between Plaintiff and Defendants in that Plaintiff contends that it is entitled to receive payment of a specified percentage share of royalty amounts received by Defendants as consideration for professional services rendered in the negotiation and procurement of the License Agreement.  Plaintiff is further informed and believes, and thereon alleges, that Defendants dispute the amounts due to Plaintiff pursuant to the terms and conditions of the Engagement Agreement.

28.  By reason of the foregoing, there exists a justiciable controversy between Plaintiff and Defendants.  Plaintiff is therefore entitled to have this Honorable Court decide the respective rights, duties and obligations of the Plaintiff as well as the respective rights, duties and obligations of the Defendants, and each of them, with respect to Plaintiff's right to recover the full amount of the Plaintiff's broker's commission due pursuant to the Engagement Agreement.

29.  Plaintiff desires a judicial determination of the respective rights and duties of Plaintiff and the Defendants with respect to the damages claimed by Plaintiff in

9

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

this Complaint.  In particular, Plaintiff desires a judicial determination and declaration with respect to the Defendants' liability for the current damages claimed herein, as well as a judicial determination and declaration of the Defendants' obligation for payment of any future commissions which are determined to be due and owing to Plaintiff pursuant to the terms and conditions of the Engagement Agreement.

30.  Such a declaration is necessary and appropriate at this time in order that Defendants may ascertain their present rights and duties with respect to Plaintiffs' claim for unpaid commission amounts.  Furthermore, a judicial determination of Plaintiff's claims with respect to any future royalty amounts received by Defendants pursuant to the License Agreement is necessary and appropriate in order to avoid the multiplicity of actions that would result if Plaintiff were to be required to maintain a single court action now with respect to Plaintiff's current claims for unpaid commission amounts, and then to bring one (or more) separate court actions against the Defendants with respect to any commission amounts which may become due and owing to Plaintiff in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

10

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
## RAYBERN, VIGGIANO and DOES 1 TO 10:

1. For recovery of a broker's commission due in an amount according to proof at trial, but in any event no less than the sum of $50,000.00;

2. For interest on a broker's commission due in an amount according to proof at trial at the prevailing legal rate from August 20, 2001;

3. For reasonable attorneys' fees according to proof and as permitted by law;

4. For costs of suit incurred herein; and

5. For such other and further relief as the court may deem proper.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## RAYBERN, VIGGIANO and DOES 1 TO 10:

1. For an Order declaring that Defendants RAYBERN, VIGGIANO and DOES 1 through 20, inclusive, hold a certain dollar amount according to proof at trial corresponding to 2% of the value of all royalty advances and royalty payments received by or for the benefit of Defendants under the License Agreement in constructive trust for Plaintiff;

2. For an Order compelling Defendants RAYBERN, VIGGIANO and DOES 1 through 20 to convey to Plaintiff a dollar amount according to proof at trial which is

11

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

13

held in constructive trust for Plaintiff and corresponding to 2% of all royalty advances and royalty payments received by Defendants under the License Agreement;

3. For an Order compelling Defendants RAYBERN, VIGGIANO and DOES 1 through 20 to accept and hold in trust for Plaintiff as a constructive trustee 2% of any future royalty proceeds received by the Defendants pursuant to the License Agreement;

4. For an Order compelling Defendants RAYBERN, VIGGIANO and DOES 1 through 20 to timely convey to Plaintiff TRI the percentage share of any future royalty proceeds received by Defendants and held in constructive trust by Defendants on Plaintiff's behalf in accordance with the terms and conditions of the Engagement Agreement;

5. For reasonable attorneys' fees according to proof and as permitted by law;

6. For costs of suit incurred herein;

7. For such other and further relief as the court may deem proper.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS RAYBERN, VIGGIANO and DOES 1 TO 20:

1. For a judicial determination and declaration of the parties' respective rights, obligations and duties with respect to the present monetary damages claimed by Plaintiff in this Complaint;

12

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

14

2.  For a judicial determination and declaration of the parties' respective rights, obligations and duties with respect to future royalty payments received by Defendants pursuant to the License Agreement;

3.  For an Order directing Defendants to accept, hold in trust and disburse to Plaintiff any future royalty payments received under the License Agreement in accordance with the parties' Engagement Agreement;

4.  For reasonable attorneys' fees according to proof as permitted by law;

5.  For costs of suit herein incurred; and

6.  For such other and further relief as the court may deem proper.

Dated: February 12, 2003

Respectfully submitted,

ALBERT E. CORDOVA,
A Professional Law Corporation

By _____
ALBERT E. CORDOVA
Attorney for Plaintiff

13

COMPLAINT FOR DAMAGES AND DECLARATORY
RELIEF

15

# Phase II Engagement Agreement

Mr. Bernard J. Viggiano
Raybern Foods, Incorporated
311 West A Street
Hayward, CA 94541

Dear Mr. Viggiano,

This will confirm that TRI Merger and Acquisition Division, a division of TRI Commercial Real Estate Services, Inc., a California corporation (TRI) is hereby authorized to act as the sole and exclusive representative of Raybern Foods, Incorporated, its owners, shareholders and affiliates (collectively, Client) in seeking to arrange and negotiate the possible sale, merger, royalty agreement or strategic alliance with the identified prospect Irwin Miller or any of his affiliated companies (RBR Meatpackers, Inc., Riteway, Inc., Rose & Shore, Inc.) (collectively, Transaction). If Client chooses to expand the scope of TRI's services to other prospects or arrangements, Client and TRI will execute a separate agreement concerning those services.

Client shall have the sole and absolute right to accept or reject any offer received and fees shall be payable by Client to TRI only if Transaction is consummated.

The term of this agreement is for a period of twelve months from the date of your acceptance hereof. The Client may at any time accelerate the expiration of this agreement by giving TRI ninety days written notice via certified mail.

TRI shall employ appropriate resources to furnish materials describing Client's business to prospects, based on information supplied by Client, and to introduce such prospects to Client. TRI further agrees to participate in negotiations, assist during the diligence process and do all else that is reasonably necessary and within its capabilities to assist Client in attempting to effect said Transaction.

TRI makes no representation, expressed or implied, that it will effect a Transaction, as a result of services furnished under this agreement. The duties of TRI shall not include legal or accounting services which shall be procured by the Client at its own expense.

For TRI's services in connection with the Transaction, Client agrees to pay TRI a Success Fee according to the schedule below. This Success Fee is fully earned by TRI if the Transaction contemplated above is consummated within fourteen months from the signing of this agreement. Client agrees to pay the Success Fee to TRI within thirty days of the times funds are received by Client by reason of the Transaction.

This agreement shall be interpreted under and governed by the laws of the State of California, and jurisdiction over any dispute shall be exclusively in the County of Alameda, California.

The Client recognizes and confirms that in representing Client's interest in effecting the above Transaction, TRI will be using and relying on information and data furnished by the Client and that TRI does not assume responsibility for the accuracy or completeness of the information. TRI will not undertake to independently verify the information.

The Client represents that all information to be furnished in conjunction with the proposed Transaction is true and complete in all material respects and contains no material omissions.

16

TRI and the Client agree that all information furnished by either party to the other, including information supplied by accountants, attorneys, agents and employees, shall be treated with complete confidentiality and not be discussed with third parties except as agreed and authorized by the other party in advance or as may be required by law.

Following consummation of the Transaction, TRI may only advertise its role in effecting the Transaction with the prior written consent of Client, and Client's approval of the content of such advertising.

The person(s) signing below on behalf of the Client represent(s) and warrant(s) that they have the authority to enter into this agreement on behalf of the Client.

**SUCCESS FEE SCHEDULE:**
 The Success Fee is to be paid in two separate periods. Period A is defined as the seven-year base period and begins immediately subsequent to the consummation of the Transaction. Period B is defined as the period beginning immediately subsequent to the completion of Period A.

**SUCCESS FEE SCHEDULE PERIOD A:**
 2% of the Transaction Value plus
 8% of the Transaction Value attributable to that portion of royalties realized at a rate above 20 cents per pound.

**SUCCESS FEE SCHEDULE PERIOD B:**
 1% of the Transaction Value

 The Success Fee in Period B shall expire when the Success Fees paid by client in Period B reach $150,000

Transaction Value is defined as the royalty received by Client under the Transaction, which royalty will be based on tonnage.

Notwithstanding the foregoing, if the consummated Transaction does not provide for more than $0.20 per pound for the first seven years, then TRI's total Success Fee shall be $50,000.00, and the above schedules shall not apply. In this case, the Success Fee shall be payable in equal monthly installments over one year or such longer period, as needed, if revenues received under the Transaction are insufficient to make the monthly payments in full.

**ACCEPTED AND AGREED:**

Rayhern Foods, Incorporated          TRI MERGER AND ACQUISITION DIVISION

By: _____    By: _____
     Authorized Representative              Authorized Representative

17

Date: 5/4/01 _____    Date: S-7-01

18

19

# AGREEMENT FOR LICENSING AND ACQUISITION OF PROPRIETARY RIGHTS, INTERESTS AND PROPERTY

**THIS AGREEMENT** is made as of August 20, 2001 ("Effective Date"), by and between RAYBERN FOODS, INC., a California corporation (hereinafter referred to as "Licensor" or "Raybern") and ROSE & SHORE, INC., a California corporation ("Licensee").

## RECITALS

1. <u>Licensee</u>. Licensee is engaged in business as a wholesale meat processor. Licensee's principal processing plant is located at 5151 Alcoa Avenue, Vernon, California 90058 ("Facility").

2. <u>Licensor</u>. Licensor is engaged in business as a wholesale meat processor, and is the exclusive owner of certain proprietary formulas and recipes (hereinafter, the "Recipes") and processes (hereinafter, the "Processes") which are used by Licensor in the processing and sale of pastrami, roast beef and humus (hereinafter, the "Products") to the chain of fast food restaurant franchises commonly known or referred to as "Togo's Eateries" or "Togo's Famous Sandwiches" (hereinafter, "Togo's"). Licensor has spent years developing its relationship with Togo's and the protection of that relationship and the consistency of quality of both Products and service is of the utmost concern to Licensor. One of the principal reasons for Licensor's successful business relationship with Togo's has been its exemplary and prompt customer service; it is of paramount importance to Licensor that such customer service be maintained at a high level.

3. <u>Exclusive Provider of the Togo's Products</u>. Licensor represents and warrants to Licensee that Licensor is, as of the Effective Date and shall be as of the Closing, the major if not exclusive provider of the Products to Togo's.

4. <u>Licensee's Facilities; Know-How</u>. Licensee possesses certain processing and technical facilities and know-how, and in reliance on the representations and warranties of Licensor and mutual promises and covenants set forth in this Agreement, intends to invest substantial capital to acquire and install additional equipment required to process the Products for sale.

5.  <u>License and Acquisition of Rights, Processes and Recipes</u>.  Licensee desires to license from Licensor the exclusive right to use the Processes and Recipes to process and sell the Products to Togo's anywhere in the world based on Product orders placed and/or arranged by Licensor with Licensee (the "Rights").  Licensee further desires to acquire any and all interests that Licensor may have to the proprietary Processes and Recipes used by Licensor in making the Products, but subject to the terms and conditions of this Agreement.  In reliance on Licensee's know-how, the Facility, Licensee's personnel and on the representations and warranties of Licensee and the mutual promises and covenants it has made as are set forth in this Agreement, Licensor desires to license the Rights and to sell whatever interest it may have in the Recipes and Processes to Licensee, on the terms and conditions of this Agreement.

6.  <u>Responsibilities</u>.  The parties are to have the following responsibilities upon Closing:

(A.)    Licensor shall market the Products.

(B.)    Licensee shall process and package the Products and sell and arrange freight and delivery for the Products to Togo's and its distributors based on orders therefor placed by Licensor with Licensee.

**NOW THEREFORE**, in consideration of the mutual promises and covenants made herein, the parties agree as follows:

## ARTICLE I
## GRANT OF LICENSE AND LIMITATIONS THEREON

SECTION 1.01.  <u>GRANT OF LICENSE OF PROCESSES AND RIGHTS</u>.  As of the Closing Date (as set forth in Section 2.01 herein), Licensor shall license the Rights to Licensee on a nontransferable and exclusive basis, subject to and in consideration for all of the terms and conditions of this Agreement.

SECTION 1.02.  <u>TITLE TO RECIPES RESERVED TO LICENSOR - 1ST 7 YEARS</u>.  Licensee acknowledges and agrees that Licensor is and shall remain the owner of the Recipes and Processes for at least the first seven (7) years following the Closing Date of this Agreement.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

2

Further, in order to obtain a long-term supply agreement with Togo's, Licensee acknowledges and agrees that during the first seven (7) years of this Agreement, Licensor may have to convey or contract to convey some or all of its interests in the Recipes and Processes to Togo's as consideration for such long-term supply agreement ("Togo's Transfer Contingency").

SECTION 1.03. TRANSFER OF TITLE TO RECIPES, PROCESSES AND RIGHTS. At the commencement of the eighth (8th) year following the Closing Date of this Agreement ("Transfer Date"), the Recipes and the Processes shall be transferred from Licensor to Licensee free and clear of all liens, encumbrances and other restrictions, if and only if this Agreement has not been (i) terminated as herein provided, and only if (ii) Licensor has not previously conveyed or contracted to convey the Recipes and Processes to Togo's, or its successors and assigns, and only if (iii) Licensee is not then in default under or in breach of this Agreement, unless such default or breach is timely cured as herein provided (at which time such transfer shall occur). These three (3) occurrences are the only conditions to the transfer of the Recipes and Processes by Licensor to Licensee on the Transfer Date. When and if such title transfer does occur, Licensor will provide to Licensee all records, data, procedures, instructions, and specifications for the Recipes as are necessary for Licensee's ownership and use of the Recipes and Processes.

## ARTICLE II
## CONDITIONS AND THE CLOSING

SECTION 2.01. CONDITIONS TO CLOSING. The license to be issued by Licensor to Licensee is specifically conditioned on the satisfaction of all due diligence by both parties on or before September 7, 2001 (the "Closing Date" or the "Closing"). Each party may conduct whatever due diligence investigation they deem reasonably necessary to close the transaction contemplated by this Agreement, and each shall fully cooperate with the other to allow such due diligence investigation to be completed timely. The Due Diligence Statements referenced in Sections 2.03(b) and 2.04(a) must be executed and delivered by each party on or before the Closing Date, or this Agreement shall terminate.

(a)    **Minimum Due Diligence Documents for Licensor.** Licensee shall, as of

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property                INITIALS: Licensor _____ Licensee _____

3

the Effective Date, deliver to Licensor the following minimum documents and such other data documents and information that Licensor may reasonably request prior to the Closing:

(i)     Financial Statements of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. for 1998 and the reviewed financial statements of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. for 1999, 2000 and 2001 year-to-date, specifically including a cash flow statement;

(ii)     Tax returns of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. for 1998, 1999 and 2000;

(iii)     A list of Licensee's Shareholders and those of and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. indicating the number of Shares held by each Shareholder, or in lieu thereof, a certification under penalty of perjury that Irwin Miller owns the controlling interest of Licensee;

(iv)     A list of all officers and directors of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc.;

(v)     The Corporate Identification Number of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc.; and

(vi)     A copy of the Articles of Incorporation and any Amendments thereto of Licensee and Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc..

(b)     **Minimum Due Diligence Documents for Licensee.**  Licensor shall, as of the Effective Date, deliver to Licensee the following minimum documents and such other data documents and information that Licensee may reasonably request prior to the Closing:

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee

4

(i)    Sales records of Products for 1998, 1999, 2000 and 2001 year-to-date;

(ii)    The pricing mechanisms or pricing formula for the Products, if any;

(iii)    Licensor's sales and production data for the past two (2) years including Product yields.

(c)    **Confidentiality.** All due diligence information exchanged hereunder shall be held in the strictest confidence by each party and shall not be disseminated in any manner without the express written consent of the party whose information is to be shared or disclosed.   Notwithstanding the foregoing, each party may share such due diligence information with their respective attorneys, CPAs and financial and production consultants if reasonably necessary to complete due diligence hereunder; in such event, the receiving party shall be responsible for the maintenance of such confidences by each such advisor.

SECTION 2.02. THE CLOSING.   The Closing will take place at the Law Offices of Robert L. Young, Two Walnut Creek Center, 200 Pringle Blvd., Suite 340, Walnut Creek, CA 94596, at 10 a.m. on September 7, 2001, or at such other time and place as Licensor and Licensee may agree in writing.

SECTION 2.03 LICENSOR'S OBLIGATIONS AT CLOSING. At the Closing Licensor shall deliver or cause to be delivered to Licensee:

(a)    an executed Grant of License, granting the License of the Rights as herein specified.   The form of the Grant of License shall be as is set forth in Exhibit "B", attached hereto and incorporated herein by this reference.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____

5

(b)    a written statement that all due Diligence desired to be completed by Licensor has been completed or waived ("Licensor's Due Diligence Statement").

(c)    certified resolutions of Licensor's Board of Directors in form satisfactory to counsel for Licensee, authorizing the execution and performance of this Agreement and all actions to be taken by Licensor under this Agreement.

(d)    an original of the Manufacturing Agreement executed by Licensor as identified in Section 8.02(h).

**SECTION 2.04 LICENSEE'S OBLIGATIONS AT CLOSING.** At the Closing Licensee shall deliver or cause to be delivered to Licensor:

(a)    a written statement that all due diligence desired to be completed by Licensee has been completed or waived ("Licensee's Due Diligence Statement").

(b)    certified resolutions of Licensee's Board of Directors in form satisfactory to counsel for Licensor, authorizing the execution and performance of this Agreement and all actions to be taken by Licensee under this Agreement.

(c)    a good faith estimate of how long it will take Licensee to install all equipment necessary to perform its obligations hereunder, which is acceptable to Licensor.

(d)    an original of the Manufacturing Agreement executed by Licensee as identified in Section 8.02(h).

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____

6

### ARTICLE III
## OPERATIONAL OBLIGATIONS OF THE PARTIES

SECTION 3.01. LICENSOR'S RESPONSIBILITIES AND OBLIGATIONS. As of the Closing Date, Licensor shall license the Rights to Licensee and shall have the following additional responsibilities and obligations and/or provide the following enumerated items to Licensee on an exclusive basis subject to all the terms and conditions of this Agreement:

(a) The Rights. The Rights shall be licensed free and clear of all liens, encumbrances and other restrictions, subject to the termination provisions of Article VIII herein.

(b) Licenses, Permits and Authorizations. All licenses, permits, approvals, authorizations, consents and the like which are required for or relating in any respect to the processing, sale and distribution of the Products, and that are issued to Licensor by any governmental authority; and

(c) Records and Procedures. Any and all records, data, procedures, systems, computer programs, computer data, models, instructions, production data, drawings, blueprints, plans, designs, specifications and software reasonably necessary to be used in connection with the making, processing and distribution of the Products.

(d) "Spice Mix". For the first seven years of this Agreement and so long as title to the Recipes is reserved to Licensor, Licensor will make available to Licensee, at cost, and in sufficient quantity to insure the timely processing of all orders, the proprietary blend of spices required to be used in the processing of the Products (the "Spice Mix"). Licensor further agrees to maintain, or cause to be maintained, a sufficient quantity of the Spice Mix on hand to assure that Licensee can fill anticipated or actual orders expeditiously at all times during the course of this Agreement. Licensor has informed Licensee that the Spice Mix will be prepared by a national company under contract to Licensor and

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____ Licensee _____

7

through whom Licensee will purchase the Spice Mix.

(e) Additional Assistance. In addition to any assistance which Licensor may have heretofore rendered to Licensee relating to the Rights, the Processes and Products, Licensor agrees that it will perform the following continuing services for the benefit of Licensee throughout the term of this Agreement:

(1) Instruction and Training. Licensor will instruct Licensee in all aspects of the processing of the Products by providing such instruction and training as Licensee may reasonably require.

(2) Continuing Promotion of Product. Licensor agrees to continue to use its best efforts to actively promote the distribution, sale, and use of the Products to Togo's. As used herein, "best efforts" means efforts at least equivalent to those expended by Licensor in the marketing and promotion of the Products to Togo's prior to the Closing Date of this Agreement.  Licensee acknowledges that Licensor shall, after the Closing, continue to determine what activities it will take day in and day out in satisfying such obligations.

(3) Licensee Participation.  While responsible for all marketing of the Products, Licensor shall permit Licensee to actively participate in all promotions and marketing of the Products and in any meetings, discussions or negotiations with representatives of Togo's. During the first seven (7) years of this Agreement Licensor shall make all decisions relating to the marketing of the Products to Togo's and any supply agreements therewith exercising sound business judgment; thereafter, such decisions shall be by mutual agreement between Licensor and Licensee.  Notwithstanding the fact that Licensee is already a party to the Restrictive Agreement with Licensor as defined in 3.02(i) herein, both parties and each of their employees and agents so specified, from time-to-time, shall sign any further reasonably required Non-Disclosure and Confidentiality Agreement as required by the other party that specifically relates to such meetings, discussions,

negotiations and decisions. Licensee shall not hinder or interfere with Licensor's discharge of its marketing obligations hereunder, nor its ownership of the Rights, Recipes and Process.

### 3.02. LICENSEE'S RESPONSIBILITIES AND OBLIGATIONS.

As of the Closing Date, Licensee shall have the following responsibilities and obligations:

(a) Provide raw materials, labor and facilities. Licensee shall receive and fill orders for the Products, bill for and receive payment for the Products, and provide all raw materials (other than the Spice Mix), labor, supervision and production necessary to process all orders for the Products.

(b) Adherence to Production Standards. Licensee shall receive, process and fill orders for the Products in adherence to certain "Production Standards". As used herein, "Production Standards" are defined as:

(1) all applicable rules, regulations, and procedures promulgated by the United States Department of Agriculture or any other governmental body which has regulatory authority over Licensee, which are applicable to the Products and production thereof;

(2) all applicable internal policies and procedures established by Licensee governing its own production standards and procedures for the Products including adherence to its Hazard Analysis and Critical Control Point plan, its established Good Manufacturing Practices, its Standard Sanitation and Operating Procedures and such other quality control procedures that it may establish from time-to-time;

(3) all written production procedures for the Products established by mutual agreement of the parties from time-to-time; and

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property      INITIALS: Licensor _____  Licensee _____

9

(4) all quality control standards established by Raybern and/or Togo's from time-to-time with respect to the Products.

(c) <u>Timely Filling of Orders</u>. Licensee shall timely meet all production and shipping schedules for orders of the Product subject, however, to delays caused by:

(1) Product orders placed with Licensee without adequate lead time, such lead time to be established by mutual agreement of the parties from time-to-time, but Licensee shall make all reasonable attempts to satisfy said orders;

(2) Governmental orders or requirements, transportation conditions, labor or material shortages, strikes, riots, fires, as well as any other cause beyond Licensee's reasonable control; Licensor shall take all reasonable good faith efforts to deal with any such causes, including seeking alternative sources and facilities to immediately meet such delayed orders. In the event that Licensee fails to meet such obligation, Licensor shall have the right to do so for Licensee for the period of the delay in an effort to timely service Togo's and avoid loss of the Togo's account; and

(3) Licensor's failure to deliver an adequate amount of Spice Mix or any other delay caused by Licensor.

In all cases, Licensee shall use its best efforts to advise Licensor and Togo's distributors in advance of any inability to make full and timely delivery of the Products.

(d) <u>Use of Recipes</u>. All Products subject to this Agreement will be processed and packaged pursuant to only those recipes and ingredients and packaging materials specified by Licensor from time to time. Licensee will not allow these Products to be sold to anyone other than Togo's.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____ ;

10

(e)     Reasonable Access.  In order to satisfy Licensor's obligations hereunder, and to satisfy Licensor that the Production Standards herein defined are being followed, Licensee shall provide Licensor with reasonable access during Licensee's normal working hours to Licensee's production facilities, including records, data, files and the like that involve or relate to production of the Products and the fulfillment of all Togo's orders, as Licensor shall determine, in its sole discretion, specifically including, but not limited to all quality control records and data.  Licensor shall provide Licensee with forty-eight (48) hours notice if Licensor wishes to have access to specific business records of Licensee that relate to the Products.  Licensee shall permit Licensor to maintain as many individuals on or at Licensee's facilities during business hours and at Licensor's sole cost and expense, as Licensor shall determine is necessary, in its sole discretion, to monitor and assure compliance with the Production Standards for the Products as herein defined ["Monitor(s)"].  Licensor may remove its Monitor(s) for a period of time, and then reinstate such person(s).  Licensor's representative(s) may be on the premises of the Facility everyday or no days.  In discharging Licensor's obligations pursuant to this Agreement, its President, Bernie Viggiano, and any Monitor Raybern hires, shall spend as little time or as much time in doing so as it shall solely determine.  In exercising its rights under this provision, Licensor shall not interfere in Licensee's operation of the Facility.  Because the Facility will be processing products of third parties, all Monitor(s) and Bernie Viggiano shall execute a Non-Disclosure and Confidentiality Agreement in such reasonable form and content as Licensee may require.

(f) Work Space.  Licensee shall provide a desk, telephone and computer work area for Licensee's Monitor(s) as provided in Section 3.02(e).

(g) Recommendation.  Licensee shall follow the recommendations of Licensor made from time to time as to the production of the Products.

(h) Customer Service Representative.  Licensee shall appoint a customer service person inside Licensee's organization to be responsible for and provide prompt customer

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _dm_

11

service to all Togo's orders and to timely respond to emergencies or any special request of Togo's. Licensor shall train such person.

(i) **Nonsolicitation.** Licensee shall not solicit Togo's, its parent, subsidiaries, affiliates or key management personnel, nor contact, solicit, divert, or do business with the employees or customers of Licensor, all as provided in Section 6.04(d) and in the Mutual Non-Disclosure and Confidentiality Agreement entered into by and between the parties as of February 25, 2001 ("Restrictive Agreement"). The terms of the Restrictive Agreement are hereby extended to a date seven (7) years after the Closing Date or for as long as Licensor is due Royalty payments hereunder, whichever period is longer.

(j) **Noninterference.** Licensee shall at all times honor the relationship and any contractual agreements between Licensor and Licensee and do nothing to disturb such relationship and contracts. Further, Licensee shall only ship orders of Products through Togo's approved distributors of Products.

SECTION 3.03  BILLING PROCEDURE.  Commencing as of the Closing, Raybern shall bill for all Products sold by Licensor or Licensee and remit Licensee's share of all paid invoices therefore to Licensee within five (5) business days of receipt thereof until the earlier of such time as there are at least twenty thousand pounds (20,000 lbs.) of Product being produced and sold by Licensee per week for a fourteen (14) day continuous period or the date when all or substantially all of the Products are being manufactured by Licensee at the Facility, which in no event shall be later than six (6) months beyond the Closing Date (either such event is defined herein as the "Substantial Production Date"). After the Substantial Production Date, Licensee shall bill Togo's distributors direct under Licensee's name and remit Licensor's Royalties as herein provided.

## ARTICLE IV
## ROYALTY PAYMENTS

SECTION 4.01.  ROYALTY PAYMENTS.  In consideration for the License granted under this

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

12

Agreement, and the subsequent transfer and acquisition by Licensee, of the Recipes and the Processes, subject, however, to Section 1.03 of this Agreement, Licensee shall pay to Licensor a royalty fee based upon a percentage of the "net margin" earned for the Products processed and sold by Licensee (net of returns and allowances) pursuant to the terms of this Agreement ("Royalty Fee"). While the Royalty Fee will be earned as otherwise provided herein, the first seven (7) year period applicable to computing such the Royalty Fee shall be extended by the length of time during which the the Royalty Fee is earned by Licensor prior to the Substantial Production Date. The Royalty Fee shall be calculated by multiplying the "Net Margin" earned on each Product sale by the percentages set forth below:

| PERCENTAGE OF NET MARGIN PAYABLE AS ROYALTY FEE | APPLICABLE PERIOD |
|---|---|
| 35.0% | Year 1 of this Agreement through year 7 of this Agreement |
| 17.5% | Year 8 of this Agreement through year 10 of this Agreement |
| 9.5% | Year 11 of this Agreement through the termination of this Agreement |

The Royalty Fee shall be paid by Licensee to Licensor as follows: On the 1st and 16th of each calendar month during the term hereof ("Royalty Determination Date"), Licensee shall calculate the Royalty Fee due hereunder based on the payments received by Licensee since the last Determination Date for Products sold to Togo's suppliers and shall remit payment thereof to Licensor within five (5) business days of such Royalty Determination Date. Each payment of the Royalty Fee shall be accompanied by copies of the customer invoice, any back up for deductions and the customer check. If the term hereof ends on a date ("Date of Termination") other than a Royalty Determination Date, Licensee shall calculate the Royalty Fee due Licensor as herein provided as of the Date of Termination and remit the same to Licensor within five (5) business days of such Date of Termination.

SECTION 4.02. "NET MARGIN" DEFINED. As used herein, the term "Net Margin" on

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

13

each Product sale shall be determined by subtracting the cost of the Product ("Product Cost") from the net sales price paid on each Product sale. The Product Cost shall be determined by using the costing formulas for each Product, which are attached to this Agreement as **Exhibit "A"** and incorporated herein by this reference. The net sales price paid is the actual payment made by the customer for each invoice (less all deductions).

SECTION 4.03. **Product Cost; Adjustments**. The costing formulas for each Product set forth in **Exhibit "A"** consist of the raw material cost of the Product, the average product yield for the Product, all direct costs allocated to the Product (seasoning, packaging, other manufacturing and direct labor) and an estimate of the overall freight costs to ship all Product sold hereunder. The initial Product Cost for each Product shall be reviewed quarterly during the term of this Agreement and Product Cost adjustments shall be made for the subsequent three (3) month period based upon changes in the average raw material cost, average product yield, seasoning costs, packaging costs, other manufacturing costs, direct labor and average freight costs for the Product using the look back periods specified below:

| Review Date | Look Back Period | Effective Dates for Product Cost Changes |
|---|---|---|
| December 1 | September 1 – November 30 | January 1 to March 31 |
| March 1 | December 1 - February 28 | April 1 to June 30 |
| June 1 | March 1 - - May 31 | July 1 to September 30 |
| September 1 | June 1 – August 31 | October 1 to December 31 |

All quarterly Product Cost changes resulting from changes in the average raw material cost for the Product during the look back period shall be automatically calculated using the cost index specified for such Product in **Exhibit "A"**. All other Product Cost changes shall be subject to the mutual agreement of the parties and shall reflect actual changes in product yield, the cost of spices, packaging, freight and other direct expenses and any changes in production procedures or labor rates. In the event that a cost index used by the parties is no longer available or does not accurately reflect the cost paid for such raw materials, the parties can mutually agree to substitute a new index or a new formula based upon the existing index.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

14

**SECTION 4.04. ADVANCE AGAINST ROYALTIES.** The parties acknowledge that Licensor presently owes RBR Meat Company, Inc. ("RBR") and Rite-Way Meat Packers, Inc. ("Rite-Way"), affiliates of Licensee, a sum in excess of Three Hundred Fifty Thousand Dollars ($350,000). Once Togo's has approved all of the production of the Products at Licensee's Facility, in writing, if reasonably possible for Licensor to quickly obtain, and as a prepayment of the Royalty Payments to be due hereunder, RBR and Rite-Way will credit Licensor with the sum of Three Hundred Fifty Thousand Dollars ($350,000) against all sums due by Licensor to RBR and Rite-Way (the "Royalty Advance"). The Royalty Advance will be offset against first Royalties due and owing to Licensor by Licensee under this Agreement. All sums due from Licensor in excess of such Royalty Advance shall remain due and payable from Licensor to RBR and Rite-Way in the ordinary course of business.

Further, Licensee may also credit against any Royalties due Licensor hereunder the amount of any sums due Licensee by Licensor under the Manufacturing Agreement (executed by the parties as of August 20, 2001), which are not timely paid pursuant to such Manufacturing Agreement.

**SECTION 4.05. LIMITATIONS OF ROYALTY ADVANCE.** If, for any reason, including, but not limited to, termination of this Agreement as provided herein, or Togo's election to terminate its purchases of the Product from Licensee for a period exceeding thirty (30) days ("Non-Order Period"), and before the Royalty Advance is fully exhausted, any unused portion of the Royalty Advance balance remaining will be paid by Licensor to Licensee within ten (10) business days of the expiration of the Non-Order Period. This obligation, if remaining unsatisfied at the time of termination, shall remain independent of and survive the termination of this Agreement. If after the Non-Order Period has expired, Raybern has remitted to Licensee the Royalty Advance balance, and Togo's then resumes ordering the Products, Licensee shall reimburse Licensor for such Royalty Advance balance previously paid by Licensor to Licensee within forty (40) days of Togo's resumption of orders.

**SECTION 4.06. AUDIT RIGHTS.** Licensor reserves the right to audit (through its certified

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____ Licensee _____

15

public accountants or its own employees or consultants) all of Licensee's books and records that relate to or affect the sale and shipment of the Products from time to time. Licensee shall fully cooperate with all such audit efforts. If any such audit reveals an error for the period audited ("Audit Period"), which caused an underpayment to Licensor of the Royalty Fee due for the Audit Period in excess of ten percent (10%), Licensee shall pay for the cost of such audit, otherwise Licensor shall pay and be responsible for its audit costs.

<h2 style="text-align:center">ARTICLE V<br>CONFIDENTIALITY AND NON-DISCLOSURE</h2>

**SECTION 5.01. PROTECTION OF RECIPES, RIGHTS AND PROCESSES.** Licensee and Licensor acknowledge that the Recipes, the Rights, and the Processes are confidential in nature and constitute trade secrets of Licensor in which the parties each maintain protectible interests. Subject to the provisions of Section 1.03 herein and the rights of Licensor under the Togo's Transfer Contingency, the parties, and each of them, agree not to sell, license, distribute, transfer, or, directly or indirectly, disclose or permit the sale, licensing, distribution, transfer, or disclosure of the Recipes or its contents, the Rights and the Processes to any other party either during the term of this Agreement or thereafter. For the purposes of this Agreement, all such information is to be considered Confidential Information.

**SECTION 5.02. OTHER "CONFIDENTIAL INFORMATION".** For the purposes of this Agreement, other "Confidential Information" which shall be subject to the non-disclosure provisions of this Article shall mean any information disclosed by one party to the other on an exclusive and confidential basis that relates to the Products and the Facility, including, but not limited to plans, designs, costs, prices, pricing schedules, pricing formulas, suppliers, finances, marketing plans, business opportunities, research, development, know-how, or personnel, or any other information related to, arising out of, or incidentally disclosed as a necessary consequence of entering into or the performance of this Agreement.

**SECTION 5.03. LIMITATION ON CONFIDENTIAL INFORMATION.** Confidential Information shall not include information that (a) is now or subsequently becomes generally available to the

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee

public through no fault or breach on the part of any party hereto; (b) is independently developed by either party without the use of any Confidential Information; or (c) such information is rightfully obtained from a third party who has the right to transfer or disclose that information.

SECTION 5.04. ADDITIONAL REQUIREMENTS RE NONDISCLOSURE. Neither party shall, without the written approval of the other party in each instance, or unless otherwise expressly permitted in this Agreement, use for its own benefit, publish or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of a party, any Confidential Information. Notwithstanding the foregoing, a party may disclose Confidential Information if required by any judicial or governmental request, requirement or order; provided that the party take reasonable steps to give the other party sufficient prior notice of that request and for that party to contest that request, requirement or order.

SECTION 5.05. INJUNCTIVE RELIEF. The parties, and each of them, understand and acknowledge that any party's disclosure or misappropriation of any of the Confidential Information in violation of this Agreement may cause the other party irreparable harm, the amount of which may be difficult to ascertain and, therefore, agree that the aggrieved party shall have the right to apply to a court of competent jurisdiction for an order restraining any further disclosure or misappropriation, and for such other relief as that party shall deem appropriate. This right shall be in addition to the remedies otherwise available to an aggrieved party, at law or in equity.

ARTICLE VI
INDEMNITIES

SECTION 6.01. INDEMNIFICATION BY LICENSOR. Except as is expressly set forth in this Agreement, Licensee will not assume any liabilities or obligations of Licensor. Following the Closing Date, Licensor will indemnify and hold Licensee harmless from and against any and all of Licensor's liabilities and obligations pertaining to the ownership and use of the Rights, the Processes, the Recipes and the sale and distribution of the Products prior to the commencement of manufacture of the Products by Licensee, and including any sale or distribution of any

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property　　INITIALS: Licensor _____ Licensee _____

17

Jun 05 2003 3:52PM　Law Office of Charles Kii　510-654-4107　　p.18

36

Products manufactured or sold by Licensor subsequent to the commencement of the manufacture of Products by Licensee. Licensor shall continue to indemnify Licensee as to the Rights, the Processes and the Recipes after the Closing Date against the claims of third parties as to Licensee's interest in the Rights, Processes and Recipes, subject, however, to the provisions of Section 1.03 and the Togo's Transfer Contingency.

SECTION 6.02. INDEMNIFICATION BY LICENSEE. Licensor is not assuming any liability or obligation of Licensee. Following the Closing Date, Licensee will indemnify and hold Licensor harmless from and against any and all of Licensee's liabilities and obligations which pertain to Licensee's processing, sale and distribution of the Products and Licensee's use and future ownership of the Recipes, Processes and Rights which future ownership is specifically subject to the conditions of Section 1.03 of this Agreement.

SECTION 6.03. MUTUAL INDEMNIFICATION. The Parties, and each of them, hereby indemnify and hold each other harmless from and against all claims for broker's or finder's fees which each indemnifying Party has hired or may have hired with respect to their business arrangement or the matters set forth in this Agreement.

## ARTICLE VII
## WARRANTIES AND REPRESENTATIONS

SECTION 7.01. WARRANTY OF TITLE. Licensor warrants that it has good title to the Recipes, the Processes and the Rights, and has the right to license their use to Licensee free of any proprietary rights of any other party or any other encumbrance whatever.

SECTION 7.02. WARRANTY OF TITLE REMEDIES. Licensee shall notify Licensor of the assertion of any claim that the Rights, the Recipes, the Processes, or Licensee's use or acquisition thereof under this Agreement (subject to the conditions of Section 1.03) violates the trade secret, trademark, copyright, patent, or other proprietary right of any other party ("Claims"); and shall cooperate with Licensor in the investigation and resolution of any such Claim. Licensor shall defend Licensee against any and all such Claims. Licensor shall indemnify and hold Licensee

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____

18

harmless from any liability for damage, costs, or other loss incurred by Licensee in connection with any such Claim, including, but not limited to, lost profits, lost savings, or other incidental or consequential damages arising out of or related to any such Claim unless caused by Licensee. This indemnity is subject to Licensor's rights under the Togo's Transfer Contingency.

SECTION 7.03. ADDITIONAL WARRANTIES OF LICENSOR. Licensor further represents and warrants:

(a) Exclusive Provider of Products to Togo's. That Licensor is, as of the Effective Date and the Closing Date to the best of its knowledge, the sole and exclusive provider of the Products to Togo's.

(b) Provision of Spice Mix. That the Spice Mix for the processing of the Products will be made available to Licensee by Licensor, at cost, in sufficient quantities to allow Licensee to timely fulfill all orders for the Products.

(c) Duly Organized and Existing Corporation. That Licensor is a Corporation duly organized and existing under the laws of the State of California, has all the requisite corporate powers to carry on its business as conducted and as proposed to be conducted, and has power to enter this Agreement and to perform all acts contemplated by this Agreement.

(d) Litigation. There is no litigation, action, or proceeding pending or, to the knowledge of Licensor, threatened against the Licensor before any court or administrative agency which might result in any material adverse change in the business or condition of the Licensor or substantially affect its ability to enter into and perform this Agreement.

(e) No Other Restrictions. Licensor is not a party to any contract or agreement or subject to any charges or other restriction that will materially and adversely affect its ownership of the Recipes and Processes and the license or Rights or its business, property, assets, or financial condition. Neither the execution nor delivery of this

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

19

Agreement, nor the performance of and compliance with the terms, provisions, and conditions of hereof will conflict with, or result in a breach of, any of the terms, provisions, or conditions of any charter, bylaw, mortgage, indenture, lease, instrument, franchise, permit, judgment, decree, order, statute, rule, regulation, or lawfully enforceable contract or agreement applicable to Licensor.

(f) <u>Taxes</u>. All tax returns and reports of Licensor required by law to be filed have been duly filed, and all taxes, assessments, fees and other governmental charges on the Licensor or any of its properties, assets, income, or franchises that are due and payable have been paid.

(g) <u>Consents Obtained</u>. All consents, approvals, and authorizations of, or registrations, declarations, or filings with, any governmental or public body or authority, and of all third parties, including, but not limited to, Togo's, which are required in connection with the valid execution, delivery, and performance of this Agreement, or in connection with any of the transactions incident to the licensing of the Rights, the Processes and the Recipes, and the sale of the Products in connection therewith have been procured or performed by Licensor.

(h) <u>Conveyance</u>. That Licensor has not previously conveyed the Rights, Processes and Recipes.

SECTION 7.04. <u>WARRANTIES OF LICENSEE</u>. Licensee represents and warrants:

(a) <u>Duly Organized and Existing Corporation</u>. That Licensee is duly organized and existing under the laws of the State of California, has all the requisite corporate powers to carry on its businesses as conducted and as proposed to be conducted, and has power to enter this Agreement and to perform all acts contemplated by this Agreement; and that Licensee is duly qualified to transact business and in good standing in each jurisdiction in which the nature of the business transacted by Licensee makes qualification necessary.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____ :

20

(b) <u>Litigation</u>. There is no litigation, action, or proceeding pending or, to the knowledge of Licensee, threatened against the Licensee before any court or administrative agency, which might substantially affect its ability to enter into and perform this Agreement.

(c) <u>No Other Restrictions</u>. Licensee is not a party to any contract or agreement or subject to any charges or other restriction that will materially and adversely affect its business, property, assets, or financial condition. Neither the execution nor delivery of this Agreement, nor the performance of and compliance with the terms, provisions, and conditions of hereof will conflict with, or result in a breach of, any of the terms, provisions, or conditions of any charter, bylaw, mortgage, indenture, lease, instrument, franchise, permit, judgment, decree, order, statute, rule, regulation, or lawfully enforceable contract or agreement applicable to Licensee.

(d) <u>Non-Solicitation</u>. Except as provided in this Agreement, Licensee shall not solicit Togo's, its parent, subsidiaries, or any affiliates or key management personnel without the express written authorization and approval of Licensor. Nothing in this warranty and representation shall limit or modify the provisions of Section 3.02(i) hereof.

(e) <u>Taxes</u>. All tax returns and reports of Licensee required by law to be filed have been duly filed, and all taxes, assessments, fees and other governmental charges on the Licensee or any of its properties, assets, income, or franchises that are due and payable have been paid.

(f) <u>Consents Obtained</u>. All consents, approvals, and authorizations of, or registrations, declarations, or filings with, any governmental or public body or authority, and of all third parties, which are required in connection with the valid execution, delivery, and performance of this Agreement, or in connection with any of the transactions incident thereto, or License's production of the Products and the fulfillment of orders therefor have been procured or performed by Licensee.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____ Licensee _____

21

SECTION 7.05. MUTUAL REPRESENTATIONS AND WARRANTIES. The parties hereby represent and warrant, each to the other:

(a) Complete and Accurate Access to Books and Records. That at all times during the continuance of this Agreement, the parties shall keep accurate books of account concerning all matters relating to the Products and the sale of the Products to Togo's. The parties further represent and warrant that their books of account shall be open to examination by either party to this Agreement, upon reasonable notice, at any time, and agree to provide complete access to the books and records of each other concerning all matters relating to the Products and the sale of the Products to Togo's. The parties further warrant and represent that the books and records maintained and kept by each of them pertaining to such matters shall be complete and accurate and comply with generally accepted principles consistently applied.

(b) Warranties and Representations True and Complete. That none of the representations or warranties made by a party contains or will contain any untrue statement of a material fact or omit a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

### ARTICLE VIII
### TERMINATION

SECTION 8.01. CAUSE FOR TERMINATION. This Agreement may be terminated upon the occurrence of any of the following:

(a) Failure to Agree on Product Pricing or Costing Formulas. In the event the parties cannot agree upon the price to be charged for the Products or in the event that the parties cannot agree on revised costing formulas as contemplated by Section 4.03, Licensee may cancel this Agreement upon six (6) months written notice to Licensor.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____  Licensee _____

22

(b) <u>Event of Default by Party</u>. In the event of default by a party to this Agreement for any one of the enumerated conditions of default described hereinbelow, and that default is not cured within the time permitted by this Agreement.

(c) <u>Cessation of Product Purchases</u>. In the event that Togo's stops purchasing Products from Licensee for a period in excess of one hundred eight (180) days, either party may terminate this Agreement. If such cessation occurs during the first seven (7) years of this Agreement and one of the parties elects to terminate this Agreement pursuant to the provisions of this paragraph but Togo's then subsequently resumes making purchases of Products during such seven (7) year period, then this Agreement shall be deemed to not have terminated and each and every provision shall remain in full force and effect at such time as the purchases resume. In the event that such cessation occurs after the first seven (7) years of this Agreement and one of the parties elects to terminate this Agreement pursuant to the provisions of this paragraph but Togo's then subsequently resumes making purchases of Products, then this Agreement shall be deemed to not have terminated and each and every provision shall remain in full force and effect as of the date such purchases are resumed so long as the formulas and the recipes for the Products then being purchased by Togo's are substantially the same as the formulas and recipes for the Products prior to such cessation in ordering. If the Products then being purchased by Togo's have substantially changed, then applicable provisions of this Agreement shall not be reinstated and the Agreement shall remain terminated.

SECTION 8.02. <u>EVENTS OF DEFAULT - BY LICENSEE</u>. Licensee shall have committed an event of default, and this Agreement and the license granted hereunder shall terminate, if any of the following occur:

(a) <u>Continuing Failure to Adhere to Production Standards</u>. In the event that the Production Standards set forth in Section 3.02.(b) are not met on a regular, continuing and material basis during the term of this Agreement.

(1) <u>"Regular, Continuing and Material Basis" Defined</u>. The term "regular,

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property            INITIALS: Licensor _____ Licensee _____ .

23



continuing and material" means that due to Licensee's continuing poor Product quality resulting from Licensee's failure to adhere to the Production Standards, Licensor reasonably determines that there is a substantial and material likelihood that it may lose the business with Togo's if Product quality is not improved.

(2) <u>Conditions for Issuance of Notice</u>. In the event that the Production Standards are not being met on a continuing and material basis, Licensor shall notify Licensee in writing ("Notice of Non-Compliance"). The Notice of Non-Compliance may contain a writing from Togo's expressing dissatisfaction with the Products and the Notice of Non-Compliance shall nonetheless set forth the specific reason or reasons therefor.

(3) <u>Opportunity to Cure</u>. The Notice of Non-Compliance will provide Licensee with a fourteen (14) day period within which to cure any alleged non-compliance with the Production Standards. If such non-compliance is not cured or cannot be cured within such fourteen (14) day period, this Agreement shall terminate; provided, however, that if such non-compliance can be cured within a reasonable period of time after such fourteen (14) day period without loss of Togo's as a client, Licensee shall have such additional reasonable period of time to cure such non-compliance.

(b) <u>Failure to Perform Obligations</u>. Licensee fails or neglects to perform or observe any of its existing or future obligations under this Agreement, including, without limitation, (i) the timely payment of the Royalty Fee and any other sums due Licensor within ten (10) days after receipt of a written notice from Licensor that the payment is delinquent; (ii) Licensee fails to render to Togo's that level of service currently delivered by Raybern; (iii) Togo's terminates or threatens to terminate continuing orders for lack of proper service; or (iv) Togo's notifies Licensee or Licensor that it intends to cancel any supply agreement or threatens to do so pursuant to its terms because of Licensee's failure to comply therewith.

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____ Licensee _____

24

(c) Acts in Derogation of Licensor's Agreement Rights.  Licensee attempts to use, license, transfer or convey the Processes, the Rights, the Recipes or the Confidential Information in any manner contrary to the terms of this Agreement or in derogation of Licensor's proprietary rights in the Processes, Rights, Confidential Information, or Recipes without the express written approval of Licensor.

(d)    Insolvency; Bankruptcy. Licensee becomes insolvent, makes an assignment of Licensee's business for the benefit of creditors, files for bankruptcy, is placed in a receivership, bankruptcy or similar proceeding involuntarily, or is a party to any action or proceeding seeking liquidation, reorganization or similar relief under any law.  However, if Licensee is placed in an involuntary receivership, bankruptcy or similar proceeding, Licensee will not be in default hereunder if such proceedings are dismissed with prejudice within sixty (60) days of the date that Licensee is ordered into such proceedings.

(e)  Unauthorized Disclosure.  Unauthorized disclosure of the Confidential Information to a third party.

(f)      Cessation of Business. Cessation of business by Licensee or any successor or assign to whom the Rights, the Processes and the Recipes have been transferred with Licensor's written approval.

(g) Material Misrepresentation.  Licensee makes a material misrepresentation or materially breaches any warranty herein.

(h) Default under Manufacturing Agreement. A default under the Manufacturing Agreement executed by and between Licensor and Licensee as of August 20, 2001 shall be deemed a default under this Agreement.

SECTION 8.03. EVENTS OF DEFAULT - BY LICENSOR. Licensor shall have committed an event of default, and this Agreement may be terminated, if any of the following occur:

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____  Licensee _____

25

(a) <u>Failure to Perform Obligations</u>. If Licensor is found to be in material breach of any warranty made under this Agreement, or materially neglects to perform or observe any of its existing or future obligations under this Agreement, including, but not by way of limitation, the continued promotion and marketing of the Products to Togo's, as provided herein, or the failure to provide adequate quantities of the Spice Mix necessary to meet orders for the Products, and such breach or failure continues five (5) business days for any monetary breach and thirty (30) days for all other breaches after receipt of written notice from Licensee of the breach or failure.

(b) <u>Acts in Derogation of Licensee's Agreement Rights</u>. Licensor attempts to use, license, transfer or convey the Processes, the Rights, or the Recipes or the Confidential Information in any manner contrary to the terms of this Agreement.

(c) <u>Unauthorized Disclosure</u>. Licensor's direct and unauthorized disclosure of the Confidential Information to a third party.

(d) <u>Material Misrepresentation</u>. Licensor makes a material misrepresentation or materially breaches any warranty herein.

(e) <u>Default under Manufacturing Agreement</u>. A default under the Manufacturing Agreement executed by and between Licensor and Licensee as of August 20, 2001 shall be deemed a default under this Agreement.

SECTION 8.04. <u>EFFECT OF TERMINATION -- IF BY DEFAULT OF LICENSEE</u>. Licensee agrees that in the event of termination through its default, all licenses granted hereunder shall terminate, and Licensor's obligations under this Agreement shall cease and that Licensor may seek all remedies available to it in law and in equity.

SECTION 8.05. <u>EFFECT OF TERMINATION -- IF BY DEFAULT OF LICENSOR</u>. Licensor agrees that in the event of termination through its default, Licensee may seek all remedies

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS, Licensor _____ Licensee _____

26

available to it in law or in equity, and Licensee's obligations under this Agreement shall cease.

SECTION 8.056. FAILURE TO AGREE ON PRODUCT COSTS.    This Agreement provides that the parties will review the costs of production and the costs of the raw materials which are incorporated in the formulas set forth in **Exhibit "A"** to determine what adjustments, if any, should be made to the cost of each Product for the subsequent three (3) month period.  In the event that the parties can not agree on the product cost to be used for determining the Net Margin for such subsequent three (3) month period, Licensee shall have the right to terminate this Agreement by providing Licensor six (6) months prior written notice of such termination.  In such event, the product cost to be used by Licensee to determine the Net Margin for the intervening six (6) month period shall be the then existing formula in effect on the date such notice of termination is given adjusted by any changes in average meat raw material costs during the previous and subsequent three (3) month periods using the USDA index specified in **Exhibit "A"** for such Product.

ARTICLE IX

**GENERAL TERMS AND CONDITIONS**

SECTION 9.01. NOTICES. Unless otherwise provided in this Agreement, any notice required or permitted by this Agreement to be given to either party shall be deemed to have been duly given if in writing and delivered personally or mailed by first-class, registered, or certified mail, postage prepaid and addressed as follows:

TO LICENSEE:          ROSE & SHORE, INC.
                      Attn: Irwin Miller, President
                      5151 Alcoa Avenue
                      Vernon, CA 90058
                      Fax: (323) 826-2150

With copy to:         Alan G. Novodor, Esq.
                      LAW OFFICES OF ALAN G. NOVODOR
                      335 N. Maple Drive, Suite 354
                      Beverly Hills, CA 90210-3857
                      Fax: (310) 271-2583

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor _____ Licensee _____ ;

27

| | |
|---|---|
| To Licensor: | RAYBERN FOODS, INC.<br>Attn: Bernard J. Viggiano, President<br>311 West "A" Street<br>Hayward, CA 94541<br>Fax: (510) 786-2710 |
| With copy to: | Robert L. Young, Esq.<br>LAW OFFICES OF ROBERT L. YOUNG, P.C.<br>Two Walnut Creek Center<br>200 Pringle Blvd., Suite 340<br>Walnut Creek, CA 94596<br>Fax: (925) 296-3399 |

SECTION 9.02. ASSIGNMENT OF CONTRACT. Licensee shall not assign nor otherwise transfer its rights under this Agreement, including the license granted hereunder, or to be obtained pursuant to this Agreement or assign this Agreement or its rights hereunder without the prior written consent of Licensor. Any attempt to make such an assignment by Licensee without the written consent of Licensor shall be void. Licensor reserves the right to assign its right to receive the Royalty Fee. However, Licensor may not delegate its duties hereunder without the written consent of Licensee.

SECTION 9.03. BINDING ON HEIRS AND ASSIGNS. This Agreement and each of its provisions shall be binding on the heirs, executors, administrators, successors, and assigns of each of the parties hereto.

SECTION 9.04. AMENDMENTS. Licensor and Licensee agree that this Agreement shall be modified only by a written agreement duly executed by persons authorized to execute agreements on their behalf.

SECTION 9.05. NONWAIVER. Licensor and Licensee agree that no failure to exercise, and no delay in exercising any right, power, or privilege hereunder on the part of either party shall operate as a waiver of any right, power, or privilege. Licensor and Licensee further agree that no single or partial exercise of any right, power, or privilege hereunder shall preclude its further

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

28

47

exercise.

**SECTION 9.06. ATTORNEYS' FEES.** If any legal action or arbitration is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees as awarded by a court of competent jurisdiction, in addition to any other relief to which that party may be entitled. This provision shall be construed as applicable to the entire Agreement.

**SECTION 9.07. SEVERABILITY.** If any part of this Agreement is adjudged by any court of competent jurisdiction to be invalid, that judgment shall not affect or nullify the remainder of this Agreement, and the effect shall be confined to the part immediately involved in the controversy adjudged.

**SECTION 9.08. SURVIVAL OF AGREEMENTS.** Subject to the express limitations contained in this Agreement, all covenants, agreements, representations and warranties made in this Agreement shall survive the execution, delivery and termination of this Agreement and the consummation or performance of the transactions contemplated by this Agreement.

**SECTION 9.09. GOVERNING LAW.** This Agreement shall be deemed to have been made in, and shall be construed pursuant to, the laws of the State of California.

**SECTION 9.10. FURTHER ASSURANCES.** The parties hereto agree to cooperate fully with each other and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by a party, to better evidence and consummate the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this Agreement.

**SECTION 9.11. ENTIRE AGREEMENT.** Licensee and Licensor acknowledge and agree that this Agreement, the Manufacturing Agreement identified in Section 8.02(h) and the Continuing Guaranty identified in Section 9.14 herein are collectively the complete and exclusive statement of the mutual understanding of the parties, that they supersede and cancel all previous written and oral agreements and communications relating to the subject matter of this Agreement, and

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property

INITIALS: Licensor _____ Licensee _____

29

48

that any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement, the Manufacturing Agreement of the Continuing Guaranty are of no force or effect.

SECTION 9.12. COUNTERPARTS. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and whenever executed, shall be deemed executed by the parties on the date first above written.

SECTION 9.13. INCORPORATION. All Recitals and Exhibits hereto are incorporated herein by this reference.

SECTION 9.14. GUARANTEE. The obligations of Licensee under this Agreement have been guaranteed by Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. ("Guarantors") pursuant to a document styled "Continuing Guaranty" and executed by such Guarantors this same date.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

"LICENSOR"                                              "LICENSEE"

RAYBERN FOODS, INC.,                        ROSE & SHORE, INC.
A CALIFORNIA CORPORATION                 A CALIFORNIA CORPORATION

BY: _____          BY: _____
     BERNARD J. VIGGIANO                         IRWIN MILLER
ITS: PRESIDENT                                    ITS: PRESIDENT

Raybern/Licensing Agreementclean 8/28/01

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property        INITIALS: Licensor _____ Licensee _____

30

49

that any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement, the Manufacturing Agreement of the Continuing Guaranty are of no force or effect.

SECTION 9.12. COUNTERPARTS.  This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and whenever executed, shall be deemed executed by the parties on the date first above written.

SECTION 9.13. INCORPORATION.  All Recitals and Exhibits hereto are incorporated herein by this reference.

SECTION 9.14. GUARANTEE.  The obligations of Licensee under this Agreement have been guaranteed by Rite-Way Meat Packers, Inc. and RBR Meat Company, Inc. ("Guarantors") pursuant to a document styled "Continuing Guaranty" and executed by such Guarantors this same date.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

"LICENSOR"                                    "LICENSEE"

RAYBERN FOODS, INC.,                          ROSE & SHORE, INC.
A CALIFORNIA CORPORATION                       A CALIFORNIA CORPORATION

BY: _____                   BY: _____
      BERNARD J. VIGGIANO                            IRWIN MILLER
ITS: PRESIDENT                                 ITS: PRESIDENT

Raybern/Licensing Agreementclean 8/28/01

Agreement for Licensing and Acquisition of
Proprietary Rights, Interests and Property          INITIALS: Licensor ___M___ Licensee _____

30

50.

## Exhibit A
### to
### Agreement for Licensing and Acquisition
### of Proprietary Rights, Interests and Property

Pursuant to the Agreement for Licensing and Acquisition of Proprietary Rights, Interests and Property entered into as of August 20, 2001 by and between Raybern Foods, Inc. and Rose & Shore, Inc., the following costing formulas shall be used to determine Product Costs for the Products as such costing formulas shall be adjusted from time-to-time pursuant to the terms of the Agreement:

| | |
|---|---|
| **Product:** | Togo's Whole Pastrami |
| **Raw Material Cost Index:** | USDA Carlot Beef - FOB Omaha Basis<br>Boneless Processing Beef/Beef Trimmings<br>Average of Daily Weighted Average of 65% lean fresh trimmings<br>plus $.80 per pound |
| **Average Product Yield:**<br>(Blood and Cook Loss) | 97.0% |

**Seasoning Costs:**        $.068 per pound consisting of:

| | |
|---|---|
| Brine into product: | $.0263 |
| Brine to cover and Waste: | $.0100 |
| Rub ($1.20/lb. x 2.4% usage and 10% waste): | $.0317 |

**Packaging Costs:**        $.059 per pound consisting of:

Bag:

| | |
|---|---|
| ($.2439 each-average product<br>weight is 6.5 lbs,<br>plus 10% waste) | $.0413 |

Box:    ($.4714 each + $.02-label
+ $.03-weight sticker, avg 30lb box)        $.0174

**Other Manufacturing Costs:**        $.035 per pound

| | |
|---|---|
| Utilities: | $.0300 |
| Cleaning Supplies | $.0050 |

**Direct Labor:**        $.123 per pound

**Freight and Allowances:**        $.035 per pound

$$\text{Product Cost Per Lb.} = \frac{\text{Raw Materials Cost} + \text{Seasoning} + \text{Packaging} + \text{Other} + \text{Freight and Returns} + \text{Labor}}{\text{Avg Product Yield}}$$

**Initial Product Cost** = $1.58/.97 + .068 + .059 + .035 + .123 + .035 = $1.949 per pound

**Product:**  Togo's Roast Beef

**Raw Material Cost Index:**  USDA Central US Cow Cuts and Boneless Processing Items FOB
Omaha or equivalent basis for the Midwest & FOB Plant for TX & OK
Utility Items - Inside Round Cap Off
Average of the daily low price listed for the Latest Established Market

**Average Product Yield:**  97.0%

**Seasoning Costs:**  $.037 per pound
| | |
|---|---|
| Injection: | $.0120 |
| Rub: | $.0250 |
| ($1.00/lb x 2.5% usage) | |

**Packaging Costs:**  $.061 per pound
Netting:
    ($.19 each x 13 lb avg. pc.)          $.0146
Packaging:
    ($.3584 each—
    avg weight is 13 lb plus 10% waste)     $.0303
Box
    [$.40 each + $.02 (label) + $.03 (weight sticker)
    avg. 28lb box]            $.0161

**Other Manufacturing Costs:**  $.035 per pound
| | |
|---|---|
| Utilities: | $.03 |
| Cleaning Supply: | $.005 |

**Direct Labor:**  $.131 per pound

**Freight and Allowances:**  $.035 per pound

Product Cost Per Lb. = Raw Materials Cost + Seasoning + Packaging + Other + Freight and Returns + Labor
                       Avg Product Yield

**Initial Product Cost = $1.74/.97 + .037 + .061 +.035 + .131 + .035 = $2.093 per pound**

**Product:**                          Togo's Humus

**Raw Materials:**

    Garbanzo Beans
      ($12.75/cs—26lb net weight)
      $.49/lb x 77.58%        =        $.3804

    Paste (several raw materials)
      $.995/lb x 13.50%        =        $.1347

    Spices (blended)
      $.81/lb x 8.92%          =        $.0725

**Average Product Yield:**            96.5%

**Packaging Costs:**                  $.05 per pound

**Other Manufacturing Costs:**        $.035 per pound

**Direct Labor:**                     $.135 per pound

**Freight and Allowances:**           $.035 per pound

Product Cost Per Lb. = Raw Materials Cost + Seasoning + Packaging + Other + Freight and Returns + Labor
                           Avg Product Yield

Initial Product Cost = $0.588/.965 + .05 + .035 + .135 + .035 = $0.86 per pound

## EXHIBIT "B"

## GRANT OF LICENSE

RAYBERN FOODS, INC., a California corporation, ("Licensor") hereby grants
to ROSE & SHORE, INC., a California corporation, ("Licensee") an exclusive non-
transferable license to process and sell pastrami, roast beef and humus to the chain of fast
food restaurant franchises, commonly known or referred to as "Togo's Eateries" or
"Togo's Famous Sandwiches as of the date of execution of this Grant, on all terms and
conditions as are specified in that certain document styled "Agreement for Licensing and
Acquisition of Proprietary Rights, Interests and Property" ("Contract") executed by and
between Licensor and Licensee as of August 20, 2001. The Contract is incorporated
herein by this reference.

RAYBERN FOODS, INC.

By:_____
       Bernard J. Viggiano, President

Dated:_____

54

1  LAW OFFICES OF KYRA A. SUBBOTIN
   KYRA A. SUBBOTIN State Bar No. 104944
2  2625 Alcatraz Avenue, No. 152
   Berkeley, CA 94705
3  Telephone: (510) 923-0451
   Facsimile (510) 923-0565
4
   Attorney for Defendants Raybern Foods, Inc.
5  and Bernard J. Viggiano

FILED BY FAX
ALAMEDA COUNTY
March 23, 2005
CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy
CASE NUMBER:
RG04141329

6

7

8            SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF ALAMEDA

10

11 TRI COMMERCIAL REAL ESTATE         )  Case No. RG 04141329
12 SERVICES, INC.,                     )
                                        )  CROSS-COMPLAINT AGAINST TRI
13        Plaintiff,                    )  COMMERCIAL REAL ESTATE
                                        )  SERVICES, INC., JOHN FULTS,
14        vs.                           )  AND ROBERT L. YOUNG,
                                        )  INDIVIDUALLY AND DBA LAW
15 RAYBERN FOODS, INC., BERNARD        )  OFFICES OF ROBERT L. YOUNG
   J. VIGGIANO, and DOES 1-20          )
16                                      )
          Defendants.                   )
17 _____ )
                                        )  Trial Date: July 22, 2005
18 RAYBERN FOODS, INC.,                )
                                        )
19        Cross-complainant,            )
                                        )
20        vs.                           )
                                        )
21 TRI COMMERCIAL REAL ESTATE          )
   SERVICES, INC., JOHN FULTS,         )
22 ROBERT L. YOUNG, individually and   )
   dba LAW OFFICES OF ROBERT           )
23 YOUNG                                )
                                        )
24        Cross-defendants.             )
   _____ )
25

26  Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

27                 **GENERAL ALLEGATIONS**

28  1. TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

41461.1


EXHIBIT 2

55

1  times was a California corporation that had its principal place of business in San

2  Francisco and is the plaintiff in this action.

3      2. John Fults is and at all relevant times was a licensed real estate agent

4  and independent contractor affiliated with TRI. At all relevant times, Fults held

5  himself out as president of Keystone Financial , a different corporation than TRI

6  and one for which Fults served as president.  Fults held himself out to Raybern as

7  someone with superior financial knowledge and abilities and significant experience

8  in handling the type of transactions that form the basis of this lawsuit.

9      3. Cross-complainant is informed and believes and thereon alleges that

10  Robert L. Young was at all relevant times an officer and director of TRI and, with

11  respect to certain actions alleged herein, acted as its agent and within the course

12  and scope of his obligations as an officer and director of TRI.  Raybern is further

13  informed and believes that Robert L. Young was at all times a member of the

14  California bar and a practicing attorney holding himself out as having expertise in

15  the type of transactions that form the basis of this lawsuit.

16      4. Cross-complainant is informed and believes and thereon alleges that

17  Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

18  Offices of Robert L. Young, a professional corporation at various times relevant

19  herein.  Young and the Law Offices of Robert L. Young  provided advice and

20  services to Raybern in connection with the transactions between Raybern and Rose

21  & Shore.

22      5. The acts set forth herein occurred within the jurisdiction of this Court and

23  are related to and part of the series of transactions forming the basis of the TRI's

24  complaint.

25

26      **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

27              (Against Robert Young, Fults, and TRI)

28      6. In early 2001, Raybern retained TRI, through its purported agent, John

- 2 -

41461.1

56

1     Fults, to represent Raybern in connection with negotiations toward the formation of

2     a strategic business alliance with another entity, Rose & Shore.   In that capacity

3     Fults and TRI were acting as fiduciaries to Raybern and owed Raybern the highest

4     duty of honesty and loyalty.  At the time Raybern retained TRI, it did not know of

5     or understand the true relationship between Young and TRI or between Fults and

6     TRI, and the cross-defendants did not disclose said relationships to Raybern.

7           7.  TRI, through its purported agent Fults, then undertook to have Raybern

8     hire Young to perform services of a legal and/or business nature for Raybern.

9           8.  Raybern hired Young and the Law Offices of Robert L. Young on or about

10    May 10, 2001, at TRI and Fults's recommendation.  At the time Raybern hired

11    Young and commenced payment for his services, Raybern did not know that Young

12    was, in fact, an officer and/or director of TRI.  Neither TRI, nor Fults, nor Young

13    disclosed that fact, and none of them disclosed that Fults had a prior and ongoing

14    personal and/or professional relationship with Young.

15          9.  The services performed by TRI by and through Young, its officer and

16    director, resulted in the consummation of a transaction upon which TRI now is

17    seeking damages.  The services that Young provided included legal services as well

18    as services which TRI/Fults had already agreed to provide Raybern in exchange for

19    a commission from the Raybern/Rose & Shore transactions.  Raybern was billed for

20    and paid Young substantial fees for his services.

21          10.  During the course of his representation of Raybern, Young failed to

22    adequately protect Raybern's financial interests in the transactions with Rose &

23    Shore and likewise failed to adequately protect Raybern when TRI's purported

24    agent, John Fults, announced that he intended to withdraw from further

25    representation of Raybern.

26          11.  Young, Fults, and TRI's actions breached their respective fiduciary

27    duties to Raybern, resulting in damages to Raybern in an amount to be proven at

28    trial.

                                              - 3 -

                                                                                        41461.1

1      <u>__SECOND CAUSE OF ACTION  - PROFESSIONAL NEGLIGENCE__</u>

2            (Robert Young/Law Offices of Robert L. Young)

3        12.  Cross-complainant realleges paragraphs 1 through 10 as though fully set

4 forth herein.

5        13.  Young's services on behalf of Raybern fell below the standard of care for

6 legal professionals in that he failed to adequately disclose his relationship with TRI

7 and likewise failed to protect his client's interests vis a vis TRI when TRI's agent

8 withdrew from representing Raybern.  Young's negotiations for and drafting of

9 Raybern's contracts with Rose & Shore failed to adequately protect Raybern's long-

10 term financial interests in its relationship with Rose & Shore.

11        14.  Young's disclosures and services fell below the standard of care for legal

12 professionals and proximately cause damage to Raybern, for which Raybern seeks

13 recovery herein.

14

15           <u>__THIRD CAUSE OF ACTION - NEGLIGENCE__</u>

16                  (All Defendants)

17        15.  Cross-complainant realleges paragraphs 1 through 10 as though fully set

18       forth herein.

19        16.  Cross-defendants and each of them owed Raybern a duty of care to

20 protect the financial interests of Raybern in the series of transactions in which

21 defendants were involved.  Cross-defendants breached their duty of care to

22 Raybern, resulting in past and future financial losses.

23

24        <u>__FOURTH CAUSE OF ACTION - PROMISSORY FRAUD__</u>

25                (Fults; TRI)

26        17.  Cross-complainant realleges paragraphs 1 through 10 as though fully set

27 forth herein.

28        18.  TRI, through its purported agent Fults, knowingly misrepresented its

41461.1

58

1   background and skill in brokering deals of the sort that Raybern and Rose & Shore

2   were contemplating.  Furthermore, they misrepresented the nature of the services

3   they would be providing; neither TRI nor Fults intended to provide due diligence

4   through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

5   needed those services and had expressly obtained TRI/Fults's agreement to provide

6   such services in exchange for its commission.

7       19.  In entering into an agreement with TRI/Fults, Raybern relied on TRI

8   and Fults's representations as to the degree of skill and type of services it would be

9   providing in connection with the negotiation of the Raybern/Rose & Shore

10  transaction.    Raybern's reliance on cross-defendants' representations was

11  reasonable.

12      20.  As a result of Raybern's reliance on TRI and Fults's representations,

13  Raybern suffered consequential damages in an amount to be proven at trial.

14      21.  TRI/Fults intentional conduct was undertaken with aim of causing

15  Raybern injury and was sufficient to support an award of punitive damages

16  pursuant to Civil Code §3294.

17

18              **PRAYER FOR RELIEF**

19  Wherefore cross-defendant prays for relief as follows:

20      1.  For compensatory damages according to proof;

21      2.  For a disgorgement of all professional fees paid to Robert Young and the

22  Law Offices of Robert L. Young in connection with professional services rendered in

23  connection with the transactions underlying this lawsuit;

24      3.  For punitive damages according to proof;

25      4.  For costs of suit herein; and

26      5.  For such other and further relief as the Court deems just and proper.

27

28

- 5 -

59

Dated: March 18, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _Kyra Subbotin_ _____
      Kyra A. Subbotin

## DEMAND FOR JURY TRIAL

Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all claims asserted herein.

Dated: March 18, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _Kyra Subbotin_ _____
      Kyra A. Subbotin

41461.1

## PROOF OF SERVICE
### [C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

I, Kyra A. Subbotin, state:

I am a citizen of the United States.  My business address is 2625 Alcatraz Avenue, No. 152, Berkeley, California 94705.  I am employed in the city of Berkeley, County of Alameda, where this mailing occurs.  I am over the age of eighteen years and not a party to this action.  On the date set forth below, I served **Cross-complaint of Raybern Foods, Inc.** on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Albert E. Cordova, Esq.
1299 Fourth Street, Suite 202
San Rafael, CA 94901
Facsimile: 415 453-6260

\_:     BY FIRST CLASS MAIL - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

X:     BY FACSIMILE - I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above pursuant to a written agreement between counsel for the parties in this action.

\_:     BY HAND DELIVERY - I caused said document to be hand delivered to the person(s) noted above.

\_:     BY OVERNIGHT MAIL - I caused said document to be placed with an overnight mailing service for delivery the following business day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date at Point Richmond, California.

Dated: March 22, 2005

Kyra A. Subbotin

S2533.1

61

1  LAW OFFICES OF KYRA A. SUBBOTIN
   KYRA A. SUBBOTIN State Bar No. 104944
2  2625 Alcatraz Avenue, No. 152
   Berkeley, CA 94705
3  Telephone: (510) 923-0451
   Facsimile (510) 923-0565
4
   Attorney for Defendants Raybern Foods, Inc.
5  and Bernard J. Viggiano

6

7

8                 SUPERIOR COURT OF CALIFORNIA

9                    COUNTY OF ALAMEDA

10

11

12  TRI COMMERCIAL REAL ESTATE       )  Case No.  RG 04141329
    SERVICES, INC.,                  )
13             Plaintiff,            )  FIRST AMENDED CROSS-
                                     )  COMPLAINT AGAINST TRI
14      vs.                          )  COMMERCIAL REAL ESTATE
                                     )  SERVICES, INC., JOHN FULTS,
15  RAYBERN FOODS, INC., BERNARD     )  AND ROBERT L. YOUNG,
    J. VIGGIANO, and DOES 1-20       )  INDIVIDUALLY AND DBA LAW
16                                   )  OFFICES OF ROBERT L. YOUNG
             Defendants.            )
17  _____ )
                                     )
18  RAYBERN FOODS, INC.,             )
                                     )
19          Cross-complainant,       )
                                     )
20      vs.                          )
                                     )
21  TRI COMMERCIAL REAL ESTATE       )
    SERVICES, INC., JOHN FULTS,      )
22  ROBERT L. YOUNG, individually and)
    dba LAW OFFICES OF ROBERT        )
23  YOUNG                            )
                                     )
24          Cross-defendants.        )
    _____ )
25

26  Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

27                    **GENERAL ALLEGATIONS**

28      1.  TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

FILED BY FAX
ALAMEDA COUNTY

July 26, 2005

CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy

CASE NUMBER:
RG04141329

41461.1

EXHIBIT 3

1   times was a California corporation that had its principal place of business in San

2   Francisco and is the plaintiff in this action. TRI provides professional brokerage

3   services to client throughout the state of California and within the jurisdiction of

4   this Court.

5       2. Cross-complainant is informed and believes and thereon alleges that John

6   Fults (Fults) is and at all relevant times was a licensed real estate agent and

7   independent contractor affiliated with TRI.  At all relevant times, Fults held

8   himself out as president of Keystone Financial , a different corporation than TRI

9   and one for which Fults served as president.  The exact nature of the relationship

10  between Keystone Financial and TRI is as yet unknown.  Fults held himself out to

11  Raybern as someone with superior financial knowledge and abilities and significant

12  experience in handling the type of transactions that form the basis of this lawsuit.

13      3. Cross-complainant is informed and believes and thereon alleges that

14  Robert L. Young (Young) was an officer and director of TRI and, as such, had a

15  degree of control over or influence on TRI's actions herein.  With respect to certain

16  actions alleged herein, Young acted as TRI's  agent and within the course and scope

17  of his position as an officer and/or director of TRI.  Raybern contends that in failing

18  to disclose his role as an officer and director of TRI, Young placed his interests as an

19  officer and/or director of TRI above his professional obligations to Raybern.

20  Raybern is further informed and believes that Robert L. Young was at all times a

21  member of the California bar and a practicing attorney claiming expertise in the

22  type of transactions that form the basis of this lawsuit.  Raybern is informed and

23  believes and thereon alleges that Young was an undisclosed business associate of

24  Fults and served as an advisor to various business entities owned and/or controlled

25  by Fults.

26      4. Cross-complainant is informed and believes and thereon alleges that

27  Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

28  Offices of Robert L. Young, a professional corporation at various times relevant

41461.1

63

1   herein.  Young and the Law Offices of Robert L. Young  provided advice and

2   services to Raybern in connection with the transactions between Raybern and Rose

3   & Shore as well as other business matters during the same time period that the

4   Rose & Shore transactions were being negotiated.  In such a capacity, Young and

5   the Law Offices of Robert L. Young owed a fiduciary duty to Raybern.

6       5. The acts set forth herein occurred within the jurisdiction of this Court and

7   are related to and part of the series of transactions forming the basis of the TRI's

8   complaint.

9

10       **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

11                (Against Fults, and TRI)

12       6. In early 2001, Raybern retained TRI, through its purported agent, John

13   Fults, to represent Raybern in connection with negotiations toward the formation of

14   a strategic business alliance with another entity, Rose & Shore.  The purpose of

15   that alliance, among other things, was to allow Rose & Shore to take over the

16   manufacturing of certain products, including products that were provided to

17   Raybern's major client, Togo's Eateries, Inc. (Togo's) and to ultimately allow

18   Raybern to close its Hayward manufacturing plant.   In agreeing to represent

19   Raybern in the transactions with Rose & Shore, Fults and TRI were acting as

20   fiduciaries to Raybern and owed Raybern the highest duty of honesty and loyalty in

21   negotiating the business alliance with Rose & Shore. At the time Raybern retained

22   TRI, it did not know of or understand the true relationship between  TRI and Fults,

23   nor did it understand the full relationship between TRI and its then-officer/director

24   Young, who was also involved in the negotiation of the Rose & Shore contracts and

25   who subsequently represented Raybern in other unrelated business transactions..

26       7. TRI, through its purported agent Fults, then urged Raybern to hire Young

27   to perform services of a legal and business nature for Raybern. On Fults'

28   recommendation, Raybern did hire Young in May 2001 and continued to pay Young

41461.1

64

1  for his services through at least November 2002.  Raybern paid Young professional

2  fees in excess of $51,000 in connection with the Rose & Shore transactions, and also

3  paid Young for services in connection with at least two other business matters in

4  which Young provided advice to Raybern.

5        8.  TRI, and its purported agent Fults, breached their fiduciary duty to

6  Raybern by failing to disclose Fults's background and experience and for failing to

7  disclose the relationships between TRI, Young, and Fults.  Specifically, Raybern

8  would not have engaged Fults had it known of Fults's true business background

9  and Fults's own legal troubles, including a personal bankruptcy and threatened or

10 ongoing litigation involving allegations of breach of fiduciary.  TRI and Fults

11 likewise breached their fiduciary duty to Raybern by failing and refusing to fulfill

12 their promise to monitor Rose & Shore's performance and payments under its

13 contract with Raybern and by withdrawing from the transaction before it was

14 finalized.  TRI and Fults breached their fiduciary obligations to Raybern by failing

15 to insure that Raybern's goal – tying the August 20, 2001 licensing agreement

16 between Rose & Shore and Raybern to continued performance by Rose & Shore

17 under a separate Manufacturing Agreement executed that same date – was

18 achieved.  Instead, the Manufacturing Agreement, which involved the manufacture

19 of sandwich products for customers other than Togo's,  contained a provision

20 allowing Rose & Shore to terminate the agreement upon eight months' notice and in

21 the absence of default by Raybern.   Rose & Shore has, in fact, exercised its right to

22 terminate the Manufacturing Agreement and has continued to operate under the

23 Licensing Agreement.   Finally, TRI and Fults breached their fiduciary duty by

24 failing to disclose that the attorney they were recommending to represent Raybern

25 was, in fact, a business associate of Fults and an officer and director of TRI, and

26 therefore had a vested interest in ensuring that the Rose & Shore transaction was

27 consummated so that TRI would receive a commission.

28        9.  As a proximate result of TRI and Fult's breach of its fiduciary duty to

- 4 -

41461.1

65

1    Raybern, Raybern has incurred damages, including but not limited to (1) fees paid

2    to Young for certain negotiating services that should have been performed by TRI

3    and Fults under their agreement with Raybern; (2) fees paid to Young for services

4    which benefitted TRI and not Raybern; (3) attorneys fees incurred in an attempt to

5    prevent Rose & Shore's unilateral withdrawal from the Manufacturing Agreement;

6    and (4) costs incurred in connection with monitoring the Rose & Shore relationship,

7    as Fults had promised he would do but failed to do; and (5) costs relating to re-

8    opening of Raybern's Hayward facility as a result of Rose & Shore's termination of

9    the Manufacturing Agreement without cause.

10

11          **SECOND CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

12          (Against Robert L. Young, Law Offices of Robert L. Young)

13        10.  Raybern realleges paragraphs 1-5 and paragraph 7 as though fully set

14    forth herein.

15        11.  Raybern hired Young and the Law Offices of Robert L. Young

16    (collectively "Young") on or about May 10, 2001, at TRI and Fults's

17    recommendation.  At the time Raybern hired Young and commenced payment for

18    his services, Raybern did not know that Young was, in fact, an officer and/or

19    director of TRI.  Neither TRI, nor Fults, nor Young disclosed that fact, and none of

20    them disclosed that Fults had a prior and ongoing personal and/or professional

21    relationship with Young and that Young had also served as an agent of other

22    business entities owned or controlled by Fults.

23        12.  As Raybern's attorney, Young owed his client a fiduciary duty to disclose

24    all relevant facts regarding his relationship with TRI and Fults.  Specifically, he

25    had an obligation to inform Raybern that he was then serving as an officer and/or

26    director of TRI and therefore had conflicting fiduciary duties.  He likewise had an

27    obligation to inform Raybern of his relationship to Fults and his knowledge of Fults'

28    business background and experience.  Further, he had a duty to protect Raybern's

41461.1

*bb*

1  interest when Fults withdrew from the Rose & Shore transactions and to take all

2  steps available to protect Raybern in connection with that withdrawal.

3       13.  During the course of his representation of Raybern, and in the interest of

4  effecting a transaction that would result in a commission to TRI, the company upon

5  whose board he served, Young failed to disclose his relationships with TRI and

6  Fults, and he failed adequately to protect Raybern's financial interests in the

7  transactions with Rose & Shore.  Specifically, Young failed to insure that the

8  Manufacturing Agreement was tied to the Licensing Agreement; Instead the

9  Manufacturing Agreement had a provision allowing Rose & Shore to terminate the

10  Manufacturing Agreement even absent default by Raybern and yet continue to

11  operate under the more lucrative Licensing Agreement.  Young likewise breached

12  his fiduciary duty to Raybern by failing to include language in the Licensing

13  Agreement making it clear that Fults had the obligation to and would be

14  monitoring the Rose & Shore financials through the life of the Raybern/Rose &

15  Shore contract, an issue now in dispute in this lawsuit. Young likewise failed to

16  take steps to protect Raybern's interest upon learning that Fults refused to continue

17  performing under his contract with Raybern.  Finally, when Raybern asked Young

18  to review a listing agreement between TRI and Raybern – an agreement that would

19  result in a commission to TRI upon sale of Raybern's Hayward property -- Young

20  again failed to disclose his true relationship with TRI.

21       14.  Young's breach of his fiduciary duty to his client, Raybern, proximately

22  resulted in damage to Raybern.  Specifically, Raybern paid Young over $51,000 in

23  attorneys fees which, under the law involving undisclosed conflicts of interest, he

24  had no obligation to pay.  Raybern has also been forced to incur attorneys fees to

25  defend this action which would not have been brought had Young properly advised

26  Raybern upon Fults's withdrawal from the underlying transaction.  Raybern has

27  also had to retain an attorney in connection with Rose & Shore's withdrawal from

28  the Manufacturing Agreement – a withdrawal that should have been prohibited

41461.1

67

1   absent a default by Raybern.  Finally, as a result of Young's failure to draft a

2   Manufacturing Contract that ensured Rose & Shore's continued performance,

3   Raybern has incurred substantial costs to reopen its Hayward processing plant to

4   accommodate the business heretofore handled by Rose & Shore under the

5   Manufacturing Contract, yet is unable to withdraw from the Licensing Agreement.

6

7              **THIRD CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE**

8                       (Robert Young/Law Offices of Robert L. Young)

9         15.  Cross-complainant realleges paragraphs 1 through 5, 7, and 10-14 as

10  though fully set forth herein.

11        16.  Young's services on behalf of Raybern fell below the standard of care for

12  legal professionals in that he failed to adequately fully disclose his relationship with

13  TRI, in direct contravention of the Professional Rules of Conduct.  Young likewise

14  failed to protect his client's interests vis a vis TRI when TRI's agent withdrew from

15  representing Raybern by either negotiating a novation of the Fults/Raybern

16  contract or disclosing his ongoing conflict and referring Raybern to other counsel.

17  As a result, Raybern is now forced to defend this action.  Young's negotiations and

18  drafting of Raybern's contracts with Rose & Shore likewise fell below the standard

19  of care in that they did not adequately protect Raybern or accomplish Raybern's

20  stated goal of ensuring that Rose & Shore would be handling all of its

21  manufacturing, not just that implicated in the Licensing Agreement.  Raybern

22  made clear that it was closing its Hayward facility and, as a consequence, Rose &

23  Shore should not be given an opportunity to  unilaterally repudiate its obligations

24  under the Manufacturing Agreement while maintaining the more lucrative business

25  that was the subject of the Licensing Agreement.  In drafting the Manufacturing

26  Agreement and providing Rose & Shore with the ability to withdraw from the

27  contract even absent default by Raybern, Young failed to protect his client's goals.

28        17. Young's breach of his professional duty to his client, Raybern,

- 7 -

41461.1

1   proximately resulted in damage to Raybern. Specifically, Raybern has been forced

2   to incur attorneys fees to defend this action. Raybern has also had to retain an

3   attorney in connection with Rose & Shore's withdrawal from the Manufacturing

4   Agreement – a withdrawal that should have been prohibited absent a default by

5   Raybern.       Finally, as a proximate result of Young's failure to draft a

6   Manufacturing Contract that ensured Rose & Shore's continued performance,

7   Raybern has incurred substantial costs to reopen its Hayward processing plant to

8   accommodate the business heretofore handled by Rose & Shore under the

9   Manufacturing Contract. Finally, as a proximate result of Young's breach of his

10  obligation to fully disclose his relationship with TRI and Fults, Raybern has

11  incurred fees paid to Young, and hereby seeks disgorgement of those fees.

12

13              **FOURTH CAUSE OF ACTION - NEGLIGENCE**

14                              (All Defendants)

15              18.  Cross-complainant realleges paragraphs 1 through 9, 11 through 14, and

16  16 through 17, as though fully set forth herein.

17              19.  Cross-defendants and each of them owed Raybern a duty of ordinary care

18  to protect the financial interests of Raybern in the series of transactions in which

19  defendants were involved. Raybern reasonably relied on the professional expertise

20  of TRI, Fults, and Young in protecting his interests in the transactions with Rose

21  & Shore and ensuring that Raybern's goal of shifting its manufacturing business

22  to Rose & Shore was accomplished. As outlined above, cross-defendants and

23  each of them, breached their duty of care to Raybern. As a proximate result of

24  Young's failure to draft a Manufacturing Contract that ensured Rose & Shore's

25  continued performance, Raybern has incurred substantial costs to reopen its

26  Hayward processing plant to accommodate the business heretofore handled by Rose

27  & Shore under the Manufacturing Contract. Finally, as a proximate result of

28  Young's breach of his obligation to fully disclose his relationship with TRI and

                              - 8 -

69

1    Fults, Raybern has incurred fees paid to Young, and hereby seeks disgorgement of

2    those fees.

3

4                    **FIFTH  CAUSE OF ACTION – PROMISSORY FRAUD**

5                                      (Fults; TRI)

6           20.  Cross-complainant realleges paragraphs 1 through 5 as though fully set

7    forth herein.

8           21.  TRI, through its purported agent Fults, knowingly misrepresented its

9    background and skill in brokering deals of the sort that Raybern and Rose & Shore

10   were contemplating.  Furthermore, they misrepresented the nature of the services

11   they would be providing; neither TRI nor Fults intended to provide due diligence

12   through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

13   needed those services and had expressly obtained TRI/Fults's agreement to provide

14   such services in exchange for its commission.

15          22.  In entering into an agreement with TRI/Fults, Raybern reasonably relied

16   on TRI and Fults's representations as to the degree of skill and type of services it

17   would be providing in connection with the negotiation of the Raybern/Rose & Shore

18   transaction.

19          23.  As a result of Raybern's reliance on TRI and Fults's representations,

20   Raybern suffered consequential damages in that TRI and Fults did not adequately

21   protect Raybern's interests in the Rose & Shore transactions and Raybern has had

22   to provide its own due diligence and has had to continue to negotiate the terms of

23   its deal with Rose & Shore, at substantial cost to Raybern.

24          24.  TRI/Fults intentional conduct was undertaken with fraud and with the

25   aim of causing Raybern injury and was sufficient to support an award of punitive

26   damages pursuant to Civil Code §3294.

27

28

41461.1

70

**PRAYER FOR RELIEF**

Wherefore cross-defendant prays for relief as follows:

1. For compensatory damages according to proof;

2. For a disgorgement of all professional fees paid to Robert Young and the Law Offices of Robert L. Young in connection with professional services rendered to Raybern;

3. For punitive damages according to proof;

4. For costs of suit herein; and

5. For such other and further relief as the Court deems just and proper.

Dated: July 25, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
Kyra A. Subbotin

**DEMAND FOR JURY TRIAL**

Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all claims asserted herein.

Dated: July 25, 2005

LAW OFFICES OF KYRA SUBBOTIN

By: _____
Kyra A. Subbotin

- 10 -

41461.1

## PROOF OF SERVICE
[C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

I, Kyra A. Subbotin, state:

I am a citizen of the United States. My business address is 2625 Alcatraz Avenue, No. 152, Berkeley, California 94705. I am employed in the city of Berkeley, County of Alameda, where this mailing occurs. I am over the age of eighteen years and not a party to this action. On the date set forth below, I served **FIRST AMENDED CROSS-COMPLAINT** on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Albert E. Cordova, Esq.                         Frederick Hagen, Esq.
1299 Fourth Street, Suite 202                   Berding & Weil
San Rafael, CA 94901                            3240 Stone Valley Road West
Facsimile: 415 453-6260                         Alamo, CA 94507

✕    <u>BY FIRST CLASS MAIL</u> - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business. I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

\_:    <u>BY FACSIMILE</u> - I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above pursuant to a written agreement between counsel for the parties in this action.

\_:    <u>BY HAND DELIVERY</u> - I caused said document to be hand delivered to the person(s) noted above.

\_:    <u>BY OVERNIGHT MAIL</u> - I caused said document to be placed with an overnight mailing service for delivery the following business day.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date at Berkeley, California.

Dated: July 26, 2005

_____
Kyra A. Subbotin

52533.1

72

*4115385*

1  Clifford R. Horner, Esq., State Bar No. 154353
   Fredrick A. Hagen, Esq., State Bar No. 196220
2  **BERDING & WEIL LLP**
   3240 Stone Valley Road West
3  Alamo, California 94507
   Telephone:    925/838-2090
4  Facsimile:    925/820-5592

5  Attorneys for Cross-Defendant and Cross-Complainant
   ROBERT YOUNG

6

7

# F I L E D
## ALAMEDA COUNTY

AUG. 2 4 2005

CLERK OF THE SUPERIOR COURT
By _Wanza H. Das_
                    DEPUTY

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF ALAMEDA

10

11  TRI COMMERCIAL REAL ESTATE SERVICES, INC.,      No. RG 04141329

12            Plaintiff,                    **CROSS-COMPLAINT OF ROBERT
                                            YOUNG FOR EQUITABLE
13      vs.                                 INDEMNITY, APPORTIONMENT
                                            OF FAULT, EXPRESS INDEMNITY
14  RAYBERN FOODS, INC., BERNARD J. BIGGIANO,   AND DECLARATORY RELIEF**
    and DOES 1-20
15
            Defendants.
16  _____/
    RAYBERN FOODS, INC.,
17
            Cross-Complainant,
18
        vs.
19
    TRI COMMERCIAL REAL ESTATE SERVICES, INC.,
20  JOHN FULTS, ROBERT L. YOUNG, individually and
    dba LAW OFFICES OF ROBERT YOUNG,
21
            Cross-Defendants.
22  _____/
    ROBERT YOUNG,
23
            Cross-Complainant,
24
        vs.
25
    TRI COMMERCIAL REAL ESTATE SERVICES, INC.;
26  JOHN FULTS, an individual, and ROES 1-50, inclusive,

27          Cross-Defendants.
    _____/
28

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-1-

EXHIBIT  4

73

1    Comes now Cross-Complainant Robert Young ("Young" or "Cross-Complainant") in the

2    above-entitled matter and alleges as follows:

3    **FIRST CAUSE OF ACTION**
     **(Equitable Indemnity)**
4    **Against All Cross-Defendants**

5    1.    Cross-Defendant TRI COMMERCIAL REAL ESTATE SERVICES, INC.

6    ("TRI") is, and at all times herein mentioned was, a corporation organized and existing under the

7    laws of the State of California, doing business in the State of California, County of Alameda.

8    2.    Cross-Defendant John Fults ("Fults") is an individual residing or doing business in

9    the County of Alameda, State of California.

10    3.    Roe Cross-Defendants 1-50 are alleged herein to be in some manner the servants,

11    employees, co-venturers, partners, agents or principals, of some or all of each other Cross-

12    Defendants and, for each other were acting within the course and scope of their venture,

13    partnership, agency or employment at all times relevant hereto.

14    4.    The true names and capacities of the Cross-Defendants sued as Roes 1-50 herein

15    are unknown to Cross-Complainant at this time.  Cross-Complainant will seek leave of court to

16    amend this cross-complaint to assert the true names and/or capacities of the Roe Cross-

17    Defendants, if and when that information becomes available.

18    5.    In the principal action, Cross-Complainant Raybern Foods, Inc. ("Raybern")

19    alleges, among other things, conduct entitling it to compensatory damages against TRI, John

20    Fults, and Young.  Those allegations are specifically and unequivocally denied by Young, but are

21    set forth and incorporated herein in their entirety for reference purposes only.  Young contends

22    that it is not liable to anyone in any manner for the events and/or occurrences described in

23    Raybern's Cross-Complaint.

24    6.    If Young is found to be liable to Cross-Complainant Raybern in some manner, or

25    to anyone else, as a result of the incidents and occurrences described in the Raybern Cross-

26    Complaint, the liability of Young would be based solely upon some derivative form of liability,

27    not resulting from his own conduct, but only based upon an obligation imposed upon him by law.

28    Therefore, Young would be entitled to complete equitable indemnity from Cross-Defendants

-2-

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

74

1   herein, and each of them.

2       WHEREFORE, Cross-Complainant prays for damages as set forth below.

3                          **SECOND CAUSE OF ACTION**
                              **(Apportionment of Fault)**
4                         **Against All Cross-Defendants**

5       7.      Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

6   through 6, as if fully set forth herein.

7       8.      On information and belief, if any liability is found pursuant to Raybern's Cross-

8   Complaint, each Cross-Defendant named herein was responsible, in whole or in part, for the

9   injuries and damages, if any, sustained by Raybern. If Young is adjudged liable to Raybern, each

10  Cross-Defendant herein should be required to pay that share of any such judgment which is

11  proportionate to the comparative negligence of that Cross-Defendant, and to reimburse Cross-

12  Complainant for any payments it might make to Raybern in excess of its proportionate share of

13  all Cross-Defendants' negligence.

14      WHEREFORE, Cross-Complainant prays for damages as set forth below.

15                          **THIRD CAUSE OF ACTION**
                              **(Express Indemnity)**
16                           **Against TRI Only**

17      9.      Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

18  through 8, as if fully set forth herein.

19      10.     The allegations against Young in Raybern's Cross-Complaint are based on

20  Young's alleged activities as an officer and director of TRI. For example, Paragraph 3 of

21  Raybern's First Amended Cross-Complaint states:

22          "Cross-Complainant is informed and believes and thereon alleges
            that Robert L. Young (Young) was an officer and director of TRI
23          and, as such, had a degree of control over or influence on TRI's
            actions herein.  With respect to certain actions alleged herein,
24          Young acted as TRI's agent and within the course and scope of his
            position as an officer and/or director of TRI.  Raybern contends
25          that in failing to disclose his role as an officer and director of TRI,
            Young placed his interests as an officer and/or director of TRI
26          above his professional obligations to Raybern." (Emphasis in bold
            added.)

27

28

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-3-

1    11.    . As shown, Raybern's Cross-Complaint is brought against Young in his capacity as

2 and based upon his actions and interests as an officer and/or director of TRI.

3    12.    TRI is obligated to defend and indemnify Young under Section 29 of the

4 Amended and Restated Bylaws of TRI (the "TRI Bylaws"), dated January 29, 1996, and under

5 Section 317 of the California Corporations Code.    Section 29 of the TRI Bylaws states, in

6 pertinent part:

>    (a)    Indemnification.  To the fullest extent permissible under California law, and, to the extent authorized by the Articles of Incorporation, in excess of that which is expressly permitted by Section 317 of the California Corporations Code, the corporation shall indemnify its directors and officers against all expenses, judgments, fines, settlements and other amounts actually and reasonably incurred by them in connection with any proceeding, including an action by or in the right of the corporation, by reason of the fact that such director or officer is or was serving as a director, officer, trustee, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, trustee, employee or agent of another corporation, or of a partnership, joint venture, trust or other enterprise (including service with respect to employee benefit plans).  To the fullest extent permissible under California law, expenses incurred by a director or officer seeking indemnification under this Bylaw in defending any proceeding shall be advanced by the corporation as they are incurred upon receipt by corporation of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that the director or officer is not entitled to be indemnified by the corporation for those expenses. The rights granted by this Bylaw are contractual in nature and, as such, may not be altered (other than prospectively in connection with acts and liabilities not occurring or arising prior to the date of alteration) with respect to any present or former director or officer without the written consent of that person.

>    (b)    Procedure.  Upon written request to the Board of Directors by a person seeking indemnification under this Bylaw, the Board shall promptly determine in accordance with Section 317(e) of the California Corporations Code whether the applicable standard of conduct has been met and, if so the Board shall authorize indemnification.    If the Board cannot authorize indemnification because the number of directors who are parties to the proceeding with respect to which indemnification is sought prevents the formation of a quorum of directors who are not parties to the proceeding, then, upon written request by the person seeking indemnification, independent legal counsel (by means of a written opinion obtained at the corporation's expense) or the corporation's shareholders shall determine whether the applicable standard of conduct has been met and, if so, shall authorize indemnification.

>    (c)    Definitions.  The term "proceeding" means any threatened, pending or completed action or proceeding, whether civil, criminal,

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS INDEMNITY AND DECLARATORY RELIEF.

-4-

76

1        administrative or investigative. The term "expenses" includes,
without limitation, attorneys' fees and any expenses of establishing
2        a right to indemnification.

3        13.     The allegations against Young in the Cross-Complaint are specifically based on

4  the fact that Mr. Young was an officer and director of TRI. Thus, under California Corporations

5  Code Section 317(d), TRI must pay Mr. Young's expenses actually and reasonably incurred in

6  successful defense of the Raybern cross-complaint, including without limitation attorneys' fees,

7  court costs, and expert witness fees. Young's mandatory right to indemnity under Section 317

8  also extends to the successful defense of any claims which may be brought against him by TRI

9  based on his actions while an officer or director.

10        14.     Under Section 29 of the TRI Bylaws, Mr. Young is entitled to "indemnification to

11  the fullest extent permissible under California law...against all expenses, judgments, fines,

12  settlements and other amounts actually and reasonably incurred...by reason of the fact

13  that...[he]...was serving as a director, officer, . . ., employee or agent" of TRI. TRI is also

14  required to advance Young the expenses incurred by Young in defending against the Raybern

15  Cross-Complaint.

16        15.     Young tendered the defense of Young and demanded TRI indemnify him for any

17  and all liability, claims, obligations, causes of action, judgments and all other costs and expenses,

18  including attorney's fees and costs incurred by Young in connection with the Raybern Cross-

19  Complaint at any time. Young also demanded that TRI agree to advance to Young the expenses

20  he has incurred in defending against the Raybern Cross-Complaint. TRI refused to comply with

21  its legal and contractual obligations to defend and indemnify Young. Young therefore herein

22  seeks reimbursement for all attorney fees, costs, and expenses related to the action and tendering

23  indemnity to TRI, including pre- and post-judgment interest.

24        16.     Young has performed all the conditions and obligations to be performed on its

25  behalf under his agreements with TRI. Pursuant to the above, TRI is obligated to defend and

26  indemnify Cross-Complainant Young herein.

27        17.     Cross-Complainant Young has demanded, and continues to demand that Cross-

28  Defendant TRI defend and indemnify Cross-Complainant Young with respect to the claims of

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-5-

77

1  Raybern in this matter.  To date, TRI has failed, refused and/or neglected, and still fails, refuses

2  and/or neglects to do so.

3      18.    Cross-Complainant Young has incurred, and continues to incur, necessary and

4  reasonable attorneys' fees and other legal costs in defending this action brought by Raybern.  By

5  the terms of the agreements, if it is determined that TRI breached the agreements by failing to

6  defend and indemnify Cross-Complainant, then Cross-Complainant will be entitled to recover its

7  reasonable attorneys fees and court costs in connection with the defense of the action and the

8  prosecution of this cross-complaint.

9      19.    By reason of the foregoing, Cross-Complainant Young is entitled to be

10  indemnified by Cross-Defendant TRI for all losses and damages Cross-Complainant may incur

11  by way of defense of the underlying action, and by way of payments, if any, to Raybern in

12  connection with the settlement of this case or satisfaction of any judgment Raybern might obtain.

13      WHEREFORE, Cross-Complainant prays for damages as set forth below.

14                          **FOURTH CAUSE OF ACTION**
15                              **(Declaratory Relief)**

16      20.    Cross-Complainant repeats and realleges the allegations set forth in paragraphs 1

17  through 19, as if fully set forth herein.

18      21.    An actual controversy has arisen between the parties concerning their respective

19  rights and obligations.    Based upon the allegations of Raybern's Cross-Complaint, Cross-

20  Complainant Young alleges that Cross-Defendants herein are responsible to compensate Raybern

21  for its injuries and damages, if any such occurred, and that Cross-Defendants are liable and must

22  indemnify cross-complainant for all damages and any judgment rendered against Cross-

23  Complainant in this Action, and defend Young herein, and Cross-Defendants dispute same.  The

24  parties have no plain, speedy and adequate remedy at law, and therefore seek a declration of the

25  rights and obligations of the parties herein.

26  ///

27  ///

28  ///

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-6-

78

1    WHEREFORE, Young prays judgment on this cross-complaint as follows:

2    **FIRST, SECOND AND FOURTH CAUSES OF ACTION:**

3        1.    That Cross-Complainant be indemnified, in whole or in part, by Cross-

4    Defendants, and each of them, with respect to any and all payments made or judgments rendered

5    against it;

6        2.    For a judgment for all or part of any sums for which Cross-Complainant may be

7    adjudged to be liable to Raybern from Cross-Defendants, and each of them;

8        3.    For a declaration of rights and obligations as to all parties herein with respect to

9    their proportionate share of fault, in any, in causing or contributing to the injuries and damages, if

10   any, sustained by Rabyern;

11       4.    For a declaration that Cross-Defendants, and each of them, must indemnify Cross-

12   Complainant;

13       5.    For costs of suit incurred herein; and

14       6.    For such other and further relief as the court may deem just and proper.

15   **THIRD CAUSE OF ACTION:**

16       7.    For judgment against TRI declaring that it is under a contractual duty to reimburse

17   Cross-Complainant for such amounts as it may be held liable for to any party, together with costs

18   and expenses incurred in defense of the Cross-Complaint commenced by the Raybern, including

19   attorneys fees and indemnification with respect to any and all payments made or judgments

20   rendered against it;

21       8.    For attorney's fees incurred in connection with the prosecution for this cross-

22   complaint;

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-7-

79

1    9.    For costs of suit incurred herein; and

2    10.   For such other and further relief as the court may deem just and proper.

3

Date: August 23, 2005                                    BERDING & WEIL LLP

4

5                                                         By: _____

6                                                             Clifford R. Horner
                                                             Attorneys for Cross-Complainant
7                                                             ROBERT YOUNG

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE
INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS
INDEMNITY AND DECLARATORY RELIEF.

-8-

80

### PROOF OF SERVICE

**Case Name:**  TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**    RG04141329

I am employed in the County of Contra Costa, State of California.  My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

On August 23, 2005, I caused to be served the within:

**CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS INDEMNITY AND DECLARATORY RELIEF**

on the party(ies) listed below, addressed as follows:

### (SEE ATTACHED SERVICE LIST)

☐   **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].**  By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list.  The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☒   **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service.   Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid.  I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐   **By Overnight Delivery [C.C.P. § 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package designated by the express service carrier, with all delivery fees paid or provided for, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of overnight deliveries for deposit in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents.  Under the firm's practice, overnight deliveries are deposited   in the ordinary course of business with the express service carrier at Alamo, California, that same day.

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

PROOF OF SERVICE

1

81

☐   **By Personal Service [C.C.P. § 1011].**  By causing a true copy thereof to be placed in a sealed envelope or package addressed to the party[ies] as stated on the attached mailing list.

Executed August 23, 2005, at Alamo, California.

By:   _Ane Rosario_

        Ane Rosario

1

## <u>SERVICE LIST</u>

2

**Case Name:**   TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**      RG04141329

3

4
                                         Mr. Albert E. Cordova

5
                                         Law Offices of Albert E. Cordova

6
                                         Diversified Financial Center
                                         1299 Fourth Street, Suite 202

7
                                         San Rafael, CA 94901
                                         **Facsimile:  415/453-6260**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BERDING & WEIL, LLP**
3240 Stone Valley Road West
Alamo, California 94507

SERVICE LIST

1

83

## PROOF OF SERVICE

**Case Name:**   TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:**       RG04141329

   I am employed in the County of Contra Costa, State of California.  My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

   On August 23, 2005, I caused to be served the within:

**CROSS-COMPLAINT OF ROBERT YOUNG FOR EQUITABLE INDEMNITY, APPORTIONMENT OF FAULT, EXPRESS INDEMNITY AND DECLARATORY RELIEF**

on the party(ies) listed below, addressed as follows:

### (SEE ATTACHED SERVICE LIST)

☐   **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].**  By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list.  The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☐   **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service.   Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid.  I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☒   **By Overnight Delivery [C.C.P. § 1013, 1013a].**  By causing a true copy thereof to be enclosed in a sealed envelope or package designated by the express service carrier, with all delivery fees paid or provided for, addressed to the party[ies] as stated on the attached service list.  I am readily familiar with the firm's business practice for collection and processing of overnight deliveries for deposit in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents.  Under the firm's practice, overnight deliveries are deposited   in the ordinary course of business with the express service carrier at Alamo, California, that same day.

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

84

☐     **By Personal Service [C.C.P. § 1011].**  By causing a true copy thereof to be placed in a sealed envelope or package addressed to the party[ies] as stated on the attached mailing list.

Executed August 23, 2005, at Alamo, California.

By:     _Ane Rosario_
          Ane Rosario

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

PROOF OF SERVICE

2

85

1

## SERVICE LIST

2

**Case Name:** TRI Commercial Real Estate v. Raybern Foods, Inc., et al.
**Case No:** RG04141329

3

4

Kyra A. Subbotin
Law Offices of Kyra Subbotin

5

2625 Alcatraz Avenue, No. 152
Berkeley, CA 94705

6

Telephone: 510/923-0451
**Facsimile: 510/923-0565**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

86

*4111607*

1 | ALBERT E. CORDOVA (State Bar No. 74283)
2 | A Professional Law Corporation
   | 1299 Fourth St., Suite 202
3 | San Rafael, California 94901
   | Telephone: (415) 457-9656
4 | Telefacsimile: (415) 453-6260

**FILED**
ALAMEDA COUNTY

SEP 1 9 2005

CLERK OF THE SUPERIOR COURT
By _Olmeda_
                    Deputy

5

Attorneys for Plaintiff TRI COMMERCIAL REAL ESTATE
6 | SERVICES, INC., a California corporation and JOHN FULTS

7

THE SUPERIOR COURT OF CALIFORNIA

8

COUNTY OF ALAMEDA

9

10 | TRI COMMERCIAL REAL ESTATE
    | SERVICES, INC., et al.,
11 |
    |                     Plaintiff(s),
12 |
13 |               vs.
14 | RAYBERN FOODS, INC., BERNARD J.
    | VIGGIANO and DOES 1-20,
15 |
16 |                     Defendant(s).
17 |
18 | RAYBERN FOODS, INC.,
19 |                 Cross-Complainants,
20 |               vs.
21 |
    | TRI COMMERCIAL REAL ESTATE
22 | SERVICES, INC., JOHN FULTS, ROBERT
    | L. YOUNG, individually and dba LAW
23 | OFFICES OF ROBERT YOUNG,.
24 |
    |                 Cross-Defendants.
25 |

) No. RGO4141329
)
) **CROSS-COMPLAINT ON**
) **BEHALF OF TRI**
) **COMMERCIAL REAL ESTATE**
) **SERVICES, INC. AND JOHN**
) **FULTS AND AGAINST ROBERT**
) **YOUNG FOR BREACH OF**
) **FIDUCIARY DUTY, LEGAL**
) **MALPRACTICE, INDEMNITY,**
) **CONTRIBUTION AND**
) **DECLARATORY RELIEF**
)
)
)
)
)
)
)
)
)
)
)
)
)
)

26

27

1

28

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

EXHIBIT 5

87

| | | |
|---|---|---|
| 1 | ROBERT YOUNG, ) | NO. RGO4141329 |
| 2 | ) | |
| | Cross-complainant, ) | |
| 3 | vs. ) | |
| 4 | TRI COMMERCIAL REAL ESTATE ) | |
| 5 | SERVICES, INC., JOHN FULTS, an ) | |
| | individual, and ROES 1-50, inclusive, ) | |
| 6 | ) | |
| 7 | Cross-defendants. ) | |
| 8 | ) | |

1 | ROBERT YOUNG, )      NO. RGO4141329

2

           Cross-complainant, )

3      vs. )

4 TRI COMMERCIAL REAL ESTATE )

5 SERVICES, INC., JOHN FULTS, an )
  individual, and ROES 1-50, inclusive, )

6      )

7          Cross-defendants. )

8 _____ )

9 TRI COMMERCIAL REAL ESTATE )

10 SERVICES, INC. and JOHN FULTS, )

11          Cross-complainants, )

12      vs. )

13      )

14 ROBERT YOUNG and ZOES 1-20, )

     )

15          Cross-defendants. )

16 _____ )

17

18 Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. and

19 JOHN FULTS allege the following causes of action against ROBERT YOUNG.

20 **<u>FIRST CAUSE OF ACTION</u>**

21

22 **(Breach of Fiduciary Duty-Constructive Fraud)**
**(On behalf of TRI Only)**

23

24      1.  Cross-complainants are ignorant of the true names and capacities of Cross-

25 defendants sued herein as ZOES I-20, inclusive, and therefore sue these Cross-

26

27                       2

28             CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS



1  defendants by such fictitious names.  Cross-complainants will amend this Cross-

2  complaint to allege their true names and capacities when ascertained.  Cross-

3  complainants are informed and believe and thereon allege that, if these Cross-

4  complainants are liable to Cross-complainant RAYBERN FOODS, INC. as alleged in

5  the Cross-complaint in this action, each of the fictitiously named Cross-defendants is

6  jointly or jointly and severally liable with Cross-complainants to Cross-complainant

7  RAYBERN FOODS INC. for its damages as set forth therein.  Each reference in this

8  Cross- complaint to "Cross-defendant," "Cross-defendants," or a specifically named

9  Cross-defendant refers also to all Cross-defendants sued under fictitious names.

10  2.  Cross-complainants are informed and believe and on that basis allege that

11  each cross-defendant individually or fictitiously named herein, acted in his, her, or its

12  own right and also was or is the agent, employee, or servant of each of the other

13  cross-defendants as to each of the matters set forth herein, and each such cross-

14  defendant, whether individually or fictitiously named, was at all times acting within

15  the scope and purpose of such agency, employment or service, or alternatively, if the

16  acts of each such cross-defendant were not authorized at the time, such acts were

17  subsequently ratified by the appropriate principal.

18  3.  TRI COMMERCIAL REAL ESTATE SERVICES, INC. (hereinafter

19  "TRI") is and at all times mentioned herein was, a real estate broker duly licensed by

3

the State of California engaged in the brokerage of both real estate transactions and business opportunities.

4. Cross-defendant ROBERT YOUNG is and at all times mentioned herein was, an attorney at law duly licensed by the State of California.

5. At all times relevant to the facts herein pleaded, Cross-defendant ROBERT YOUNG served as a corporate officer and was a shareholder of Cross-complainant TRI. On October 18, 2001, Cross-defendant ROBERT YOUNG became a director of TRI. In addition to the foregoing, at all times relevant to the facts herein pleaded, Cross-defendant served as legal counsel for TRI.

6. By virtue of the aforementioned relationship between Cross-defendant ROBERT YOUNG and TRI, Cross-defendant enjoyed a position of great trust and confidence with TRI and thereby owed to TRI a fiduciary duty of utmost care, integrity, honesty and undivided loyalty in his dealings with TRI.

7. Separate and apart from his relationship to TRI, Cross-defendant ROBERT YOUNG also maintained a private law practice whereby he undertook to represent clients for his own account as an independent attorney at law.

8. On or about May 7, 2001, RAYBERN FOODS, INC. retained TRI, through its agent JOHN FULTS, to represent it as a business broker in connection with certain business and contractual negotiations it was engaged in with ROSE AND SHORE, INC.

4

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

9.  On or about May 10, 2001, acting within the course and scope of his duties as an independent attorney at law and working for his own account, Cross-defendant ROBERT YOUNG accepted employment by RAYBERN FOODS, INC. to represent it as its legal counsel in the negotiations between RAYBERN FOODS, INC. and ROSE AND SHORE, INC.

10. At the time Cross-defendant ROBERT YOUNG accepted employment as attorney for RAYBERN FOODS, INC., he was fully aware that TRI was acting as a business broker for RAYBERN FOODS, INC. in the aforementioned negotiations.

11.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not seek nor was he granted permission to act in said capacity by TRI.  At no time did YOUNG disclose to TRI that his representation of RAYBERN might result in a conflict of interest; nor did YOUNG ever obtain a waiver from TRI of any such potential conflict.

12.  Cross-defendant ROBERT YOUNG did not seek nor was he granted authority to act on behalf of TRI in connection with the services he undertook to provide for RAYBERN FOODS, INC. as its counsel.

13.  The activities of Cross-defendant ROBERT YOUNG as counsel for RAYBERN FOODS, INC. were not within the course or scope of his duties as officer, director, or legal counsel for TRI.

5

14. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG was acting for own account and for his sole benefit and not for any benefit to TRI.

15. Defendant RAYBERN FOODS, INC. has filed a Cross-complaint against ROBERT YOUNG, TRI COMMERCIAL REAL ESTATE SERVICES, INC. and JOHN FULTS, alleging, inter alia, that Cross-defendant ROBERT YOUNG breached his fiduciary duty to RAYBERN FOODS, INC. by undertaking to act as its legal counsel without fully disclosing his relationship with TRI.

16. If it is established that there was a breach of duty on the part of Cross-defendant ROBERT YOUNG to make a full disclosure to RAYBERN FOODS, INC. of his relationship with TRI or to obtain a fully informed waiver of potential conflict of interest and consent from RAYBERN FOODS, INC., said breach arose out of and was occasioned by the fact that Cross-defendant ROBERT YOUNG undertook to represent RAYBERN FOODS, INC. as its legal counsel without fulfilling obligations that arose directly out of that attorney/client relationship.

17. If there was a failure by Cross-defendant ROBERT YOUNG to make necessary disclosures or to obtain a fully informed waiver and consent from RAYBERN FOODS, INC., that failure was attributable solely to the acts undertaken by or omissions made by Cross-defendant ROBERT YOUNG in his capacity as an attorney at law acting as such for his own account.

6

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

18.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not disclose to TRI the extent of his disclosures to RAYBERN FOODS, INC. such that TRI had no notice of any error or omission in connection therewith and no opportunity to address any such error or omission.

19.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG is solely responsible for the events which have resulted in the present claim against TRI.

20.  The aforementioned conduct by ROBERT YOUNG, if true, was adverse to TRI and proximately caused TRI to incur attorneys fees and costs in the defense of the Cross-complaint by RAYBERN FOODS, INC.

21.  If damages were sustained by RAYBERN FOODS, INC. as alleged in the Cross-complaint, these damages were caused, entirely or in part, by Cross-defendant ROBERT YOUNG, in that he was actively and primarily at fault, and not by any wrongdoing or by any actual fault on the part of Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. or JOHN FULTS.

22.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG placed his self-interest ahead of the interests of TRI.

7

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

23.  The aforementioned conduct by Cross-defendant ROBERT YOUNG, if true, was in breach of his fiduciary duties to TRI and constitutes constructive fraud by said Cross-defendant.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Legal Malpractice)
### (On behalf of TRI Only)

24.  Cross-complainant TRI realleges and incorporates by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

25.  Cross-complainant RAYBERN FOODS, INC. has alleged in its Cross-complaint, inter alia, that TRI was under a duty to make certain disclosures and/or to obtain a waiver of conflict of interest and consent from RAYBERN FOODS, INC., all as more fully set forth therein.  TRI has denied said allegations in the Answer to Cross-complaint filed on its behalf.  However, if it should be established that such a duty did exist, then Cross-defendant ROBERT YOUNG, as legal counsel for TRI, was under a duty to properly advise TRI in connection with any potential conflict of interest and any duties or obligations arising therefrom.

26.  Cross-defendant ROBERT YOUNG's failure to advise TRI of any duty or obligation arising from the retention of ROBERT YOUNG by RAYBERN FOODS,

8

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

INC., if any such duty or obligation is established, constituted an error and omission committed within the course and scope of his duty to TRI as an attorney at law acting as legal counsel to TRI.

27.  Cross-complainant has been damaged by virtue of having to defend against the instant Cross-complaint and will suffer additional damage in the event it is determined that there was a breach of duty by TRI arising out of the retention of Cross-defendant ROBERT YOUNG by RAYBERN FOODS, INC.  Cross-complainant will amend this Cross-complaint to allege said damages with certainty upon proof at trial.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Indemnity)**
**(On behalf of TRI and JOHN FULTS)**

28.  Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

29.  Cross-complainants are entitled to indemnification from cross-defendant ROBERT YOUNG for all legal costs and fees, including attorneys' fees, incurred in the defense of the Cross-complaint by RABYERN FOODS, INC. against TRI.

9

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

95

30.  Cross-complainant has made written demand for indemnification by Cross-defendant ROBERT YOUNG.  Notwithstanding said demand, Cross-defendant ROBERT YOUNG has failed and refused to indemnify TRI.

WHEREFORE, these cross-complainants pray for judgment against Cross-defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (Contribution)
### (On behalf of TRI and JOHN FULTS)

31.  Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

32.  If Cross-complainants are found liable under the allegations contained in the Cross-complaint of RAYBERN FOODS, INC., which liability Cross-complainants specifically deny, Cross-complainants and Cross-defendant ROBERT YOUNG, and each of them, will be joint tortfeasors and there will exist a right of comparative equitable indemnity between and amongst them as joint tortfeasors, based on the principles enunciated in <u>American Motorcycle Association v. Superior Court</u> (1978) 20 Cal.d 570.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

10

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

96

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)
### (On behalf of TRI and JOHN FULTS)

33.  Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

34.  An actual controversy has arisen and now exists between Cross-complainants TRI and JOHN FULTS and Cross-defendant ROBERT YOUNG in that said Cross-complainants contend, and Cross-defendant denies:

a.    that as between said Cross-complainants and Cross-defendant, responsibility, if any, for damages claimed by RAYBERN FOODS, INC., if any, rests entirely or partially on Cross-defendant ROBERT YOUNG.

b.    that, as a result, Cross-defendant ROBERT YOUNG is obligated to partially or fully indemnify Cross-complainants for any sums that Cross-complainants may be compelled to pay as the result of this action, together with Cross-complainants' costs, expenses and attorney's fees.

35.  Cross-complainants desire a judicial determination of the respective rights and duties of Cross-complainants and Cross-defendant with respect to the damages claimed by RAYBERN FOODS, INC.  In particular, Cross-complainants desire a declaration of the comparative liability of Cross-complainants and Cross-defendant

11

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

for these damages, if any, and a declaration of Cross-defendant's responsibility for

comparative indemnity to Cross-complainants for any sums that Cross-complainants

may be compelled to pay and for which Cross-defendant ROBERT YOUNG is

determined responsible, entirely or in part.

36. Such a declaration is necessary and appropriate at this time in order that

Cross-complainants may ascertain their rights and duties with respect to RAYBERN

FOODS, INC.'s claim for damages. Furthermore, the claim of RAYBERN FOODS,

INC. and the claim of Cross-complainants arise out of the same transaction, and

determination of both in one proceeding is necessary and appropriate in order to

avoid the multiplicity of actions that would result if Cross-complainants were

required now to defend against the claim of RAYBERN FOODS, INC. and then bring

a separate action against Cross-defendant ROBERT YOUNG for indemnification of

sums that Cross-complainants may be compelled to pay as the result of any damages,

judgment, or other awards recovered by RAYBERN FOODS, INC. against these

Cross-complainants.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant

ROBERT YOUNG as follows:

**AS TO THE FIRST THROUGH FOURTH CAUSES OF ACTION**

1. For damages according to proof;

2. For costs of suit herein incurred;

12

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS



3. For reasonable attorneys fees incurred in the defense of the Cross-complaint by RAYBERN FOODS, INC. against TRI; and

4. For such other and further relief as the court may deem proper.

### AS TO THE FIFTH CAUSE OF ACTION

1. For a judicial determination of the comparative fault of Cross-complainants and Cross-defendant ROBERT YOUNG for the damages claimed by RAYBERN FOODS, INC. if any are found to exist;

2. For a declaration of the amount that Cross-defendant ROBERT YOUNG is obligated to indemnify Cross-complainants if Cross-complainants are compelled to pay any sum as the result of any damages, judgment, or other awards recovered by RAYBERN FOODS, INC. against these Cross-complainants;

3. For costs of suit herein incurred;

4. For reasonable attorneys fees; and

5. For such other and further relief as the court may deem proper.

Dated: September 13, 2005

ALBERT E. CORDOVA
A Professional Law Corporation

By _____
ALBERT E. CORDOVA
Attorney for Cross-complainant
TRI COMMERCIAL REAL ESTATE
SERVICES, INC. and JOHN FULTS

13

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

1

## PROOF OF SERVICE

2

3    I am a citizen of the United States and employed in Marin County, State of

4    California; I am over the age of eighteen (18) years of age and not a party to the

5    within above-entitled action; my business address is: 1299 Fourth St., Suite 202, San

6    Rafael, CA 94901. On September 13, 2005, I caused to be served the documents

    identified herein as follows:

7    **Documents Served:CROSS-COMPLAINT ON BEHALF OF TRI**

8    **COMMERCIAL REAL ESTATE SERVICES, INC. AND JOHN FULTS AND**
    **AGAINST ROBERT YOUNG FOR BREACH OF FIDUCIARY DUTY, LEGAL**

9    **MALPRACTICE, INDEMNITY, CONTRIBUTION AND DECLARATORY**
    **RELIEF**

10

11   Kyra A. Subbotin                    Clifford Horner
     Law Offices of Kyra A. Subbotin     Berding & Weill LLP

12   2625 Alcatraz Avenue, No. 152       3240 Stone Valley Road West

13   Berkeley, CA 94705                  Alamo, CA 94507-1558
     Telephone: (510) 923-0451           Telephone: (925) 838-2090

14   Facsimile: (510) 923-0565           Facsimile: (925) 820-5592

15

16   <u>XXX</u>   (BY MAIL) I placed such envelope with postage thereon fully prepaid in the
     United States mail at San Rafael, California.

17

18   ____   (BY PERSONAL SERVICE) I caused said documents to be delivered to the
     above address.

19

20   ____   (VIA TELEFACSIMILE) I caused said document to be transmitted to the
     above addressee via telefacsimile.

21

22   <u>XXX</u>   (STATE) I declare under penalty of perjury under the laws of the State of
     California that the above is true and correct.

23

24   ____   (FEDERAL) I declare that I am employed at the office of a member of the bar
     of this court at whose direction the service was made.

25

     Executed at San Rafael, California on September 13, 2005

26

27   _____
     ANN MEGAN

28



### LAW OFFICES OF ROBERT L. YOUNG
#### A Professional Corporation
1777 Oakland Blvd., Suite 300
Walnut Creek, California 94596

THIS WRITTEN FEE CONTRACT ("Contract") is entered into as of May 10, 2001, by and between RAYBERN FOODS, INC., a California Corporation, hereinafter referred to as "Client" and THE LAW OFFICES OF ROBERT L. YOUNG, a Professional Corporation, hereinafter referred to as "Attorneys." Client and Attorneys hereby agree to the following terms and conditions:

1.    **Scope of Agreement**

Client hires Attorneys to provide legal services to Client in connection with a licensing transaction involving Rite-Way Meat Packers, Inc., Rose & Shore, Inc., RBR Meat Company, Inc. and eventually a separate agreement between Client and Togo's ("the Matter"). The representation of Client by Attorneys is anticipated to continue through the execution of a Definitive Agreement (the "Closing") and through execution of an agreement between Client and Togo's.

2.    **Duties of Attorneys and Client**

Attorneys shall provide those non-litigation legal services reasonably required to represent Client in the Matter. Attorneys shall also take reasonable steps to keep Client informed of significant developments and to respond to Client's inquiries.

Client shall be truthful with Attorneys, cooperate with Attorneys, keep them informed of developments regarding the Matter and associated developments, perform the obligations Client has agreed to perform under this agreement, pay Attorneys' bills in a timely manner, and keep Attorneys apprised of Client's address, telephone number and whereabouts.

3.    **Fees/Retainer**

Attorneys will charge by the hour at specified rates for time that legal personnel spend on Client's case. Attorneys' specified hourly rates for legal personnel are set forth on Schedule 1 attached hereto. Client agrees to pay for Attorneys' legal services at the specified rates.

Prior to the commencement of any services to be rendered by Attorneys in the above Matter, Client shall pay Attorneys the sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000) as a deposit against Client's payment of Attorneys' fees and costs incurred on behalf of Client ("Retainer"). At any time the balance of the Retainer falls below ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500), Attorneys shall have the right, as a pre-condition to the rendering of further services, to require Client to advance as an additional retainer such sums as Attorneys believe to be appropriate, but not more than the amount of the original Retainer. This right shall be an on-going right of Attorneys throughout Attorneys' representation of Client.

RY0117

-1-

137

000392 YOUNG

EXHIBIT 9



4.    **Billing Practices**

Attorneys bill in minimum units of .25 hours (15 minutes) for any task.

Attorneys will charge for all telephone calls relating to the Matter, including, but not limited to, calls with Client, counsel, consultants, experts and others. The legal personnel assigned to Client's case will confer among themselves about the case as required whether part of Attorneys' staff or counsel from another law firm. When they do confer, each such person will charge for the time expended. Likewise, if more than one Attorney's legal personnel attend a meeting, each will charge for his or her time. Attorneys will charge for any waiting time and travel time, both locally and out of town.

5.    **Costs and Other Charges**

(a)    In General.    Attorneys may incur various costs and expenses in performing legal services under this contract. Client agrees to pay for those costs and expenses in addition to the hourly charges for services rendered by legal personnel, and to provide payment for such costs in advance, as may be requested by Attorneys from time to time. Costs and expenses commonly incurred by Attorneys include filing fees and other charges assessed by public agencies, long distance telephone calls, electronic mail, messenger and other delivery fees, postage, photocopying and other reproduction charges, parking and mileage, charges for computer research and other outside assisted legal research, charges for computer time, word processing charges, investigation expenses, consultants' fees, facsimile transmissions, clerical staff overtime occasioned by Client emergencies, and other similar items. Except for the items listed on Schedule 2, all of the foregoing will be charged to Client at Attorneys' cost. Schedule 2 lists those items that will be billed other than at cost and the current rates. The rates on Schedule 2 are subject to change as provided in paragraph 6 of this contract.

(b)    Travel.    If out of town travel is required of Attorneys' legal personnel, Client agrees to pay all costs of such travel, in addition to the hourly rates for travel time.

(c)    Attorneys shall itemize all costs incurred on each periodic statement.

(d)    To aid Attorneys in representing Client in the Matter, it may be necessary to hire one or more experts or consultants. Client authorizes Attorneys to incur all reasonable costs and to hire any such expert or consultant reasonably necessary in Attorneys' judgment, as long as the estimate of such expense does not exceed TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500). Attorneys shall obtain Client's consent before retaining outside experts or consultants where the cost thereof is estimated to exceed TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500).

6.    **Billing Statements**

Attorneys shall send Client a statement for fees and costs incurred on a monthly basis. Client shall pay Attorneys' statements immediately upon presentation. Any statements not paid within said thirty (30) day period shall thereafter bear interest at the rate of ten percent (10%) per annum. Attorneys' statement shall indicate any initial Retainer balance due from Client, any credit balance of the Retainer, the amount charged against the Retainer, and all amounts then due and owing from Client to Attorney.

-2-

138

RY0118

Attorneys' statements of attorneys' fees shall clearly state the basis thereof, including the amount, rate and basis for calculation (or other method of determination).

Attorneys shall provide Client with a statement within ten (10) days of request. Client is entitled to make subsequent requests for bills at intervals of no less than thirty (30) days following the initial request.

7.    Lien

Client hereby grants Attorneys a lien on the Matter for any sums due and owing by Client to Attorneys, specifically including any amount still owed by Client to Attorneys, at the conclusion or termination of Attorneys' services. The lien will attach to all purchase price monies or any other consideration or sums paid to Client or its successor as a result of the Closing or to assets of Client or its successor if the Matter does not close.

8.    Disclaimer of Guarantee; Conflict Disclosure

Attorneys have made no promises or guarantees to Client about the outcome of the Matter, and nothing in this contract shall be construed as such a promise or guarantee. Further, Client acknowledges that it has, with the help of JOHN FULTS of TRI COMMERCIAL REAL ESTATE SERVICES, INC. ("TRI"), its agent in the Matter, negotiated the basic economic terms and conditions of the Matter. Client further acknowledges that Attorneys have disclosed to it that Attorneys have represented TRI in the past and likely will again in the future, and that as such, a conflict of interest either does exist presently or may exist in the future; knowing this, Client has elected to waive any such conflict of interest.

9.    Discharge and Withdrawal

Client may discharge Attorneys at any time. Attorneys may withdraw only for good cause. Among the facts constituting good cause are Client's breach of this contract, including the failure to pay Attorneys' statements when due, and Client's refusal to cooperate with Attorneys or to follow their advice. Upon such a withdrawal, Attorneys agree to cooperate with any substitute counsel in assisting them to become familiar with the case. Attorneys and Client each agree to sign any documents reasonably necessary to complete Attorneys' discharge or withdrawal.

10.    Termination or Conclusion

Upon the termination or conclusion of Attorneys' services, all unpaid charges for services rendered and costs incurred or advanced through the termination or conclusion date shall become immediately due and payable. Attorneys acknowledge their obligation, upon Client's demand, to deliver Client's file to Client at or after the termination or conclusion of Attorney's services.

11.    Written Contract Required by Law

This document constitutes the written fee agreement between Attorneys and Client required by California Business and Professions Code Section 6148. Client shall be presumed to have agreed to all of the provisions set forth in this contract unless Client notifies Attorneys in writing of Client's objections within fifteen (15) days of the date of this contract.

RY0119

12.    <u>Commencement of Services</u>

Attorneys shall have no obligations whatsoever to provide legal services to Client unless the initial Retainer is paid in good funds in accordance with the terms of this Contract, and this contract is signed by Client and delivered to Attorneys.

13.    <u>Personal Guarantee</u>

The financial obligations of Client hereunder are hereby personally guaranteed by BERNARD J. VIGGIANO AND JAMIE VIGGIANO, husband and wife and the principal shareholders of Client ("Guarantors").

LAW OFFICES OF ROBERT L. YOUNG
A Professional Corporation

By: _____
        Robert L. Young

RAYBERN FOODS, INC.

By: _____
        Bernard J. Viggiano

By: _____
        Jamie Viggiano

"Guarantors"

By: _____          Dated: _____
        Bernard J. Viggiano

By: _____          Dated: _____
        Jamie Viggiano

RY0120

10 4

## <u>SCHEDULE 1</u>

Specified hourly rates for legal personnel of Law Offices of Robert L. Young, a Professional Corporation, initially assigned to this matter are as follows:

| | |
|---|---|
| Robert L. Young<br>Attorney at Law | $250.00/per hour |
| Other Lawyers Working<br>on Attorneys Staff | $250.00/per hour |
| Legal Assistants and<br>Paralegals | $100/per hour |

-5-

141

RY0121

105

## Schedule 2

The expense or cost items below will be charged to Client initially at the indicated rates.

| | |
|---|---|
| Photocopying | Waived |
| Mileage | Waived if not outside Alameda and Contra Costa County.  This does not waive the right to reimbursement of travel costs as is otherwise provided for in the foregoing Agreement. |
| | |
| Facsimile | Waived |

000397 YOUNG

RY0122

*106*

1 | Daniel L. Rottinghaus, Esq., State Bar No. 131949
  | Paul W. Windust, Esq., State Bar No. 167338
2 | **BERDING & WEIL LLP**
  | 3240 Stone Valley Road West
3 | Alamo, California 94507
  | Telephone:    925/838-2090
4 | Facsimile:    925/820-5592

5 | Attorneys for Plaintiff
  | Robert L. Young
6 |

7 | UNITED STATES DISTRICT COURT

8 | NORTHERN DISTRICT OF CALIFORNIA

9 |

10 | ROBERT L. YOUNG,                        No.  C07-05711 SBA

11 |              Plaintiff,           **PLAINTIFF ROBERT l. YOUNG'S**
  |                                   **RESPONSES TO ILLINOIS UNION**
12 |        vs.                        **INSURANCE COMPANY'S SPECIAL**
  |                                   **INTERROGATORIES**
13 | ILLINOIS UNION INSURANCE
  | COMPANY, ACE WESTCHESTER
14 | SPECIALTY GROUP, and DOES 1
  | through 50, inclusive,
15 |
  |              Defendants.
16 |

17 |

18 |

19 | PROPOUNDING PARTY:    Defendant ILLINOIS UNION INSURANCE COMPANY

20 | RESPONDING PARTIES:   Plaintiff ROBERT L. YOUNG

21 | SET NUMBER:           ONE

22 | **PREAMBLE AND GENERAL OBJECTIONS**

23 |     It should be noted that this responding party has not fully completed its investigation of

24 | the facts relating to this case, has not completed discovery in this action and has not completed

25 | preparation for trial. All of the responses contained herein are based only upon such information

26 | and documents which are presently available to, and specifically known to this responding party,

27 | and disclose only those contentions which presently occur to it.

28 | / / /

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

PLAINTIFF'S RESPONSES TO SPECIAL INTERROGATORIES     EXHIBIT 10     -1-

107

1    It is anticipated that further discovery and further independent investigation will supply

2    additional facts, as well as to establish entirely new factual matters, all of which may lead to

3    substantial additions to, changes in, and variations from the contentions herein set forth.

4    The following responses are given without prejudice to responding party's right to

5    produce evidence of any subsequently discovered fact or facts which this responding party may

6    later recall or discover.  Responding party accordingly reserves its right to change any and all of

7    its responses herein as additional facts are ascertained, analysis made, legal research completed,

8    and contentions formulated.  However, for the purpose of making a good-faith effort to comply

9    with the spirit of discovery law, responding party serves herewith the following responses.  Also,

10   objections herein are made on the advice of counsel in order to protect responding party from

11   unwarranted invasion of privacy, records and files.  Responding party further generally objects to

12   the extent said requests seek information protected by the attorney-client privilege, attorney

13   work-product doctrine and rights of privacy and confidentiality and/or have no basis in law or

14   fact.

15   **SPECIAL INTERROGATORY NO. 1:**

16   Identify with particularity each Wrongful Act alleged against Plaintiff in the CLAIM

17   which did not arise out of, or result from or in any way involve Plaintiff's service as legal counsel

18   to Raybern Foods, Inc.

19   **RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

20   Responding Party objects to this interrogatory in that it calls for a legal conclusion and

21   expert legal interpretation of the insurance policy.  Responding Party further objects that this

22   interrogatory is vague and ambiguous as to the term "Plaintiff in the CLAIM."  Further objection

23   is made pursuant to *Dusek v. United Airlines Inc.,* 9 FRD 326 (1949) in that the interrogatory

24   requires analysis of facts and goes beyond supplying facts within Responding Party's knowledge

25   or possession.  Further objection is made pursuant to *IBP, Inc. v. Mercantile Bank of Topeka,* 179

26   FRD 316 (1998) in that the interrogatory is overly broad and burdensome.  Subject to and

27   without waiving the above objection, Responding Party responds as follows:

28   / / /

1         Responding Party refers Propounding Party to Raybern Foods, Inc.'s original Cross-

2    Complaint and First Amended Cross-Complaint as well as the Cross-Complaint from TRI and

3    Fults. Propounding Party owed Plaintiff a "right and duty to defend any Claim and such right

4    and duty shall exist even if any of the allegations are groundless, false or fraudulent" pursuant to

5    BMI20016061 ("Policy"), Section L. (2.), pg. GT&C-3.    The Wrongful Acts include

6    Employment Practices Coverage Section, (B.)(11.), "e) breach of an actual or implied

7    employment contract," and/or "i) wrongful failure or refusal to adopt or enforce workplace or

8    employment practices, policies or procedures," and/or "m) negligent hiring or negligent

9    supervision of others in connection with a) through l) above..."    (Policy, pg. EPL-2)

10    Additionally, Directors and Officer and Company Coverage Section, (B.)(9.) "... any actual or

11    alleged error, omission, misleading statement, neglect, breach of duty or act by: a) any of the

12    Directors and Officers, while acting in their capacity as: (i) a director, officer or employee of the

13    Company or the functional equivalent to a director or officer of the Company..." (Policy, D&O-

14    2).

15         Discovery is continuing and Responding Party reserves the right to supplement or amend

16    these Responses as necessary.

17    **SPECIAL INTERROGATORY NO. 2:**

18         IDENTIFY any changes between the original cross-complaint of Raybern Foods, Inc.

19    asserted in the Claim and the First Amended Cross-Complaint therein which you contend impact

20    coverage under the POLICY.

21    **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

22         Responding Party objects to this interrogatory in that it calls for a legal conclusion and

23    expert legal interpretation of the insurance policy. Further objection is made pursuant to *Dusek v.*

24    *United Airlines Inc.*, 9 FRD 326 (1949) in that the interrogatory requires analysis of facts and

25    goes beyond supplying facts within Responding Party's knowledge or possession.    Further

26    objection is made pursuant to *Leonia Amusement Corp v. Loew's, Inc.*, 18 FRD 503 (1955) in

27    that the interrogatory requires Responding Party to make a compilation of information where

28    both the original Cross-Complaint and First Amended Cross-Complaint are in the possession of

1  the Propounding Party.  Subject to and without waiving the above objection, Responding Party

2  responds as follows:

3     Responding Party has provided both Raybern Foods, Inc.'s original Cross-Complaint and

4  First Amended Cross-Complaint to Propounding Party for their own investigation, analysis and

5  determination regarding the impacts on coverage.  It is Propounding Party's duty to find

6  coverage.

7     Discovery is continuing and Responding Party reserves the right to supplement or amend

8  these Responses as necessary.

9  **SPECIAL INTERROGATORY NO. 3:**

10     State all facts upon which YOU base YOUR contention that the CLAIM is covered under

11  the POLICY.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

13     Responding Party objects to this interrogatory in that it is vague and ambiguous as to the

14  term "covered" and calls for a legal conclusion and expert legal interpretation of the insurance

15  policy.  Further objection is made pursuant to *Dusek v. United Airlines Inc.,* 9 FRD 326 (1949) in

16  that the interrogatory requires analysis of facts and goes beyond supplying facts within

17  Responding Party's knowledge or possession.  Further objection is made pursuant to *Stovall v.*

18  *Gulf & South American S.S. Co.,* 30 FRD 152 (1961) in that the interrogatory is too general and

19  all-inclusive by its employment of the term "State all facts upon...".  Further objection is made

20  pursuant to *IBP, Inc. v. Mercantile Bank of Topeka,* 179 FRD 316 (1998) in that the interrogatory

21  is overly broad and burdensome.  Subject to and without waiving the above objection,

22  Responding Party responds as follows:

23     Responding Party was sued by Raybern Foods, Inc. in Responding Party's capacity as a

24  corporate officer and director of TRI Commercial Real Estate Services, Inc. ("TRI").

25  Additionally, Responding Party was sued by TRI and John Fults ("Fults") in its Cross-Complaint

26  in Responding Party's capacity as a corporate officer and director of TRI. The Cross-Complaints

27  from Raybern Foods, Inc., TRI and Fults contain allegations against Responding Party of breach

28  / / /

1  inquiry into the public documents filed with the court against Responding Party in the underlying

2  matter.

3  Date:  May 27, 2008

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERDING & WEIL LLP

By: _____

Daniel L. Rottinghaus
Paul W. Windust
Attorneys for Plaintiff
Robert L. Young

O:\WDOCS\0001\392\DSC\00473031.DOC

1

2

3                                 VERIFICATION TO FOLLOW

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

**Case Name:**    *Young v. Illinois Union Insurance Co.*
**Case No:**       USDC, Northern District of California, Case No. C07-05711 SBA

I am employed in the County of Contra Costa, State of California. My business address is 3240 Stone Valley Road West, Alamo, California 94507. I am over the age of eighteen years, and not a party to the within action

On May 27, 2008, I served the within:

PLAINTIFF ROBERT l. YOUNG'S RESPONSES TO ILLINOIS UNION INSURANCE COMPANY'S SPECIAL INTERROGATORIES

on the party(ies) listed below, addressed as follows:

### (SEE ATTACHED SERVICE LIST)

☐ **By Facsimile Transmission [C.C.P. § 1013; CRC 10081].** By causing a true copy thereof to be served by transmission from facsimile number (925) 820-5592 between the hours of 9:00 a.m. and 5:00 p.m., on the party(ies) at the facsimile telephone number(s) last provided by the party(ies) as stated on the attached service list. The transmission was reported as complete and without error, with a transmission report properly issued by the transmitting facsimile machine.

☒ **By First Class Mail/Ordinary Business Practices [C.C.P. §§ 1013, 1013a].** By causing a true copy thereof to be enclosed in a sealed envelope or package, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service. Under the firm's practice, mail is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with postage thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐ **By First Class Registered or Certified Mail/Return Receipt Requested/Ordinary Business Practices [C.C.P. §§ 1013, 1013a, 1020].** By causing a true copy thereof to be enclosed in a sealed envelope or package, registration or certification and return receipt requested, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of envelopes and packages for mailing with the United States Postal Service. Under the firm's practice, registered and certified first class mail with return receipt requested is deposited in the ordinary course of business with the United States Postal Service at Alamo, California, that same day, with all postage and fees thereon fully prepaid. I am aware that upon motion of the party served, service is presumed invalid if postal cancellation date or postage meter date on the envelope or package is more than one day after the date of deposit for mailing.

☐ **By Express Mail [C.C.P. §§ 1013, 1013a].** By causing a true copy thereof to be enclosed in a sealed envelope or package, with Express Mail postage paid, addressed to the party[ies] as stated on the attached service list. I am readily familiar with the firm's business practice for collection and processing of Express Mail to be deposited in a post office, mailbox, sub-post office, substation, or mail chute, or other like facility maintained by the United States Postal Service for receipt of Express Mail. Under the

BERDING & WEIL, LLP
3240 Stone Valley Road West
Alamo, California 94507

113

1

2    firm's practice, Express Mail is deposited in the ordinary course of business with the
United States Postal Service at Alamo, California, that same day. I am aware that upon
3    motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date on the envelope or package is more than one day after the date of
deposit for mailing.

4    ☐  **By Overnight Delivery [C.C.P. § 1013, 1013a].**  By causing a true copy thereof to be
enclosed in a sealed envelope or package designated by the express service carrier,
5    with all delivery fees paid or provided for, addressed to the party[ies] as stated on the
attached service list.  I am readily familiar with the firm's business practice for
6    collection and processing of overnight deliveries for deposit in a box or other facility
regularly maintained by the express service carrier, or delivered to an authorized
7    courier or driver authorized by the express service carrier to receive documents. Under
the firm's practice, overnight deliveries are deposited in the ordinary course of
8    business with the express service carrier at Alamo, California, that same day.

9    ☐  **By Personal Service [C.C.P. § 1011].**  By causing a true copy thereof to be placed in a
sealed envelope or package addressed to the party[ies] as stated on the attached mailing
10    list.

11

12    I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.  Executed February 26, 2008, at Alamo, California.

13

14                                By:  _____

15                                            Michele Poloka

16

17

18

19

20

21

22

23

24

25

26

27

28

114

1

## <u>SERVICE LIST</u>

2

**Case Name:**   *Young v. Illinois Union Insurance Co.*
3   **Case No:**      USDC, Northern District of California, Case No. C07-05711 MEJ

4
Herbert P. Kunowski, Esq.
Darren Le Montree, Esq.
5   WILSON, ELSER, MOSKOWITZ, et al.
555 South Flower Street, Suite 2900
6   Los Angeles, CA  90071
Tel:  (213) 443-5100
7   Fax:  (213) 443-5101

8
Attorneys for Defendant,
ILLINOIS UNION INSURANCE
9   COMPANY dba ACE WESTCHESTER
SPECIALTY CLAIMS
10

11

12

13

14

O:\WDOCS\0001\392\PLDPOS\00468230.DOC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

115

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California, by WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER and am over the age of 18 and not a party to the within action.  My business address is 555 South Flower Street, Suite 2900, Los Angeles, California 90071.

5

6

On **July 22, 2008**, I served the foregoing document described as **DECLARATION OF CUSTODIAN OF RECORDS OF ILLINOIS UNION INSURANCE COMPANY** on all interested parties, through their respective attorneys of record in this action, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

7

8

9

| | |
|---|---|
| Daniel L. Rottinghaus, Esq.<br>Paul W. Windust, Esq.<br>Berding & Weil LLP<br>3240 Stone Valley Road West<br>Alamo, CA  94507 | Attorneys for Plaintiff:  ROBERT L.  YOUNG<br>Phone:  (925) 838-2090<br>Fax:     (925) 820-5592 |

10

11

12

13

**XX  (BY MAIL)** I caused such envelope(s) fully prepaid to be placed in the United States Mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence or mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15

16

17

___ **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

18

19

**XX**   (BY E-MAIL) I caused such document to be served via E-mail at Paul W. Windust [pwindust@berding-weil.com]

20

21

<u>JURISDICTION</u>

22

**XX** (State)  I declare under penalty of perjury that the above is true and correct.

23

Executed on **July 22, 2008**, at Los Angeles, California.

24

25

Irene Guzman-Buelna

26

27

28

4

---

**DECLARATION OF DARREN LE MONTREE IN SUPPORT OF SUMMARY JUDGMENT MOTION**
682001.1

116

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, by WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER and am over the age of 18 and not a party to the within action.  My business address is 555 South Flower Street, Suite 2900, Los Angeles, California 90071.

On **July 22, 2008**, I served the foregoing document described as **[CORRECTED] DECLARATION OF DARREN LE MONTREE IN SUPPORT OF MSJ** on all interested parties, through their respective attorneys of record in this action, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Daniel L. Rottinghaus, Esq.<br>Paul W. Windust, Esq.<br>Berding & Weil LLP<br>3240 Stone Valley Road West<br>Alamo, CA  94507 | Attorneys for Plaintiff:  ROBERT L.  YOUNG<br>Phone:  (925) 838-2090<br>Fax:     (925) 820-5592 |

___ **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by hand to the offices of the addressee(s).

**XX**   (BY E-MAIL) I caused such document to be served via E-mail at Paul W. Windust [pwindust@berding-weil.com]

JURISDICTION

**XX** (State)  I declare under penalty of perjury that the above is true and correct.

Executed on **July 22, 2008,** at Los Angeles, California

_____
Darren Le Montree

[CORRECTED] DECLARATION OF DARREN LE MONTREE IN SUPPORT OF MSJ

682001.1