1  Daniel L. Rottinghaus, Esq., State Bar No. 131949
   Paul W. Windust, State Bar No. 167338
2  **BERDING & WEIL LLP**
   3240 Stone Valley Road West
3  Alamo, California 94507
   Telephone:  925/838-2090
4  Facsimile:   925/820-5592

5  Attorneys for Plaintiff
   ROBERT L. YOUNG
6

7

8               **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ROBERT L. YOUNG,                    No.  **C 07-05711 SBA**

12         Plaintiff,

13      vs.                             **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
                                        MOTION FOR PARTIAL
14  ILLINOIS UNION INSURANCE            SUMMARY JUDGMENT**
    COMPANY; ACE WESTCHESTER
15  SPECIALTY CLAIMS; and DOES 1        **DATE:  August 26, 2008**
    through 50, inclusive,              **TIME:  1:00 p.m.**
16                                      **CTRM:  3**
         Defendants.
17                                      **[FRCP 56(a) and (b)]**

18

19

20

21

22

23

24

25

26

27

28

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff ROBERT L. YOUNG ("Young") hereby submits his memorandum of points and authorities in support of his motion for partial summary judgment.

## I.    <u>INTRODUCTION</u>

This is an insurance dispute over whether Young was owed a defense and related duties by Defendant ILLINOIS UNION INSURANCE COMPANY ("IUI") and its agent Defendant ACE WESTCHESTER SPECIALTY CLAIMS ("ACE") (collectively, "defendants").  Young, a former officer and director of TRI Real Estates Services, Inc. ("TRI"), was sued along with TRI (and one of TRI's independent broker agents) by one of TRI's former clients.  Young and TRI were insured under an insurance policy issued by IUI and managed by ACE that included a duty to defend provision.  By this motion, Young seeks partial summary judgment of the duty to defend against IUI and ACE.

TRI was and is a real estate brokerage firm that provides professional real estate services for real property purchases and sales, property and asset management, and business brokerage.  Young was an Officer and Director of TRI at the time of the events that led to the claim for which Young claims a defense from IUI and ACE.

In February 2004, TRI sued Raybern Foods, Inc. ("Raybern") to recover brokerage commissions due on a business transaction that TRI set up (brokered) between Raybern and an entity known as Rose & Shore ("R&S").  Raybern cross-complained against TRI, Young and others for breach of fiduciary duty and negligence relative to the Raybern/R&S transaction.  Young tendered his defense of Raybern's Cross-Complaint on six separate occasions to IUI through ACE, its designated entity for claim notification.  (Separately, Young also cross-claimed against TRI asking for a defense and indemnity.)  For eighteen (18) months after the first tender, IUI and ACE remained silent and never responded to Young's tenders.

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   In late July 2005, after Young had twice made tender to IUI and ACE,
2   Raybern amended its Cross-Complaint against Young.   Young again dutifully
3   tendered to IUI and ACE with no response.  In September 2005, Young became the
4   target of yet another lawsuit when TRI and John Fults (a TRI agent, herein "Fults")
5   filed a cross-complaint against Young (the "Fults Cross-Complaint").

6   Young tendered Raybern's Cross-Complaint to IUI and ACE again and again
7   and again and again (four additional times) from December 2005 through June
8   2006 without hearing a response.  Eighteen months after Young's first tender, IUI –
9   through its retained outside counsel – finally acknowledged receipt of Young's
10  tender and stated that it was reviewing the matter.

11  Then, one day before mediation, IUI – again through its retained outside
12  counsel – denied Young's claim for a defense or indemnity.  Without a defense or
13  indemnity and having incurred over $300,000 in defense costs, Young reluctantly
14  settled the Raybern Cross-Complaint and paid $20,000, which also required a
15  release of his defense and indemnity claim against TRI.

16  The Policy in issue provided Directors' & Officers' coverage and Employer
17  Practices Liability coverage, and the two coverage sections were bound with a
18  General Terms & Conditions section applying to each.  When IUI declined any
19  defense or coverage obligation, it analyzed only the Directors' & Officers'
20  coverage section.

21  The IUI insurance policy at issue is <u>not</u> a garden variety Directors' &
22  Officers' Policy.  The policy contains an <u>express</u> duty to defend – an unusual
23  provision for Directors' and Officers' policies.  See *Comment, Practical Aspects of*
24  *Directors' and Officers' Liability Insurance - Allocating and Advancing Legal Fees*
25  *and the Duty to Defend,* 32 UCLA L. Rev. 690, 701-12 (1985).  IUI's Policy
26  promised Young that it would defend any Claim even if the allegations were
27  groundless, false, or fraudulent.  Under the Policy, "Claim" means <u>any</u> written or
28  / / /

1  oral demand for damages or other relief against TRI and the directors and officers.

2  And, it does not require that the Claim first be determined to be a covered claim.

3      In order to obtain partial summary judgment of an insurer's duty to defend,

4  Young need only establish that there was a triable issue of fact on the insurer's

5  coverage defense.  *Maryland Casualty Co. v. National American Ins. Co.* (1996) 48

6  Cal.App.4th 1822, 1832.  In other words, in opposing the motion, it is the insurer's

7  burden to <u>conclusively</u> negate coverage; that is, to establish its coverage defense as

8  a matter of law.   If the insurer establishes only that a fact finder <u>might have</u>

9  accepted the coverage defense, then the duty to defend is established and the

10  policyholder is entitled to partial summary judgment on that issue.  *Id.*

11     IUI denied Young a defense because it concluded that Raybern's Cross-

12  Complaint did not present a covered or potentially covered claim.    But this

13  conclusion was erroneous and incomplete.  Raybern's Cross Complaint alleges that

14  TRI and Young, its officer and director, were negligent and breached fiduciary

15  duties owed to it in handling the transaction upon which TRI was seeking

16  commissions.  Raybern further alleges that Young acted as TRI's agent and within

17  the course and scope of his obligations as an officer and director of TRI.

18  Moreover, separate and apart from the Directors' & Officers' coverage, IUI

19  completely ignored the Fults Cross-Complaint, and never articulated a reason to

20  deny a defense to that action (nor did it investigate that action or otherwise search

21  the Policy for coverage for its insured, as it is obligated to do).

22                      **II.    <u>FACTUAL SUMMARY</u>**

23     Young became an Officer of TRI on October 1, 1996 serving as its

24  Secretary.[1]  He became a Director on October 18, 2001 and served on TRI's Board

25  until July 14, 2003.[2]  Before Young agreed to serve as a Director, he insisted that

26

27  _____

28  [1] Declaration of Robert L. Young ("Young decl."), p. 1:26-27.

   [2] Young decl. p. 1:24-26.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**                                    3

TRI obtain Directors' and Officers' coverage which would provide him with a defense in the event he were ever sued.[3]  TRI obtained Directors' and Officers' coverage from IUI beginning in 2001 at Young's specific instance and request.

### A.    The Policy

IUI issued to TRI Insurance Policy number BMI20016061 which provided "Employment Practices" and "Directors & Officers and Company Liability" for the period from August 1, 2004 to August 1, 2005 (the "Policy").[4]

The Policy has a limit of Liability (inclusive of Defense Costs) of $2 million for each coverage provided.[5]  It was in full force and effect on and around March 18, 2005 and provided coverage for loss arising from Claims for Wrongful Acts.[6]  The Policy is structured into three parts: (1) General Terms & Conditions; (2) Directors & Officers and Company ("D&O") and (3) Employment Practices ("EP").  Each section will be discussed in turn.

### 1.    General Term & Conditions

Section A of the General Terms and Conditions provides as follows:

A.    SEVERABILITY OF GENERAL TERMS AND CONDITIONS

Except for the General Terms and Conditions below or unless stated to the contrary in any Coverage Section, the terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

This means that the General Terms and Conditions apply to both the Employment Practices and D&O Coverage sections, but that the terms of the Employment Practice Coverage and the D&O Coverage are independent of each other.[7]  No

---

[3] Young decl. p. 1:27-2:2.

[4] Exhibit 1 to Young decl.

[5] Policy Declarations p. DEC-1, Exhibit 1 to Young decl.

[6] Policy pp. EPL-1, D&O-1, Exhibit 1 to Young decl.

[7] Policy p. GT&C, Exhibit 1 to Young decl.

provision states whether the General Terms and Conditions or Coverage sections control if terms contradict each other.

Section L of the General Terms and Conditions provides as follows:

L.    SETTLEMENT AND DEFENSE

1.    No settlement shall be made or negotiated and no Costs, Charges, and Expenses shall be incurred without Insurer's consent, such consent not to be unreasonably withheld. Insurer shall have the right to investigate and settle any Claim; provided however, no settlement shall be made without the consent of the Parent Company, such consent not to be unreasonably withheld.

2.    *Insurer shall have the right and duty to defend any Claim and such right and duty shall exist even if any of the allegations are groundless, false or fraudulent.* The Parent Company shall have the right to assume the duty to defend any Claim provided Insurers consent in writing to such assumption. Costs, Charges, and Expenses incurred by Insurer, or by the Insureds when defending or investigating with the written consent of Insurer, shall be paid by Insurer as part of, and not in addition to, Insurer's Limit of Liability set forth in Item C of the Declarations for the applicable Coverage Section. [italics added][8]

By virtue of Section A of the General Terms and Conditions, clause L(2) applies to and is part of the D&O Coverage Section and the Employment Practices Coverage. The term "Claim" is not defined in the General Terms and Conditions, but is defined in each of the Coverage sections.

## 2.    D&O Coverage Section

The Policy promises that IUI will "pay on behalf of the Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Policy Period for a Wrongful Act."[9]

"Directors and Officers" means all persons who were, now are, or shall be: "directors, officers or employees of the Company."[10]    "Company" means the

---

[8] Policy p. GT&C-3, Exhibit 1 to Young decl.

[9] Policy p. D&O-1, Exhibit 1 to Young decl.

[10] Policy p. D&O-1, Exhibit 1 to Young decl.

"Parent Company and any Subsidiary."[11]   The term "Parent Company" is defined as the "entity named in item A of the Declarations."[12]   TRI is the Parent Company in Item A of the Declaration.[13]   Young was a Director and Officer of TRI.

"Loss" means damages, settlements, and Costs, Charges, and Expenses incurred by any of the Directors and Officers resulting from any Claim made against the Director and Officer during the policy period for a Wrongful Act.[14] "Cost, Charges, and Expenses" means reasonable and necessary legal fees and expenses incurred by any of the Insureds in defense of any Claim.[15]

"Claim" is defined as:  "any written or oral demand or other relief against any of the Insureds."[16]   The term "Insureds" means the Company and the Directors and Officers.[17]

"Wrongful Act" means any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by any of the Directors and Officers, while acting in their capacity as a director, officer or employee of the Company.[18]   The Policy provides that IUI will indemnify Young for losses he incurs if he is sued for negligence or breach of duty while acting as a director or officer of TRI.   The Policy also promises that IUI will defend any Claim even if the allegations are groundless, false, or fraudulent.[19]

---

[11] Policy p. GT&C-1, Exhibit 1 to Young decl.

[12] Id.

[13] Policy p. DEC-1, Exhibit 1 to Young decl.

[14] Policy p. D&O-1, Exhibit 1 to Young decl.

[15] Id.

[16] Id.

[17] Id.

[18] Policy p. D&O-2, Exhibit 1 to Young decl.

[19] Policy p. GT&C-3, Exhibit 1 to Young decl.

1    According to IUI, the relevant exclusions that preclude both defense and

2  indemnity obligations are Exclusions (k) and (q).   Exclusion (k) provides in

3  relevant part:

4         1.     Insurer shall not be liable to make any payment under this Coverage
                 Section in connection with any Claim:
5
6         k)     to the extent such Claim is based upon, arising out of, directly or
                 indirectly resulting from, in consequence of, or in any way involving
7                the service of any of the Directors and Officers in any position or
                 capacity in any entity other than the Company; . . ."

8  Exclusion (k) does not completely bar defense and indemnity because the exclusion

9  only operates to preclude coverage to the extent that a Claim relates to a Director

10 and Officer's work for another entity.[20]  Raybern's Cross Complaint alleges Young

11 committed errors and omissions acting as an attorney and as a Director and Officer

12 of TRI.

13    Exclusion (q), which was added to the Policy by endorsement, provides as

14 follows:

15        q)     based upon, arising out of, directly or indirectly resulting from or in
                 consequence of, or in any way relating to any act, error or omissions in
16               connection with performance of any professional services by or on behalf of
                 any of the **Insureds** for the benefit of any other entity or person; provided
17               however, this exclusion shall not apply to any such **Claim** brought directly,
                 derivatively or otherwise by one or more securities holders of the **Company**
18               in their capacity as such. [emphasis in original][21]

19 This exclusion has no application here because Raybern's Cross-Complaint plainly

20 alleges that its claim arises from Young's role as a Director and Officer of TRI, and

21 only secondarily from Young's performance of professional services.  But all of the

22 work done by Young or any insured for TRI was in the performance of professional

23 services since that was the business of TRI.  The exclusion is only for professional

24 services performed that are not meant to benefit TRI (i.e., " . . by or on behalf of

25

26 _____

27    [20] Policy p. D&O-2, Exhibit 1 to Young decl.

28    [21] Policy p. D&O120, Exhibit 1 to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**                                            7

1  any of the **Insureds** for the benefit of any *other* entity or person; . . .") (italic

2  emphasis added).

3        This exclusion has no application here for professional services because

4  Raybern's Cross-Complaint alleges that its claim arises from professional services

5  Young performed to benefit TRI. The professional services Young performed

6  benefited both TRI and Raybern and is the reason why Young obtained a conflict

7  waiver.[22]   In any event, Raybern's Cross-Complaint alleges Young breached his

8  duties and was negligent when acting within the scope of his duties as a TRI

9  Director and Officer in relation to the R&S transaction.  Moreover, exclusions (k)

10  and (q) do not relieve IUI of its defense duty because that duty is triggered even if

11  the allegations are groundless, false, or fraudulent.

12        **3.**     **Employment Practices Coverage**

13        This coverage section promises that IUI will pay for Loss resulting from any

14  Claim made during the policy period for a Wrongful Act.  The definition of

15  "Claim" is the same as set forth in the D&O Coverage section – any written or oral

16  demand for damages against any of the Insureds.[23]   The term "Wrongful Act"

17  includes any actual or alleged "breach of an actual or implied employment

18  contract" or actual or alleged "misrepresentation."[24]   The definition of Loss

19  includes legal fees and expenses incurred by an insured in defense of any Claim.[25]

20  Section L of the General Terms and Conditions is also contained in this coverage

21  section.  Therefore, in addition to indemnity obligations for Wrongful Acts, IUI

22  also has a duty to defend any Claim even if the allegations are groundless, false or

23  fraudulent.

24

25  _____

26  [22] Young decl. p. 2:7-15.

27  [23] Policy p. EPL-1, Exhibit 1 to Young decl.

    [24] Policy p. EPL-2, Exhibit 1 to Young decl.

28  [25] Policy p. EPL-1, Exhibit 1 to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

## B.    The Raybern Cross Complaint

In February 2004, TRI sued Raybern to recover a commission for brokering a transaction between Raybern and R&S.  About one year later, Raybern filed a cross-complaint against TRI, Fults, and Young, claiming that Young's capacity as an officer and director of TRI and actions he took in that capacity, excused its payment obligation and otherwise caused it damage.[26]  Raybern's Cross-Complaint alleged that:

> 3.    Cross-complainant is informed and believes and thereon alleges that Robert L. Young was at all relevant times an officer and director of TRI and, with respect to certain actions alleged herein, acted as its agent and within the course and scope of his obligations as an officer and director or TRI. Raybern is further informed and believes that Robert L. Young was at all times a member of the California bar and a practicing attorney holding himself out as having expertise in the type of transaction that form the basis of this lawsuit.

> *  *  *

> 9.    The services performed by TRI by and though Young, its officer and director, resulted in the consummation of a transaction upon which TRI now is seeking damages.  The services that Young provided included legal services as well as services which TRI/Fults had already agreed to provide Raybern in exchange for a commission from the Raybern/Rose & Shore transactions.  Raybern was billed for and paid Young substantial fees for his services.

> 10.    During the course of his representations of Raybern, Young failed to adequately protect Raybern's financial interests in the transactions with Rose & Shore and likewise failed to adequately protect Raybern when TRI's purported agent, John Fults, announced that he intended to withdraw form further representations of Raybern.

> 11.    Young, Fults, and TRI's actions breached their respective fiduciary duties to Raybern, resulting in damages to Raybern in an amount to be provide at trial.[27]

Raybern also sued Young for negligence as TRI's officer and director, as well as professional negligence arising out of legal work that Young allegedly completed in connection with the Raybern/R&S transaction.

---

[26] Raybern Cross Complaint ("CC"), Exhibit 2 to Young decl.

[27] CC p. 3:15-28, Exhibit 2 to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Raybern amended its cross-complaint and more clearly alleged Young's role

2  in the transaction in his capacity as TRI's officer and director.[28]   Raybern alleged

3  that:

4        3.    Cross-complainant is informed and believes and thereon alleges that
      Robert L. Young (Young) was an officer and director of TRI and, as such,
5     had a degree of control over or influence on TRI's actions herein.  With
      respect to certain actions alleged herein, Young acted as TRI's agent and
6     within the course and scope of his position as an officer and/or director of
      TRI.  Raybern contends that in failing to disclose his role as an officer and
7     director of TRI, Young placed his interests as an officer and/or director of
      TRI above his professional obligations to Raybern.   Raybern is further
8     informed and believes that Robert L. Young was at all times a member of the
      California bar and a practicing attorney claiming expertise in the type of
9     transactions that form the basis of this lawsuit.   Raybern is informed and
      believes and thereon alleges that Young was an undisclosed business
10    associate of Fults and served as an advisor to various business entities owned
      and/or controlled by Fults.[29]

11                              *   *   *

12       12.   . . . Specifically, [Young] had an obligation to inform Raybern that he
13    was then serving as an officer and/or director of TRI and therefore had
      conflicting fiduciary duties. . .

14       13.   During the course of his representation of Raybern, and in the interest
15    of effecting a transaction that would result in a commission to TRI, the
      company upon whose board he served, Young failed to disclose his
16    relationships with TRI and Fults, and he failed adequately to protect
      Raybern's financial interests in the transactions with Rose & Shore.
17    Specifically, Young failed to insure that the Manufacturing Agreement was
      tied to the Licensing Agreement;  Instead the Manufacturing Agreement had
18    a provision allowing Rose & Shore to terminate the Manufacturing
      Agreement even absent default by Raybern and yet continue to operate under
19    a more lucrative Licensing Agreement.   Young likewise breached his
      fiduciary duty to Raybern by failing to include language in the Licensing
20    Agreement making it clear that Fults had the obligation to and would be
      monitoring the Rose & Shore financials through out the life of the
21    Raybern/Rose & Shore contract, an issue now in dispute in this lawsuit.
      Young likewise failed to take steps to protect Raybern's interests upon
22    learning that Fults refused to continue performing under this contract with
      Raybern.  Finally, when Raybern asked Young to review a listing agreement
23    between TRI and Raybern - an agreement that would result in a commission
      to TRI upon sale of Raybern's Hayward property - Young again failed to
24    disclose his true relationship with TRI.[30]

25

26  _____

27  [28] Raybern First Amended Cross Complaint ("FACC"), Exhibit 3 to Young decl.

    [29] FACC p. 2:13-25, Exhibit 3 to Young decl.

28  [30] FACC pp. 5:23-6:20, Exhibit 3 to Young decl.

Both versions of Raybern's Cross-Complaint allege that Young worked on the R&S transaction while in the course and scope of his duties as a Director and Officer of TRI. Raybern alleges that Young was negligent and breached fiduciary duties owed to it that arose from his position as a Director and Officer of TRI. These allegations are sufficient to establish a potential for coverage under the IUI Policy. Raybern claims that TRI and Young failed to protect its financial interests with respect to the Raybern/R&S transaction. Further, Raybern claims that the services provided by Young included legal services as well as services that TRI had agreed to provide Raybern in exchange for a commission. According to Raybern, all of these services were performed in the course of scope of Young's duties as an officer and director of TRI. Under the Policy, Young is owed a defense even if these allegations were groundless, false or fraudulent.

### C. Young Tendered his Defense to IUI.

Young timely and repeatedly tendered the defense and indemnity of Raybern's Cross-Complaint to IUI. By letters dated <u>July 6, 2005, December 15, 2005, February 3, 2006, May 19, 2006, June, 27, 2006, August 11, 2006</u> and <u>November 30, 2006</u>, Young requested that IUI assume his defense and/or reimburse him for his mounting defense costs.[31] Young complied with all of the applicable terms and conditions of the Policy, and he provided IUI with frequent updates concerning the status of the case and avoided any action that could have increased IUI's exposure under the Policy.

Not having heard from IUI or ACE as to his tenders, Young was in the proverbial "Catch-22" in that Section A of the General Terms and Conditions, clause L(1) provides that, "No settlement shall be made or negotiated and no Costs, Charges, and Expenses shall be incurred without Insurer's consent, such consent not to be unreasonably withheld." He was forced by law to defend to himself yet

---

[31] Exhibits 4-10 to Young decl.

1  prohibited from acting on his own without the Insurer's consent.  Accordingly, he
2  tendered and kept tendering to IUI, and kept it informed of the action, while he
3  defended himself (and IUI's Policy) from a large judgment.

4  **D.    The Fults Cross-Complaint.**

5  In September 2005, Young was sued by TRI and John Fults, a TRI agent that
6  worked on the Raybern/R&S transaction (the "Fults Cross-Complaint").[32]  The
7  Fults Cross-Complaint alleges constructive fraud, legal malpractice, indemnity and
8  contribution against Young.[33]  TRI and Fults alleged that at all times relevant to
9  their claims, Young served as a corporate officer, later became a director, and
10  served as corporate counsel for TRI.[34]  They further allege that Young was not
11  given permission by TRI to provide legal services to Raybern, and that he  failed to
12  disclose that he was working as Raybern's legal counsel.[35]  These claims
13  essentially allege that Young breached contractual duties and misrepresented his
14  role respecting the Raybern/R&S transaction.

15  The Fults Cross-Complaint falls squarely within the Wrongful Act
16  definitions of the Policy's Employment Coverages section because it is a written
17  demand for money arising out of Young's alleged breach of an express or implied
18  employment contract to serve only TRI and his misrepresentations in allegedly
19  providing legal services to Raybern in the transaction.

20  Moreover, the Policy at General Terms and Conditions, Section L, requires
21  IUI to defend any Claim regardless of merit or cause.

22  / / /

23  / / /

24

25

26  [32] Fults Cross Complaint, Exhibit 11 to Young decl.

27  [33] Id.

28  [34] Fults Cross Complaint, p.4:5-11, Exhibit 11 to Young decl.

[35] Fults Cross Complaint p.5:11-16, Exhibit 11 to Young decl.

### E.     Over a Year After Tender, IUI Denied Young a Defense.

Young never received a response to his tenders from either IUI or ACE. Instead, in May 2006 Young's counsel received a copy of a letter from ACE to TRI dated July 6, 2005 denying <u>TRI's</u> request for a defense and indemnity.[36]  The only response to Young's tender came from IUI's coverage attorneys by letter dated December 5, 2006 – over one year after Young first requested that IUI defend him. The letter concludes with virtually no analysis or explanation as to why coverage is barred by Exclusions (k) and (q).[37]

The letter from IUI's coverage attorneys completely ignores Section L of the General Terms and Conditions which obligates IUI to provide Young with a defense even if the Claim allegations are "groundless, false, or fraudulent." Respecting Exclusion (k), IUI focuses only on allegations that Young, for his account, performed legal services for Raybern as Raybern's attorney and ignores allegations that Young committed wrongs as a Director and Officer of TRI. Respecting Exclusion (q), IUI again relies only on allegations that Young committed errors and omissions in the performance of professional service for Raybern's benefit, without regard that the performance was for the benefit of TRI.

When reminded of Section L, IUI's counsel concluded without explanation that Section L "is not an insuring clause" and that Raybern's Cross-Complaint does not present a covered or potentially covered claim.[38]  To the contrary, Raybern's Cross-Complaint contains many allegations implicating Young in errors and omissions as a Director and Officer of TRI.

/ / /

/ / /

---

[36] Exhibit 1 to Declaration of Paul W. Windust ("Windust decl.")

[37] Exhibit 2 to Windust decl.

[38] Exhibit 3 to Windust decl.

### III.    LEGAL ARGUMENT

#### A.    Legal Principles Concerning Partial Summary Judgment

Upon a showing that there is no genuine issue of material fact as to a particular claim or defense, the court may grant summary adjudication in the party's favor "upon all or part thereof."  FRCP 56(a),(b).  Rule 56 specifically provides that summary judgment may be rendered on the issue of liability alone even though there is a genuine issue as to the amount of damages.  FRCP 56(d)(2). Resolution of the liability issue before trial is perhaps the most common example of the "partial summary judgment" procedure.  *Pacific Fruit Express Co. v. Akron, Canton & Youngstown Railroad Co.* (9th Cir. 1975) 534 F.2d 1025. In the insurance context, summary judgment can often resolve whether the insurer must defend.  *Transamerica Ins. Co. v. Superior Court* (1995) 29 Cal.App.4th 1705, 1712-13 (noting that issue of an insurer's duty to defend was appropriate for summary adjudication stating, "[t]he question of whether a duty exists under certain circumstances is generally a question of law.  This is particularly true in the context of insurance and the issue of duty to defend.")

While either party may move for summary judgment regarding the duty to defend, an insurer is subject to a stricter burden of proof.  See *Montrose Chem. Corp. v. Superior Court.*, (1993) 6 Cal. 4th 287, 300; *Vann v. Travelers Cos.*, (1995) 39 Cal. App. 4th 1610, 1614.  Where the insurer is the moving party, it must present undisputed facts that eliminate any possibility of coverage as a matter of law.  See *id.*; see also *Maryland Cas. Co. v. National American Ins. Co. of Calif.*, (1996) 48 Cal. App. 4th 1822, 1832.  The *Maryland Casualty* court held that the insurer could not avoid summary adjudication of the duty to defend merely by raising a triable issue of fact concerning its coverage defense.  Rather, unless the insurer negated coverage as a matter of law, the policyholder was entitled to summary adjudication of the duty to defend.  *Id.* at 1832.  Where the insured is the moving party, he or she has the initial burden of establishing a potential for

coverage.  See *Montrose, 6 Cal. 4th at 300; Vann, 39 Cal. App. 4th at 1614*.  Once the insured makes the prima facie showing, the insurer faces the same burden it would encounter if it were the moving party – to prove there is no possibility of coverage. See *id*.  "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Vann, 39 Cal. App. 4th at 1614*.

> **B.    IUI Owed Young A Duty to Defend Unless It Can Show No Possibility of Coverage.**

The Policy promises that it will defend Young against any Claim and that the "duty shall exist even if any of the allegations are groundless, false or fraudulent." The duty to defend exists if there is any potential for coverage under the policy. *Montrose Chemical Co. v. Superior Court* (1996) 6 Cal.4th 287, 299.  Whether a duty to defend exists is initially determined by comparing the allegations of the complaint with the terms of the policy.  *Id.*

In determining whether a potential for coverage is present, potential amendments to the complaint must be considered. *North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.* (2006) 137 Cal.App.4th 627, 638.  As the California Supreme Court explained in *Montrose*, "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages is *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Id* at 299.

The duty to defend arises as soon as the defense is tendered to the carrier. *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46.  Once triggered, the duty to defend exists until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage.  *Montrose*, 6 Cal.4th at 295, emphasis in text.  Even the bare potential or possibility of coverage will trigger the duty.  *Id*.  An insurer may permissibly refuse to defend its insured only when the lawsuit against its insured "can by no conceivable theory raise a single issue which could bring it within the

1    policy coverage." *Id*., quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263,
2    276 n.15.

3       Where any of the plaintiff's claims is potentially covered, the insurer has a
4    duty to defend the action in its entirety. *Buss*, 16 Cal.4th at 45. "Any doubt as to
5    whether the facts establish the existence of defense duty must be resolved in the
6    insured's favor." *Montrose*, 6 Cal.4th at 299, 300. When there is a dispute about
7    whether the insurer has breached the duty to defend, "[T]he insured need only show
8    that the underlying claim may fall within policy coverage; the insurer must prove it
9    cannot." *Montrose*, 6 Cal.4th at 299.

10      Any ambiguity or uncertainty in an insurance policy is to be resolved against
11   the insurer. *Vann*, 39 Cal. App. 4th at 1615; *Montrose*, 6 Cal. 4th at 299-300. The
12   insurer "has a duty to defend when the policy is ambiguous and the insured would
13   reasonably expect the insurer to defend against the suit based on the nature and
14   kind of risk covered by the policy." *Foster-Gardner, Inc. v. National Union Fire*
15   *Ins. Co.*, (1998) 18 Cal. 4th 857, 869; *Gray*, 65 Cal. 2d at 270.

16      The cases cited above involve analysis of general liability policies which
17   typically have defense duty provisions. Directors' and Officers' policies generally
18   do not contain a duty to defend. See, *Comment, Practical Aspects of Directors'*
19   *and Officers' Liability Insurance - Allocating and Advancing Legal Fees and the*
20   *Duty to Defend,* 32 UCLA L. Rev. 690, 701-712. This issue was analyzed by the
21   Ninth Circuit Court of Appeal in *Gon v. First State Insurance Company* 871 F.2d
22   863 (9th Cir., 1989) where an insurer appealed the order of the trial court requiring
23   it to pay plaintiffs' legal fees incurred in defending an action filed by the FSLIC.
24   On appeal, First State argued that a requirement to pay legal fees as incurred
25   amounted to the imposition of a duty to defend. The Ninth Circuit disagreed with
26   the trial court that First State had a duty to defend, stating:

27          "We disagree with the conclusion, and believe there is no duty to defend
            under the terms of the First State policy. There is no language in the policy
28          stating that First State will defend any claim. A policy with a duty to defend
            typically contains a clause that provides that the insurer chooses the attorney

1   and controls the strategy of the litigation, a valuable right to protect the
2   insurer's own interests. This clause is not present in the First State policy."
    *Id* at 867-868.

3   Based on this reasoning, the opposite must be true.  Here, the Policy contains a

4   clear duty to defend at Section L, and requires IUI's consent should TRI assume its

5   own defense.   The Ninth Circuit's analysis makes clear that a duty to defend

6   depends on the terms of the Policy.  The Policy states that IUI will defend any

7   claim so there must be a duty to defend as a matter of law.

8       **C.     IUI Cannot Negate Coverage As A Matter of Law And Owed**
            **Young a Defense.**
9
            **1.     Raybern's Cross-Complaint Alleges Facts That Are**
10              **Potentially Covered.**

11      Raybern's   Cross-Complaint   alleges   facts   that   fit   within   the   Policy's

12  definition of Wrongful Act.  According to Corporations Code §300(a) "the business

13  and affairs of the corporation shall be managed and all corporate power shall be

14  exercised by or under the direction of the board.   The board may delegate the

15  management of the day-to-day operation of the business of the corporation to a

16  management company or other person provided that the business and affairs of the

17  corporation shall be managed and all corporate powers shall be exercised under the

18  ultimate direction of the board."  Directors can be liable to third persons injured by

19  the directors' own tortious conduct regardless of whether they acted on behalf of

20  the corporation or whether the corporation is also liable. *Francis T. v. Village*

21  *Green Owners Association* (1986) 42 Cal.3d 490, 504; *PMC, Inc. v. Kadisha*

22  (2000) 78 Cal.App.4th 1368, 1379-1381.

23      Raybern's Cross-Complaint alleges that "[t]he services performed by TRI by

24  and through Young, its officer and director, resulted in the consummation of a

25  transaction" which was the focus of the TRI complaint and Raybern Cross-

26  Complaint.  Raybern alleges that Young's breaches of duty while acting as TRI's

27  Director and Officer relative to the R&S transaction injured it and caused it

28  damage.  Because Young could be potentially liable for his own tortious conduct

1    relative to the R&S transaction, notwithstanding TRI's potential liability, the

2    claims were potentially covered, triggering IUI's defense duty.

3         Raybern was TRI's client with respect to the R&S transaction. Accordingly,

4    TRI, acting through its officers and directors, owed Raybern a fiduciary duty and a

5    duty of care respecting the negotiation of the R&S transaction. Raybern's Cross-

6    Complaint alleges that Young, TRI's officer and director, failed to adequately

7    protect Raybern's interests in the R&S transaction which resulted in damage to

8    Raybern. Further, Raybern alleges that TRI, which by virtue of the Corporations

9    Code is managed by its board of directors, breached fiduciary duties owed to it by:

10   (1) failing and refusing to fulfill its promise to monitor Rose & Shore's

11   performance under the transaction; (2) withdrawing from the transaction before it

12   was finalized; (3) failing to link the licensing agreement to continued performance

13   by Rose & Shore under the manufacturing agreement; and (4) failing to disclose

14   TRI's relationship with Young.[39]

15        These allegations constitute a Wrongful Act as defined by the Policy because

16   they allege error, omission, misleading statements, neglect, and breach of duty by a

17   Director and Officer (Young) while acting in their capacity as a director, officer, or

18   employee of the Company (TRI). Based on Raybern's Cross-Complaint, it cannot

19   be said conclusively that Young acted <u>exclusively</u> as Raybern's attorney respecting

20   the R&S transaction or that Young's work was solely for the benefit of Raybern

21   and to the exclusion of TRI. Even if it had, Section L of Policy obligates IUI to

22   defend Young even if such allegations are groundless, false, or fraudulent. In other

23   words, the duty to defend is presumed even when allegations exist which would

24   otherwise relieve IUI of a defense duty because those allegations could be

25   groundless, false or fraudulent.

26   / / /

27

28

_____

[39] FACC pp. 5:23-6:20, Exhibit 3 to Young decl.

## 2.    Exclusions (k) and (q) Do Not Bar Coverage.

Exclusion (k) bars coverage only to the <u>extent</u> a Claim is based upon, arises out of, results from, or involves the services of a director and officer in any position or capacity other than the Company.  IUI contends that coverage is barred because Raybern's Cross Complaint alleges that Young, as an attorney or sole proprietor, performed legal services for Raybern.  Even though Young is alleged to have performed legal services for Raybern, he is <u>also</u> alleged to have breached fiduciary duties and duties of care while acting as a director and officer of TRI.  Indeed, Young is also alleged to have performed legal services for TRI respecting the R&S transaction.  Exclusion (k) only bars coverage <u>to the extent</u> Young performed legal services solely for Raybern's benefit.  Therefore, there exists a potential for coverage which triggers the duty to defend.

Moreover, Section L presumes a duty to defend even if the allegations are groundless, false or fraudulent.  When faced with the identical language in a lawsuit seeking defense in a personal injury case, the California Supreme Court concluded:  "This language, in its broad sweep, would lead the insured reasonably to expect defense of *any* suit regardless of merit or cause.  The relation of the exclusionary clause to this basic promise is anything but clear.  The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner." [emphasis in original] *Gray v. Zurich Ins.* (1966) 65 Cal.2d 263, 273.

Section L requires IUI to defend Young against a Claim, which is defined as <u>any</u> written or oral demand for damages or any other relief against any of the Insureds.  If IUI intended to limit its defense duty to Claims for Wrongful Acts, Section L would so provide – it does not.  By virtue of Section A of the General Terms & Conditions, Section L is incorporated into the D&O coverage section.  Therefore, the Policy can be reasonably interpreted to provide a defense to any

Claim, regardless of merit or cause, and without regard to coverage exclusions. Whiles these terms make the Policy unique as a D&O Policy, they are nevertheless enforceable and in line with Young's expectations and the condition he required before becoming a Director. To the extent that the Policy is ambiguous respecting IUI's defense duty, the ambiguity is construed against IUI and in favor of Young.

Exclusion (q) was added by endorsement and buried at the end of the Policy. It is equally ineffective in absolving IUI's defense duty. Exclusion (q) excludes coverage for Claims based upon, arising out of, resulting from, or in any way relating to any act, error, or omission in connection with performance of any professional services by or on behalf of any of the Insureds for the benefit of any other entity or person. Raybern's Cross-Complaint alleges that TRI and Young breached fiduciary duties and duties of care owed to it in connection with the R&S transaction. TRI is a professional real estate services firm which provides brokerage services and property management services. If given effect, Exclusion (q) would swallow the entire policy and render it illusory because it would provide no insurance at all. An attorney would never have directors' and officers' coverage where his client also does business with the company for which he serves as an officer or director. Accordingly, this exclusion cannot be read to exclude coverage for alleged errors or omissions committed by Young in providing professional real estate services to Raybern.

In this case, TRI sent Young (knowing him to be a Director and Officer of the company) to do work for Raybern that would assist in closing the deal upon which TRI (through Fults) would receive a commission. Young obtained Raybern's consent because of the actual or potential conflict involved in such a role. In this instance, Young was working for the benefit of both parties to see that the transaction would close.

Raybern's Cross-Complaint does not allege TRI performed legal services. Instead, Raybern alleges that it engaged Young to perform legal services for it, not

1   TRI.   Raybern does not allege that Young was performing legal services as an

2   officer and director of TRI.   Rather, Raybern alleges that Young was performing

3   legal services for it which benefitted TRI, to his exclusion and detriment.   In other

4   words, the legal services provided by Young benefitted both Raybern and TRI with

5   the consummation of the R&S transaction as the objective.

6          Regardless, whether Young was wearing his Director and Officer hat when

7   he provided legal services to Raybern is irrelevant because it does not remove the

8   expectation of a defense provided by Section L.   Under that Section, IUI was

9   required to defend Young against Raybern's allegations regardless of their merit or

10  cause.   Exclusion (q) does not diminish Young's expectation of coverage.   At a

11  minimum, when Section L and Exclusion (q) are read together, the duty to defend

12  is ambiguous and that ambiguity must be resolved in Young's favor.

### 3.    Fults Cross-Complaint is Potentially Covered.

14         The allegations in Fults Cross-Complaint present yet another basis for

15  Young's claim that IUI breached its duty to defend.   In that action, Fults alleges

16  that Young was Raybern's legal counsel respecting the R&S transaction.   It further

17  alleges that Young misrepresented his involvement in the R&S transaction by

18  failing to disclose a potential conflict of interest.   These allegations constitute an

19  alleged Wrongful Act as that term is defined in the Policy.   These claims essentially

20  allege that Young breached his written or oral employment contract with TRI and

21  misrepresented his engagement with Raybern in failing to obtain permission to act

22  as Raybern's counsel and failing to disclose a potential conflict of interest.

23  Nevertheless, IUI completely ignored the Fults Cross-Complaint in denying

24  Young's tenders.   Moreover, again, Section L obligates IUI to defend Young

25  against any written demand for damages regardless of cause or merit.   The Fults

26  Cross-Complaint is precisely the type of claim for which Young is entitled to a

27  defense.   Hence, Young is entitled to summary judgment on the duty to defend.

28  / / /

# IV.  CONCLUSION

IUI cannot show that the allegations of the Raybern Cross-Complaint or the Fults Cross-Complaint do not create a potential for coverage, and certainly cannot establish this as a matter of law.  Raybern's Cross-Complaint alleges that Young, while acting as a Director and Officer of TRI, breach duties owed to it which resulted in business injury and financial damages.  Fults Cross-Complaint alleges that Young breached an implied employment contract and misrepresented his involvement with Raybern by providing legal services to Raybern without TRI's consent and in failing to disclose potential conflicts.  An allegation that Young provided legal services to Raybern is not excluded by the Policy and does not otherwise diminish his expectation of a defense by virtue of Section L.  Instead, Young required TRI obtain insurance that would provide him with a defense before he agreed to serve as a Director.  At a minimum, the Policy is ambiguous respecting the duty to defend and that ambiguity must be construed against IUI. Accordingly, IUI breached its duty to defend Young in the Raybern Cross-Complaint, and Young is entitled to summary judgment of this issue.

Date: July___, 2008                          **BERDING & WEIL LLP**


By:_____
        Daniel L. Rottinghaus
        Paul W. Windust
        Attorneys for Plaintiff
        ROBERT L. YOUNG

O:\WDOCS\0001\392\PLD\00474652.DOC

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL SUMMARY ..........................................................................3

  A.  The Policy ........................................................................................4

    1.  General Term & Conditions ....................................................4

    2.  D&O Coverage Section ...........................................................5

    3.  Employment Practices Coverage ............................................8

  B.  The Raybern Cross-Complaint .........................................................9

  C.  Young Tendered his Defense to IUI. ..............................................11

  D.  The Fults Cross-Complaint. ...........................................................12

  E.  Over a Year After Tender, IUI Denied Young a Defense. .............13

III.   LEGAL ARGUMENT...........................................................................14

  A.  Legal Principles Concerning Partial Summary Judgment ..............14

  B.  IUI Owed Young A Duty to Defend Unless It Can Show No Possibility of Coverage. .................................................15

  C.  IUI Cannot Negate Coverage As A Matter of Law And Owed Young a Defense. ...........................................................17

    1.  Raybern's Cross-Complaint Alleges Facts That Are Potentially Covered. ........................................................17

    2.  Exclusions (k) and (q) Do Not Bar Coverage. ......................19

    3.  Fults Cross-Complaint is Potentially Covered. .....................21

IV.    CONCLUSION.....................................................................................22

<u>TABLE OF AUTHORITIES</u>

Page

**FEDERAL CASES**

*Gon v. First State Insurance Company*, 871 F.2d 863 (9th Cir. 1989)............... 16-17

*Gray v. Zurich Ins.* (1966) 65 Cal. 2d 263 .................................................. 19

*Pacific Fruit Express Co. v. Akron, Canton & Youngstown Railroad Co.* (9th Cir. 1975) 534 F.2d 1025 .............................................................. 14

**STATE CASES**

*Buss v. Superior Court* (1997) 16 Cal. 4th 35......................................... 15

*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, (1998) 18 Cal. 4th 857 ..... 16

*Francis T. v. Village Green Owners Association* (1986) 42 Cal. 3d 490 ............. 17

*Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 263 ............................... 16

*Maryland Casualty Co. v. National American Ins. Co.* (1996) 48 Cal. App. 4th 1822............................................................. 3, 14

*Montrose Chemical Co. v. Superior Court* (1996) 6 Cal. 4th 287.................... 14-16

*North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.* (2006) 137 Cal. App. 4th 627........................................................ 15

*PMC, Inc. v. Kadisha* (2000) 78 Cal. App. 4th 1368............................... 17

*Transamerica Ins. Co. v. Superior Court* (1995) 29 Cal. App. 4th 1705 .............. 14

*Vann v. Travelers Cos.*, (1995) 39 Cal. App. 4th 1610.................................... 14-16

**FEDERAL STATUTES**

FRCP 56(a) ...................................................................... 1

FRCP 56(a),(b) .................................................................. 14

FRCP 56(d)(2) .................................................................. 14

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

# TABLE OF AUTHORITIES

**MISCELLANEOUS**

<span style="float:right">Page</span>

*Practical Aspects of Directors' and Officers' Liability Insurance - Allocating and Advancing Legal Fees and the Duty to Defend,* 32 UCLA L. Rev. 690, 701-12 (1985) ................................................................................... 2, 16

Corporations Code §300(a) .................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507