Herbert P. Kunowski (State Bar No. 150141)
Darren Le Montree, Esq. (State Bar No. 198715)
**WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 443-5100
Facsimile:    (213) 443-5101
Herbert.Kunowski@wilsonelser.com
Darren.LeMontree@wilsonelser.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. YOUNG,<br><br>    Plaintiff,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY; ACE WESTCHESTER SPECIALTY CLAIMS; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: C07-05711 SBA<br><br>ILLINOIS UNION INSURANCE COMPANYS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Hon. Saundra B. Armstrong<br><br>DATE:    September 30, 2008<br>TIME:    1:00 p.m.<br>CTRM:    3 |

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR

RESPECTIVE COUNSEL OF RECORD:

    PLEASE TAKE NOTICE that on September 30, 2008 at 1:00 p.m., or as

soon thereafter as this matter may be heard, in Courtroom 3 of the above-entitled

Court, located at 1301 Clay Street, Suite 400 S, Oakland, CA 94612-5212,

Defendant ILLINOIS UNION INSURANCE COMPANY ("Illinois Union or

"Defendant") will move the Court for summary judgment on the Complaint of

Plaintiff Robert L. Young ("Young") in the above-entitled action. Alternatively,

Defendant will move for summary adjudication in its favor as to each cause of

1

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1  action set forth in the operative complaint and as to Young's claims for attorneys'
2  fees and punitive damages.

3  The Motion is based upon the uncontroverted facts supporting the
4  conclusions that Defendant did not violate a contractual duty, implied covenant of
5  good faith or fiduciary duty in connection with Young's request for coverage
6  under the subject Policy, that no coverage is afforded to Young therein, and that
7  summary judgment and/or summary adjudication should be granted in favor of
8  Defendant as a matter of law.

9  The Motion will be based upon this Notice, the attached Memorandum of
10 Points and Authorities, the concurrently Declaration(s) of Darren Le Montree and
11 Michael Leest, the Separate Statement of Uncontroverted Facts and Conclusions
12 of Law filed separately and concurrently with this Motion, the complete Court
13 records and file in this matter, and upon such further oral and documentary
14 evidence that may be presented at the time of hearing on this Motion.

15 This Motion is made following the conference of counsel pursuant to Local
16 Rule 7-3, which took place on July 1, 2008.

17 Dated: August 4, 2008                 Respectfully submitted,

18                                       WILSON, ELSER, MOSKOWITZ,
19                                       EDELMAN & DICKER LLP
20
21                                       By: _____
22                                           Herbert P. Kunowski, Esq.
23                                           Darren Le Montree, Esq.
                                             Attorneys for Defendants
24
25
26
27
28

2

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

TABLE OF CONTENTS

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**Page**

I.   INTRODUCTION……………………………………………..    3

II.  UNCONTROVERTED MATERIAL FACTS……………………    3

    A.   THE UNDERLYING ACTION…………………………..……    3

    B.   THE COVERAGE DISPUTE…………………………………    5

III. ARGUMENT……………………………………………………    6

    A.   TO AVOID SUMMARY JUDGMENT, YOUNG MUST
          PRESENT EVIDENCE CREATING A GENUINE ISSUE
          OF FACT FOR  TRIAL………………………………………    6

    B.   PRINCIPLES OF POLICY INTERPRETATION……………...    6

    C.   ILLINOIS UNION IS ENTITLED TO SUMMARY
          JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY
          ADJUDICATION…………………………………………..    7

        1.   Exclusion (Q) of the Directors and Officers
            Coverage Section of the Policy Bars Coverage to
            Young for this Claim……………………………………    7

        2.   The Policy is Not Triggered because the Claim Does
            Not Arise Out of Wrongful Acts by Young in a
            Covered Capacity………………………………………    10

        3.   The Raybern Action Against Young Did Not Allege
            Any Wrongful Acts Under the Employment Practices
            Coverage Section…………………………………………    11

        4.   Clause (L) Does Not Provide For a Duty to Defend an
            Uncovered Claim…………………………………………    12

        5.   Because No Coverage is Afforded for the Underlying
            Action Against Him, Young Has No Viable Causes

i

of Action for Breach of Contract or Breach of the
Implied Covenant of Good Faith as a Matter of Law....     14

    6.     Young's Causes of Action for Breach of Fiduciary
Duty And Constructive Fraud Must Fail Because
Illinois Union Did Not Owe Young A Fidiciary Duty
and In any Event, No Coverage Is Available For
This Claim……………………………………………     16

    7.     Young's Fifth Cause of Action For Intentional
Infliction Of Emotional Distress Is Not Viable…………     17

    8.     Young's Sixth Cause of Action For Negligent
Infliction Of Emotional Distress Is Not Viable…………     17

    9.     Young's Seventh and Eight Causes of Action For
Intentional Misrepresentation and Negligent
Misrepresentation Must Fail As They Are Merely a
Recasted Claim For Bad Faith…………………………     18

    10.     Young Cannot State a Proper Cause of Action For
Declaratory Relief……………………………………     18

    11.     Young Cannot Recover Punitive Damages As a
Matter Of Law…………………………………………     18

VI.     CONCLUSION…………………………………………     20

## TABLE OF AUTHORITIES

**Statutes**     **Page(s)**

28 U.S.C. § 1332……………………………………………     5

Federal Rule of Civil Procedure 56(c)…………………………     6

Cal. Evid. Code § 310………………………………………     7

Witkin, California Procedure, 4th Ed., Pleading, Section 817…………     18

Cal. Civil Code §3294………………………………………     18

ii

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
ETC.

678727.1

California Civil Code § 3294(c) (1)………………………………….. 19, 20

**Cases**

*Aceves v. Allstate Ins. Co.,*
    68 F.3d 1160 (9th Cir.1995)…………………………………… 17

*AIU Ins. Co. v. Superior Court,*
    51 Cal.3d 807, 822 (1990)…………………………………….. 7

*Amex Assurance Co. v. Allstate Insurance Co.,*
    112 Cal. App. 4th 1246, 1252 (2003)……………………… 9, 13, 14

*Bank of the West v. Superior Court,*
    2 Cal.4th 1254, 1265 (1992)………………………………… 14

*Blumberg v. Guarantee Ins. Co.*
    192 Cal.App.3d 1286, 1296 (1987)………………………… 7

*British Airways Bd. v. Boeing Co.,*
    585 F.2d 946, 950-52 (9th Cir. 1978)……………………… 6

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322-23 (1986)………………………………… 6

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,*
    90 Cal.App.4th 335, 346 (2001)…………………………… 15, 16

*Christensen v. Superior Court,*
    54 Cal.3d 868 (1991)………………………………………….. 17

*Dalrymple v. United Services Auto. Ass'n,*
    40 Cal.App.4th 497, 516 (1995)…………………………… 16

*Erlich v. Menezes,*
    21 Cal.4th 543 (1999)………………………………………… 17

*Feldman v. Allstate Ins. Co.,*
    322 F.3d 660, 669-70 (9th Cir. 2003)……………………… 16

iii

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,*
    148 Cal.App.4th 976 (2007)   13, 14…………………………… 13, 14

*Guebara v. Allstate Ins. Co.,*
    237 F.3d 987, 992 (9th Cir. 2001)…………………………….. 16

*Guz v. Bechtel National, Inc.,*
    24 Cal. 4th 317, 349 (2000)………………………………… 15

*Henderson v. Security National Bank,*
    72 Cal.App.3d 764, 771-72 (1977)………………………… 19

*Herzog v. National Am. Ins. Co.,*
    2 Cal.3d 192, 198-99 (1970)……………………………….. 7

*Homeowners Ass'n v. Associated Int'l Ins. Co.,*
    90 Cal.App.4th 335, 346 (2001)…………………………… 16

*Lehto v. Allstate Ins. Co.,*
    31 Cal.App.4th 60, 70 (1994)……………………………… 16

*Love v. Fire Ins. Exchange,*
    221 Cal. App. 3d 1136, 1153 (1990)……………………… 15

*Mock v. Michigan Millers Mut. Ins. Co.,*
    4 Cal.App.4th 306, 332 (1992)……………………………. 19

*Montrose Chemical Corporation of California v. Superior Court,*
    6 Cal.4th at 287, 298 (1993)………………………………. 7

*National Auto. & Cas. Ins. Co. v. Stewart,*
    223 Cal.App.3d 452, 458 (1990)…………………………… 6

*National Auto, supra,*
    23 Cal.App.3d at 458……………………………………… 6

*Potter v. Firestone Tire & Rubber Co.,*
    6 Cal.4th 965 (1993)……………………………………….. 17

*Producers Dairy Delivery Co. v. Sentry Ins. Co.,*
    41 Cal.3d 903, 912 (1986)………………………………… 6, 7

iv

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

*Producers Dairy, supra,*
    41 Cal.3d at 912…………………………………………………… 6

*Producers Dairy, supra,*
    41 Cal.3d at 916………………………………………………….. 7

*Ricard v. Pacific Indemnity Co.,*
    132 Cal.App.3d 886 (1982)…………………………….......... 17

*Sanchez v. Lindsey Morden Claims Services Inc.,*
    72 Cal.App.4th 249 (1999)………………………………….. 17

*Schlauch v. Hartford Acc. and Indem. Co.,*
    146 Cal.App.3d 926 (1983)………………………………….. 17

*Shade Foods, Inc. v. Innovative Products & Sales Marketing, Inc.,*
    78 Cal.App.4th 847, 891 (2000)……………………………… 19

*Soto v. Royal Globe Ins. Co.,*
    184 Cal.App.3d 420 (1986)………………………………….. 18

*Suarez v. Life Ins. Co. of North America,*
    206 Cal.App.3d 1396, 1406 (1988)………………………….. 7

*Tradewinds Escrow, Inc. v. Truck Ins. Exchange,*
    97 Cal. App. 704, 713 (2002)………………………………... 9

*Vu v. Prudential Prop. & Cas. Ins. Co.,*
    26 Cal.4th 1142 (2001)……………………………………… 16

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal.4th 1, 36 (1995)……………………………………... 9, 15

*Woolstrum v. Mailloux,*
    141 Cal.App.3d Supp. 1, 9 (1983)………………………….. 19

v

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

## MEMORANDUM OF POINTS AND AUTHORITIES
## I. INTRODUCTION

This is an insurance coverage dispute between Robert L. Young ("Young") and Illinois Union Insurance Company ("Illinois Union") arising out of Young's demand that its insurer, Illinois Union, defend and indemnify it in a legal malpractice lawsuit filed against him by Raybern Foods, Inc. ("the Underlying Action").[1]

The undisputed facts demonstrate that the allegations in the Underlying Action are not potentially covered by the insurance policy at issue, that an exclusion as well as the Policy's definition of Wrongful Acts (lack of an insured capacity) apply to expressly preclude coverage for the claim. By way of the instant motion, Illinois Union requests that the Court find that: 1) Illinois Union had no duty to defend or indemnify Young in the Underlying Action; 2) that Illinois Union is not liable for breach of contract and breach of the covenant of good faith and fair dealing (i.e., "bad faith") or for any of Young's remaining causes of action which are either improper theories and/or fail in tandem with the absence of coverage; 3) that Young is not entitled to exemplary and/or punitive damages; and (4) that Young is not entitled to "Brandt" attorneys' fees.

## II.    UNCONTROVERTED MATERIAL FACTS
### A.    UNDERLYING ACTION

On February 17, 2004, TRI Commercial Real Estate Services, Inc. ("TRI") filed an action against its former client, Raybern Foods, Inc. ("Raybern") and Bernard Viggiano ("Viggiano") in the Superior Court of California, County of Alameda, Case No. RD 041414329 (the "Underlying Action"). In this action TRI

---

[1] Defendant respectfully requests this Court take judicial notice of relevant pleadings from the Underlying Action, copies of which are attached hereto as exhibits in support of this Motion.

3

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1    was seeking to recover its commission as a broker with respect to Raybern's
2    marketing of a business opportunity in the form of a sale, merger, royalty
3    agreement or strategic alliance with a third party. (See Ex. 1).

4         On March 23, 2005, Raybern filed a Cross-Complaint against TRI, John
5    Fults and Young, individually and doing business as the Law Offices of Robert L.
6    Young ("Raybern Cross-Action"). (See Ex. 2). As against Young, the Raybern
7    Cross-Action alleged that Young was at all relevant times a California attorney and
8    sole proprietor of the Law Offices of Robert L. Young. (Ex. 2, ¶ 4). Raybern
9    further alleged that it retained the legal services of Young in early 2001 in
10   connection with the formation of a strategic business alliance with a separate
11   entity, Ross & Shore. (Ex. 2, ¶ 6). Raybern further contended that at the time it
12   retained Young and the Law Offices of Robert L. Young, it was unaware of the
13   fact that Young was serving as an officer/director of TRI. (Ex. 2, ¶ 8). Raybern
14   alleged causes of action against Young for breach of fiduciary duty, legal
15   malpractice (professional negligence) and negligence.

16        On July 26, 2005, in response to a demurrer, Raybern filed a First Amended
17   Cross-Complaint. (See Ex. 3). The First Amended Cross-Complaint included a
18   separately plead cause of action against Young for breach of fiduciary duties
19   allegedly owed to Raybern by Young "[a]s Raybern's attorney." (Ex. 3, ¶ 12). The
20   First Amended Cross-Complaint also elaborated in further detail Young's alleged
21   legal malpractice in providing legal services below the standard of care for legal
22   professionals in that he allegedly failed to fully disclose his relationship with TRI
23   in contradiction of the Rules of Professional Conduct, failed to disclose an ongoing
24   conflict of interest, and failed to provide adequate drafting of the operative legal
25   documents in Young not protecting Raybern's stated goal of ensuring that Rose &
26   Shore would be handling all of its manufacturing. (Ex. 3, ¶ 16).

27        On August 24, 2005, Young filed a Cross-Complaint against TRI and John

28
                                         4
        **ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,**
                                        **ETC.**

1  Fults ("Fults") for equitable indemnity, apportionment of fault, express indemnity

2  and declaratory relief. (See Ex. 4).   On September 19, 2005, TRI and Fults filed a

3  Cross-Complaint against Young for breach of fiduciary duty, legal malpractice,

4  indemnity, contribution and declaratory relief. (See Ex. 5).

5  **B.     THE COVERAGE DISPUTE**

6        Through correspondence dated June 7, 2005, TRI's counsel Albert E.

7  Cordova provided Illinois Union with a copy of Raybern's Cross-Complaint filed

8  in the Raybern Action along with a series of letters between Young and TRI. (See

9  Ex. 6).

10       Through correspondence dated July 6, 2005 to Andrew Murbach of TRI,

11  Illinois Union advised that there was no coverage for TRI, Fults or Young in

12  connection with the Raybern Action based on acts which were not performed in a

13  covered capacity and also the application of Exclusion (q) of the Policy, which

14  bars coverage for any Claim "...in any way relating to any act, error or omission in

15  connection with performance of any professional services..." (See Ex. 7).

16       Young disputed Illinois Union's coverage position primarily on the grounds

17  that the Raybern Action recognized that Young was a director and officer of TRI--

18  even though his duty to disclose an actual or potential conflict of interest arose in

19  his capacity as an attorney for Raybern.  Young also contended that the Policy's

20  General Terms and Conditions afforded him a defense even if coverage was barred

21  entirely by an applicable exclusion.  Illinois Union reiterated its coverage denial

22  and Young filed suit against Illinois Union on May 30, 2007, in the Superior Court

23  of California, County of Alameda (the "Complaint").  Illinois Union removed the

24  action based upon 28 U.S.C. § 1332.  The Complaint contains nine causes of action

25  as follows: (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and

26  Fair Dealing, (3) Breach of Fiduciary Duty, (4) Constructive Fraud, (5) Intentional

27  Infliction of Emotional Distress, (6) Negligent Infliction of Emotional Distress, (7)

28

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**
678727.1

1   Intentional Misrepresentation, (8) Negligent Misrepresentation, and (9)

2   Declaratory Relief.  Young seeks reimbursement of Loss [about $300,000 in

3   defense fees and costs plus $20,000 paid in settlement of the claim] incurred in the

4   Raybern Action, punitive and exemplary damages, as well as attorneys' fees and

5   costs.

6   ## III.    ARGUMENT

7   **A.    TO AVOID SUMMARY JUDGMENT, YOUNG MUST PRESENT

8   EVIDENCE CREATING A GENUINE ISSUE OF FACT FOR TRIAL**

9         Federal Rule of Civil Procedure 56(c) provides for the granting of summary

10   judgment where there is "no genuine issue as to any material fact and . . . the

11   moving party is entitled to a judgment as a matter of law." In seeking either

12   summary judgment or summary adjudication, the moving party has the burden to

13   establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477

14   U.S. 317, 322-23 (1986).  Once the moving party has met its burden -- either by

15   presenting evidence that, if uncontradicted, would entitle it to a directed verdict at

16   trial, or by demonstrating a lack of evidence for the nonmoving party's case -- Rule

17   56(e) shifts to the nonmoving party the burden of presenting facts showing a

18   genuine issue of fact for trial. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946,

19   950-52 (9th Cir. 1978).

20   **B.    PRINCIPLES OF POLICY INTERPRETATION**

21         An insurance policy is a contract, and the insured is responsible for reading

22   the policy and knowing its contents. *National Auto. & Cas. Ins. Co. v. Stewart*, 223

23   Cal.App.3d 452, 458 (1990).  An exclusion in an insurance policy will be upheld

24   so long as it is unambiguous, plain and conspicuous. These are questions of law.

25   *Id.; Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912 (1986).

26   An "ambiguous" provision is one that is capable of two or more constructions,

27   both of which are reasonable. *Producers Dairy, supra*, 41 Cal.3d at 912; *National*

28

6

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1    *Auto, supra,* 223 Cal.App.3d at 458; *Suarez v. Life Ins. Co. of North America,* 206

2    Cal.App.3d 1396, 1406 (1988); Cal. Evid. Code § 310. Words in an insurance

3    policy must be read in their ordinary sense, and any ambiguity cannot be based on

4    a strained interpretation of policy language. *Producers Dairy, supra,* 41 Cal.3d at

5    912. "[I]f the meaning a layperson would ascribe to contract language is not

6    ambiguous, we apply that meaning." *AIU Ins. Co. v. Superior Court,* 51 Cal.3d

7    807, 822 (1990).

8    Moreover, the policy must be considered as a whole, and in relation to the

9    concrete circumstances of the particular case. *Herzog v. National Am. Ins. Co.,* 2

10   Cal.3d 192, 198-99 (1970); *Producers Dairy, supra,* 41 Cal.3d at 916; *Blumberg v.*

11   *Guarantee Ins. Co.* 192 Cal.App.3d 1286, 1296 (1987).

12   **C.    ILLINOIS UNION IS ENTITLED TO SUMMARY JUDGMENT OR,**
13   **IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

14   Summary judgment is appropriate in an insurance case where a question of

15   insurance coverage can be determined as a matter of law on undisputed facts.

16   *Montrose Chemical Corporation of California v. Superior Court,* 6 Cal.4th at 287,

17   298 (1993). Thus, summary judgment is appropriate in this action because the

18   undisputed facts demonstrate as a matter of law that Illinois Union's policy does

19   not provide coverage for Young in the Underlying Action.

20   **1.    EXCLUSION (Q) OF THE DIRECTORS AND OFFICERS**
21   **COVERAGE SECTION OF THE POLICY BARS COVERAGE TO**
22   **YOUNG FOR THIS CLAIM**

23   Illinois Union issued to TRI a Business and Management and Indemnity

24   Policy, No. BMI200116061, with Directors and Officers and Employment

25   Practices Coverage, effective August 1, 2004 to August 1, 2005, on a claims made

26   and reported basis ("the Policy") (Ex. 8).

27   Under the Directors & Officers Coverage Section, the Insuring Clause of the

28   Policy provides as follows:

7

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1
2
3

The Insurer shall pay on behalf of the Directors and Officers Loss from any Claim made against the Directors and Officers during the Policy Period for a Wrongful Act.  (Ex 8, Clause A.1, page D&O-1)

4
5

The Policy defines "Claim" to mean:

6
7
8
9

(a) any written or oral demand for damages or other relief against any of the Insureds and (b) a judicial, administrative or arbitration proceeding initiated against any of the Insureds in which they may be subjected to a binding adjudication of liability for damages or other relief, including any appeal therefrom.
(Ex 8, Clause B.2, page D&O-1)

10
11

At Section (B)(9),  "Wrongful Act," is defined as:

12
13

Wrongful Act with respect to a director or officer means any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by:

14
15
16
17

(i)  a director or officer or employee of the Company or the functional equivalent to a director or officer of the Company, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity; and

18
19
20

(ii) a director or officer, trustee, governor, executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Company.
(Ex 8, Clause B.9, page D&O-2)

21

"Directors and Officers" is defined at Section (B)(5) as:

22
23
24
25
26

 all persons who were, now are or shall be: (a) directors, officers, or employees of the company, and (b) the functional equivalent to directors or officers of the Company in the event the Company is incorporated or domiciled outside the United States, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy. "  (Ex 8, Clause B.5, page D&O-1)

27

Exclusion (q) contained in Endorsement No.2 of the Policy provides:

28

8

1

2     IN CONSIDERATION OF the premium charged for this Policy, it is hereby
understood and agreed that Clause C EXCLUSIONS 1. of the Directors &
Officers and Company Coverage Section is amended by the addition of the
3     following after "1. Insurer shall not be liable to make any payment under this
Coverage Section in connection with any Claim:"
4

5     q)    based upon, arising out of, directly or indirectly resulting from
or in consequence of, or in any way relating to any act, error or
6     omission in connection with performance of any professional
services by or on behalf of any of the Insureds for the benefit of any
7     other entity or person; provided, however, this exclusion shall not
apply to any such Claim brought directly, derivatively or otherwise
8     by one or more securities holders of the Company in their capacity as
9     such.
10

11        By its plain meaning, Exclusion (q) bars coverage for any Claim "in any way

12   relating to" Young's performance of professional services.    Since the term

13   "professional services" is not expressly defined in the Policy, it is applied in

14   accordance with the ordinary understanding or plain meaning of the term.  *Waller,*

15   11 Cal.4th at 18.  In that regard, "professional services" have been interpreted by

16   the courts to include the so-called "learned" professions (doctors, lawyers, etc.) and

17   also include a broader scope of skilled services such as that of a plumber.  *Amex*

18   *Assurance Co. v. Allstate Insurance Co.,* 112 Cal. App. 4th 1246, 1252 (2003).

19        The defining principle as to whether a given Claim falls within the

20   professional services exclusion is whether the injury occurred during the

21   performance of the professional services.  *Tradewinds Escrow, Inc. v. Truck Ins.*

22   *Exchange,* 97 Cal. App. 704, 713 (2002).   Here, the Claim against Young in the

23   Underlying Action unquestionably relates to Young's legal services rendered to

24   Raybern. As noted above, Raybern's First Amended Complaint included the

25   following causes of action against Young:  (1) Breach of Fiduciary Duty (Second

26   Cause of Action); (2) Professional Negligence (Third Cause of Action) and (3)

27   Negligence (Fourth Cause of Action). (See Ex. 3).   The First Amended Complaint

28

9

678727.1

1   differed slightly from the original version in that it delineated a separate cause of

2   action solely against Young (Second Cause of Action) for breach of fiduciary

3   duties owed by Young "[a]s Raybern's attorney." (Ex. 3, ¶ 12).   The First

4   Amended Cross-Complaint also elaborated upon Young's alleged legal malpractice

5   in providing legal services below the standard of care for legal professionals by

6   allegedly failing to fully disclose his relationship with TRI in contradiction of the

7   Rules of Professional Conduct, failing to disclose an ongoing conflict of interest,

8   and failing to provide adequate drafting of the operative legal documents in Young

9   not protecting Raybern's stated goal of ensuring that Rose & Shore would be

10  handling all of its manufacturing. (Ex. 3, ¶ 16).   See also, Young's Retainer

11  Agreement with Raybern. (Ex. 9).

12  **2.    THE POLICY IS NOT TRIGGERED BECAUSE THE CLAIM**

13  **DOES NOT ARISE OUT OF WRONGFUL ACTS BY YOUNG**
    **IN A COVERED CAPACITY**

14

15      The insuring clause of the Policy provides as follows:

16      The Insurer shall pay on behalf of the Directors and Officers Loss

17      from any Claim made against the Directors and Officers during the
        Policy Period for a Wrongful Act. (Ex 8, Clause A.1, page D&O-1)

18

19      At Section (B)(9), "Wrongful Act" is defined in relevant part as:

20      Wrongful Act with respect to a director or officer means any actual or

21      alleged error, omission, misleading statement, neglect, breach of duty
        or act by:

22

23      (i) a director or officer or employee of the Company or the functional
        equivalent to a director or officer of the Company, while acting in

24      their capacity as such, or any matter claimed against any Director and
        Officer solely by reason of his or her serving in such capacity....

25      (Ex. 8, Clause B.9, page D&O-2)

26

27      The Claim against Young arises out of his alleged attorney malpractice. The

28  underlying plaintiff, Raybern, alleged in its operative First Cross-Complaint that

10

1  Young breached fiduciary duties he owed to it as an attorney and that Young failed

2  to competently perform legal services with respect to drafting the operative

3  agreements.    The aforementioned conduct does not constitute Wrongful Acts

4  committed by Young in the capacity as a director or officer of TRI.

5       Moreover, Young was asked in written discovery in the instant action to

6  "[I]dentify with particularity each Wrongful Act alleged against Plaintiff [Young]

7  in the CLAIM [Raybern Action] which did not arise out of, or result from or in any

8  way involve Plaintiff's service as legal counsel to Raybern Foods, Inc." (Ex. 10, p.

9  2).    After asserting various objections, Young responded by citing broadly to

10  Raybern's Cross-Complaint, Raybern's First Amended Cross-Complaint and the

11  Cross-Complaint of TRI and Fults.    Young also cited to the definition of

12  "Wrongful Acts" contained in the Policy.    Young did not cite to any specific

13  paragraphs of the above-referenced Cross-Complaints nor did he reference any

14  specific facts alleged against him in the Raybern Action which did not arise out of

15  or in any way involve his service as an attorney for Raybern. (See Ex. 10, pages 2-

16  3.)

17  **3.    THE RAYBERN ACTION AGAINST YOUNG DID NOT ALLEGE**
   **ANY WRONGFUL ACTS UNDER THE EMPLOYMENT**
18  **PRACTICES COVERAGE SECTION**

19

20       Young has suggested that the Employment Practices Coverage Section may

21  somehow afford coverage.  The Insuring Clause in that Section provides:  "Insurers

22  shall pay on behalf of the Insureds Loss resulting from any Claim first made during

23  the Policy Period for a Wrongful Act." (See Ex. 8, Clause A.1, page EPL-1).

24  "Wrongful Act" is defined therein to mean any actual or alleged:

25       a)    violation of any federal, state, local or common law, prohibiting
             any kind of employment-related discrimination, or
26       b)    harassment, including any type of sexual or gender harassment
27             as well as racial, religious, sexual orientation, pregnancy,

28
                                        11

disability, age, or national origin-based harassment and including workplace harassment by any non-employee, or

c)   abusive or hostile work environment, or

d)   wrongful discharge or termination of employment, whether actual or constructive, or

e)   breach of an actual or implied employment contract, or

f)   wrongful failure or refusal to hire or promote, or wrongful demotion, or

g)   wrongful failure or refusal to provide equal treatment or opportunities, or

h)   defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy, or

i)   wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures, or

j)   wrongful, excessive or unfair discipline, or

k)   wrongful infliction or emotional distress, mental anguish, or humiliation, or

l)   Retaliation, or

m)   negligent hiring or negligent supervision of others in connection with a) through l) above, but only if employment related and claimed by or on behalf of any Employee and only if committed or allegedly committed by any of the Insureds in their capacity as such.

(See Ex. 8, clause B.11, page EPL-2.)

The Claim against Young in the Underlying Action is devoid of any Wrongful Acts alleged which would trigger coverage under the Employment Practices Coverage Section.   Accordingly, no coverage is afforded under this Section as a condition precedent to coverage has not been satisfied.

**4.    CLAUSE (L) DOES NOT PROVIDE FOR A DUTY TO DEFEND AN UNCOVERED CLAIM**

Perhaps finally realizing that the Policy's terms, conditions and exclusions do not afford coverage for the Claim against him in the Underlying Action, Young appears to have focused his coverage argument on the contention that he was entitled to a defense under the Policy even if an exclusion entirely bars coverage

12

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1    for the Claim.   The premise of Young's argument is a misconstruction of the

2    Policy's General Terms and Conditions.

3         Clause L of the General Terms and Conditions section of the Policy

4    provides in pertinent part as follows:

5         L.    Settlements and Defense

6         ...2.    Insurer shall have the right and duty to defend any Claim and
         such right and duty shall exist even if any of the allegations are
7         groundless, false or fraudulent.  The Parent Company shall have the
         right to assume the duty to defend any Claim provided Insurers
8         consent in writing to such assumption.
9         (Ex. 8, Clause L2, pages GT & C-3).

10

11        Note that pursuant to Clause A of the General Terms and Conditions

12   (Severability of General Terms and Conditions), "[e]xcept for the General Terms

13   and Conditions below or unless stated to the contrary in any Coverage Section, the

14   terms and conditions of each Coverage Section apply only to that Coverage

15   Section and shall not be construed to apply to any other Coverage Section."

16   (Ex. 8, Clause A, pages GT & C-1).

17        Young seeks to argue that the duty to defend provision of Clause L (2)

18   affords a duty to defend regardless of whether the Claim is covered under any

19   coverage section within the Policy.   Pursuant to the structure of the Policy, the

20   severability of the General Terms and Condition and common sense, this

21   argument must fail.

22        A similar argument was advanced in the case of *Golden Eagle Ins. Corp. v.*

23   *Cen-Fed, Ltd.,* 148 Cal.App.4th 976 (2007).   In *Golden Eagle,* authored by

24   Justice Croskey, the Court held that a supplementary payments clause in a

25   commercial general liability policy did not constitute an obligation independent

26   of the duty to defend.

27        That court cited to *Amex Assurance Co. v. Allstate Ins. Co.,* 112 Cal.

28   App.4th 1246 (2003), wherein the insured sought to erroneously misread the term

13

1  "any suit" as applied to an "Additional Protection" clause in a homeowner's policy

2  (analogous to a supplemental payment provision).  The *Amex* court held that the

3  insured's reading of the clause took the words out of context and  determined that

4  the provision did not apply in the absence of a duty to defend. *Id.* at. 1253.

5  The *Golden Eagle* court held that "where the third party suit never

6  presented any potential for policy coverage, the duty to defend does not arise in

7  the first instance, and the insurer may properly deny a defense." *Id.* at 995.  The

8  court further reasoned that to read the supplemental payments clause otherwise

9  "conflicts with common sense, is contrary to the public policy of encouraging

10  rather than discouraging liability insurers to provide a defense to an insured, and

11  obviously would not be within the objectively reasonable expectations of any

12  party to the policy." *Golden Eagle,* 148 Cal.App. 4th at 998.

13  Another basic principle of policy interpretation is that the policy must be

14  read in its proper context as one unified document. *Bank of the West v. Superior*

15  *Court,* 2 Cal.4th 1254, 1265 (1992). Here, Young's suggested interpretation belies

16  this precept in that it requires a forced reading of a portion of the policy out of the

17  context of the entire document and which ignores the framework and

18  organizational scheme of the Policy.  As the court found in the *Golden Eagle* and

19  *Amex* cases discussed herein, reading the Policy pursuant to Young's argument

20  belies common sense and judicially recognized construction.

21  **5.   BECAUSE NO COVERAGE IS AFFORDED FOR THE**
       **UNDERLYING ACTION AGAINST HIM, YOUNG HAS NO**

22     **VIABLE CAUSES OF ACTION FOR BREACH OF**

23     **CONTRACT OR BREACH OF THE IMPLIED COVENANT OF**
       **GOOD FAITH AS A MATTER OF LAW**

24

25  In order for Young to assert a breach of contact claim against Illinois

26  Union, he must demonstrate the existence of a right to benefits under the terms of

27  the Policy at issue.  However, because the underlying matter against Young was

28

1   not covered and its request for Policy benefits was properly denied, Young cannot
2   as a matter of law establish the critical element of breach.

3       Furthermore, Young cannot establish a bad faith claim against Illinois
4   Union entitling him to extra-contractual damages because the uncontroverted facts
5   show that Illinois Union did not act unreasonably and that its determination was
6   afforded under a reasoned application of the Policy's terms and conditions. And,
7   in the absence of any underlying coverage, there is no conceivable liability that
8   Young could allege against Illinois Union on any theory of "bad faith." See, e.g,
9   *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36 (1995); *Love v. Fire Ins.
10  Exchange,* 221 Cal. App. 3d 1136, 1153 (1990) (a claim for breach of the
11  covenant of good faith cannot be pursued in the absence of any substantive
12  coverage under the policy, since the covenant cannot "be endowed with an
13  existence independent of its contractual underpinnings"); *Guz v. Bechtel National,
14  Inc.,* 24 Cal. 4th 317, 349 (2000).  Additionally, even if the Court were to find for
15  coverage and hence a duty to defend, there can be no question that Illinois Union
16  cannot be subject to bad faith liability because Illinois Union's coverage position
17  was reasonable.

18      Moreover, to withstand summary adjudication (and show a potential
19  entitlement to an award of punitive damages and "Brandt" attorneys' fees), Young
20  must offer admissible evidence going well beyond the question of merely whether
21  Illinois Union breached the contract when it declined to cover the claim.  Rather,
22  Young must present a <u>prima facie</u> case that Illinois Union's conduct
23  "demonstrates a failure or refusal to discharge contractual responsibilities,
24  prompted not by an innocent mistake, bad judgment or negligence but by a
25  conscious and deliberate act, which unfairly frustrates the agreed common
26  purposes and disappoints the reasonable expectations of the other party thereby
27  depriving that party of the benefits of the agreement." *Chateau Chamberay*

28

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**

678727.1

1  *Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4[th] 335, 346 (2001).

2  Indeed, "[b]ecause the key to a bad faith claim is whether denial of a claim was

3  reasonable, a bad faith claim should be dismissed on summary judgment if the

4  defendant demonstrates that there was a 'genuine dispute as to coverage.'"

5  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669-70 (9th Cir. 2003), quoting,

6  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  Thus, an insurer is

7  entitled to judgment where its handling of the claim was reasonable as a matter of

8  law. See, e.g., *Lehto v. Allstate Ins. Co.*, 31 Cal.App.4th 60, 70 (1994); *Dalrymple*

9  *v. United Services Auto. Ass'n,* 40 Cal.App.4[th] 497, 516 (1995).   As Illinois

10  Union's decision to decline coverage was reasonable and supported by the Policy,

11  Young is not entitled to proceed with his causes of action for breach of contract

12  and breach of the covenant of good faith and fair dealing.

13  **6.    YOUNG'S CAUSES OF ACTION FOR BREACH OF**
**FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD MUST**
14  **FAIL BECAUSE ILLINOIS UNION DID NOT OWE YOUNG A**
**FIDUCIARY DUTY AND IN ANY EVENT NO COVERAGE IS**
15  **AVAILABLE FOR THIS CLAIM**
16

17      Young's third and fourth causes of action for breach of fiduciary duty and

18  constructive fraud must fail because an insurer is not a fiduciary under California

19  law.  California appellate courts have held that insurers are not true fiduciaries of

20  their insureds.  The California Supreme Court's opinion in *Vu v. Prudential Prop.*

21  *& Cas. Ins. Co.*, 26 Cal.4th 1142 (2001) eliminated breach of fiduciary duty

22  claims by policyholders against insurers.  *Vu* held that, while an insured has

23  unequal bargaining power and must depend on the good faith of the insurance

24  carrier, the insurance carrier is not a fiduciary and cannot be sued for breach of

25  fiduciary duty. *Id.* at 1151.

26      Young's fourth cause of action for constructive fraud is founded upon an

27  alleged fiduciary duty owed by Illinois Union as an insurance company to Young

28

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**
678727.1

1  as an insured under the Policy.   As such, Young's cause of action for constructive

2  fraud also fails due to the lack of a fiduciary relationship between Illinois Union

3  and Young.

4  **7.    YOUNG'S FIFTH CAUSE OF ACTION FOR INTENTIONAL**

5  **INFLICTION OF EMOTIONAL DISTRESS IS NOT VIABLE**

6      The tort of intentional infliction of emotional distress requires proof of

7  "extreme and outrageous conduct" by the defendant "especially calculated to

8  cause ... mental distress of a very serious kind." *Christensen v. Superior Court*, 54

9  Cal.3d 868 (1991).   The conduct alleged must be "so extreme as to exceed all

10  bounds of that usually tolerated in a civilized community" *Schlauch v. Hartford*

11  *Acc. and Indem. Co.*, 146 Cal.App.3d 926 (1983). An insurance carrier's failure to

12  pay a claim or its unreasonable investigation of a claim does not amount to the tort

13  of intentional infliction of emotional distress.   *Ricard v. Pacific Indemnity Co.*,

14  132 Cal.App.3d 886 (1982).

15  **8.    YOUNG'S SIXTH CAUSE OF ACTION FOR NEGLIGENT**

16  **INFLICTION OF EMOTIONAL DISTRESS IS NOT VIABLE**

17      In an insurance coverage action, the relationship between the parties is

18  based on the insurance contract. Conduct amounting to a breach of contract

19  becomes tortious only when it also violates a duty independent of the contract

20  arising from principles of tort law. *Erlich v. Menezes*, 21 Cal.4th 543 (1999).

21  Negligence causes of action are not available against insurance carriers. *Sanchez*

22  *v. Lindsey Morden Claims Services Inc.*, 72 Cal.App.4th 249 (1999); *Aceves v.*

23  *Allstate Ins. Co.*, 68 F.3d 1160 (9th Cir.1995).

24      Negligent infliction of emotional distress is not an independent tort but

25  rather is based on the tort of negligence. *Potter v. Firestone Tire & Rubber Co.*, 6

26  Cal.4th 965 (1993). Just as negligence causes of action are not available against

27

28

ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.

678727.1

1   insurance carriers, neither are purported causes of action for negligent infliction of

2   emotional distress. *Soto v. Royal Globe Ins. Co.*, 184 Cal.App.3d 420 (1986).

3   **9.    YOUNG'S SEVENTH AND EIGHTH CAUSES OF ACTION**

4   **FOR INTENTIONAL MISREPRESENTATION AND**

5   **NEGLIGENT MISREPRESENTATION MUST FAIL AS THEY**
    **ARE MERELY A RECASTED CLAIM FOR BAD FAITH**

6

7   As referenced above, there are only limited circumstances wherein a breach

8   of contract claim can be converted into a tort claim.   In his seventh and eighth

9   causes of action, Young essentially recasts his claim for bad faith in the form of a

10  claim for intentional or negligent misrepresentations premised on Illinois Union's

11  implicit promise to honor the terms of the Policy.   These causes of action are not

12  viable as a matter of pleadings since they are merely a recast of the bad faith

13  claim, which has been shown to be not viable.   In an event, since there is no

14  coverage for the Claim against Young in the Underlying Action, these causes of

15  action must fail.

16  **10.   YOUNG CANNOT STATE A PROPER CAUSE OF ACTION**
    **FOR DECLARATORY RELIEF**

17

18  Where, as here, there is no pending controversy there is no viable cause of

19  action for declaratory relief. The fundamental basis of declaratory relief is the

20  existence of an actual, present controversy. Witkin, California Procedure, 4th Ed.,

21  Pleading, Section 817.   There is no present controversy on which the court can

22  issue a declaratory judgment.   Accordingly, Young's declaratory relief cause of

23  action must fail.

24  **11.   YOUNG CANNOT RECOVER PUNITIVE DAMAGES AS A**
    **MATTER OF LAW**

25

26  To recover punitive damages under Cal. Civil Code §3294, one must

27  demonstrate by clear and convincing evidence that the defendant was

28  engaged in fraud, malice or oppression.   California Civil Code § 3294(c) (1)

18

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**

678727.1

1  defines "Malice" as "[d]espicable conduct which is carried on by the
2  defendant with the willful and conscious disregard of the rights or safety of
3  others." Section 3294(c)(2) defines oppression as "[d]espicable conduct that
4  subjects a person to cruel and unusual hardship in conscious disregard of the
5  person's rights." Fraud is defined in Section 3294(c)(3) as "an intentional
6  misrepresentation, deceit, or concealment of a material fact known to
7  defendant with the intention on the part of the defendant of thereby
8  depriving a person of property or legal rights or otherwise causing injury."

9      An insurer's conduct that is deemed unreasonable must be
10 demonstrated in order to justify a finding of "despicable conduct" and
11 thereby justify an award of punitive damages. *Shade Foods, Inc. v.*
12 *Innovative Products & Sales Marketing, Inc.,* 78 Cal.App.4th 847, 891
13 (2000).

14      The imposition of punitive damages is disfavored and punitive damages
15 should be permitted only in the "clearest of cases." *Henderson v. Security National*
16 *Bank,* 72 Cal.App.3d 764, 771-72 (1977); *Woolstrum v. Mailloux,* 141 Cal.App.3d
17 Supp. 1, 9 (1983).  A right to punitive damages must be "so clear as to leave no
18 substantial doubt" and "sufficiently strong to command the unhesitating assent of
19 every reasonable mind." *Mock v. Michigan Millers Mut. Ins. Co.,* 4 Cal.App.4th
20 306, 332 (1992).

21      Young's prayer for punitive damages is based solely on Illinois Union's
22 alleged breach of the Policy in failing and refusing to defend him in the Underlying
23 Action.  However, even a wrongful and unreasonable denial of benefits cannot, by
24 itself, support a punitive damages award. See e.g., *Shade Foods, supra,* 78
25 Cal.App.4th 847.  Here, there is simply no evidence of oppression, fraud or malice
26 on the part of Illinois Union and certainly no evidence that Illinois Union's
27 declination of coverage was unreasonable as a matter of law.

28

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**

678727.1

## IV.   **CONCLUSION**

For the foregoing reasons, Illinois Union respectfully requests this Court to grant the instant Motion for Summary Judgment in its favor and against Young. Alternatively, Illinois Union respectfully requests this Court to summarily adjudicate each of the causes of action set forth in Young's Complaint and Young's claims for "Brandt" attorneys' fees and punitive damages in favor of Illinois Union.

Dated: August _7_, 2008                    Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____
Herbert P. Kunowski, Esq.
Darren Le Montree, Esq.
Attorneys for Defendants

20

**ILLINOIS UNION'S AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, ETC.**

678727.1