1 | Herbert P. Kunowski (State Bar No. 150141)
Herbert.Kunowski@wilsonelser.com
2 | Darren Le Montree, Esq. (State Bar No. 198715)
Darren.LeMontree@wilsonelser.com
3 | **WILSON, ELSER, MOSKOWITZ,**
 **EDELMAN & DICKER LLP**
4 | 555 South Flower Street, Suite 2900
Los Angeles, California 90071
5 | Telephone:  (213) 443-5100
Facsimile:  (213) 443-5101
6 |
Attorneys for Defendants
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 |

11 | ROBERT L. YOUNG,                    ) Case No.: C07-05711 SBA
12 |       Plaintiff,                   ) **ILLINOIS UNION INSURANCE**
                                         ) **COMPANY'S OPPOSITION TO**
13 | v.                                 ) **YOUNG'S MOTION FOR PARTIAL**
                                         ) **SUMMARY JUDGMENT;**
14 | ILLINOIS UNION INSURANCE           ) **MEMORANDUM OF POINTS AND**
    | COMPANY; ACE WESTCHESTER          ) **AUTHORITIES IN SUPPORT**
15 | SPECIALTY CLAIMS; and DOES 1       ) **THEREOF**
    | through 50, inclusive,            )
16 |                                    ) Hon. Saundra B. Armstrong
    |       Defendants.                 )
17 |                                    ) DATE:      September 30, 2008
                                         ) TIME:      1:00 p.m.
18 |                                    ) CTRM:      3

19 |        Defendant ILLINOIS UNION INSURANCE COMPANY ("Illinois Union"

20 | or "Defendant")[1] hereby submits its Opposition to the Motion of ROBERT L.

21 | YOUNG ("Young") for Partial Summary Judgment.

22 | ///

23 | ///

24 | ///

25 | ///

26 |

27 | ------------------------------
[1] Young has also asserted the Motion as against "ACE Westchester Specialty Claims" which is not an insurance
28 | company, did not issue the subject policy and is not a legal entity.  Accordingly, ACE Westchester Specialty Claims
is not a proper party and should be dismissed from this action.

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES

**Page**

I.    PRELIMINARY STATEMENT……………………………….    2

II.   SUMMARY OF MATERIAL FACTS……………………….…    2

    A.    THE UNDERLYING ACTION……………………..……..    2

    B.    THE COVERAGE DISPUTE……………………………    4

III.   ARGUMENT…………………………………………………    4

    A.    YOUNG MISTATES BASIC TENETS
        OF INSURANCE LAW……………………………………    4

    B.    EXCLUSION (Q) OF THE DIRECTORS AND OFFICERS
        COVERAGE SECTION OF THE POLICY BARS
        COVERAGE TO YOUNG FOR THIS CLAIM……………    6

    C.    THE POLICY IS NOT TRIGGERED BECAUSE THE
        CLAIM DOES NOT ARISE OUT OF WRONGFUL ACTS
        BY YOUNG IN A COVERED CAPACITY………………….    8

    D.    THE RAYBERN ACTION AGAINST YOUNG DID NOT
        ALLEGE ANY WRONGFUL ACTS UNDER THE
        EMPLOYMENT PRACTICES COVERAGE SECTION…….    10

    E.    THE ALLEGATIONS IN THE FULTS CROSS-
        COMPLAINT HIGHLIGHTS THAT YOUNG WS BEING
        SUED IN CONNECTION WITH HIS CAPACITY AS AN
        INDEPENDENT ATTORNEY UNDER THE AUSPICES
        OF HIS SEPARATE LAW PRACTICE………………………    12

    F.    CLAUSE (L) DOES NOT PROVIDE FOR A DUTY TO
        DEFEND AN UNCOVERED CLAIM………………………    13

IV.   CONCLUSION………………………………………………    15

1

**TABLE OF AUTHORITIES**

2

3

**Statutes**                                                                     **Page(s)**

4    28 U.S.C. § 1332...........................................................................     4

5    Evid. Code § 310...........................................................................     5

6

7    **Cases**

8
     *AIU Ins. Co. v. Superior Court,*
9          51 Cal.3d 807, 822 (1990).............................................     5
     *Amex Assurance Co. v. Allstate Insurance Co.,*
10         112 Cal. App. 4th 1246 (2003)...................................     8,14

11   *Bank of the West v. Superior Court,*
           2 Cal.4th 1254, 1265 (1992)........................ ...     15
12
     *Blumberg v. Guarantee Ins. Co.*
13         192 Cal.App.3d 1286, 1296 (1987).............................     5

14   *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,*
           148 Cal.App.4th 976 (2007)........................................     14,15
15
     *Herzog v. National Am. Ins. Co.,*
16         2 Cal.3d 192, 198-99 (1970)......................................     5

17   *National Auto. & Cas. Ins. Co. v. Stewart,*
           223 Cal.App.3d 452, 458 (1990)..................................     5
18
     *Producers Dairy Delivery Co. v. Sentry Ins. Co.,*
19         41 Cal.3d 903, 912 (1986)..........................................     5

20   *Suarez v. Life Ins. Co. of North America,*
           206 Cal.App.3d 1396, 1406 (1988)..............................     5
21
     *Tradewinds Escrow, Inc. v. Truck Ins. Exchange,*
22         97 Cal. App. 4th 704, 713 (2002)...............................     8

     *Waller v. Truck Ins. Exchange, Inc.,*
23         11 Cal.4th at 18.........................................................     7

24

25

26

27

28

ILLINOIS UNION INSURANCE COMPANY'S OPPOSITION TO YOUNG'S MOTION FOR PARTIAL SUMMARY JUDGEMENT
696426.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

This is an insurance coverage dispute between Young and Illinois Union arising out of Young's demand that Illinois Union defend and indemnify him in a legal malpractice lawsuit filed against him by Raybern Foods, Inc.  Illinois Union has brought a motion for summary judgment while Young has concurrently filed a motion for partial summary judgment on the issue of the duty to defend.  Since Illinois Union's arguments and evidence opposing Young's motion were asserted in connection with its motion for summary judgment, Illinois Union incorporates by reference the authorities and evidence asserted therein and will highlight in the instant opposition the central policy provisions and authorities which clearly demonstrate that Young's motion should be denied and Illinois Union's motion should be granted.

## II.    SUMMARY OF MATERIAL FACTS

### A.    UNDERLYING ACTION

On February 17, 2004, TRI Commercial Real Estate Services, Inc. ("TRI") filed an action against its former client, Raybern Foods, Inc. ("Raybern") and Bernard Viggiano ("Viggiano") in the Superior Court of California, County of Alameda, Case No. RD 041414329 (the "Underlying Action").  In that action TRI was seeking to recover its commission as a broker with respect to Raybern's marketing of a business opportunity in the form of a sale, merger, royalty agreement or strategic alliance with a third party.  (See Ex. 1)[2].

On March 23, 2005, Raybern filed a Cross-Complaint against TRI, John Fults and Young, individually and doing business as the Law Offices of Robert L. Young ("Raybern Cross-Action").  (See Ex. 2).  As against Young, the Raybern Cross-Action alleged that Young was at all relevant times a California attorney and

---

[2] Exhibit references, unless otherwise stated, are to the exhibits filed concurrently with and in support of Illinois Union's Motion for Summary Judgment.

1  sole proprietor of the Law Offices of Robert L. Young. (Ex. 2, ¶ 4). Raybern
2  further alleged that it retained the legal services of Young in early 2001 in
3  connection with the formation of a strategic business alliance with a separate
4  entity, Ross & Shore. (Ex. 2, ¶ 6). Raybern further contended that at the time it
5  retained Young and the Law Offices of Robert L. Young, it was unaware of the
6  fact that Young was serving as an officer/director of TRI. (Ex. 2, ¶ 8). Raybern
7  alleged causes of action against Young for breach of fiduciary duty, legal
8  malpractice (professional negligence) and negligence.

9      On July 26, 2005, in response to a demurrer, Raybern filed a First Amended
10  Cross-Complaint. (See Ex. 3). The First Amended Cross-Complaint included a
11  separately plead cause of action against Young for breach of fiduciary duties
12  allegedly owed to Raybern by Young "[a]s Raybern's attorney." (Ex. 3, ¶ 12). The
13  First Amended Cross-Complaint also elaborated in further detail Young's alleged
14  legal malpractice in providing legal services below the standard of care for legal
15  professionals in that he allegedly failed to fully disclose his relationship with TRI
16  in contradiction of the Rules of Professional Conduct, failed to disclose an ongoing
17  conflict of interest, and failed to provide adequate drafting of the operative legal
18  documents in Young not protecting Raybern's stated goal of ensuring that Rose &
19  Shore would be handling all of its manufacturing. (Ex. 3, ¶ 16).

20      On August 24, 2005, Young filed a Cross-Complaint against TRI and John
21  Fults ("Fults") for equitable indemnity, apportionment of fault, express indemnity
22  and declaratory relief. (See Ex. 4). On September 19, 2005, TRI and Fults filed a
23  Cross-Complaint against Young for breach of fiduciary duty, legal malpractice,
24  indemnity, contribution and declaratory relief. (See Ex. 5).
25  ///
26  ///
27  ///
28

**B.    THE COVERAGE DISPUTE**

Through correspondence dated June 7, 2005, TRI's counsel Albert E. Cordova provided Illinois Union with a copy of Raybern's Cross-Complaint filed in the Raybern Action along with a series of letters between Young and TRI. (See Ex. 6).

Through correspondence dated July 6, 2005 to Andrew Murbach of TRI, Illinois Union advised that there was no coverage for TRI, Fults or Young in connection with the Raybern Action based on acts which were not performed in a covered capacity and also the application of Exclusion (q) of the Policy, which bars coverage for any Claim "...in any way relating to any act, error or omission in connection with performance of any professional services..." (See Ex. 7).

Young disputed Illinois Union's coverage position primarily on the grounds that the Raybern Action recognized that Young was a director and officer of TRI-- even though his duty to disclose an actual or potential conflict of interest arose in his capacity as an attorney for Raybern. Young also contended that the Policy's General Terms and Conditions afforded him a defense even if coverage was barred entirely by an applicable exclusion. Illinois Union reiterated its coverage denial and Young filed suit against Illinois Union on May 30, 2007, in the Superior Court of California, County of Alameda (the "Complaint"). Illinois Union removed the action based upon 28 U.S.C. § 1332. Young seeks reimbursement of Loss [about $300,000 in defense fees and costs plus $20,000 paid in settlement of the claim] incurred in the Raybern Action, punitive and exemplary damages, as well as attorneys' fees and costs.

## III.    ARGUMENT

**A.    YOUNG MISTAKES BASIC TENETS OF INSURANCE LAW**

Young's summary of the applicable rules of interpreting insurance policy provisions is inaccurate and in some respects wholly misleading. Young states that

1    Illinois Union owed him a duty to defend unless it can prove otherwise, and that
2    such duty exists even if no coverage exists for the lawsuit.  Young downplays and
3    ignores his burden to show that coverage existed before a duty to defend can be
4    found to exist.  Moreover, Young misstates the rules of policy construction by
5    claiming that if any ambiguity were to exist, such ambiguity would automatically
6    inure to his benefit.[3]

7         An insurance policy is a contract, and the insured is responsible for reading
8    the policy and knowing its contents. *National Auto. & Cas. Ins. Co. v. Stewart*, 223
9    Cal.App.3d 452, 458 (1990).  An exclusion in an insurance policy will be upheld
10   so long as it is unambiguous, plain and conspicuous. These are questions of law.
11   *Id.; Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912 (1986).
12   An "ambiguous" provision is one that is capable of two or more constructions,
13   both of which are reasonable. *Producers Dairy*, 41 Cal.3d at 912; *National Auto,*
14   223 Cal.App.3d at 458; *Suarez v. Life Ins. Co. of North America*, 206 Cal.App.3d
15   1396, 1406 (1988); Evid. Code § 310. Words in an insurance policy must be read
16   in their ordinary sense, and any ambiguity cannot be based on a strained
17   interpretation of policy language.  *Producers Dairy*, 41 Cal.3d at 912. "[I]f the
18   meaning a layperson would ascribe to contract language is not ambiguous, we
19   apply that meaning." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990).

20        Moreover, the policy must be considered as a whole, and in relation to the
21   concrete circumstances of the particular case. *Herzog v. National Am. Ins. Co.*, 2
22   Cal.3d 192, 198-99 (1970); *Producers Dairy*, 41 Cal.3d at 916; *Blumberg v.*
23   *Guarantee Ins. Co.*, 192 Cal.App.3d 1286, 1296 (1987).

24   ///

25   ///

26

27   [3] Young has not argued that the Policy is ambiguous but his misstatement of the law demonstrates how he has
28   attempted to distort the burden of proof in seeking to impose a duty to defend a Claim which is clearly excluded
     under the Policy.

**B.    EXCLUSION (Q) OF THE DIRECTORS AND OFFICERS COVERAGE SECTION OF THE POLICY BARS COVERAGE TO YOUNG FOR THIS CLAIM**

Illinois Union issued to TRI a Business and Management and Indemnity Policy, No. BMI200116061, with Directors and Officers and Employment Practices Coverage, effective August 1, 2004 to August 1, 2005, on a claims made and reported basis ("the Policy") (Ex. 8).

Under the Directors & Officers Coverage Section, the Insuring Clause of the Policy provides as follows:

> The Insurer shall pay on behalf of the Directors and Officers Loss from any Claim made against the Directors and Officers during the Policy Period for a Wrongful Act. (Ex. 8, Clause A.1, page D&O-1)

The Policy defines "Claim" to mean:

> (a) any written or oral demand for damages or other relief against any of the Insureds and (b) a judicial, administrative or arbitration proceeding initiated against any of the Insureds in which they may be subjected to a binding adjudication of liability for damages or other relief, including any appeal therefrom.
> (Ex. 8, Clause B.2, page D&O-1)

At Section (B)(9), "Wrongful Act" with respect to a director or officer is defined as:

> Any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by:
>
> (i) a director or officer or employee of the Company or the functional equivalent to a director or officer of the Company, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity; and
>
> (ii) a director or officer, trustee, governor, executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Company.
> (Ex. 8, Clause B.9, page D&O-2)

6

"Directors and Officers" are defined at Section (B)(5) as:

all persons who were, now are or shall be: (a) directors, officers, or employees of the company, and (b) the functional equivalent to directors or officers of the Company in the event the Company is incorporated or domiciled outside the United States, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy. " (Ex. 8, Clause B.5, page D&O-1)

Exclusion (q) contained in Endorsement No. 2 of the Policy provides:[4]

IN CONSIDERATION OF the premium charged for this Policy, it is hereby      understood and agreed that Clause C EXCLUSIONS 1. of the Directors & Officers  and  Company  Coverage  Section  is amended by the addition of the  following after "1. Insurer shall not be liable to make any payment under this      Coverage     Section    in connection with any Claim:"

q)    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way relating to any act, error or omission in connection with performance of any professional services by or on behalf of any of the Insureds for the benefit of any other entity or person; provided, however, this exclusion shall not apply to any such Claim brought directly, derivatively or otherwise by one or more securities holders of the Company in their capacity as such.

By its plain language and meaning, Exclusion (q) bars coverage for any Claim "in any way relating to" Young's performance of professional services. Since the term "professional services" is not expressly defined in the Policy, it is applied in accordance with the ordinary understanding or plain meaning of the term. *Waller,* 11 Cal.4th at 18.  In that regard, "professional services" have naturally been interpreted by the courts to include the so-called "learned"

---

[4] Young remarks in passing that Exclusion "q" is "buried at the end of the Policy"; however, Illinois Union notes that the Exclusion is the second of only three endorsements to the Policy and is clearly labeled in bold all capitalized typeface: "PROFESSIONAL SERVICES ERRORS & OMISSIONS EXCLUSION." As an attorney, Young must know that this Exclusion prevented TRI's D&O policy from doubling as a malpractice insurance policy for the Law Offices of Robert Young.

ILLINOIS UNION INSURANCE COMPANY'S OPPOSITION TO YOUNG'S MOTION FOR PARTIAL SUMMARY JUDGEMENT
696426.1

1   professions (doctors, lawyers, etc.) and also include a broader scope of skilled
2   services such as that of a plumber. *Amex Assurance Co. v. Allstate Insurance Co.,*
3   112 Cal. App. 4th 1246, 1252 (2003).

4         The defining principle as to whether a given Claim falls within the
5   professional services exclusion is whether the injury occurred during the
6   performance of the professional services. *Tradewinds Escrow, Inc. v. Truck Ins.*
7   *Exchange,* 97 Cal.App.4th 704, 713 (2002).   Here, the Claim against Young in the
8   Underlying Action unquestionably relates to Young's legal services rendered to
9   Raybern. As noted above, Raybern's First Amended Complaint included the
10  following causes of action against Young:  (1) Breach of Fiduciary Duty (Second
11  Cause of Action); (2) Professional Negligence (Third Cause of Action) and (3)
12  Negligence (Fourth Cause of Action). (See Ex. 3).   The First Amended Complaint
13  differed slightly from the original version in that it delineated a separate cause of
14  action solely against Young (Second Cause of Action) for breach of fiduciary
15  duties owed by Young "[a]s Raybern's attorney."   (Ex. 3, ¶ 12).   The First
16  Amended Cross-Complaint also elaborated upon Young's alleged legal malpractice
17  in providing legal services below the standard of care for legal professionals by
18  allegedly failing to fully disclose his relationship with TRI in contradiction of the
19  Rules of Professional Conduct, failing to disclose an ongoing conflict of interest,
20  and failing to provide adequate drafting of the operative legal documents in Young
21  not protecting Raybern's stated goal of ensuring that Rose & Shore would be
22  handling all of its manufacturing.  (Ex. 3, ¶ 16).   See also Young's Retainer
23  Agreement with Raybern.  (Ex. 9).

24  **C.   THE POLICY IS NOT TRIGGERED BECAUSE THE CLAIM**
25       **DOES NOT ARISE OUT OF WRONGFUL ACTS BY YOUNG**
         **IN A COVERED CAPACITY**
26

27        The insuring clause of the Policy provides as follows:

28        The Insurer shall pay on behalf of the Directors and Officers Loss

---

8

from any Claim made against the Directors and Officers during the Policy Period for a Wrongful Act. (Ex. 8, Clause A.1, page D&O-1)

At Section (B)(9), "Wrongful Act" with respect to a director or officer is defined in relevant part as:

Any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by:

(i) a director or officer or employee of the Company or the functional equivalent to a director or officer of the Company, while acting in their capacity as such, or any matter claimed against any Director and Officer solely by reason of his or her serving in such capacity....
(Ex. 8, Clause B.9, page D&O-2)

The Claim against Young arises out of his alleged attorney malpractice. The underlying plaintiff, Raybern, alleged in its operative First Cross-Complaint that Young breached fiduciary duties he owed to it as an attorney and that Young failed to competently perform legal services with respect to drafting the operative agreements. The aforementioned conduct does not constitute Wrongful Acts committed by Young in the capacity as a director or officer of TRI.

Moreover, Young was asked in written discovery in the instant action to "[i]dentify with particularity each Wrongful Act alleged against Plaintiff [Young] in the CLAIM [Raybern Action] which did not arise out of, or result from or in any way involve Plaintiff's service as legal counsel to Raybern Foods, Inc." (Ex. 10, p. 2). After asserting various objections, Young responded by citing broadly to Raybern's Cross-Complaint, Raybern's First Amended Cross-Complaint and the Cross-Complaint of TRI and Fults. Young also cited to the definition of "Wrongful Acts" contained in the Policy. Young did not cite to any specific paragraphs or portions of the above-referenced Cross-Complaints nor did he reference any specific facts alleged against him in the Raybern Action which did not arise out of or in any way involve his service as an attorney for Raybern. (See

Ex. 10, pages 2-3.) Having failed to do so, the logical conclusion is that there are no wrongful acts alleged against Young in the Raybern Action which did not arise out of, result from, in any involve Young's service as legal counsel.

**D.  THE RAYBERN ACTION AGAINST YOUNG DID NOT ALLEGE ANY WRONGFUL ACTS UNDER THE EMPLOYMENT PRACTICES COVERAGE SECTION**

Young has suggested that the Employment Practices Coverage Section ("EPL Section") may somehow afford coverage. The Insuring Clause in that Section provides: "Insurers shall pay on behalf of the Insureds Loss resulting from any Claim first made during the Policy Period for a Wrongful Act." (See Ex. 8, Clause A.1, page EPL-1). "Wrongful Act" is defined therein to mean any actual or alleged:

a)    violation of any federal, state, local or common law, prohibiting any kind of employment-related discrimination, or

b)    harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment and including workplace harassment by any non-employee, or

c)    abusive or hostile work environment, or

d)    wrongful discharge or termination of employment, whether actual or constructive, or

e)    breach of an actual or implied employment contract, or

f)    wrongful failure or refusal to hire or promote, or wrongful demotion, or

g)    wrongful failure or refusal to provide equal treatment or opportunities, or

h)    defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy, or

i)    wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures, or

j)    wrongful, excessive or unfair discipline, or

k)    wrongful infliction or emotional distress, mental anguish, or humiliation, or

l)    Retaliation, or

---

m)    negligent hiring or negligent supervision of others in connection with a) through l) above, but only if employment related and claimed by or on behalf of any Employee and only if committed or allegedly committed by any of the Insureds in their capacity as such.
(See Ex. 8, Clause B.11, page EPL-2.)

The term "Claim" is defined in the EPL Section as "any judicial...proceeding...brought by or on behalf of an Employee."[5] (Ex. 8, Clause B(4), EPL-1). The Fults Cross-Complaint brought by TRI and Fults was not "brought by or on behalf of an Employee" because neither Cross-Complainant qualified as an Employee under the Policy. TRI obviously does not qualify as an "Employee" since it is the named entity ("Company" is defined in pertinent part as the "Parent Company" which in term means "the entity named in Item A of the Declarations). Fults is alleged in the Raybern Cross-Complaint to have held himself out as president of Keystone Financial and thus did not qualify as an Employee since this term is qualified by the provision stating "but only if such individuals perform work or services solely for or on behalf of the Company." (Ex. 3, ¶ 2; Ex 8, Clause B(7), EPL-1).

Moreover, as further explained below, the Claim against Young in the Underlying Action is devoid of any Wrongful Acts alleged which would trigger coverage under the Employment Practices Coverage Section. Accordingly, no coverage is afforded under this Section as a condition precedent to coverage has not been satisfied.

///

///

///

///

---

[5] Employee is defined in Clause B(7) as "(a) employees of the Company, including voluntary, seasonal and temporary employees, (b) any individuals applying for employment with the Company, and (c) any individuals who are leased or contracted to perform work for the Company, or are independent contractors for the Company, but only if such individuals perform work or services solely for or on behalf of the Company."

E.    **THE ALLEGATIONS IN THE FULTS CROSS-COMPLAINT HIGHLIGHT THAT YOUNG WAS BEING SUED IN CONNECTION WITH HIS CAPACITY AS AN INDEPENDENT ATTORNEY UNDER THE AUSPICES OF HIS SEPARATE LAW PRACTICE**

The Fults Cross-Complaint alleges in pertinent part that:

7.    Separate and apart from his relationship with TRI, Cross-defendant ROBERT YOUNG also maintained a private law practice whereby he undertook to represent clients for his own account as an independent attorney....

9.    On or about May 10, 2001, acting within the course and scope of his duties as an independent attorney at law and working for his own account, Cross-defendant ROBERT YOUNG accepted employment by RAYBERN FOODS, INC. to represent it as its legal counsel in the negotiations between RAYBERN FOODS, INC and ROSE AND SHORE, INC....

11.    In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-Defendant ROBERT YOUNG did not disclose to TRI that his representation of RAYBERN might result in a conflict of interest, nor did YOUNG ever obtain a waiver from TRI of any such potential conflict.

12.    Cross-defendant ROBERT YOUNG did not seek nor was he granted authority to act on behalf of TRI in connection with the services he undertook to provide for RAYBERN FOODS, INC. as its counsel.

13.    The activities of Cross-Defendant ROBERT YOUNG as counsel for RAYBERN FOODS, INC. were not within the course or scope of his duties as officer, director, or legal counsel for TRI.

The Fults Cross-Complaint alleges causes of action for:  (1) Breach of Fiduciary Duty; (2) Legal Malpractice; (3) Equitable Indemnity; (4) Equitable Contribution; and (5) Declaratory Relief.  (Ex. 5)

Young asserts that the Fults Cross-Complaint alleges Wrongful Acts within the ambit of coverage under the Employment Practices section of the Policy. Young claims that the Fults Cross-Complaint alleges a breach of Young's duties under his employment agreement with TRI and for misrepresentations in providing legal services to Raybern without notifying or obtaining the consent of TRI.  Here

1 Young mischaracterizes the Fults Cross-Complaint since as referenced above it
2 specifically notes that Young was not acting in the course or scope of his role as an
3 officer, director or attorney for TRI but rather was acting as an independent
4 attorney for Raybern.   Moreover, none of the causes of action are based on
5 Young's employment contract with TRI.   Accordingly, the Fults Cross-Complaint
6 does not trigger coverage under the Policy.

7 **F.    CLAUSE (L) DOES NOT PROVIDE FOR A DUTY TO DEFEND AN**
8 **UNCOVERED LAWSUIT**

9       Recognizing that the Policy's terms, conditions and exclusions preclude
10 coverage for the Claim against him in the Underlying Action, Young contends that
11 he was entitled to a defense under the Policy even if an exclusion entirely bars
12 coverage for the Claim.[6]   The premise of Young's argument is a wholesale
13 misconstruction of the Policy's General Terms and Conditions.

14      Clause L(2) of the General Terms and Conditions section of the Policy
15 provides in pertinent part as follows:

16      L.    Settlements and Defense

17      2.    Insurer shall have the right and duty to defend any Claim and
18 such right and duty shall exist even if any of the allegations are
groundless, false or fraudulent.  The Parent Company shall have the
19 right to assume the duty to defend any Claim provided Insurers
20 consent in writing to such assumption.
(Ex. 8, Clause L.2, pages GT & C-3).

21
22      Note that pursuant to Clause A of the General Terms and Conditions
23 (Severability of General Terms and Conditions), "[e]xcept for the General Terms
24 and Conditions below or unless stated to the contrary in any Coverage Section, the

---

[6] Young admits, as he must, that the Underlying Action arises out of his performance of legal services to Raybern in
27 arguing that "whether Young was wearing his Director and Officer hat when he provided legal services to Raybern
is irrelevant because it does not remove the expectation of a defense provided by Section L." (Young's Motion, p.
28 21, lines 6 to 8).

1    terms and conditions of each Coverage Section apply only to that Coverage
2    Section and shall not be construed to apply to any other Coverage Section."
3    (Ex. 8, Clause A, pages GT & C-1).

4        Young argues that the duty to defend provision of Clause L (2) affords a
5    duty to defend regardless of whether the Claim is covered under any coverage
6    section within the Policy.  Pursuant to the structure of the Policy, the severability
7    of the General Terms and Condition and common sense, Young's argument must
8    fail.

9        A similar argument was advanced in the case of *Golden Eagle Ins. Corp. v.*
10   *Cen-Fed, Ltd.,* 148 Cal.App.4th 976 (2007).    In *Golden Eagle,* authored by
11   Justice Croskey, the Court held that a supplementary payments clause in a
12   commercial general liability policy cannot constitute an obligation independent
13   of the duty to defend.

14       That court cited to *Amex Assurance Co. v. Allstate Ins. Co.,* 112 Cal.
15   App.4th 1246 (2003), wherein the insured sought to erroneously misread the term
16   "any suit" as applied to an "Additional Protection" clause in a homeowner's policy
17   (analogous to a supplemental payment provision).  The *Amex* court held that the
18   insured's reading of the clause took the words out of context and  determined that
19   the provision cannot apply in the absence of a duty to defend. *Id.* at. 1253.

20       The *Golden Eagle* court held that "where the third party suit never
21   presented any potential for policy coverage, the duty to defend does not arise in
22   the first instance, and the insurer may properly deny a defense."  148 Cal.App.4[th]
23   at 995.  The court further reasoned that to read the clause otherwise "conflicts with
24   common sense, is contrary to the public policy of encouraging rather than
25   discouraging liability insurers to provide a defense to an insured, and obviously
26   would not be within the objectively reasonable expectations of any party to the
27   policy." *Id.* at 998.

28

1    A basic principle of policy interpretation is that the policy must be read in
2  its proper context as one unified document. *Bank of the West v. Superior Court*, 2
3  Cal.4th 1254, 1265 (1992).   Here, Young's suggested interpretation belies this
4  precept in that it requires a forced reading of a portion of the policy out of the
5  context of the entire document and ignores the framework and organizational
6  scheme of the Policy.   As held in the *Golden Eagle* and *Amex* cases discussed
7  above, construing the Policy pursuant to Young's argument belies common sense
8  and judicially recognized construction.

## IV.   CONCLUSION

10    For the foregoing reasons, Illinois Union respectfully requests this Court to
11  deny Young's Motion for Partial Summary Judgment and grant Illinois Union's
12  Motion for Summary Judgment concurrently filed herein.

13  Dated:  September ⁷/, 2008                Respectfully submitted,

                                            WILSON, ELSER, MOSKOWITZ,
                                                EDELMAN & DICKER LLP


                                            By: _____
                                                Herbert P. Kunowski, Esq.
                                                Darren Le Montree, Esq.
                                                Attorneys for Defendants

ILLINOIS UNION INSURANCE COMPANY'S OPPOSITION TO YOUNG'S MOTION FOR PARTIAL SUMMARY JUDGEMENT
696426.1