Daniel L. Rottinghaus, Esq., State Bar No. 131949
Paul W. Windust, State Bar No. 167338
**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507
Telephone: 925/838-2090
Facsimile: 925/820-5592

Attorneys for Plaintiff
ROBERT L. YOUNG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. YOUNG,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ILLINOIS UNION INSURANCE COMPANY; ACE WESTCHESTER SPECIALTY CLAIMS; and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | No. **C 07-05711 SBA**<br><br>**OPPOSITION TO ILLINOIS UNION INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE: September 30, 2008**<br>**TIME: 1:00 p.m.**<br>**CTRM: 3**<br>**JUDGE: SAUNDRA B. ARMSTRONG**<br><br>**[FRCP 56(a), (b) and (f)]** |

Plaintiff Robert L. Young ("Young") hereby submits his Opposition to Illinois Union Insurance Company's ("IUI") Motion for Summary Judgment or, in the alternative summary adjudication.

## I.    <u>INTRODUCTION</u>

The central issue in this case can be decided by this Court as a matter of law – whether the Cross-Complaints against Young alleged a claim *potentially* covered under the Policy, thereby triggering IUI's duty to defend Young where the Policy specifically provided for a duty to defend against Claims. In *Crawford v. Weather Shield Mfg. Inc.*, 08 C.D.O.S. 9161, decided this past July, the California Supreme Court reaffirmed that the insurer's duty to defend is broader that its duty to indemnify, and such defense duty extends to claims that are "merely" potentially covered. *Id.* at 9161. "The [insurer's] defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is *no* potential for coverage . . ." *Id.* citing *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295).

Though addressing the issue concerning the contractual duty to defend in a noninsurance context, the *Crawford* court reemphasized that "[a]mbiguities in a policy of insurance are construed against the insurer, who generally drafted the policy, and who has received a premium to provide the agreed protection." *Crawford* at 9163 citing*, e.g.*, *Buss v. Superior Court* (1997) 16 Cal.4th 35, 47-48; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37-38.

Here, notwithstanding IUI's protestation to the contrary, there is no legitimate ambiguity – the Policy provides a specific duty to defend claims made against former officers and directors of TRI like Young, and the determination does not depend upon whether the claims are true or not. Nor is the Policy's duty to defend expressed simply as an obligation to pay, after the fact, and after a determination has been made that the claim is covered. Instead, the duty to defend

1   arose as soon as the Claim was made and the language employed by the Policy
2   clearly connotes an obligation of active responsibility until it has been shown that
3   there is no potential for coverage.

4          The Court can read the plain language of the Policy, analyze the Cross-
5   Complaints made against Young, and determine as a matter of law that IUI had a
6   duty to defend Young.  If a question of fact exists, then Young prevails on the duty
7   to defend issue.

8          Sensing its precarious position, IUI's motion argues that even if a duty to
9   defend exists, it is entitled to summary judgment on Young's bad faith claim
10  because Young has no evidence that IUI handled his claim unreasonably.  First,
11  IUI's bad faith is exhibited by, among other things, its refusal to provide Young
12  with a response to his numerous tenders, and its refusal to provide a coverage
13  decision at all, even though it recognized a potential defense duty immediately
14  upon receipt of the claim.  When a decision to deny a defense did finally come, it
15  was over one year late, on the eve of mediation, and from IUI's lawyers.  Second,
16  IUI never interviewed Young or investigated the claim made against him; instead it
17  closed its file.  Third, IUI failed to abide by its own procedures for adjudicating a
18  claim as it failed to follow the California regulatory and statutory procedures for
19  responding to a claim.  Fourth, it put its own interests ahead of Young's interest in
20  hiring outside counsel for itself before it hired counsel for or responded to Young.
21  Fifth, it purposefully discriminated against similarly situated insureds under the
22  same Policy by responding to TRI's tender and ignoring Young's tender (and in
23  that response, it is clear they doctored a form response because the denial letter
24  refers to an Auto Body shop, which had nothing to do with the claim or underlying
25  litigation.)  Finally, bad faith is exhibited by its refusal to pay Young's defense
26  expenses after he settled the Cross-Complaints against him, instead requiring him
27  to sue IUI.
28  / / /

1    IUI cannot argue it handled Young's claim reasonably because the facts

2    show that it did not handle his claim at all.  Finally, discovery is not complete, so

3    Young requests denial or a continuance of this motion as to his bad faith and other

4    claims pursuant to FRCP 56(f).

5    **II.    FACTUAL BACKGROUND**

6    IUI's factual statement, while basically undisputed, conveniently ignores

7    undisputed facts that triggered its duty to defend Young against either the Raybern

8    and/or Fults Cross-Complaints.  Significantly missing from IUI's recitation of the

9    facts is Young's numerous defense tenders to IUI and its agent ACE.

10
11    **A.    Raybern Sued Young for Breaches Committed As An Officer and Director of TRI.**

12    In February 2004, TRI sued its client Raybern to recover a commission for

13    brokering a transaction between Raybern and Rose & Shore ("R&S").  About one

14    year later, Raybern filed a cross-complaint against TRI, John Fults, and Young,

15    claiming that Young's capacity as an officer and director of TRI, and actions he

16    took in that capacity, excused its payment obligation and otherwise caused it

17    damage.[1]  Raybern's Cross-Complaint alleged that:

18    3.    Cross-complainant is informed and believes and thereon alleges that
19    Robert L. Young was at all relevant times an officer and director of TRI and,
      with respect to certain actions alleged herein, acted as its agent and within
20    the course and scope of his obligations as an officer and director or TRI.
      Raybern is further informed and believes that Robert L. Young was at all
21    times a member of the California bar and a practicing attorney holding
      himself out as having expertise in the type of transaction that form the basis
22    of this lawsuit.

23                                    *    *    *

24    9.    The services performed by TRI by and though Young, its officer and
      director, resulted in the consummation of a transaction upon which TRI now
25    is seeking damages.  The services that Young provided included legal
      services as well as services which TRI/Fults had already agreed to provide
26    Raybern in exchange for a commission from the Raybern/Rose & Shore
      transactions.  Raybern was billed for and paid Young substantial fees for his
27    services.

28    _____
      [1] Raybern Cross-Complaint ("CC"), Exhibit A to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

OPPOSITION TO ILLINOIS UNION'S MOTION FOR SUMMARY JUDGMENT          3

10. During the course of his representations of Raybern, Young failed to adequately protect Raybern's financial interests in the transactions with Rose & Shore and likewise failed to adequately protect Raybern when TRI's purported agent, John Fults, announced that he intended to withdraw form further representations of Raybern.

11. Young, Fults, and TRI's actions breached their respective fiduciary duties to Raybern, resulting in damages to Raybern in an amount to be provided at trial.[2]

Raybern also sued Young for negligence as TRI's officer and director, as well as professional negligence arising out of legal work that Young allegedly completed in connection with the Raybern/R&S transaction.

Raybern amended its cross-complaint and more clearly alleged Young's role in the transaction in his capacity as TRI's officer and director.[3]   Raybern alleged that:

3. Cross-complainant is informed and believes and thereon alleges that Robert L. Young (Young) was an officer and director of TRI and, as such, had a degree of control over or influence on TRI's actions herein.  With respect to certain actions alleged herein, Young acted as TRI's agent and within the course and scope of his position as an officer and/or director of TRI.  Raybern contends that in failing to disclose his role as an officer and director of TRI, Young placed his interests as an officer and/or director of TRI above his professional obligations to Raybern.  Raybern is further informed and believes that Robert L. Young was at all times a member of the California bar and a practicing attorney claiming expertise in the type of transactions that form the basis of this lawsuit.  Raybern is informed and believes and thereon alleges that Young was an undisclosed business associate of Fults and served as an advisor to various business entities owned and/or controlled by Fults.[4]

* * *

12. . . . Specifically, [Young] had an obligation to inform Raybern that he was then serving as an officer and/or director of TRI and therefore had conflicting fiduciary duties. . .

---

[2] CC p. 3:15-28, Exhibit A to Young decl.

[3] Raybern First Amended Cross Complaint ("FACC"), Exhibit B to Young decl.

[4] FACC p. 2:13-25, Exhibit B to Young decl.

13.    During the course of his representation of Raybern, and in the interest of effecting a transaction that would result in a commission to TRI, the company upon whose board he served, Young failed to disclose his relationships with TRI and Fults, and he failed adequately to protect Raybern's financial interests in the transactions with Rose & Shore. Specifically, Young failed to insure that the Manufacturing Agreement was tied to the Licensing Agreement; Instead the Manufacturing Agreement had a provision allowing Rose & Shore to terminate the Manufacturing Agreement even absent default by Raybern and yet continue to operate under a more lucrative Licensing Agreement.    Young likewise breached his fiduciary duty to Raybern by failing to include language in the Licensing Agreement making it clear that Fults had the obligation to and would be monitoring the Rose & Shore financials through out the life of the Raybern/Rose & Shore contract, an issue now in dispute in this lawsuit. Young likewise failed to take steps to protect Ravbern's interests upon learning that Fults refused to continue performing under this contract with Raybern.  Finally, when Raybern asked Young to review a listing agreement between TRI and Raybern - an agreement that would result in a commission to TRI upon sale of Raybern's Hayward property - Young again failed to disclose his true relationship with TRI.[5]

Both versions of Raybern's Cross-Complaint allege that Young worked on the R&S transaction while in the course and scope of his duties as a Director and Officer of TRI.  Raybern alleges that Young was negligent and breached fiduciary duties owed to it that arose from his position as a Director and Officer of TRI. While Young would have similar duties as Raybern's attorney, it cannot be concluded from the Cross-Complaint that Young only breached duties owed as an attorney.  These allegations are sufficient to establish a potential for coverage under the IUI Policy.

Raybern claims that TRI and Young failed to protect its financial interests with respect to the Raybern/R&S transaction.  This is plainly a claim encompassed by Young's duties as a Director and Officer of TRI.   Further, Raybern claims that the services provided by Young included legal services from TRI as well as other services that TRI had agreed to provide Raybern in exchange for a commission.  In fact, it was TRI that directed Young to Raybern to perform legal work necessary for TRI to close the deal and earn its commission.  According to Raybern, all of

[5] FACC pp. 5:23-6:20, Exhibit B to Young decl.

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507

these services were performed in the course of scope of Young's duties as an officer and director of TRI.  Under the Policy, Young is owed a defense even if these allegations were groundless, false or fraudulent.

### B.    TRI Never Investigated Young's Claim.

On June 7, 2005, TRI's attorney notified IUI, through its agent ACE, of the Raybern Cross-Complaint.[6]  This letter expressly identified Young as a <u>former</u> Officer and Director of TRI.  On June 29, 2005 ACE acknowledged receipt of the claim and expressly identified Section L of the Policy which obligated it to defend any claim.[7]  Then, <u>only six days later</u>, ACE concluded that the claim was not covered and that IUI had no duty to defend.[8]  Young was never interviewed by ACE concerning this claim, nor was he directly informed of its denial, even though ACE knew Young was no longer an Officer or Director of TRI.[9]  ACE closed its file on October 28, 2005 despite knowing that by that time, Raybern had amended its Cross-Complaint.[10]

### C.    Young Tendered his Defense to IUI.

Young timely and repeatedly tendered the defense and indemnity of Raybern's Cross-Complaint to IUI.  By letters dated <u>July 6, 2005, December 15, 2005, February 3, 2006, May 19, 2006, June, 27, 2006, August 11, 2006</u> and <u>November 30, 2006</u>, Young requested that IUI assume his defense and/or reimburse him for his mounting defense costs.[11]  Young complied with all of the applicable terms and conditions of the Policy, and he provided IUI with frequent

---

[6] Exhibit A to Declaration of Paul W. Windust ("Windust decl.")

[7] Exhibit B to Windust decl.

[8] Exhibit C to Windust decl.

[9] Young decl. p. 1:24-27.

[10] Exhibit D to Windust decl.

[11] Exhibits C-I to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

OPPOSITION TO ILLINOIS UNION'S MOTION FOR SUMMARY JUDGMENT

1   updates concerning the status of the case and avoided any action that could have

2   increased IUI's exposure under the Policy.

3        Not having heard from IUI or ACE as to his tenders, Young was in the

4   proverbial "Catch-22" in that Section A of the General Terms and Conditions,

5   clause L(1) provides that, "No settlement shall be made or negotiated and no Costs,

6   Charges, and Expenses shall be incurred without Insurer's consent, such consent

7   not to be unreasonably withheld."  He was forced by law to defend himself, yet

8   prohibited from acting on his own without the Insurer's consent.  Accordingly, he

9   tendered and kept tendering to IUI, and kept it informed of the action, while he

10  defended himself (and IUI's Policy) from a large judgment.

11      **D.      The Fults Cross-Complaint.**

12       In September 2005, Young was sued by TRI and John Fults, a TRI agent that

13  worked on the Raybern/R&S transaction (the "Fults Cross-Complaint").[12]   The

14  Fults Cross-Complaint alleges constructive fraud, legal malpractice, indemnity and

15  contribution against Young.[13]  TRI and Fults alleged that at all times relevant to

16  their claims, Young served as a corporate officer, later became a director, and

17  served as corporate counsel for TRI.[14]  They further allege that Young was not

18  given permission by TRI to provide legal services to Raybern, and that he  failed to

19  disclose that he was working as Raybern's legal counsel.[15]   These claims

20  essentially allege that Young breached contractual duties and misrepresented his

21  role respecting the Raybern/R&S transaction.

22       The Fults Cross-Complaint falls squarely within the Wrongful Act

23  definitions of the Policy's Employment Coverages section because it is a written

24

25  _____

26  [12] Fults Cross Complaint, Exhibit J to Young decl.

    [13] Id.

27  [14] Fults Cross Complaint, p.4:5-11, Exhibit J to Young decl.

28  [15] Fults Cross Complaint p.5:11-16, Exhibit J to Young decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

demand for money arising out of Young's alleged breach of an express or implied employment contract to serve only TRI and his misrepresentations in allegedly providing legal services to Raybern in the transaction.  Alternatively, it alleges a Wrongful Act in that Young as an Officer and Director failed to execute upon or implement a policy for handling such situations.

Moreover, the Policy at General Terms and Conditions, Section L, requires IUI to defend any Claim regardless of merit or cause.

**E.     Over a Year After Tender, IUI Denied Young a Defense.**

Young never received a response to his tenders from either IUI or ACE.  Instead, in May 2006, as part of discovery from TRI, Young's counsel received a copy of a letter from ACE to TRI dated July 6, 2005 denying <u>TRI's</u> request for a defense and indemnity.[16]  The only response ever provided to Young's tender came from IUI's coverage attorneys by letter dated December 5, 2006 – over one year after Young first requested that IUI defend him.  The letter concludes with virtually no analysis or explanation as to why coverage is barred by Exclusions (k) and (q).[17]

The letter from IUI's coverage attorneys completely ignores Section L of the General Terms and Conditions which obligates IUI to provide Young with a defense even if the Claim allegations are "groundless, false, or fraudulent."  Respecting Exclusion (k), IUI focuses only on allegations that Young, for his account, performed legal services for Raybern as Raybern's attorney and ignores allegations that Young committed wrongs as a Director and Officer of TRI.  Respecting Exclusion (q), IUI relies only on allegations that Young committed errors and omissions in the performance of professional service for Raybern's benefit, without regard that the performance was for the benefit of TRI.  When reminded of Section L, IUI's counsel concluded without explanation that Section L

---

[16] Exhibit C to Windust decl.

[17] Exhibit E to Windust decl.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

"is not an insuring clause" and that Raybern's Cross-Complaint does not present a covered or potentially covered claim.[18]    To the contrary, Raybern's Cross-Complaint contains many allegations implicating Young in errors and omissions as a Director and Officer of TRI and Fults Cross-Complaint contains allegations implicating Young in Wrongful Acts, which are not in any way excluded by Exclusion (q) as that exclusion applies only to the Directors and Officers coverage and not to the Employment Practices coverage.

## III.  LEGAL ARGUMENT

### A.  To Avoid Summary Judgment, IUI Must Show No Potential for Coverage As A Matter of Law.

While either party may move for summary judgment regarding the duty to defend, an insurer is subject to a stricter burden of proof.  See *Montrose Chem. Corp. v. Superior Court.*, (1993) 6 Cal. 4th 287, 300; *Vann v. Travelers Cos.*, (1995) 39 Cal. App. 4th 1610, 1614.  Where the insurer is the moving party, it must present undisputed facts that eliminate any possibility of coverage as a matter of law.  See *id.*; see also *Maryland Cas. Co. v. National American Ins. Co. of Calif.*, (1996) 48 Cal. App. 4th 1822, 1832.  The *Maryland Casualty* court held that the insurer could not avoid summary adjudication of the duty to defend merely by raising a triable issue of fact concerning its coverage defense.  Rather, unless the insurer negated coverage as a matter of law, the policyholder was entitled to summary adjudication of the duty to defend.  *Id*. at 1832.  Where the insured is the moving party, he or she has the initial burden of establishing a potential for coverage.  See *Montrose,* 6 Cal. 4th at 300*; Vann,* 39 Cal. App. 4th at 1614.  Once the insured makes the prima facie showing, the insurer faces the same burden it would encounter if it were the moving party – to prove there is no possibility of coverage. See *id*.  "In other words, the insured need only show that the underlying

---

[18] Exhibit F to Windust decl.

1    claim may fall within policy coverage; the insurer must prove it cannot." *Vann*, 39

2    Cal. App. 4th at 1614.

3

4    **B.    The Raybern Cross Complaint Alleges Potential Claims Against Young, Triggering A Duty to Defend.**

5    IUI focuses only on allegations in the Raybern Cross Complaint that allege

6    that Young performed legal services for Raybern, ignoring other allegations

7    tending toward coverage.  IUI improperly assumes that allegations relating to legal

8    services render the other allegations meaningless.  In other words, IUI chooses to

9    highlight the allegations that would support an exclusion, rather than evaluate the

10    Raybern Cross Complaint objectively, with an eye toward finding coverage, which

11    is its legal duty. *Reserve Ins. Co. v. Pisciotta* (1982) 30 Cal.3d 800.

12    IUI incorrectly assumes that there is no possible way that Young could have

13    liability to Raybern arising from his position as an Officer and Director of TRI

14    relative to the Raybern/R&S transaction.  Virtually any aspect of corporate conduct

15    can be alleged to have been explicitly or implicitly ratified by the directors.

16    *Olympic Club v. Those Interested Underwriters At Lloyd's London* (9th Cir. 1993)

17    991 F.2d 497, 502.

18    Directors are jointly liable with the corporation and may be joined as

19    defendants if they personally directed or participated in the tortious conduct. *United*

20    *States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, (1970) 1 Cal.3d 586, 595; *Teledyne*

21    *Industries, Inc. v. Eon Corporation*, (S.D.N.Y. 1975) 401 F.Supp. 729, 736-737

22    (applying Cal. law).  Directors are liable to third persons injured by their own

23    tortious conduct regardless of whether they acted on behalf of the corporation and

24    regardless of whether the corporation is also liable. See, e.g., *Tillman v. Wheaton-*

25    *Haven Recreation Ass'n, Inc.*, (4th Cir. 1975) 517 F.2d 1141, 1144 ("a director who

26    actually votes for the commission of a tort is personally liable, even though the

27    wrongful act is performed in the name of the corporation.")  This liability does not

28    depend on the same grounds as "piercing the corporate veil," on account of

1  inadequate capitalization for instance, but rather on the officer or director's personal

2  participation or specific authorization of the tortious act. *Frances T. v. Village*

3  *Green Owners Ass'n*, (1986) 42 Cal. 3d 490, 504.

4      To maintain a tort claim against a director in his or her personal capacity, a

5  plaintiff must first show that the director specifically authorized, directed or

6  participated in the allegedly tortious conduct *United States Liab. Ins. Co. v.*

7  *Haidinger-Hayes, Inc.,* supra, 1 Cal.3d at p. 595; or that although they specifically

8  knew or reasonably should have known that some hazardous condition or activity

9  under their control could injure plaintiff, they negligently failed to take or order

10  appropriate action to avoid the harm *Dwyer v. Lanan & Snow Lumber Co.,* (1956)

11  141 Cal.App.2d 838, 841.   The plaintiff must also allege and prove that an

12  ordinarily prudent person, knowing what the director knew at that time, would not

13  have acted similarly under the circumstances. *Frances T. v. Village Green Owners*

14  *Ass'n*, (1986) 42 Cal. 3d 490, 508.

15      Here, Raybern alleged that "[t]he services performed by TRI by and through

16  Young, its officer and director, resulted in the consummation of a transaction"

17  which was the focus of the TRI complaint and Raybern Cross-Complaint.  Raybern

18  alleges that Young's breaches of duty while acting as TRI's Director and Officer

19  relative to the R&S transaction injured it and caused it damage.  Because Young

20  could be potentially liable for his own tortious conduct as an Officer and Director

21  relative to the R&S transaction, notwithstanding TRI's potential liability, the

22  claims were potentially covered, triggering IUI's defense duty.

23      Raybern was TRI's client with respect to the R&S transaction.  Accordingly,

24  TRI, acting through its officers and directors, owed Raybern a fiduciary duty and a

25  duty of care respecting the negotiation of the R&S transaction.  Raybern's Cross-

26  Complaint alleges that Young failed to adequately protect Raybern's interests in the

27  R&S transaction which resulted in damage to Raybern.  Raybern alleges that TRI

28  breached fiduciary duties owed to it by: (1) failing and refusing to fulfill its

1  promise to monitor Rose & Shore's performance under the transaction; (2)

2  withdrawing from the transaction before it was finalized; (3) failing to link the

3  licensing agreement to continued performance by Rose & Shore under the

4  manufacturing agreement; and (4) failing to disclose TRI's relationship with

5  Young.[19]  These allegations imply that Young ratified these breaches, authorized

6  them, or directed them, which potentially exposes him to personal liability arising

7  solely from his position as an Officer and Director of TRI.

8      IUI completely ignores this potential liability, focusing instead only on

9  allegations that Young was Raybern's attorney.  The insurer's obligation to defend

10 is not dependent on the facts contained in the complaint alone; the insurer must

11 furnish a defense when it learns of facts from any source that create the potential of

12 liability under its policy." *CNA Casualty of Calif. v. Seaboard Surety Co.*, 176 Cal.

13 App. 3d 598, 605 (1986).  Moreover, while the insurer cannot hide behind the

14 pleadings, it also cannot hide from them by appealing to facts not in the pleadings.

15 "The duty to defend is so broad that as long as the complaint contains language

16 creating the potential of liability under an insurance policy, the insurer must defend

17 an action against its insured even though it has independent knowledge of facts not

18 in the pleadings that establish that the claim is not covered." *Id*.

19      **C.    Exclusion (q) Does Not Bar Coverage of Young's Claim.**

20      Exclusion (q) excludes coverage for Claims based upon, arising out of,

21 resulting from, or in any way relating to any act, error, or omission in connection

22 with performance of any professional services by or on behalf of any of the

23 Insureds for the benefit of any other entity or person.  Raybern's Cross-Complaint

24 alleges that TRI and Young breached fiduciary duties and duties of care owed to it

25 in connection with the R&S transaction.  TRI is a professional real estate services

26

27

28      [19] FACC pp. 5:23-6:20, Exhibit B to Young decl.

firm that provides brokerage services and property management services.[20]   If given effect, Exclusion (q) would swallow the entire policy and render it illusory because it would provide no insurance at all.   An attorney would never have directors' and officers' coverage where his client also does business with the company for which he serves as an officer or director.   A director or officer who is also happens to be a lawyer would never have D&O coverage.   Accordingly, this exclusion cannot be read to exclude coverage for alleged errors or omissions committed by Young in providing professional real estate services to Raybern.   If Exclusion (q) was intended to exclude coverage for attorney malpractice claims, it could have been drafted that way.

In this case, TRI sent Young (knowing him to be a Director and Officer of the company) to do work for Raybern that would assist in closing the deal upon which TRI (through Fults) would receive a commission.   Young obtained Raybern's consent because of the actual or potential conflict involved in such a role.   In this instance, Young was working for the benefit of *both* parties to see that the transaction would close.   In this regard, Exclusion (q) does not apply because it is clear that Young was not working for the sole benefit of Raybern, but rather was working for TRI and Raybern.   The exclusion only applies when the Insured is working for the benefit of any *other* entity or person.   The word "other" is specifically used to mean someone different from the Insured.   Here, because Young was working for the benefit of TRI while doing his work for Raybern, the exclusion has no application in spite of the fact that Raybern was also an intended beneficiary of the work.

Raybern alleges that it engaged Young to perform legal services for it, not TRI.   Raybern does not allege that Young was performing legal services as an officer and director of TRI.   Rather, Raybern alleges that Young was performing

---

[20] Declaration of Michael Leest in Support of Motion for Summary Judgment, Ex. 8 p. 29.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

1    legal services for it that benefitted TRI, to his exclusion and detriment.  The legal

2    services provided by Young benefitted <u>both</u> Raybern and TRI with the

3    consummation of the R&S transaction as the objective.

4        IUI's motion concludes without support or evidence that Raybern's claim

5    "unquestionably relates to Young's legal services rendered to Raybern." [IUI

6    Memorandum of Points and Authorities, 9:22-24]  In fact, Raybern alleges just the

7    opposite - he alleges that Young's legal services <u>benefitted TRI</u>.  Moreover,

8    Raybern's Cross Complaint alleges Young authorized, ratified, and/or directed TRI

9    to breach professional duties owed to it.  This claim cannot be excluded by

10   Exclusion (q) because professional real estate services are the focus of TRI's

11   business.

**D.    Section L Requires IUI to Defend Young Against Any Claim Regardless of Merit or Cause.**

14       Under Section L, IUI was required to defend Young against Raybern's Cross

15   Complaint regardless of merit or cause.  Exclusion (q) does not diminish Young's

16   expectation of coverage.  It plainly reads to prevent moonlighting opportunities and

17   not work for a company that provides professional services to others as the primary

18   function of its business.  At a minimum, when Section L and Exclusion (q) are read

19   together, the duty to defend is ambiguous and that ambiguity must be resolved in

20   Young's favor.

21       IUI argues that the Policy must be read such that the General Terms and

22   Conditions only apply when coverage is afforded.  This argument is wrong and not

23   supported by the plain language of the General Terms and Conditions, which state

24   as follows:

A.    SEVERABILITY OF GENERAL TERMS AND CONDITIONS

Except for the General Terms and Conditions below or unless stated to the contrary in any Coverage Section, the terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

Section A clearly means that the General Terms and Conditions are to be read into, and are apart of, each coverage section with equal footing. Based on the plain language of the Policy, it is possible that an Insured is entitled to a defense when no indemnity is owed. Such a result is not contrary to common sense - it is simply what the Policy provides. Under the primary guiding principles of contract interpretation, effect is given to the mutual intent of the parties; policy language is to be read in its ordinary and popular sense; and ambiguities are resolved by giving effect to the insured's objectively reasonable expectations, or if this fails, by construing the ambiguous language against the insurer. *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.

Several courts have found a duty to defend even though no possibility of indemnity exists. In *Downey Venture v. LMI Insurance Company* (1998) 66 Cal.App.4th 478, 507-508, the court held that the terms of a policy overruled the general rule that where there is no potential for indemnity, there is no duty to defend. Instead, the court held that the policy language expressly promised a defense for a claim that, by virtue of Insurance Code §553 and public policy, could not be covered or indemnified. The court concluded that the policy language "would most certainly justify the conclusion of the reasonable policyholder that there was full coverage; and, indeed, but for section 533, there would be." *Id.* The court recognized that the defense commitment is a specific and distinct commitment and did not diminish just because there was no coverage. *Id.* Whether there is a duty to defend depends on the language of the insurance contract and whether it created an objectively reasonable expectation on the part of the insured that a defense would be provided in the circumstances. *Marie Y. v. General Star Indemnity Co.* (2003) 110 Cal.App.4th 928, 951. An insurer, in its contract, may agree to defend an insured against claims for which there is no coverage. *Id.* Assuming there is no coverage under the Policy, IUI's Policy promised to defend Young against any Claim, regardless of cause or merit. Young's reasonable

expectation was that IUI would defend him against the Raybern Cross Complaint, and that expectation should be enforced.

Section L(2) provides that the: "*Insurer shall have the right and duty to defend any Claim and such right and duty shall exist even if any of the allegations are groundless, false or fraudulent.*"  "Claim" is defined as:  "any written or oral demand or other relief against any of the Insureds."  A plain meaning analysis concludes that Young is entitled to a defense against any written or oral demand against him, even if the allegations are groundless, false, or fraudulent.  IUI argues that before a defense duty is triggered, the "Claim" must relate to a "Wrongful Act" - in other words, that it must be covered.  That is not what the Policy provides; IUI is asking the Court to re-write the Policy.  At a minimum, it is ambiguous whether a defense is owed for any Claim or for a Claim arising from a Wrongful Act, resulting in a decision in favor of Young and his defense demand.

The cases cited by IUI have no application here.  Both *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.,* (2007) 148 Cal.App.4th 976, and *Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal.App.4th 1246, concern supplementary payments clauses, not the duty to defend.  IUI argues that *Golden Eagle* and *Amex Assurance* stand for the proposition that obligations under a supplementary payments clause are not independent of the duty to defend.  Here, the issue is Young's entitlement to a primary policy benefit, not an ancillary benefit triggered once a primary benefit is acknowledged.  *Downey Venture* and *Marie Y.* are more on point because they hold that a duty to defend can be independent of a duty to indemnify by virtue of the language of a particular policy.

### E.   IUI Did Not Investigate or Handle Young's Claim Reasonably.

Wrongful failure of the insurer to provide a defense to its insured may give rise to a cause of action in tort for breach of the implied covenant of good faith and fair dealing.  *Jarchow v. Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 942-943.  IUI contends that it did not act unreasonably in denying Young Policy

benefits and that is entitled to summary judgment on this claim. This statement is contradicted by the facts. Young never received a response to his defense tenders from IUI. On day before mediation of the Raybern Cross Complaint, Young learned for the first time that his claim was denied, and then only from IUI's lawyers. This indicated to Young that he was on his own respecting the Raybern Cross Complaint and that he would have to sue IUI to get his Policy benefits. Moreover, it took over <u>one year</u> and <u>seven</u> separate tenders to get this denial. Had he known his insurance position sooner, he would have been able to settle for less than he paid defending himself.

IUI's decision to deny a defense is unreasonable because it (1) ignores allegations in the Raybern Cross Complaint supporting a potential for coverage and (2) inserts language into the Policy that does not exist. IUI argues that the Raybern Cross Complaint alleges only legal malpractice claims against Young, despite clear allegations otherwise. It is unreasonable for IUI to focus on allegations favoring an exclusion, while at the same time ignoring allegations tending toward coverage. This is classic bad faith. Further, IUI contends that Young is owed a defense only for Claims relating to a Wrongful Act. But that is not what the Policy provides. Claim is defined as "any written or oral demand or other relief against any of the Insureds." A Claim under the Policy has no relation to Wrongful Acts. It is unreasonable for IUI to insert language into the Policy that does not exist for the express purpose of denying Young a defense. The conduct described above is conscious and deliberate (how can this be a mistake?) and frustrates Young's access to Policy benefits.

IUI's agent ACE was aware of Section L and its duty to defend immediately upon receipt of the Raybern Cross Complaint. But only <u>six days</u> later, ACE determined that the claims set forth in the Cross Complaint were not covered and did not trigger a duty to defend. There is simply no way that IUI could have completed its investigation in six days. Neither ACE nor IUI ever contacted Young

to interview him about the claims alleged against him. Even though ACE and IUI knew Young was no longer an Officer and Director of TRI, they never communicated their denial directly to him. Instead, IUI closed its file on October 28, 2005 despite knowing at the time that Raybern had amended his Cross Complaint as against Young.

These facts prevent summary judgment. Evidence showing that the insurer failed to investigate the policyholder's claim in a timely manner and fairly evaluate evidence supporting the policyholder's claim gives rise to a triable issue of fact regarding whether the insurer acted in bad faith. *Wilson v. 21st Century Insurance Co.* (2007) 42 Cal.4th 713, 721. The evidence at this point precludes summary judgment. Still, discovery is not complete and Young requests that the motion as to this claim be denied or continued pursuant to FRCP 56(f) for additional discovery. See, *Celotex Corp. v. Catrett* (1986) 477 U.S. 317.

### F. Summary Judgment of Young's Emotional Distress Claims Should be Denied.

The plaintiff in a bad faith action may recover damages for emotional distress caused by the insurer's bad faith upon proving some economic loss. Once economic loss is established, the plaintiff need not show any causal link between the economic loss and the emotional distress in order to recover damages for emotional distress. *Clayton v. United Servs. Auto. Ass'n.* (1997) 54 Cal.App.4th 1158, 1160-1162. Here, the evidence is undisputed that Young paid over $300,000 in defending himself in the Raybern Cross Complaint and then paid $20,000 to settle the claims against him. On these facts alone, IUI is not entitled to summary judgment on either the intentional infliction of emotion distress claim or the negligent infliction of emotional distress claim. Moreover, Young and his family suffered stress-related illnesses arising from the underlying litigation. Young's wife suffered a stress-induced illness which required hospitalization while Young became afflicted with vertigo (Maneures Syndrome) at the same time. This was

1   directly related to IUI's refusal to acknowledge Young's claim and provide him
2   with a defense.[21]

3   **G.    Challenge to Young's Declaratory Relief Claim Should be Denied.**

4           There exists and actual and pending controversy concerning the Policy and
5   whether Young was owed a defense in response to the Raybern Cross Complaint.
6   To suggest otherwise is silly.   Indeed, Young has moved for partial summary
7   judgment on this claim and that will be decided before this motion is determined.

8
9
10  **H.    Young Is Entitled to Prove Punitive Damages.**

11          An insured may recover punitive damages in a bad faith action if there is
12  clear and convincing evidence that the defendant is guilty of oppression, fraud or
13  malice.   Civil Code §3294(a); *Neal v. Farmer Insurance Exchange* (1998) 62
14  Cal.App.4th 563, 570.   IUI contends that Young does not have evidence of
15  oppression, fraud or malice.   This is false.   The evidence submitted with this
16  opposition shows that IUI and ACE knew of its duty to defend under Section L of
17  the Policy, yet denied coverage only six days later.  It never interviewed Young, its
18  insured, or undertook an investigation of Raybern's Cross Complaint.  Further, IUI
19  never notified Young of its decision to deny him a defense.  IUI will argue that it
20  notified TRI, but TRI is only one of its Insureds.  Young was no longer an officer
21  or director of TRI when IUI denied a defense, and IUI knew this at the time.  Then,
22  IUI ignored Young's seven separate tenders.  This is what Young knows at this
23  stage of the litigation after initial disclosures and preliminary discovery.  Young
24  has not completed discovery and requests that the Court deny IUI's motion pending
25  additional discovery or continue the hearing as to this claim pursuant to FRCP
26  56(f).

27
28          [21] Young decl. 4:5-15.

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

## IV.    <u>CONCLUSION</u>

IUI's motion for summary judgment, or partial summary judgment should be denied.  The Raybern Cross Complaint alleged claims potentially covered by the Policy.  IUI fails to acknowledge that Young had personal exposure to Raybern due to his alleged activities as an Officer and Director of TRI.  Instead, IUI focuses only on claims alleging attorney malpractice and this is unreasonable and in bad faith.  Moreover, Section L of the Policy obligated IUI to defend Young for any Claim regardless of cause or merit.  IUI suggests a reading of the Policy that is unreasonable because it requires insertion of terms that do not exist.  IUI ignores the fact that it failed to respond to Young's tenders for over one year, closed the claim file despite knowing that Raybern amended his Cross Complaint, and required Young to defend himself when he could have avoided incurring over $300,000 in defense costs had he known IUI's position.  IUI should not get away with these practices.  IUI essentially abandoned and ignored Young when he was faced with significant litigation that was harmful to him emotionally and financially.

Date: September __, 2008          **BERDING & WEIL LLP**


By:_____
        Daniel L. Rottinghaus
        Paul W. Windust
        Attorneys for Plaintiff
        ROBERT L. YOUNG

O:\WDOCS\0001\392\PLD\00480827.DOC

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>TABLE OF CONTENTS</u>

2

3

<u>Page</u>

4

I.  INTRODUCTION ................................................................................................ 1

5

II.  FACTUAL BACKGROUND ................................................................................ 3

6

    A.  Raybern Sued Young for Breaches Committed As An
        Officer and Director of TRI. ............................................................... 3

7

8

    B.  TRI Never Investigated Young's Claim. ................................................ 6

9

    C.  Young Tendered his Defense to IUI. ...................................................... 6

10

    D.  The Fults Cross-Complaint. ................................................................... 7

11

    E.  Over a Year After Tender, IUI Denied Young a Defense. ..................... 8

12

III.  LEGAL ARGUMENT ........................................................................................ 9

13

    A.  To Avoid Summary Judgment, IUI Must Show No Potential for
        Coverage As A Matter of Law. .............................................................. 9

14

15

    B.  The Raybern Cross Complaint Alleges Potential Claims Against
        Young, Triggering A Duty to Defend. ................................................. 10

16

    C.  Exclusion (q) Does Not Bar Coverage of Young's Claim. ................... 12

17

    D.  Section L Requires IUI to Defend Young Against Any Claim
        Regardless of Merit or Cause. ............................................................. 14

18

    E.  IUI Did Not Investigate or Handle Young's Claim Reasonably. ........... 16

19

    F.  Summary Judgment of Young's Emotional Distress Claims
        Should be Denied. ................................................................................ 18

20

    G.  Challenge to Young's Declaratory Relief Claim Should be Denied. ...... 19

21

    H.  Young Is Entitled to Prove Punitive Damages. ....................................... 19

22

IV.  CONCLUSION .................................................................................................. 20

23

24

25

26

27

28

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507

i

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 ........................................................ 18

*Olympic Club v. Those Interested Underwriters At Lloyd's London*
    (9th Cir. 1993) 991 F.2d 497 ....................................................................... 10

*Teledyne Industries, Inc. v. Eon Corporation*,
    (S.D.N.Y. 1975) 401 F. Supp. 729 ................................................................ 10

*Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*,
    (4th Cir. 1975) 517 F.2d 1141 ..................................................................... 10

**STATE CASES**

*Amex Assurance Co. v. Allstate Ins. Co.* (2003) 112 Cal. App. 4th 1246 .............. 16

*Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254 ................................... 15

*Buss v. Superior Court* (1997) 16 Cal. 4th 35 ........................................................ 18

*Clayton v. United Servs. Auto. Ass'n.* (1997) 54 Cal. App. 4th 1158 .................... 15

*CNA Casualty of Calif. v. Seaboard Surety Co., (1986)*
    *176 Cal. App. 3d 598, 605* ........................................................................ 12

*Crawford v. Weather Shield Mfg. Inc.*, 08 C.D.O.S. 9161 ...................................... 1

*Downey Venture v. LMI Insurance Company* (1998) 66 Cal. App. 4th 478 .......... 15

*Dwyer v. Lanan & Snow Lumber Co.*, (1956) 141 Cal. App. 2d 838 .................... 11

*Frances T. v. Village Green Owners Ass'n*, (1986) 42 Cal. 3d 490 ....................... 11

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, (2007) 148 Cal. App. 4th 976 ............. 16

*Jarchow v. Transamerica Title Ins. Co.* (1975) 48 Cal. App. 3d 917 .................... 16

*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*
    (1994) 9 Cal. 4th 27 ..................................................................................... 1

*Marie Y. v. General Star Indemnity Co.* (2003) 110 Cal. App. 4th 928 ................ 15

*Maryland Cas. Co. v. National American Ins. Co. of Calif.*,
    (1996) 48 Cal. App. 4th 1822, 1832 .............................................................. 9

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287 .................... 1, 9

*Neal v. Farmer Insurance Exchange* (1998) 62 Cal. App. 4th 563 ....................... 19

**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507

TABLE OF AUTHORITIES

Page

*Reserve Ins. Co. v. Pisciotta* (1982) 30 Cal. 3d 800 ................................................ 10

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,*
    (1970) 1 Cal. 3d 586, 595 ........................................................................... 10-11

*Vann v. Travelers Cos.,* (1995) 39 Cal. App. 4th 1610, 1614.................................. 10

*Wilson v. 21st Century Insurance Co. (2007),* 42 Cal. 4th 713 .............................. 18

## FEDERAL STATUTES

FRCP 56(f)    ............................................................................................ 3, 18-19

## OTHER

Civil Code §3294(a) ................................................................................................. 7

Insurance Code §553 ................................................................................................. 3