Daniel L. Rottinghaus, Esq., State Bar No. 131949
Paul W. Windust, State Bar No. 167338
**BERDING & WEIL LLP**
3240 Stone Valley Road West
Alamo, California 94507
Telephone:  925/838-2090
Facsimile:  925/820-5592

Attorneys for Plaintiff
ROBERT L. YOUNG

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. YOUNG,<br><br>              Plaintiff,<br><br>      vs.<br><br>ILLINOIS UNION INSURANCE COMPANY; ACE WESTCHESTER SPECIALTY CLAIMS; and DOES 1 through 50, inclusive,<br><br>              Defendants. | No.  **C 07-05711 SBA**<br><br>**DECLARATION OF ROBERT L. YOUNG IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE:  September 30, 2008**<br>**TIME:  1:00 p.m.**<br>**CTRM:  3**<br>**JUDGE SAUNDRA B. ARMSTRONG**<br><br>**[FRCP 56(a) and (b)]** |

I, ROBERT L. YOUNG, hereby declare as follows:

1.     I am the Plaintiff in the above-entitled action.  I have personal knowledge of the facts set forth in the declaration.  If called as a witness in this matter, I could competently testify to the facts presented herein.  I make this declaration in support of my opposition to IUI's Motion for Summary Judgment.

2.     On October 18, 2001, I became a Director of TRI Real Estate Services, Inc. ("TRI") and served in that capacity on the Board of Directors until July 14, 2003 when I resigned.  I served as Secretary for TRI from October 1, 1996 until July 14, 2003 when I resigned.  As a condition to my becoming a Director of

**DECLARATION OF ROBERT L. YOUNG IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   TRI, I insisted that it obtain Directors and Officer's Insurance which would provide
2   me with a defense and indemnify me in the event I was ever sued in relation to my
3   duties and actions as a director or officer of TRI.

4          3.      TRI purchased Directors and Officers and Employment Practices
5   Insurance from Illinois Union Insurance Company, Policy Number BMI200116061
6   (the "Policy").

7          4.      Prior to my becoming a Director of TRI, I was hired by Raybern
8   Foods, Inc. ("Raybern") to provide legal counsel with respect to a business
9   transaction between Raybern and a company called Rose & Shore, Inc.  Raybern
10  was referred to me by TRI.  The business transaction was brokered by TRI under
11  an engagement agreement under which TRI was to earn a commission once the
12  transaction closed.  The Raybern/Rose & Shore transaction closed on September
13  16, 2001.  The engagement letter Raybern signed with me contained an existing
14  conflict or potential conflict of interest disclosure in connection with my having
15  represented TRI in the past and would likely do so in the future.

16         5.      In February 2004, TRI sued Raybern to recover unpaid commissions
17  due from the close of the Raybern/Rose & Shore transaction.  After over one year
18  of litigation, Raybern filed a Cross-Complaint in that action, naming me as a cross-
19  defendant.  A true and correct copy of the Cross-Complaint is attached hereto as
20  Exhibit A.  That action alleged that I breached fiduciary duties, duties of care, and
21  failed to adequately protect Raybern's business interests respecting the Rose and
22  Shore transaction in my capacity as a director and officer of TRI.  I promptly
23  tendered the Cross-Complaint to IUI through its designated agent, ACE
24  Westchester Specialty Claims ("ACE").  I also demanded that TRI defend and
25  indemnify me pursuant to its obligations under the Corporations Code and its
26  Bylaws, but TRI summarily denied my request.

27         6.      On July 26, 2005, after my successful demurrer, Raybern filed a First
28  Amended Complaint again naming me as a cross-defendant.  A true and correct

1   copy of the First Amended Cross-Complaint is attached hereto as Exhibit B.
2   Similar to the first version of the Cross-Complaint, Raybern alleged that as a
3   Director and Officer of TRI, I failed to adequately protect its business interests,
4   failed to monitor the Rose & Shore transaction, and failed to ensure that Raybern
5   achieved its business objectives in the transaction.

6        7.    I tendered the Cross-Complaint and First Amended Cross-Complaint
7   to IUI numerous times and never received a direct response from either IUI or
8   ACE.  My attorney tendered the Cross-Complaints on July 6 and December 15,
9   2005, February 3, May 19, June 27, August 11, and November 30, 2006.  True and
10  correct copies of my tender letters are attached hereto as Exhibits C-I, respectively.

11       8.    In September 2005, I was named as a defendant in a Cross-Complaint
12  filed by TRI and John Fults, the TRI agent working on the Raybern/R&S
13  transaction.  A true and correct copy of the Fults' Cross-Complaint is attached
14  hereto as Exhibit J.  The Fults' Cross-Complaint alleges that I provided legal
15  services to Raybern without TRI's consent and failed to disclose potential conflicts
16  of interest in that connection, despite the fact that Raybern was referred to me by
17  TRI.  Fults sued me for fraud, legal malpractice, indemnity and contribution.  IUI
18  never considered Fults' Cross-Complaint in denying me a defense.

19       9.    In May 2006, I learned from my attorney that ACE had provided a
20  copy of a denial of coverage letter dated July 6, 2005 that was directed to TRI.
21  Although I was mentioned in the letter, I never received a copy of the letter directly
22  from IUI or ACE.  Further, because the letter pre-dated the filing of the First
23  Amended Cross-Complaint, it could not have considered the new allegations.

24       10.   Apparently, ACE acknowledged receipt of the Raybern Cross-
25  Complaint on June 29, 2005 and decided it did not owe me a defense only six days
26  later.  Neither IUI nor ACE ever interviewed me concerning the allegations made
27  against me.  As far as I know, neither IUI nor ACE undertook an investigation of
28  the claims made against me.

---

11.    On October, 5, 2006 (18 months after my initial tender), my attorney received an acknowledgement of the claim from IUI's attorney.    Then, on December 5, 2006, the day before a scheduled mediation, IUI's attorney denied coverage for the claim and refused to provide me with a defense.

12.    From the time I was served with the Raybern Cross Complaint I and my family experienced significant stress and emotional distress relative to the underlying litigation.  While the TRI/Raybern litigation was pending, my wife had a death threatening illness causing extended hospitalization and my son was experiencing alcoholic related symptoms and illness which eventually resulted in institutionalization.  My complete attention to my family was required, but I could not do this because I had not been afforded a defense in the litigation.  This was very extremely stressful.    Further, I was afflicted with vertigo (Maneures Syndrome) at the same time.  All of these issues, at least as to my wife and me, were stress related and arose from being the target of litigation while having to fund my own defense.

13.    Emotionally, physically, and financially exhausted from defending myself, I reluctantly agreed to settle the claims against me for $20,000 with a release of my defense and indemnity claims against TRI.

I declare under penalty of perjury of the laws of the United States the foregoing is true and correct.  Executed this _____ day of September, 2008 in Alamo, California.

_____
ROBERT L. YOUNG

O:\WDOCS\0001\392\PLD\00481168.DOC

BERDING & WEIL LLP
3240 Stone Valley Road West
Alamo, California 94507

**DECLARATION OF ROBERT L. YOUNG IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

1   LAW OFFICES OF KYRA A. SUBBOTIN
    KYRA A. SUBBOTIN State Bar No. 104944
2   2625 Alcatraz Avenue, No. 152
    Berkeley, CA 94705
3   Telephone: (510) 923-0451
    Facsimile (510) 923-0565
4
    Attorney for Defendants Raybern Foods, Inc.
5   and Bernard J. Viggiano

6

7

8                   SUPERIOR COURT OF CALIFORNIA

9                       COUNTY OF ALAMEDA

10

11  TRI COMMERCIAL REAL ESTATE          )   Case No. RG 04141329
12  SERVICES, INC.,                      )
                                         )
13            Plaintiff,                 )   CROSS-COMPLAINT AGAINST TRI
                                         )   COMMERCIAL REAL ESTATE
14       vs.                             )   SERVICES, INC., JOHN FULTS,
                                         )   AND ROBERT L. YOUNG,
15  RAYBERN FOODS, INC., BERNARD         )   INDIVIDUALLY AND DBA LAW
    J. VIGGIANO, and DOES 1-20           )   OFFICES OF ROBERT L. YOUNG
16                                       )
            Defendants.                  )
17  _____)
                                         )
18  RAYBERN FOODS, INC.,                 )   Trial Date: July 22, 2005
                                         )
19            Cross-complainant,         )
                                         )
20       vs.                             )
                                         )
21  TRI COMMERCIAL REAL ESTATE           )
    SERVICES, INC., JOHN FULTS,          )
22  ROBERT L. YOUNG, individually and    )
    dba LAW OFFICES OF ROBERT            )
23  YOUNG                                )
                                         )
24            Cross-defendants.          )
    _____)
25

26  Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

27                      GENERAL ALLEGATIONS

28  1. TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

41461.1

EXHIBIT

A

IU 000151

1    times was a California corporation that had its principal place of business in San

2    Francisco and is the plaintiff in this action.

3        2. John Fults is and at all relevant times was a licensed real estate agent

4    and independent contractor affiliated with TRI. At all relevant times, Fults held

5    himself out as president of Keystone Financial , a different corporation than TRI

6    and one for which Fults served as president. Fults held himself out to Raybern as

7    someone with superior financial knowledge and abilities and significant experience

8    in handling the type of transactions that form the basis of this lawsuit.

9        3. Cross-complainant is informed and believes and thereon alleges that

10    Robert L. Young was at all relevant times an officer and director of TRI and, with

11    respect to certain actions alleged herein, acted as its agent and within the course

12    and scope of his obligations as an officer and director of TRI. Raybern is further

13    informed and believes that Robert L. Young was at all times a member of the

14    California bar and a practicing attorney holding himself out as having expertise in

15    the type of transactions that form the basis of this lawsuit.

16        4. Cross-complainant is informed and believes and thereon alleges that

17    Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

18    Offices of Robert L. Young, a professional corporation at various times relevant

19    herein. Young and the Law Offices of Robert L. Young provided advice and

20    services to Raybern in connection with the transactions between Raybern and Rose

21    & Shore.

22        5. The acts set forth herein occurred within the jurisdiction of this Court and

23    are related to and part of the series of transactions forming the basis of the TRI's

24    complaint.

25

26    **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

27    (Against Robert Young, Fults, and TRI)

28        6. In early 2001, Raybern retained TRI, through its purported agent, John

- 2 -

41461.1

1    Fults, to represent Raybern in connection with negotiations toward the formation of

2    a strategic business alliance with another entity, Rose & Shore.  In that capacity

3    Fults and TRI were acting as fiduciaries to Raybern and owed Raybern the highest

4    duty of honesty and loyalty.  At the time Raybern retained TRI, it did not know of

5    or understand the true relationship between Young and TRI or between Fults and

6    TRI, and the cross-defendants did not disclose said relationships to Raybern.

7        7.  TRI, through its purported agent Fults, then undertook to have Raybern

8    hire Young to perform services of a legal and/or business nature for Raybern.

9        8.  Raybern hired Young and the Law Offices of Robert L. Young on or about

10   May 10, 2001, at TRI and Fults's recommendation.  At the time Raybern hired

11   Young and commenced payment for his services, Raybern did not know that Young

12   was, in fact, an officer and/or director of TRI.  Neither TRI, nor Fults, nor Young

13   disclosed that fact, and none of them disclosed that Fults had a prior and ongoing

14   personal and/or professional relationship with Young.

15       9.  The services performed by TRI by and through Young, its officer and

16   director, resulted in the consummation of a transaction upon which TRI now is

17   seeking damages.  The services that Young provided included legal services as well

18   as services which TRI/Fults had already agreed to provide Raybern in exchange for

19   a commission from the Raybern/Rose & Shore transactions.  Raybern was billed for

20   and paid Young substantial fees for his services.

21       10.  During the course of his representation of Raybern, Young failed to

22   adequately protect Raybern's financial interests in the transactions with Rose &

23   Shore and likewise failed to adequately protect Raybern when TRI's purported

24   agent, John Fults, announced that he intended to withdraw from further

25   representation of Raybern.

26       11.  Young, Fults, and TRI's actions breached their respective fiduciary

27   duties to Raybern, resulting in damages to Raybern in an amount to be proven at

28   trial.

- 3 -

4146L1

## SECOND CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE

### (Robert Young/Law Offices of Robert L. Young)

12.  Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

13.  Young's services on behalf of Raybern fell below the standard of care for legal professionals in that he failed to adequately disclose his relationship with TRI and likewise failed to protect his client's interests vis a vis TRI when TRI's agent withdrew from representing Raybern. Young's negotiations for and drafting of Raybern's contracts with Rose & Shore failed to adequately protect Raybern's long-term financial interests in its relationship with Rose & Shore.

14.  Young's disclosures and services fell below the standard of care for legal professionals and proximately cause damage to Raybern, for which Raybern seeks recovery herein.

## THIRD CAUSE OF ACTION - NEGLIGENCE

### (All Defendants)

15.  Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

16.  Cross-defendants and each of them owed Raybern a duty of care to protect the financial interests of Raybern in the series of transactions in which defendants were involved. Cross-defendants breached their duty of care to Raybern, resulting in past and future financial losses.

## FOURTH CAUSE OF ACTION - PROMISSORY FRAUD

### (Fults; TRI)

17.  Cross-complainant realleges paragraphs 1 through 10 as though fully set forth herein.

18.  TRI, through its purported agent Fults, knowingly misrepresented its

- 4 -

41461.1

1    background and skill in brokering deals of the sort that Raybern and Rose & Shore

2    were contemplating.  Furthermore, they misrepresented the nature of the services

3    they would be providing; neither TRI nor Fults intended to provide due diligence

4    through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

5    needed those services and had expressly obtained TRI/Fults's agreement to provide

6    such services in exchange for its commission.

7        19.  In entering into an agreement with TRI/Fults, Raybern relied on TRI

8    and Fults's representations as to the degree of skill and type of services it would be

9    providing in connection with the negotiation of the Raybern/Rose & Shore

10   transaction.    Raybern's reliance on cross-defendants' representations was

11   reasonable.

12       20.  As a result of Raybern's reliance on TRI and Fults's representations,

13   Raybern suffered consequential damages in an amount to be proven at trial.

14       21.  TRI/Fults intentional conduct was undertaken with aim of causing

15   Raybern injury and was sufficient to support an award of punitive damages

16   pursuant to Civil Code §3294.

17

18                        **PRAYER FOR RELIEF**

19   Wherefore cross-defendant prays for relief as follows:

20       1.  For compensatory damages according to proof;

21       2.  For a disgorgement of all professional fees paid to Robert Young and the

22   Law Offices of Robert L. Young in connection with professional services rendered in

23   connection with the transactions underlying this lawsuit;

24       3.  For punitive damages according to proof;

25       4.  For costs of suit herein; and

26       5.  For such other and further relief as the Court deems just and proper.

27

28

41461.1

1    Dated: March 18, 2005

2

3

4                        LAW OFFICES OF KYRA SUBBOTIN

5

6                    By: _____

7                        Kyra A. Subbotin

8

9

10                        **DEMAND FOR JURY TRIAL**

11        Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all

12   claims asserted herein.

13

14   Dated: March 18, 2005

15

16                        LAW OFFICES OF KYRA SUBBOTIN

17

18

19                    By: _____

20                        Kyra A. Subbotin

21

22

23

24

25

26

27

28

- 6 -

41461.1

IU 000156

LAW OFFICES OF KYRA A. SUBBOTIN
KYRA A. SUBBOTIN State Bar No. 104944
2625 Alcatraz Avenue, No. 152
Berkeley, CA 94705
Telephone: (510) 923-0451
Facsimile (510) 923-0565

Attorney for Defendants Raybern Foods, Inc.
and Bernard J. Viggiano

FILED BY FAX
ALAMEDA COUNTY

July 26, 2005

CLERK OF
THE SUPERIOR COURT
By Rosanne Case, Deputy

CASE NUMBER:
**RG04141329**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

TRI COMMERCIAL REAL ESTATE
SERVICES, INC.,

      Plaintiff,

      vs.

RAYBERN FOODS, INC., BERNARD
J. VIGGIANO, and DOES 1-20

      Defendants.

RAYBERN FOODS, INC.,

      Cross-complainant,

      vs.

TRI COMMERCIAL REAL ESTATE
SERVICES, INC., JOHN FULTS,
ROBERT L. YOUNG, individually and
dba LAW OFFICES OF ROBERT
YOUNG

      Cross-defendants.

Case No. RG 04141329

**FIRST AMENDED CROSS-
COMPLAINT AGAINST TRI
COMMERCIAL REAL ESTATE
SERVICES, INC., JOHN FULTS,
AND ROBERT L. YOUNG,
INDIVIDUALLY AND DBA LAW
OFFICES OF ROBERT L. YOUNG**

Cross-complainant Raybern Foods, Inc. (Raybern) alleges as follows:

## GENERAL ALLEGATIONS

1. TRI Commercial Real Estate Services, Inc. (TRI) is and at all relevant

41461.1

EXHIBIT
B

1   times was a California corporation that had its principal place of business in San

2   Francisco and is the plaintiff in this action. TRI provides professional brokerage

3   services to client throughout the state of California and within the jurisdiction of

4   this Court.

5   2.  Cross-complainant is informed and believes and thereon alleges that John

6   Fults (Fults) is and at all relevant times was a licensed real estate agent and

7   independent contractor affiliated with TRI.  At all relevant times, Fults held

8   himself out as president of Keystone Financial , a different corporation than TRI

9   and one for which Fults served as president.  The exact nature of the relationship

10  between Keystone Financial and TRI is as yet unknown.  Fults held himself out to

11  Raybern as someone with superior financial knowledge and abilities and significant

12  experience in handling the type of transactions that form the basis of this lawsuit.

13  3.  Cross-complainant is informed and believes and thereon alleges that

14  Robert L. Young (Young) was an officer and director of TRI and, as such, had a

15  degree of control over or influence on TRI's actions herein.  With respect to certain

16  actions alleged herein, Young acted as TRI's  agent and within the course and scope

17  of his position as an officer and/or director of TRI.  Raybern contends that in failing

18  to disclose his role as an officer and director of TRI, Young placed his interests as an

19  officer and/or director of TRI above his professional obligations to Raybern.

20  Raybern is further informed and believes that Robert L. Young was at all times a

21  member of the California bar and a practicing attorney claiming expertise in the

22  type of transactions that form the basis of this lawsuit.  Raybern is informed and

23  believes and thereon alleges that Young was an undisclosed business associate of

24  Fults and served as an advisor to various business entities owned and/or controlled

25  by Fults.

26  4.  Cross-complainant is informed and believes and thereon alleges that

27  Robert L. Young, a California lawyer, was the owner and sole proprietor of the Law

28  Offices of Robert L. Young, a professional corporation at various times relevant

- 2 -

41461.1

1    herein. Young and the Law Offices of Robert L. Young provided advice and

2    services to Raybern in connection with the transactions between Raybern and Rose

3    & Shore as well as other business matters during the same time period that the

4    Rose & Shore transactions were being negotiated. In such a capacity, Young and

5    the Law Offices of Robert L. Young owed a fiduciary duty to Raybern.

6        5. The acts set forth herein occurred within the jurisdiction of this Court and

7    are related to and part of the series of transactions forming the basis of the TRI's

8    complaint.

9

10    ### FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY

11                    (Against Fults, and TRI)

12        6. In early 2001, Raybern retained TRI, through its purported agent, John

13    Fults, to represent Raybern in connection with negotiations toward the formation of

14    a strategic business alliance with another entity, Rose & Shore. The purpose of

15    that alliance, among other things, was to allow Rose & Shore to take over the

16    manufacturing of certain products, including products that were provided to

17    Raybern's major client, Togo's Eateries, Inc. (Togo's) and to ultimately allow

18    Raybern to close its Hayward manufacturing plant. In agreeing to represent

19    Raybern in the transactions with Rose & Shore, Fults and TRI were acting as

20    fiduciaries to Raybern and owed Raybern the highest duty of honesty and loyalty in

21    negotiating the business alliance with Rose & Shore. At the time Raybern retained

22    TRI, it did not know of or understand the true relationship between TRI and Fults,

23    nor did it understand the full relationship between TRI and its then-officer/director

24    Young, who was also involved in the negotiation of the Rose & Shore contracts and

25    who subsequently represented Raybern in other unrelated business transactions..

26        7. TRI, through its purported agent Fults, then urged Raybern to hire Young

27    to perform services of a legal and business nature for Raybern. On Fults'

28    recommendation, Raybern did hire Young in May 2001 and continued to pay Young

- 3 -

1   for his services through at least November 2002. Raybern paid Young professional
2   fees in excess of $51,000 in connection with the Rose & Shore transactions, and also
3   paid Young for services in connection with at least two other business matters in
4   which Young provided advice to Raybern.
5       8.  TRI, and its purported agent Fults, breached their fiduciary duty to
6   Raybern by failing to disclose Fults's background and experience and for failing to
7   disclose the relationships between TRI, Young, and Fults.  Specifically, Raybern
8   would not have engaged Fults had it known of Fults's true business background
9   and Fults's own legal troubles, including a personal bankruptcy and threatened or
10  ongoing litigation involving allegations of breach of fiduciary.  TRI and Fults
11  likewise breached their fiduciary duty to Raybern by failing and refusing to fulfill
12  their promise to monitor Rose & Shore's performance and payments under its
13  contract with Raybern and by withdrawing from the transaction before it was
14  finalized.  TRI and Fults breached their fiduciary obligations to Raybern by failing
15  to insure that Raybern's goal – tying the August 20, 2001 licensing agreement
16  between Rose & Shore and Raybern to continued performance by Rose & Shore
17  under a separate Manufacturing Agreement executed that same date – was
18  achieved.  Instead, the Manufacturing Agreement, which involved the manufacture
19  of sandwich products for customers other than Togo's,  contained a provision
20  allowing Rose & Shore to terminate the agreement upon eight months' notice and in
21  the absence of default by Raybern.  Rose & Shore has, in fact, exercised its right to
22  terminate the Manufacturing Agreement and has continued to operate under the
23  Licensing Agreement.   Finally, TRI and Fults breached their fiduciary duty by
24  failing to disclose that the attorney they were recommending to represent Raybern
25  was, in fact, a business associate of Fults and an officer and director of TRI, and
26  therefore had a vested interest in ensuring that the Rose & Shore transaction was
27  consummated so that TRI would receive a commission.
28      9.  As a proximate result of TRI and Fult's breach of its fiduciary duty to

- 4 -

41461.1

IU  000122

1   interest when Fults withdrew from the Rose & Shore transactions and to take all
2   steps available to protect Raybern in connection with that withdrawal.
3        13. During the course of his representation of Raybern, and in the interest of
4   effecting a transaction that would result in a commission to TRI, the company upon
5   whose board he served, Young failed to disclose his relationships with TRI and
6   Fults, and he failed adequately to protect Raybern's financial interests in the
7   transactions with Rose & Shore. Specifically, Young failed to insure that the
8   Manufacturing Agreement was tied to the Licensing Agreement; Instead the
9   Manufacturing Agreement had a provision allowing Rose & Shore to terminate the
10  Manufacturing Agreement even absent default by Raybern and yet continue to
11  operate under the more lucrative Licensing Agreement. Young likewise breached
12  his fiduciary duty to Raybern by failing to include language in the Licensing
13  Agreement making it clear that Fults had the obligation to and would be
14  monitoring the Rose & Shore financials through the life of the Raybern/Rose &
15  Shore contract, an issue now in dispute in this lawsuit. Young likewise failed to
16  take steps to protect Raybern's interest upon learning that Fults refused to continue
17  performing under his contract with Raybern. Finally, when Raybern asked Young
18  to review a listing agreement between TRI and Raybern – an agreement that would
19  result in a commission to TRI upon sale of Raybern's Hayward property – Young
20  again failed to disclose his true relationship with TRI.
21       14. Young's breach of his fiduciary duty to his client, Raybern, proximately
22  resulted in damage to Raybern. Specifically, Raybern paid Young over $51,000 in
23  attorneys fees which, under the law involving undisclosed conflicts of interest, he
24  had no obligation to pay. Raybern has also been forced to incur attorneys fees to
25  defend this action which would not have been brought had Young properly advised
26  Raybern upon Fults's withdrawal from the underlying transaction. Raybern has
27  also had to retain an attorney in connection with Rose & Shore's withdrawal from
28  the Manufacturing Agreement – a withdrawal that should have been prohibited

- 6 -

IU   000123

1    absent a default by Raybern.  Finally, as a result of Young's failure to draft a

2    Manufacturing Contract that ensured Rose & Shore's continued performance,

3    Raybern has incurred substantial costs to reopen its Hayward processing plant to

4    accommodate the business heretofore handled by Rose & Shore under the

5    Manufacturing Contract, yet is unable to withdraw from the Licensing Agreement.

6

7                **THIRD CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE**

8                        (Robert Young/Law Offices of Robert L. Young)

9        15.  Cross-complainant realleges paragraphs 1 through 5, 7, and 10-14 as

10   though fully set forth herein.

11       16.  Young's services on behalf of Raybern fell below the standard of care for

12   legal professionals in that he failed to adequately fully disclose his relationship with

13   TRI, in direct contravention of the Professional Rules of Conduct.  Young likewise

14   failed to protect his client's interests vis a vis TRI when TRI's agent withdrew from

15   representing Raybern by either negotiating a novation of the Fults/Raybern

16   contract or disclosing his ongoing conflict and referring Raybern to other counsel.

17   As a result, Raybern is now forced to defend this action.  Young's negotiations and

18   drafting of Raybern's contracts with Rose & Shore likewise fell below the standard

19   of care in that they did not adequately protect Raybern or accomplish Raybern's

20   stated goal of ensuring that Rose & Shore would be handling all of its

21   manufacturing, not just that implicated in the Licensing Agreement.  Raybern

22   made clear that it was closing its Hayward facility and, as a consequence, Rose &

23   Shore should not be given an opportunity to  unilaterally repudiate its obligations

24   under the Manufacturing Agreement while maintaining the more lucrative business

25   that was the subject of the Licensing Agreement.  In drafting the Manufacturing

26   Agreement and providing Rose & Shore with the ability to withdraw from the

27   contract even absent default by Raybern, Young failed to protect his client's goals.

28       17. Young's breach of his professional duty to his client, Raybern,

- 7 -

414611

1   proximately resulted in damage to Raybern. Specifically, Raybern has been forced
2   to incur attorneys fees to defend this action. Raybern has also had to retain an
3   attorney in connection with Rose & Shore's withdrawal from the Manufacturing
4   Agreement – a withdrawal that should have been prohibited absent a default by
5   Raybern.      Finally, as a proximate result of Young's failure to draft a
6   Manufacturing Contract that ensured Rose & Shore's continued performance,
7   Raybern has incurred substantial costs to reopen its Hayward processing plant to
8   accommodate the business heretofore handled by Rose & Shore under the
9   Manufacturing Contract. Finally, as a proximate result of Young's breach of his
10  obligation to fully disclose his relationship with TRI and Fults, Raybern has
11  incurred fees paid to Young, and hereby seeks disgorgement of those fees.
12
13              ### FOURTH CAUSE OF ACTION - NEGLIGENCE
14                       (All Defendants)
15      18.  Cross-complainant realleges paragraphs 1 through 9, 11 through 14, and
16  16 through 17, as though fully set forth herein.
17      19.  Cross-defendants and each of them owed Raybern a duty of ordinary care
18  to protect the financial interests of Raybern in the series of transactions in which
19  defendants were involved. Raybern reasonably relied on the professional expertise
20  of TRI, Fults, and Young in protecting his interests in the transactions with Rose
21  & Shore and ensuring that Raybern's goal of shifting its manufacturing business
22  to Rose & Shore was accomplished. As outlined above, cross-defendants and
23  each of them, breached their duty of care to Raybern. As a proximate result of
24  Young's failure to draft a Manufacturing Contract that ensured Rose & Shore's
25  continued performance, Raybern has incurred substantial costs to reopen its
26  Hayward processing plant to accommodate the business heretofore handled by Rose
27  & Shore under the Manufacturing Contract. Finally, as a proximate result of
28  Young's breach of his obligation to fully disclose his relationship with TRI and

- 8 -

41461.1

IU  000125

1  Fults, Raybern has incurred fees paid to Young, and hereby seeks disgorgement of

2  those fees.

3

4  ### FIFTH CAUSE OF ACTION - PROMISSORY FRAUD

5  (Fults; TRI)

6  20. Cross-complainant realleges paragraphs 1 through 5 as though fully set

7  forth herein.

8  21. TRI, through its purported agent Fults, knowingly misrepresented its

9  background and skill in brokering deals of the sort that Raybern and Rose & Shore

10  were contemplating. Furthermore, they misrepresented the nature of the services

11  they would be providing; neither TRI nor Fults intended to provide due diligence

12  through the life of the Raybern/Rose & Shore contract, despite the fact that Raybern

13  needed those services and had expressly obtained TRI/Fults's agreement to provide

14  such services in exchange for its commission.

15  22. In entering into an agreement with TRI/Fults, Raybern reasonably relied

16  on TRI and Fults's representations as to the degree of skill and type of services it

17  would be providing in connection with the negotiation of the Raybern/Rose & Shore

18  transaction.

19  23. As a result of Raybern's reliance on TRI and Fults's representations,

20  Raybern suffered consequential damages in that TRI and Fults did not adequately

21  protect Raybern's interests in the Rose & Shore transactions and Raybern has had

22  to provide its own due diligence and has had to continue to negotiate the terms of

23  its deal with Rose & Shore, at substantial cost to Raybern.

24  24. TRI/Fults intentional conduct was undertaken with fraud and with the

25  aim of causing Raybern injury and was sufficient to support an award of punitive

26  damages pursuant to Civil Code §3294.

27

28

41461.1

1
## PRAYER FOR RELIEF

2    Wherefore cross-defendant prays for relief as follows:

3    1.  For compensatory damages according to proof;

4    2.  For a disgorgement of all professional fees paid to Robert Young and the

5    Law Offices of Robert L. Young in connection with professional services

6    rendered to Raybern;

7    3.  For punitive damages according to proof;

8    4.  For costs of suit herein; and

9    5.  For such other and further relief as the Court deems just and proper.

10

11   Dated: July 25, 2005

12

13                            LAW OFFICES OF KYRA SUBBOTIN

14

15

16                            By: _____
                                      Kyra A. Subbotin
17

18

19
## DEMAND FOR JURY TRIAL

20    Cross-complainant Raybern Foods, Inc. hereby demands a jury trial of all

21   claims asserted herein.

22

23

24   Dated: July 25, 2005

25                            LAW OFFICES OF KYRA SUBBOTIN

26

27                            By: _____
                                      Kyra A. Subbotin
28

41461.1

IU  000127

<u>PROOF OF SERVICE</u>
[C.C.P. § 1013, C.R.C.§ 2008, F.R.C.P. Rule 5]

I, Kyra A. Subbotin, state:

I am a citizen of the United States.  My business address is 2625 Alcatraz Avenue, No. 152, Berkeley, California 94705.  I am employed in the city of Berkeley, County of Alameda, where this mailing occurs.  I am over the age of eighteen years and not a party to this action.  On the date set forth below, I served FIRST AMENDED CROSS-COMPLAINT on the following person(s) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Albert E. Cordova, Esq.                     Frederick Hagen, Esq.
1299 Fourth Street, Suite 202            Berding & Weil
San Rafael, CA 94901                        3240 Stone Valley Road West
Facsimile: 415 453-6260                     Alamo, CA 94507


✕       <u>BY FIRST CLASS MAIL</u> - I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to-wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing this date, following ordinary business practices.

___:    <u>BY FACSIMILE</u> - I caused said document to be transmitted by Facsimile machine to the number indicated after the address(es) noted above pursuant to a written agreement between counsel for the parties in this action.

___:    <u>BY HAND DELIVERY</u> - I caused said document to be hand delivered to the person(s) noted above.

___:    <u>BY OVERNIGHT MAIL</u> - I caused said document to be placed with an overnight mailing service for delivery the following business day.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this date at Berkeley, California.

Dated: July 26, 2005

_____
Kyra A. Subbotin

53533.1



**BERDING & WEIL LLP**

ATTORNEYS AT LAW

ALAMO, CA
SCOTTSDALE, AZ

July 6, 2005

ACE Westchester Specialty Claims
1133 Avenue of the Americas
38th Floor
New York, NY 10036

Re:    The Insureds:  **TRI Commercial Real Estate Services, Inc. and its Officers and Directors, including Robert L. Young**

        The Policy:  **Illinois Union Insurance Co., Policy No. BMI20016061 ("Directors & Officers Insurance Policy")**

        Lawsuit:  *TRI vs. Raybern Foods, Inc. et al.*
Alameda County Superior Court,
<u>Case No. RG04141329 ("Matter")</u>

Dear Gentlepeople:

We represent Robert L. Young ("Young") in connection with the above-referenced Matter. Enclosed is a copy of the Cross-Complaint that was filed against Young by Raybern Foods, Inc. in such Matter ("Cross-Complaint"). The Cross-Complaint alleges that Young was an officer and director of TRI Commercial Real Estate Services, Inc. ("TRI") during the relevant time period when the alleged events occurred that form the basis of the Cross-Complaint. Illinois Union Insurance Company ("IUIC") issued the above Directors & Officers policy, a copy of which is enclosed, which insures TRI and Young against the damages alleged in the Cross-Complaint.

We hereby tender to IUIC the defense of Young in this Matter and demand indemnity of Young by IUIC from and against any and all liability arising from the Matter, and all events and occurrences upon which the Matter is based, specifically including, but not limited to, all damages and attorneys' fees and costs Young incurs.

This tender and demand was also made by this law firm to TRI immediately after the Cross-Complaint was served on Mr. Young, but TRI refused to accept the tender. We also asked TRI to tender the Matter to IUIC; to our knowledge, it has not done so.



**EXHIBIT**

C

IU 000091

July 6, 2005
Page 2

Please be advised that litigation is ongoing.  We view the Cross-Complaint against Young as a sham and have demurred to the Cross-Complaint.  Our Demurrer was sustained with Leave to Amend.  An Amended Cross-Complaint is due to be filed on or before  August 12, 2005.  As a result of the filing of the Cross-Complaint, the trial date was vacated and has not been reset.  Should Cross-Complainant's Amended Cross-Complaint ever state a cause of action, a responsive pleading will be filed and discovery will ensue.

It is in the interest of the insureds, TRI and Mr. Young, and IUIC that IUIC immediately assume the defense of Mr. Young and fully defend and indemnify him as demanded above.  Please advise of the name of counsel whom you are appointing to defend Mr. Young and ask such counsel to contact me immediately.

Sincerely,

BERDING & WEIL LLP

Clifford R. Horner
chorner@berding-weil.com

CRH:ar
Enclosures
cc:    Albert E. Cordova, Esq.



BERDING & WEIL LLP
ATTORNEYS AT LAW

IU  000092



BERDING & WEIL LLP
ATTORNEYS AT LAW

ALAMO, CA
PHOENIX, AZ

December 15, 2005

ACE Westchester Specialty Claims
1133 Avenue of the Americas
38th Floor
New York, NY 10036

Re:     The Insureds:   **TRI Commercial Real Estate Services, Inc. and its Officers and Directors, including Robert L. Young**
        The Policy:     **Illinois Union Insurance Co., Policy No. BMI20016061 ("Directors & Officers Insurance Policy")**
        Lawsuit:        **TRI vs. Raybern Foods, Inc. et al.**
                        **Alameda County Superior Court,**
                        **Case No. RG04141329 ("Matter")**

Dear Gentlepeople:

       We represent Robert L. Young ("Young") in connection with the above-referenced Matter. On July 6, 2005, we wrote to you, enclosing a copy of the Cross-complaint ("Cross-complaint") filed against Mr. Young by Raybern Foods, Inc. In our letter of July 6, 2005, we tendered to Illinois Union Insurance Co, under the above-referenced policy, the defense of Mr. Young as relates the Cross-complaint, and demanded therein that Illinois Union Insurance Co indemnity Mr. Young for any and all liability arising out of the Cross-complaint. To date, Illinois Union Insurance Co. has not responded to this tender. A response to our tender is long overdue.

       We are enclosing a copy of the First Amended Cross-complaint ("First Amended Cross-complaint"), dated July 26, 2005, that Raybern Foods, Inc. filed in this matter. By way of this letter, we tender to Illinois Union Insurance Co., and hereby demand that Illinois Union Insurance Co. defend and indemnify Mr. Young against and for any and all liability arising out of or related to the First Amended Cross-complaint, including but not limited to all damages and attorneys' fees and associated costs Mr. Young has incurred and will incur in the future. This firm tendered to TRI Commercial Real Estate Services, Inc. the First Amended Cross-complaint for defense and indemnify on August 15, 2005. We requested in that letter that TRI Commercial Real Estate Services, Inc. also tender to Illinois Union Insurance Co. In a letter of August 17, 2005 it has refused to do so.

3240 STONE VALLEY ROAD WEST, ALAMO, CALIFORNIA 94507-1558  TELEPHONE: 925.838.2090  FAX: 925.820.5592  www.berding-weil.com



EXHIBIT

D

IU  000093

December 15, 2005
Page 2

Like the Cross-Complaint, the First Amended Cross-complaint alleges that Mr. Young was an officer and director of TRI Commercial Real Estate Services, Inc. during the relevant time period when the alleged acts or alleged failure to act occurred, which alleged acts or failure to act form the basis of the Raybern Foods, Inc.'s First Amended Cross-complaint. Illinois Union Insurance Company issued the above Directors & Officers policy, a copy of which is enclosed, which insures TRI Commercial Real Estate Services and Mr. Young against the damages alleged in the First Amended Cross-complaint.

A trial date has been set in this matter for April 28, 2006. Please be advised, therefore, that costs associated with the litigation are expected to rise significantly over the next few months, as discovery is completed, depositions are taken, mediation is scheduled, and the date for trial approaches. It is our view, after considered analysis, that the First Amended Cross-complaint against Mr. Young is baseless and without merit.

Certainly, it is in the interests of everyone, not the least of which Illinois Union Insurance Co., that you assume the defense of Mr. Young and fully indemnify him as demanded herein. In that respect, we request a reply to the tender of this date and a response to our tender of July 6, 2005. We request a response to our tenders no latter than the end of the year. Because the issues in the initial Cross-complaint and First Amended Cross-complaint are almost identical, and Illinois Union Insurance Co. has already had over six months to consider those issues, the proposed timetable is entirely reasonable.

If Illinois Union Insurance Co. decides, as it should, that it is required to defend and indemnify Mr. Young in this matter, then we kindly request that you advice us immediately of the name and phone number of defense counsel whom you are appointing.

Sincerely,

BERDING & WEIL LLP

Terrence A. Meyerhoff
tmeyerhoff@berding-weil.com

TAM/jsw
Enclosures
cc:    Albert E. Cordova, Esq.

BERDING & WEIL LLP
ATTORNEYS AT LAW

IU  000094



**BERDING & WEIL** LLP

ATTORNEYS AT LAW

ALAMO, CA
PHOENIX, AZ

February 3, 2006

ACE Westchester Specialty Claims
1133 Avenue of the Americas
38th Floor
New York, NY 10036

Re:    The Insureds:    **TRI Commercial Real Estate Services, Inc. and its Officers
                         and Directors, including Robert L. Young**

       The Policy:      **Illinois Union Insurance Co., Policy No. BMI20016061
                         ("Directors & Officers Insurance Policy")**

       Lawsuit:         *TRI vs. Raybern Foods, Inc. et al.*
                        *Alameda County Superior Court,*
                        Case No. RG04141329 ("Matter")

Dear Gentlepeople:

    We represent Robert L. Young ("Young") in connection with the above-referenced
Matter. We have written to you on two occasions, on July 6, 2005, and December 15, 2005
tendering this matter to you. To date, Illinois Union Insurance Co. has not responded to these
tender. This is unacceptable. An insurer has a duty to respond to an insured's tender and must
inform the insured whether it intends to defend under a reservation of rights, deny defense,
and/or seek a declaration of its rights and responsibilities under the insurance contract.
*Matsushita Elec. Corp. of Am. v. Home Indem. Co.*, 1994 U.S. Dist. LEXIS 12333; *Centennial
Ins. Co. v. United States Fire Ins. Co.*, (2001) 88 Cal. App. 4th 105 Illinois Union Insurance Co
has not even acknowledged these multiple tenders.

    Please respond to our previous tenders consistent with your obligations under the policy
and the law.

                                        Sincerely,

                                        BERDING & WEIL LLP

                                        Terrence A. Meyerhoff
                                        tmeyerhoff@berding-weil.com

cc:    Albert E. Cordova, Esq.

**EXHIBIT**
E

IU 000095

# BERDING & WEIL LLP

ALAMO, CA<br>PHOENIX, AZ

May 19, 2006

Mr. Joseph Ferrari, Esq.
Claims Department
E-Risk Services, LLC
227 Route 206
Building #2
Flanders, NJ  07836

Re:   **Robert L. Young and TRI Commercial Real Estate Services, Inc.**
       **(collectively, "Insured")**
       **Directors & Officers Policy**
       **Illinois Union Insurance Company ("Carrier")**
       **Continuity Date:  August 1, 1999**
       **First E-Risk Certificate #90001415**
       **Last Policy #BMI20024368**

Dear Mr. Ferrari:

We represent Mr. Robert L. Young, a former officer and director of TRI Commercial Real Estate Services, Inc. ("TRI"). The Insureds were sued via a Cross-complaint for Breach of Fiduciary Duty, Professional Negligence, Negligence and Promissory Fraud on March 15, 2005. A First Amended Cross-complaint was filed on July 26, 2005 ("Amended Cross-Complaint"). Copies of the Cross-Complaint and Amended Cross-complaint are enclosed. You will note that even though the Cross-Complaint sets forth a cause of action for professional negligence against Mr. Young (as an attorney), each and every other cause of action refers to and bases its claims on the fact that Mr. Young was an officer and director of TRI. Even the cause of action for professional negligence is based upon facts revolving around Mr. Young's capacities, duties and obligations as an officer and director of TRI.

This law firm tendered the defense to TRI and to the Carrier (to the designated entity and address for claims, e.g., ACE Westchester Specialty Claims) and asked for indemnity pursuant to all relevant policies ("Tender"). TRI has maintained continuation coverage. The Tenders to TRI were made on March 15, 2005, April 13, 2005, and August 15, 2005. The Tenders to Illinois Union Insurance Company were made on July 6, 2005 and December 15, 2005. Copies of each such Tender are enclosed. TRI has refused to accept such Tender. We also wrote to the carrier on February 3, 2006, requesting that the carrier respond to the tenders and reminding the carrier of its obligation to respond to a tender (a copy of that letter is also enclosed). Illinois Union

3240 STONE VALLEY ROAD WEST, ALAMO, CALIFORNIA 94507-1558  TELEPHONE: 925.938.2090  FAX: 925.820.5592  www.berding-weil.com



EXHIBIT

F

IU  000096

Mr. Joseph Ferrari
May 19, 2006
Page 2

Insurance Company has not responded at all to any of the Tenders or otherwise communicated with us.

Prior to the filing of the Cross-complaint and subsequent Amended Cross-complaint, TRI sued Raybern Foods, Inc. ("Raybern") for commissions earned by TRI with respect to a merger and acquisition transaction representing Raybern. TRI's Complaint was filed on February 17, 2004. Mr. Young represented Raybern in the relevant transaction that is the basis of that lawsuit, having been referred to Raybern by TRI.

Prior to the filing of the Cross-complaint against the Insureds, a trial had been scheduled for April 15, 2005. As a result of the filing of the Cross-complaint by Raybern against the Insureds, Demurrers and additional Cross-Complaints (by Young and TRI against one another) were filed and the trial date was rescheduled for April 28, 2006. Subsequent to the filing of the Cross-complaint through and including April 28, 2006, various motions were filed and heard and expansive discovery ensued, all at the sole cost and expense of Mr. Young personally. The total defense costs incurred by Mr. Young to date are approximately $_____.

The trial was continued by the court from April 28, 2006 to September 29, 2006. Motions for Summary Judgment will be filed by Mr. Young against both TRI and Raybern, causing Mr. Young to yet incur additional attorneys' fees and costs.

It has been 10 months since the first Tender to Illinois Union Insurance Co. There has been no response from such Carrier at all. Under these circumstances and applicable law, even if the Carrier would have otherwise been able to eventually prevail on the indemnity claim of Mr. Young (which we do not suggest), its refusal to at least accept the Tender under a reservation of rights (indeed, it has not responded at all) has now subjected it to not only all of Mr. Young's attorneys fees and costs he has incurred and will incur in defending the subject matter, but to an indemnity obligation to Mr. Young and to a potential claim for bad faith and punitive damages.

Mr. Ferrari, on May 15, 2006 Mr. Young spoke with Kirk Denebeim, a partner at ECM Surplus Lines, the broker who first placed the policy through E-Risk in 1999. Mr. Denebeim indicated that ECM was no longer the broker of record. He suggested that we contact you as the attorney and person in charge of claims for E-Risk. He indicated to Mr. Young that you were a reasonable person and that we should visit with you before filing suit. Mr. Denebeim was quite shocked that Illinois Union Insurance Co. had not, at least, accepted the Tender under a reservation of rights. He was apparently even more surprised to hear there had been no response at all!



IU  000097

Mr. Joseph Ferrari
May 19, 2006
Page 3

Please call me of Clifford Horner so we may discuss this matter.

Very truly yours,

BERDING & WEIL LLP

Terrence A. Meyerhoff
tmeyerhoff@berding-weil.com

TAM:kdd

BERDING & WEIL LLP
ATTORNEYS AT LAW

IU  000098



BERDING & WEIL LLP

ATTORNEYS AT LAW

ALAMO, CA
PHOENIX, AZ

June 27, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

George Glavas
ACE Westchester Westchester Specialty Group
1133 Avenue of the Americas, 38th Floor
New York, New York 10036

Re:   Robert L. Young and TRI Commercial Real Estate Services, Inc.
      (collectively, "Insured")
      Directors & Officers Policy
      Illinois Union Insurance Company ("Carrier")
      Continuity Date:  August 1, 1999
      First E-Risk Certificate #90001415
      Last Policy #BMI20024368

Dear Mr. Glavas:

Thank you for forwarding the letter from Ace Westchester to Andrew Murbach dated July 6, 2005, denying coverage as to the claim TRI tendered as to the above-referenced policy.

On May 22, 2006, I wrote to Mr. Joseph Ferrari of E-Risk Services, LLC to inform him that Ace Westchester had never responded to this law firm's various tenders, including those sent on July 6, 2005 and December 15, 2005. You called me in response to my letter on May 30th, and informed me that Ace Westchester had written to TRI Commercial Real Estate Services on July 6, 2005 denying coverage as to the original Cross-complaint filed in case styled *TRI Commercial Real Estate Services v. Raybern Foods.*

I indicated to you during our conversation that we had not (and still have not) received a response from the carrier or Ace Westchester regarding our December 15, 2005 tender of the First Amended Cross-complaint filed in *TRI Commercial Real Estate Services v. Raybern Foods.* (The First Amended Cross-complaint was filed on July 26, 2005 and thus after the only denial letter prepared by Ace Westchester.)  When I informed you of this, you promised that Ace Westchester would respond within one month's time to this law firm's December 15, 2005 tender of the First Amended Cross-complaint filed in *TRI Commercial Real Estate Services v. Raybern Foods.*

3240 STONE VALLEY ROAD WEST, ALAMO, CALIFORNIA 94507-1556  TELEPHONE: 925.838.2000  FAX: 925.820.5592  www.berding-weil.com



EXHIBIT
G

IU  000099

George Glavas
Ace Westchester Specialty Group
Page 2
June 27, 2006

　　　　As agent for the carrier, you are obligated to timely respond to any tenders.  Please provide a response to this firm's December 15, 2005 tender of the First Amended Cross-complaint filed in *TRI Commercial Real Estate Services v. Raybern Foods*.

　　　　　　　　Very truly yours,

　　　　　　　　BERDING & WEIL LLP

　　　　　　　　Terrence A. Meyerhoff
　　　　　　　　tmeyerhoff@berding-weil.com

BERDING & WEIL LLP
ATTORNEYS AT LAW

IU  000100



**BERDING & WEIL LLP**
ATTORNEYS AT LAW

ALAMO, CA
PHOENIX, AZ

August 11, 2006

**VIA OVERNIGHT MAIL**

George Glavas
ACE Westchester Specialty Group
1133 Avenue of the Americas, 38th Floor
New York, New York 10036

Re:  **Robert L. Young and TRI Commercial Real Estate Services, Inc.**
     **(collectively, "Insured")**
     **Directors & Officers Policy**
     **Illinois Union Insurance Company ("Carrier")**
     **Continuity Date: August 1, 1999**
     **First E-Risk Certificate #90001415**
     **Last Policy #BMI20024368**

Dear Mr. Glavas:

As you are aware, this office represents Mr. Robert L. Young in the above-referenced matter. By way of letters dated July 6, 2005, December 15, 2005, February 3, 2006, May 19, 2006, and June 27, 2006, this office has repeatedly tendered to Illinois Union Insurance Company (through its designated entity for claim notification ACE Westchester Specialty Claims) ("IUIC," "Carrier" or "Insurer") the claims made against Mr. Young in the First Amended Cross-Complaint filed on July 26, 2005 ("FACC"), by Raybern Foods ("Raybern") , in the above-referenced lawsuit. Copies of these letters, the FACC, and the Declaration of Edward Welch in Support of Mr. Young's recently filed Motion for Summary Judgment ("Welch Declaration") are attached hereto for your reference. It has now been well over a year since Mr. Young's initial tender, yet IUIC has utterly failed to respond to any of these tenders. We consider IUIC's unexplained and inexcusable failure to respond to be in bad faith, as it is indicative of IUIC's breach of its duty to respond to a tender, duty to investigate a claim, and duty to defend under Directors and Officers Policy No. BMI20016061, effective for claims made between August 1, 2004, through August 1, 2005 ("D&O Policy"), covering Mr. Young for the claims made against him in the FACC.

3240 STONE VALLEY ROAD WEST, ALAMO, CALIFORNIA 94507-1558  TELEPHONE: 925.838.2090  FAX: 925.820.5592  www.berding-weil.com



IU  000101

Mr. George Glavas
August 11, 2006
Page 2

The first, and most obvious source of IUIC's breach of its duties relates to its complete failure to respond to the many tenders Mr. Young has made of this claim since July, 2005. California Department of Insurance Regulation §2695.5 states in relevant part:

(b) Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, but in no event more than fifteen (15) calendar days after receipt of that communication, furnish the claimant with a complete response based on the facts as then known by the licensee.

and

(e) Upon receiving notice of claim, every insurer shall immediately, but in no event more than fifteen (15) calendar days later, do the following unless the notice of claim received is a notice of legal action:

(1) acknowledge receipt of such notice to the claimant . . .;

(2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim;

(3) begin any necessary investigation of the claim.

As it has now been more than a year since the initial tender, IUIC has obviously failed to comply with any of the above-stated regulations. In addition to the statutory duty to respond, California case law also establishes that an insurer has a duty to respond to an insured's tender. See *Centennial Ins. Co. v. United States Fire Ins. Co.,* (2001) 88 Cal. App. 4th 105.

As referenced above, the tender of a claim to the insurer also triggers the insurer's duty to investigate that claim. An insurer has a fundamental duty to investigate claims, and this duty must be exercised thoroughly. *Egan v. Mutual of Oamaha Ins. Co.* (1979) 24 Cal.3d 809, 819. This includes a duty to "fully inquire in to all possible bases that might support the insured's claim . . ." *Id* at 819. In its failure to respond to Mr. Young's tender, IUIC has obviously breached this duty as well.

Finally, IUIC has breached its duty to defend Mr. Young in the lawsuit brought against him. California Civil Code §2778 states, in relevant part:



BERDING & WEIL LLP
ATTORNEYS AT LAW

IU 000102

Mr. George Glavas
August 11, 2006
Page 3

> In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: . . . (4) The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defense, if he chooses to do so . . .

The D&O Policy clearly contemplates the payment of defense costs as a covered expense and does not contain any language expressing a clear intention that IUIC would *not* assume a duty to defend, as is required by California Civil Code §2778 in order to avoid such a duty. *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A. G.* (1970) 3 Cal. 3d 434. In fact, IUIC's defense obligations are quite broad under the D&O Policy given that Mr. Young is not required to obtain the consent of the Carrier prior to incurring any legal expenses and IUIC has agreed to cover one hundred percent of the defense costs incurred by Mr. Young, regardless of whether incurred defending against covered or uncovered portions of the claim -- Section J of the General Terms and Conditions provides with regard to legal expenses:

> "In the event [Mr. Young] in a Claim incur[s] both Loss that is covered by the Policy and also loss which is not covered, either because such Claim includes both covered and uncovered matters or because such Claim is made against both covered and uncovered parties, then coverage will be allocated as follows: 100% of Costs, Charges and Expenses incurred by such Insureds on account of such Claim will be allocated as covered Loss. . ."

Even if a court were ultimately to conclude that the D&O Policy does not impose a "duty to defend" on IUIC, California courts would alternatively find that the D&O Policy imposes on IUIC a "duty to reimburse defense costs" as those costs are incurred. The D&O Policy is a liability-based D&O policy, as opposed to an indemnity-based D&O policy, by virtue of its insuring agreement, which states that IUIC will "pay on behalf of . . ." As such, the D&O Policy requires reimbursement to Mr. Young for legal expenses *as they are incurred*. *Gon v. First State Insurance Co.* (9th Cir. 1989) 871 F.2d 863; *Save Mart Supermarkets v. Underwriters at Lloyd's London, et al.* (1994) 843 F. Supp. 597.

Normally, the distinction between a duty to defend and a duty to reimburse defense costs as they are incurred is that, with the latter, an insurer is normally obligated to pay only those defense costs incurred in defending against covered portions of the claim. *Id.* However, as stated above, under the D&O Policy, IUIC has agreed to cover *all* defense costs incurred pursuant to section J of the General Terms of Conditions, and is therefore not permitted to argue for such an allocation. In this case, therefore, there is no practical distinction between a duty to defend and a duty to reimburse defense costs as incurred. Moreover, regardless of whether



BERDING & WEIL LLP
ATTORNEYS AT LAW

IU 000103

Mr. George Glavas
August 11, 2006
Page 4

characterized as a duty to defend or a duty to reimburse defense costs, one of the benefits Mr. Young is entitled to under the D&O Policy is the benefit of not having to incur the expense of defending a claim himself, and IUIC has clearly denied Mr. Young that benefit.

As I am sure you are aware, insurance contracts carry an implied covenant of good faith and fair dealing, the breach of which is actionable under the contract and in tort. *Foley v. Interactive Data Corp.* (1988) 47 Cal. 3d 654, 683; *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal. App. 3d 1, 54. A breach of the any of the duties discussed above can constitute a breach of the implied covenant of good faith and fair dealing. See e.g., *Egan, supra,* 24 Cal. 3d. at 817 [duty to investigate is bad faith as a matter of law;] *Amato v. Mercury Cas. Co.* (1997) 53 Cal. App. 4th 825. By breaching these duties, IUIC has subjected itself to liability for: (1) the defense costs incurred by Mr. Young, as owed to him pursuant to the terms of the D&O Policy; (2) any settlement or judgment against Mr. Young, regardless of whether actually covered by the D&O Policy (*Gray v. Zurich Ins. Co.* (1966) 65 Cal. 2d 263); (3) punitive damages (*Silberg v. California Life Ins. Co.* (1974) 11 Cal. 3d 452); and (4) all attorneys fees incurred by Mr. Young to compel payments due under the D&O Policy (*Brandt v. Superior Court* (1985) 37 Cal. 3d 813).

Despite the fact that, due to its breach of the duties described above, IUIC will now be obligated to provide both defense and indemnity coverage for the claims made against Mr. Young regardless of whether the D&O Policy actually provides for coverage of those claims, IUIC would be required to provide for Mr. Young's defense regardless. All that is required is to show, under the very broad standards set forth by California courts, that there is the potential for coverage for any part of the claims made against Mr. Young. *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287. As discussed below, the claims made against Mr. Young easily meet this standard.

## The Claim Is Potentially Covered Under the D&O Policy

Even a cursory investigation of this claim and the ongoing litigation reveals that there is the potential for coverage under the D&O Policy for this claim. Mr. Young was at all relevant times a director and/or officer of TRI Commercial Real Estate Services ("TRI").

By virtue of his status as a director or officer of TRI, Mr. Young enjoys the following coverage under the D&O Policy: "[IUIC] shall pay on behalf of [Mr. Young] Loss resulting from any Claim first made against [Mr. Young] during the Policy Period for a Wrongful Act." A Wrongful Act is defined as: "any actual or alleged error, omission, misleading statement, neglect, breach of duty or act by:



BERDING & WEIL LLP
ATTORNEYS AT LAW

Mr. George Glavas
August 11, 2006
Page 5

     a)      any of the Directors and Officers, while acting in their capacity as:

          (i)     a director, officer or employee of the Company . . ."

The FACC makes the following allegations against Mr. Young:

> "Robert L. Young (Young) was an officer and director of TRI and, as such, had a degree of control over or influence on TRI's actions herein. With respect to certain actions alleged herein, Young acted as TRI's agent and within the course and scope of his position as an officer and/or director of TRI. Young placed his interests as an officer and/or director of TRI above his professional obligations to Raybern." (FACC ¶3.)

> "Specifically, [Young] had an obligation to inform Raybern that he was then serving as an officer and/or director of TRI and therefore had conflicting fiduciary duties . . ." (FACC ¶12.)

> ". . . in the interest of effecting a transaction that would result in a commission to TRI, the company upon whose board he served, Young failed to disclose his relationship with Tri and Fults, and he failed adequately to protect Raybern's financial interests in the transaction with Rose & Shore." (FACC, ¶13.)

> "Finally, when Raybern asked Young to review a listing agreement between TRI and Raybern – an agreement that would result in a commission to TRI upon sale of Raybern's Hayward property – Young again failed to disclose his true relationship with TRI." (FACC, ¶13.)

> "Cross-Defendants and each of them owed Raybern a duty of ordinary care to protect the financial interests of Raybern in the series of transactions in which defendants were involved. . . Finally, as a proximate result of Young's breach of his obligation to fully disclose his relationship with TRI and Fults, Raybern has incurred fees paid to Young, and hereby seeks disgorgement of those fees." (FACC, ¶19.)

Raybern initially did not cross-complain against Mr. Young, and in fact did so *only after* having learned that Mr. Young was an officer and/or director of TRI. Raybern had been informed in writing that Mr. Young had acted as counsel for TRI and that Raybern had waived any such potential conflict. Moreover, Raybern was obviously aware from the outset of any and all facts arising out of Mr. Young's representation of it in the transaction. Despite being aware of all of those facts, it was not until Raybern learned that Mr. Young was an officer and/or



**BERDING & WEIL** LLP
ATTORNEYS AT LAW

IU 000105

Mr. George Glavas
August 11, 2006
Page 6

director of TRI that Raybern made any claims against Mr. Young. It is therefore indisputable that Mr. Young was sued by Raybern based upon the fact that he was an officer and/or director of TRI, and not due to legal services provided as counsel for Raybern. Given that Mr. Young's alleged liability arises from his status and actions as an officer and/or director of TRI, the potential for coverage under the D&O Policy clearly exists.

This is the <u>exact</u> circumstance for which Young <u>demanded</u> indemnification from and the acquisition of insurance by TRI <u>before</u> he would agree to become an officer or director of TRI. Young would never have agreed to become an officer or director of TRI without such express insurance and indemnity. Young's insistence that TRI provide insurance for and agree to defend and indemnify Young <u>before</u> Young would agree to join TRI as an officer and director is fully corroborated by Edward Welch, TRI's president at the time Young joined TRI as an officer and director. As stated by Mr. Welch:

"2.    As TRI's President, I reviewed, edited and approved, and instructed TRI's secretary, Charles J. Shaffer, to execute and certify the TRI Bylaws.

3.    A key provision in the TRI Bylaws was Section 29, which Section provides that TRI will defend and indemnify any of its officers or directors against any claims made or actions filed against them by reason of their having served as a director or officer of TRI.

4.    Mr. Young expressed to me that he would not serve as an officer or director of TRI without such an indemnity provision obligating TRI to defend and indemnify Young against such actions.

5.    I have reviewed Paragraph 3 of Raybern Foods, Inc.'s ("Raybern") First Amended Cross-Complaint against Young, and especially the allegation that "Cross-Complainant is informed and believes and thereon alleges that Robert L. Young (Young) was an officer and director of TRI and, as such, had a degree of control over or influence on TRI's actions herein. With respect to certain actions alleged herein, Young acted as TRI's agent and within the course and scope of his position as an officer and/or director of TRI. Raybern contends that in failing to disclose his role as an officer and director of TRI, Young placed his interests as an officer and/or director of TRI above his professional obligations to Raybern."

6.    It was my intent as President of TRI that TRI's Bylaws provide defense and indemnity protection from TRI to its present and past officers and directors,



Mr. George Glavas
August 11, 2006
Page 7

including Young, against the above types of allegations made by Raybern against Young in the lawsuit instigated by TRI against Raybern."

As shown above, it is <u>undisputed</u> that Young would not have become an officer or director of TRI without TRI's agreement to provide insurance for and defend and indemnify him against claims made against him based on his alleged actions, control and influence over TRI while acting as TRI's officer and/or director.

Young was sued because of his alleged role as an officer and director of TRI. He refused to join TRI's board of directors or become an officer of TRI without TRI's provision of insurance for and agreement to defend and indemnify Young from allegation such as Raybern's. TRI unquestionably agreed to provide same. Young now needs and demands such defense and indemnity. The refusal of IUIC to defend Mr. Young has put Young exactly where he demanded not to be, faced with paying attorney's fees defending himself against claims from a claimant initially involved in only a suit with TRI, which claimant (Raybern) then expanded its suit to include Young in the hopes that Young could influence TRI into a settlement with Raybern.

Such suits against officers and directors individually to add pressure and force a settlement, such as is the case here, are <u>exactly</u> why advisors such as Young demand D&O insurance and express defense and indemnity provisions <u>before</u> joining a company's Board. IUIC is required to and must now provide such defense and indemnity to Mr. Young.

Given that Mr. Young's potential liability arises from alleged Wrongful Acts, as defined by the D&O Policy, IUIC is obligated to reimburse Mr. Young for Loss resulting from Raybern's claim. Loss is defined to include "Costs, Charges and Expenses," which is defined to include "reasonable and necessary legal fees and expenses incurred by [Mr. Young] in defense of any Claim." As previously stated, Section J of the General Terms and Conditions of the D&O Policy requires that the Carrier cover <u>all</u> legal fees and expenses incurred in defending the claim, regardless of whether they are incurred defending against portions of the claim ultimately determined to be covered under the D&O Policy.

Mr. Young anticipates that IUIC will, should it ever choose to respond to his tender, argue that exclusion q of the D&O Policy, added by way of endorsement D&O 120, serves to preclude coverage for Mr. Young's claim. Exclusion q states that the D&O Policy does not cover any claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way related to any act, error or omission in connection with performance of any professional services by or on behalf of any of the Insureds for the benefit of any other entity or person . . ." However, this exclusion is quite obviously ambiguous, if not incomprehensible.



IU  000107

Mr. George Glavas
August 11, 2006
Page 8

Exclusions are to be interpreted strictly and, in the face of ambiguous language, interpreted in favor of coverage. (See, *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 ("Moreover, insurance coverage is ' " 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer.' " ' ( *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal. Rptr. 509, 710 P.2d 309].) '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." [Citation.] Thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation.] The exclusionary clause "must be *conspicuous, plain and clear*." ' .")

The claims made against Mr. Young are the most basic kinds of claims meant to be covered by D&O policies -- allegations of liability based upon the fact of his position as a director or officer of TRI. Understand clearly that this tender is <u>not</u> a tender under a professional negligence or malpractice policy or claim. This tender only relates to the claims made by Raybern as related, *supra*, that Mr. Young, as a director or officer of TRI, had a degree of control over TRI's actions and acted as TRI's agent and within the course and scope of his position as a director or officer of TRI with respect to the alleged bad acts of TRI more fully referenced in Raybern's cross-complaint against TRI. Therefore, any interpretation of exclusion q that would bar coverage for Mr. Young's claim would necessarily bar coverage for any and all claims except for the extremely narrow category of shareholder derivative lawsuits. A D&O policy that only provides coverage for shareholder derivative lawsuits is so vastly limited from the scope of coverage that an insured would expect to receive the benefit of when purchasing D&O coverage that the carrier would have an affirmative duty to explicitly disclose that limited coverage to the insured. (See, *Underwriters Insurance Co. v. Purdie* (1983) 145 Cal.App.3d 57, 65; *Logan v. John Hancock Mutual Life Insurance Co.* (1974) 41 Cal. App. 3d 988, 994-995, ["In *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the court held that in the field of insurance contracts, when the policy does not clearly define the application of exclusions to the basic coverage the insured could reasonably expect, courts will not relieve the insurer of liability on the basis of those exclusions . . . In the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could reasonably expect must be called to his attention, clearly and plainly, before the exclusions will be interpreted to relieve the insurer of liability or performance."] Therefore, even if one of the many reasonable interpretations of exclusion q would arguably preclude coverage for Mr. Young's claim, which it does not, such an interpretation would not be enforced by a California Court because it so fundamentally limits the coverage normally afforded by a D&O policy that such a limitation would have had to have been made plainly and explicitly clear to the insured, which it was not.



BERDING & WEIL LLP
ATTORNEYS AT LAW

IU 000108

Mr. George Glavas
August 11, 2006
Page 9

Mr. Young, by way of the attached letter dated May 19, 2006, has already alerted
Mr. Joseph Ferrari, legal counsel for the Carrier responsible for claims, of IUIC's breaches of its
duties by failing to respond to Mr. Young's multiple tenders. The consequences of IUIC's
continued breach of its duties with respect to Mr. Young are becoming more and more severe,
especially now that trial in this matter, set for September 29, 2006, is rapidly approaching. The
financial hardship and negative impact on Mr. Young's defense caused by IUIC's continued
breach only grow exponentially as that trial rapidly approaches. It was Mr. Young's sincere
hope that by alerting Mr. Ferrari to IUIC's flagrant breaches of its duties owed to Mr. Young
under the D&O Policy, the necessity of a bad faith lawsuit against IUIC could be avoided.
However, as IUIC continues to maintain silence with respect to Mr. Young's tenders, unless
IUIC accepts its duties under the D&O Policy by immediately reimbursing Mr. Young for the
legal expenses he has incurred thus far in defending against the claims in the FACC and sets up a
method of timely reimbursing Mr. Young for further legal costs as they become due, Mr. Young
will have no choice but to file a bad faith lawsuit against IUIC, seeking reimbursement for all of
his legal costs thus far, a declaration that IUIC is responsible to indemnify him for any payments
he makes to Raybern either as a result of settlement or as a result of an adverse judgment at trial,
for all legal costs and fees incurred in bringing such a bad faith lawsuit against IUIC, and for
punitive damages against IUIC due to its blatant and inexcusable breaches of the several duties
owed to Mr. Young that it has breached in bad faith.

Therefore, we demand you to respond to this tender and provide coverage in this matter
for Mr. Young under the D&O Policy, thereby avoiding liability for bad faith that will assuredly
attach given IUIC's behavior to date.

Sincerely,

BERDING & WEIL LLP

Clifford R. Horner
chorner@berding-weil.com

CRH/KPM:jw
cc:   Robert L. Young, Esq.
      Terrence A. Meyerhoff, Esq.
      Kevin P. Montee, Esq.

BERDING & WEIL LLP
ATTORNEYS AT LAW

IU 000109



BERDING & WEIL LLP

ATTORNEYS AT LAW

RECEIVED

November 30, 2006

DEC - 5 2006

ACE Westchester Specialty Group
Claim Department - New York

**VIA CERTIFIED/REGISTERED U.S. MAIL**

George Glavas
ACE Westchester Specialty Group
1133 Avenue of the Americas, 38th Floor
New York, New York 10036

     Re:   *TRI Commercial Real Estate Services, Inc., et al. v. Raybern Foods, Inc., et. al., Superior Court of California, Alameda County, Case No. RGO4141329*
**Robert L. Young and TRI Commercial Real Estate Services, Inc.**
    **(collectively, "Insured")**
**Directors & Officers Policy**
**Illinois Union Insurance Company ("Carrier")**
**First E-Risk Certificate #90001415**
**Last Policy #BMI20024368**

Dear Mr. Glavas:

    This letter is to inform you that mediation will occur between the parties in this matter on December 6, 2006, beginning at 10:00 a.m. in our offices at 3240 Stone Valley Road West, Alamo, California 94507. Mr. Young hereby formally makes one further request for a defense in this matter and demands that a representative of the Carrier attend this mediation with authority to settle the claims made against him. Without a defense or immediate advancement of defense costs, Mr. Young is not in a position to continue the litigation to defend himself through Judgment; accordingly, Mr. Young may have to settle the claim against him and surrender his cross-claims.

    As set forth in our prior correspondence in this matter, the Carrier has failed to perform its contractual and statutory duties under the policy and it has dealt unfairly with Mr. Young and engaged in bad faith conduct by failing to respond to his requests for the protections and benefits under the Policy. As a result, Mr. Young is free to settle this matter without the Carrier's input or consent and the same shall raise an evidentiary presumption in his favor (or his assignee) with respect to the existence and amount of his liability notwithstanding the truth.

    We reiterate to you that the Carrier has failed in its duty to respond to Mr. Young's numerous tenders, as more specifically set forth in the many letters previously sent to you (and enclosed herewith as Exhibits A, B, C, D, E, and F for ease of reference). Notwithstanding all of

EXHIBIT
I

IU 000022

Mr. George Glavas
November 30, 2006
Page 2

the prior correspondence, we direct your attention and strongly encourage you to re-read Clause L. 2. SETTLEMENTS AND DEFENSE of the General Terms and Conditions Coverage Section for this Policy, which reads: "Insurer shall have the right **and the duty to defend any Claim and such right and duty shall exist even if any of the allegations are groundless, false or fraudulent** (*emphasis added*)." Not only has the Carrier not defended, but it has not even replied to Mr. Young's tender letters and request for a defense.

Our last tender letter was forwarded on August 11, 2006 (*see* Exhibit F). We then received a letter dated October 5, 2006 from D. Victoria LaBrie of Wilson, Elser, Moskowitz, Edelman & Dicker LLP in Los Angeles confirming a telephone conversation in which she promised a response within 30 days at the latest (*see* Exhibit G). That *promised* response is now several weeks overdue. We consider this latest failure to respond amidst the litany of failures as further evidence of the Carrier's inexcusable conduct and bad faith in its failure to investigate the claims against Mr. Young or to properly respond to his numerous requests for a defense.

At the upcoming mediation, Mr. Young is prepared to resolve the underlying dispute and any related potential litigation, including litigation against the Carrier as a result of the matters expressed herein. We expect that you share the same interest in resolving both the underlying dispute and this Policy matter. In this regard, we look forward to seeing a representative of the Carrier at our offices for the December 6th mediation. If not, we are prepared to immediately serve you with our Complaint. Please do not hesitate to contact the undersigned with any questions.

Very truly yours,

BERDING & WEIL LLP

Daniel R. Rottinghaus
drottinghaus@berding-weil.com
Kevin P. Montee
kmontee@berding-weil.com

DLR/mp
Enclosures
cc:     Robert L. Young
        D. Victoria LaBrie (w/encls.)

O:\WDOCS\0001\391\LETTER\00421563.DOC

**BERDING & WEIL LLP**
ATTORNEYS AT LAW

IU 000023

1 | ALBERT E. CORDOVA (State Bar No: 74283)
2 | A Professional Law Corporation
1299 Fourth St., Suite 202
3 | San Rafael, California 94901
Telephone: (415) 457-9656
4 | Telefacsimile: (415) 453-6260

5

6 | Attorneys for Plaintiff TRI COMMERCIAL REAL ESTATE
SERVICES, INC., a California corporation and JOHN FULTS

7

THE SUPERIOR COURT OF CALIFORNIA

8

9 | COUNTY OF ALAMEDA

| | | |
|---|---|---|
| TRI COMMERCIAL REAL ESTATE SERVICES, INC., et al., | ) | No. RGO4141329 |
| | ) | |
| Plaintiff(s), | ) | **CROSS-COMPLAINT ON** |
| | ) | **BEHALF OF TRI** |
| vs. | ) | **COMMERCIAL REAL ESTATE** |
| | ) | **SERVICES, INC. AND JOHN** |
| RAYBERN FOODS, INC., BERNARD J. VIGGIANO and DOES 1-20, | ) | **FULTS AND AGAINST ROBERT** |
| | ) | **YOUNG FOR BREACH OF** |
| | ) | **FIDUCIARY DUTY, LEGAL** |
| Defendant(s). | ) | **MALPRACTICE, INDEMNITY,** |
| | ) | **CONTRIBUTION AND** |
| | ) | **DECLARATORY RELIEF** |
| RAYBERN FOODS, INC., | ) | |
| | ) | |
| Cross-Complainants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TRI COMMERCIAL REAL ESTATE SERVICES, INC., JOHN FULTS, ROBERT L. YOUNG, individually and dba LAW OFFICES OF ROBERT YOUNG,. | ) | |
| | ) | |
| | ) | |
| Cross-Defendants. | ) | |
| | ) | |

1

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

EXHIBIT

J

| | | |
|---|---|---|
| 1 | ROBERT YOUNG, | ) |
| 2 | Cross-complainant, | ) |
| 3 | vs. | ) |
| 4 | TRI COMMERCIAL REAL ESTATE | ) |
| 5 | SERVICES, INC., JOHN FULTS, an | ) |
| 6 | individual, and ROES 1-50, inclusive, | ) |
| 7 | Cross-defendants. | ) |

NO. RGO4141329

1    ROBERT YOUNG,

2                    Cross-complainant,

3            vs.

4    TRI COMMERCIAL REAL ESTATE

5    SERVICES, INC., JOHN FULTS, an

6    individual, and ROES 1-50, inclusive,

7                    Cross-defendants.

8    _____

9    TRI COMMERCIAL REAL ESTATE

10   SERVICES, INC. and JOHN FULTS,

11                   Cross-complainants,

12           vs.

13   ROBERT YOUNG and ZOES 1-20,

14

15                   Cross-defendants.

16   _____

17

18   Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. and

19   JOHN FULTS allege the following causes of action against ROBERT YOUNG.

20                   **FIRST CAUSE OF ACTION**

21

22          **(Breach of Fiduciary Duty-Constructive Fraud)**
              **(On behalf of TRI Only)**
23

24          1.  Cross-complainants are ignorant of the true names and capacities of Cross-

25   defendants sued herein as ZOES I-20, inclusive, and therefore sue these Cross-

26

27                              2

28          _____
            CROSS-COMPLAINT BY TRI COMMERCIAL and
            JOHN FULTS

defendants by such fictitious names.  Cross-complainants will amend this Cross-complaint to allege their true names and capacities when ascertained.  Cross-complainants are informed and believe and thereon allege that, if these Cross-complainants are liable to Cross-complainant RAYBERN FOODS, INC. as alleged in the Cross-complaint in this action, each of the fictitiously named Cross-defendants is jointly or jointly and severally liable with Cross-complainants to Cross-complainant RAYBERN FOODS INC. for its damages as set forth therein.  Each reference in this Cross- complaint to "Cross-defendant," "Cross-defendants," or a specifically named Cross-defendant refers also to all Cross-defendants sued under fictitious names.

2.  Cross-complainants are informed and believe and on that basis allege that each cross-defendant individually or fictitiously named herein, acted in his, her, or its own right and also was or is the agent, employee, or servant of each of the other cross-defendants as to each of the matters set forth herein, and each such cross-defendant, whether individually or fictitiously named, was at all times acting within the scope and purpose of such agency, employment or service, or alternatively, if the acts of each such cross-defendant were not authorized at the time, such acts were subsequently ratified by the appropriate principal.

3.  TRI COMMERCIAL REAL ESTATE SERVICES, INC. (hereinafter "TRI") is and at all times mentioned herein was, a real estate broker duly licensed by

3

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

the State of California engaged in the brokerage of both real estate transactions and business opportunities.

4. Cross-defendant ROBERT YOUNG is and at all times mentioned herein was, an attorney at law duly licensed by the State of California.

5. At all times relevant to the facts herein pleaded, Cross-defendant ROBERT YOUNG served as a corporate officer and was a shareholder of Cross-complainant TRI. On October 18, 2001, Cross-defendant ROBERT YOUNG became a director of TRI. In addition to the foregoing, at all times relevant to the facts herein pleaded, Cross-defendant served as legal counsel for TRI.

6. By virtue of the aforementioned relationship between Cross-defendant ROBERT YOUNG and TRI, Cross-defendant enjoyed a position of great trust and confidence with TRI and thereby owed to TRI a fiduciary duty of utmost care, integrity, honesty and undivided loyalty in his dealings with TRI.

7. Separate and apart from his relationship to TRI, Cross-defendant ROBERT YOUNG also maintained a private law practice whereby he undertook to represent clients for his own account as an independent attorney at law.

8. On or about May 7, 2001, RAYBERN FOODS, INC. retained TRI, through its agent JOHN FULTS, to represent it as a business broker in connection with certain business and contractual negotiations it was engaged in with ROSE AND SHORE, INC.

4

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

9. On or about May 10, 2001, acting within the course and scope of his duties as an independent attorney at law and working for his own account, Cross-defendant ROBERT YOUNG accepted employment by RAYBERN FOODS, INC. to represent it as its legal counsel in the negotiations between RAYBERN FOODS, INC. and ROSE AND SHORE, INC.

10. At the time Cross-defendant ROBERT YOUNG accepted employment as attorney for RAYBERN FOODS, INC., he was fully aware that TRI was acting as a business broker for RAYBERN FOODS, INC. in the aforementioned negotiations.

11. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not seek nor was he granted permission to act in said capacity by TRI. At no time did YOUNG disclose to TRI that his representation of RAYBERN might result in a conflict of interest; nor did YOUNG ever obtain a waiver from TRI of any such potential conflict.

12. Cross-defendant ROBERT YOUNG did not seek nor was he granted authority to act on behalf of TRI in connection with the services he undertook to provide for RAYBERN FOODS, INC. as its counsel.

13. The activities of Cross-defendant ROBERT YOUNG as counsel for RAYBERN FOODS, INC. were not within the course or scope of his duties as officer, director, or legal counsel for TRI.

5

14.  In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG was acting for own account and for his sole benefit and not for any benefit to TRI.

15. Defendant RAYBERN FOODS, INC. has filed a Cross-complaint against ROBERT YOUNG, TRI COMMERCIAL REAL ESTATE SERVICES, INC. and JOHN FULTS, alleging, inter alia, that Cross-defendant ROBERT YOUNG breached his fiduciary duty to RAYBERN FOODS, INC. by undertaking to act as its legal counsel without fully disclosing his relationship with TRI.

16.  If it is established that there was a breach of duty on the part of Cross-defendant ROBERT YOUNG to make a full disclosure to RAYBERN FOODS, INC. of his relationship with TRI or to obtain a fully informed waiver of potential conflict of interest and consent from RAYBERN FOODS, INC., said breach arose out of and was occasioned by the fact that Cross-defendant ROBERT YOUNG undertook to represent RAYBERN FOODS, INC. as its legal counsel without fulfilling obligations that arose directly out of that attorney/client relationship.

17.  If there was a failure by Cross-defendant ROBERT YOUNG to make necessary disclosures or to obtain a fully informed waiver and consent from RAYBERN FOODS, INC., that failure was attributable solely to the acts undertaken by or omissions made by Cross-defendant ROBERT YOUNG in his capacity as an attorney at law acting as such for his own account.

6

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

18. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG did not disclose to TRI the extent of his disclosures to RAYBERN FOODS, INC. such that TRI had no notice of any error or omission in connection therewith and no opportunity to address any such error or omission.

19. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG is solely responsible for the events which have resulted in the present claim against TRI.

20. The aforementioned conduct by ROBERT YOUNG, if true, was adverse to TRI and proximately caused TRI to incur attorneys fees and costs in the defense of the Cross-complaint by RAYBERN FOODS, INC.

21. If damages were sustained by RAYBERN FOODS, INC. as alleged in the Cross-complaint, these damages were caused, entirely or in part, by Cross-defendant ROBERT YOUNG, in that he was actively and primarily at fault, and not by any wrongdoing or by any actual fault on the part of Cross-complainants TRI COMMERCIAL REAL ESTATE SERVICES, INC. or JOHN FULTS.

22. In undertaking to represent RAYBERN FOODS, INC. as its legal counsel, Cross-defendant ROBERT YOUNG placed his self-interest ahead of the interests of TRI.

7

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

23. The aforementioned conduct by Cross-defendant ROBERT YOUNG, if true, was in breach of his fiduciary duties to TRI and constitutes constructive fraud by said Cross-defendant.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Legal Malpractice)
### (On behalf of TRI Only)

24. Cross-complainant TRI realleges and incorporates by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

25. Cross-complainant RAYBERN FOODS, INC. has alleged in its Cross-complaint, inter alia, that TRI was under a duty to make certain disclosures and/or to obtain a waiver of conflict of interest and consent from RAYBERN FOODS, INC., all as more fully set forth therein. TRI has denied said allegations in the Answer to Cross-complaint filed on its behalf. However, if it should be established that such a duty did exist, then Cross-defendant ROBERT YOUNG, as legal counsel for TRI, was under a duty to properly advise TRI in connection with any potential conflict of interest and any duties or obligations arising therefrom.

26. Cross-defendant ROBERT YOUNG's failure to advise TRI of any duty or obligation arising from the retention of ROBERT YOUNG by RAYBERN FOODS,

8

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

1   INC., if any such duty or obligation is established, constituted an error and omission

2   committed within the course and scope of his duty to TRI as an attorney at law acting

3   as legal counsel to TRI.

4

5   27.  Cross-complainant has been damaged by virtue of having to defend

6   against the instant Cross-complaint and will suffer additional damage in the event it is

7   determined that there was a breach of duty by TRI arising out of the retention of

8   Cross-defendant ROBERT YOUNG by RAYBERN FOODS, INC.  Cross-

9   complainant will amend this Cross-complaint to allege said damages with certainty

10  upon proof at trial.

11  WHEREFORE, Cross-complainants pray judgment against Cross-defendant

12  ROBERT YOUNG as hereinafter set forth.

13

14

### THIRD CAUSE OF ACTION
#### (Indemnity)
#### (On behalf of TRI and JOHN FULTS)

15

16

17  28.  Cross-complainants reallege and incorporate by reference each and every

18  allegation contained in the First Cause of Action as though fully set forth herein.

19

20  29.  Cross-complainants are entitled to indemnification from cross-defendant

21  ROBERT YOUNG for all legal costs and fees, including attorneys' fees, incurred in

22  the defense of the Cross-complaint by RABYERN FOODS, INC. against TRI.

23

24

25

26

27                                              9

28

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

30.  Cross-complainant has made written demand for indemnification by Cross-defendant ROBERT YOUNG.  Notwithstanding said demand, Cross-defendant ROBERT YOUNG has failed and refused to indemnify TRI.

WHEREFORE, these cross-complainants pray for judgment against Cross-defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTION
#### (Contribution)
#### (On behalf of TRI and JOHN FULTS)

31.  Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

32.  If Cross-complainants are found liable under the allegations contained in the Cross-complaint of RAYBERN FOODS, INC., which liability Cross-complainants specifically deny, Cross-complainants and Cross-defendant ROBERT YOUNG, and each of them, will be joint tortfeasors and there will exist a right of comparative equitable indemnity between and amongst them as joint tortfeasors, based on the principles enunciated in American Motorcycle Association v. Superior Court (1978) 20 Cal.d 570.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as hereinafter set forth.

10

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

# FIFTH CAUSE OF ACTION
### (Declaratory Relief)
### (On behalf of TRI and JOHN FULTS)

33. Cross-complainants reallege and incorporate by reference each and every allegation contained in the First Cause of Action as though fully set forth herein.

34. An actual controversy has arisen and now exists between Cross-complainants TRI and JOHN FULTS and Cross-defendant ROBERT YOUNG in that said Cross-complainants contend, and Cross-defendant denies:

    a.    that as between said Cross-complainants and Cross-defendant, responsibility, if any, for damages claimed by RAYBERN FOODS, INC., if any, rests entirely or partially on Cross-defendant ROBERT YOUNG.

    b.    that, as a result, Cross-defendant ROBERT YOUNG is obligated to partially or fully indemnify Cross-complainants for any sums that Cross-complainants may be compelled to pay as the result of this action, together with Cross-complainants' costs, expenses and attorney's fees.

35. Cross-complainants desire a judicial determination of the respective rights and duties of Cross-complainants and Cross-defendant with respect to the damages claimed by RAYBERN FOODS, INC. In particular, Cross-complainants desire a declaration of the comparative liability of Cross-complainants and Cross-defendant

11

for these damages, if any, and a declaration of Cross-defendant's responsibility for comparative indemnity to Cross-complainants for any sums that Cross-complainants may be compelled to pay and for which Cross-defendant ROBERT YOUNG is determined responsible, entirely or in part.

36.  Such a declaration is necessary and appropriate at this time in order that Cross-complainants may ascertain their rights and duties with respect to RAYBERN FOODS, INC.'s claim for damages.  Furthermore, the claim of RAYBERN FOODS, INC. and the claim of Cross-complainants arise out of the same transaction, and determination of both in one proceeding is necessary and appropriate in order to avoid the multiplicity of actions that would result if Cross-complainants were required now to defend against the claim of RAYBERN FOODS, INC. and then bring a separate action against Cross-defendant ROBERT YOUNG for indemnification of sums that Cross-complainants may be compelled to pay as the result of any damages, judgment, or other awards recovered by RAYBERN FOODS, INC. against these Cross-complainants.

WHEREFORE, Cross-complainants pray judgment against Cross-defendant ROBERT YOUNG as follows:

**AS TO THE FIRST THROUGH FOURTH CAUSES OF ACTION**

1.  For damages according to proof;

2.  For costs of suit herein incurred;

12

CROSS-COMPLAINT BY TRI COMMERCIAL and JOHN FULTS

3.  For reasonable attorneys fees incurred in the defense of the Cross-complaint by RAYBERN FOODS, INC. against TRI; and

4.  For such other and further relief as the court may deem proper.

## AS TO THE FIFTH CAUSE OF ACTION

1.  For a judicial determination of the comparative fault of Cross-complainants and Cross-defendant ROBERT YOUNG for the damages claimed by RAYBERN FOODS, INC. if any are found to exist;

2.  For a declaration of the amount that Cross-defendant ROBERT YOUNG is obligated to indemnify Cross-complainants if Cross-complainants are compelled to pay any sum as the result of any damages, judgment, or other awards recovered by RAYBERN FOODS, INC. against these Cross-complainants;

3.  For costs of suit herein incurred;

4.  For reasonable attorneys fees; and

5.  For such other and further relief as the court may deem proper.

Dated: September 13, 2005

ALBERT E. CORDOVA
A Professional Law Corporation

By _____
ALBERT E. CORDOVA
Attorney for Cross-complainant
TRI COMMERCIAL REAL ESTATE
SERVICES, INC. and JOHN FULTS

13

CROSS-COMPLAINT BY TRI COMMERCIAL and
JOHN FULTS

## PROOF OF SERVICE

I am a citizen of the United States and employed in Marin County, State of California; I am over the age of eighteen (18) years of age and not a party to the within above-entitled action; my business address is:  1299 Fourth St., Suite 202, San Rafael, CA  94901.  On September 13, 2005, I caused to be served the documents identified herein as follows:

**Documents Served:CROSS-COMPLAINT ON BEHALF OF TRI COMMERCIAL REAL ESTATE SERVICES, INC. AND JOHN FULTS AND AGAINST ROBERT YOUNG FOR BREACH OF FIDUCIARY DUTY, LEGAL MALPRACTICE, INDEMNITY, CONTRIBUTION AND DECLARATORY RELIEF**

Kyra A. Subbotin
Law Offices of Kyra A. Subbotin
2625 Alcatraz Avenue, No. 152
Berkeley, CA 94705
Telephone: (510) 923-0451
Facsimile: (510) 923-0565

Clifford Horner
Berding & Weill LLP
3240 Stone Valley Road West
Alamo, CA 94507-1558
Telephone: (925) 838-2090
Facsimile: (925) 820-5592

<u>XXX</u>   (BY MAIL) I placed such envelope with postage thereon fully prepaid in the United States mail at San Rafael, California.

\_\_\_\_   (BY PERSONAL SERVICE)  I caused said documents to be delivered to the above address.

\_\_\_\_   (VIA TELEFACSIMILE) I caused said document to be transmitted to the above addressee via telefacsimile.

<u>XXX</u>   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

\_\_\_\_   (FEDERAL) I declare that I am employed at the office of a member of the bar of this court at whose direction the service was made.

Executed at San Rafael, California on September 13, 2005

_____
ANN MEGAN